Douglas R. Dollinger, Esq., NY Bar No. 2354926
Appearing *Pro Hac Vice*
260 Main Street
Goshen, New York 10924
Tel:    845.915.6800
Fax:.   845.915.6801
e-mail: ddollingeresq@gmail.com
Attorney for Plaintiff

Seth D. Heyman, Esq., CA Bar No. 194120
2600 Michelson Drive, Suite 900
Irvine, CA 92612
Tel: 855-439-6628
Fax: 855-207-3967
Email: sdh@heymanlegal.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Indiezone, Inc., a Delaware corporation, and EoBuy, Limited an Irish private limited company, | **Case No. 13-cv-** <br> **Jury Trial Is Demanded** |
| **Plaintiffs,** | |
| vs. | 15 U.S.C.   §§1114-1117 and1125(a),(d); <br> 17 U.S.C.   §§501-506(a)(1)(A); <br> 18 U.S.C.   §1030(a)(2)(C),(a)(4)(a)(5)(C), <br> 18 U.S.C.   §§1341 & 1343; |
| Todd Rooke, Joe Rogness, Phil Hazel, Sam Ashkar, Holly Oliver and U.S. Bank, collectively the ***RICO Defendants***; | 18 U.S.C.   §1832-Theft Trade Secrets <br> 18 U.S.C.   §§ 1951, 1956 and 1957; <br> 18 U.S.C.   §§1961-1968, et seq; |
| Jingit LLC., Jingit Holdings LLC., Jingit Financial, Services LLC., Music. Me, LLC., Tony Abena, John E. Fleming, Dan Frawley, Dave Moorehouse II, Chris Ohlsen, Justin James, Shannon Davis, Chris Karls in their capacities as officers, agents and/or employees of the Jingit LLC., ***Defendants in Negligence, and Aiding/Abetting;*** | 18 U.S.C.   §2314; <br> 18 U.S.C.   §2319; <br> 18 U.S.C.   §2701-11; <br> 28 U.S.C.   §2201(a)Trademark-Patent DJ; <br> 35 U.S.C.   §282-292 Inv. Pat-False Pat; <br> Prelim. Injuct. Aiding/Abetting, Negligence; <br> Fraud/Misrepresentation; Conspiracy; DJ Act. |
| Wal-Mart, General Electric, Target, DOE(s) and ROE(s) 1 through 10, ***Defendants in Negligence Secondary -Vicarious Infringement,*** | Misapp. Trade Secrets Cal. Code 34.26.11 <br> California Unfair Competition 17200/17500 <br> Trespass to Chattel; Breach of Contract |
| ***Defendants.*** | Cal Penal Codes §§ 496 and 502, False Advertising; <br> Const. Trust-Int.-Neg. Interf. w/Buss; Accounting; <br> Appt. Referee Conversion of Intel. Property; <br> False Advertising; Unjust Enrich-Restitution. |

## INTRODUCTION

1.     The claims presented in this Complaint comprise allegations of a criminal agreement, a conspiracy, involving the willful-deliberate pre-planned, well-organized and carefully executed theft of Plaintiff **eoBuy's** and Plaintiff **Indiezone's** ("Plaintiff Corporations") separate and joint original in house and filed copyright-works, copyrightable-works, trade secrets, service mark-trade dress and other intellectual property (collectively "**IP**" and from time-to-time "**Property**").

2.     The plan was originally forged between two individuals, each former officers, work-for-hire employees and shareholders of **eoBuy** and/or **Indiezone**; the Defendant **Todd Rooke** ("**Rooke**"), **eoBuy's** Chief Technical and Strategy Officer as well as **Indiezones** former Chief Technical Officer; together with Defendant **Joseph Rogness** ("**Rogness**"), **Indiezone's** former Chief Marketing and Business Development Officer.

3.     **Rooke** and **Rogness** were collaborative in the theft of Plaintiff Corporations unique-proprietary e-commerce micro-billing and payment processing systems for sales, purchases and payment of digital content over the Internet and mobile network systems.

4.     The criminal agreement-scheme commenced by **Rooke** and **Rogness** has been ongoing since September 2008. The first of a series of overt acts escalated into actual predicate criminal acts which were accomplished through a pattern of racketeering activity when in November of 2011, the ***RICO Defendants***, acting as principles within the meaning of 18U.S.C §2, all "**Persons**" within the meaning of 18 U.S.C. §1961(3) criminally took control of Plaintiffs' **IP** and are using it in the affairs of new business entities which constitute a ***RICO Enterprise*** within the meaning of 18 U.S.C. §1961(4) which has and continues to cause damages and injury to Plaintiffs' business and **Property** entitling Plaintiffs to a right of compensation 18 U.S.C. §1964(c).

5.     These acts of infringement, theft, and conversion were accomplished via the US mail and wire transmissions services using related schemes at differing times in acts occurring across state lines, where the primary objective and/or intent of Defendants **Rooke,** and **Rogness** was the willful control, destruction and injury of Plaintiffs' business- **Property**

– 2 –

1   involving: 1) theft-conversion of Plaintiffs' **IP**; 2) by the intended control, disruption or

2   interference with the Plaintiffs' planned deployment and commercial release-market entry of

3   their individual and joint **IP**; 3) where the theft, control and disruption of the Plaintiffs' **IP**

4   allowed Defendants **Rooke** and **Rogness** to establish and maintain an unfair competitive

5   advantage over Plaintiffs; 4) which was accomplished with others  in the commission of

6   overt/criminal acts which form a pattern of racketeering activity; 5) which provided **Rooke** and

7   **Rogness** the means to falsely claim the ownership of the Plaintiffs' **IP**; 6) allowing Defendants

8   to raise capital through investors series Regulation D offerings by reason of their false claims of

9   ownership; 7)  which then allowed them to create and use a series of new corporations using the

10   illegally generated money and activity, reinvesting the money into  those corporations which

11   were managed, controlled and owned by them, via a second pattern of racketeering activity; 8)

12   which provided the opportunity for them to  file false patents with the USPTO; 9) after which

13   **Rooke** and **Rogness** conspired with and directed certain defendants who agreed, acquiesced,

14   knew or should have known that they were committing acts in a manner forming a pattern of

15   criminal-racketeering activity; 10) and which provided them the means for the  systematic,

16   incremental and illegal infringement, misappropriation, deployment and exploitation of the

17   Plaintiffs' **IP** via  the Website **Jingit.com.**

18        6.      The Plaintiffs' proprietary content and processing systems exist under a joint

19   licensing and deployment agreement between **eoBuy** and **Indie Zone. Indiezone's** is a unique e-

20   commerce platform and advertising engine consisting of programs, compilations/applications of

21   the **eoBuy** methods and processes enabling advertisers to provide consumers with real-time cash

22   rewards in exchange for their attention and direct engagement.

### BUSINESS MODELS

**eoBuy's  Business Model:**

25        7.      **eoBuy's** core business strategy centers around the licensing and deployment of its

26   copyrighted-copyrightable and proprietary payment processing and content monetization

27   platform, a unique process which enables among other things, real-time settlement of fractional

28   transactions in amounts less than .99 cents via the Internet for sales of digital content.

– 3 –

Complaint

8.     The **IP** processes are proprietary and have been in development since 1997, and at least 9 years prior to the Rooke and Rogness obtaining employment as work-for hire employees.  **eoBuy's** turnkey, full-service restricted licensing solutions were designed and architected to be available on a systemic-global scale. **eoBuy's** discrete business model was designed and architected to provide a gateway and bridge for the processing of micro e-commerce fractional transactions between consumers, merchants and various Payment Service Providers ("PSP's") or licensees/stakeholders.

9.     The fractional e-commerce segment of market processing exists with significant economic barriers to entry in the processing of transactions below the monetary threshold of $.99 cents.  By using the in-house registered copyright and trade-secret, **eoBuy proprietary IP** solutions, the technological and business parameters for fractional transactions have been engineered in a manner using discrete Code methods and techniques compiled and developed by the company as to provide a viable system for the enablement of micro-payments on any scale.

10.     The **eoBuy** payment platform, for the first time, creates a technology that enables the various players in the financial and e-commerce system to process micro-transactions in a profitable manner. The processes mean hundreds of billions of dollars in revenue to the world economy and better services to users of the Internet.

11.     Due in part to the unprecedented scalability requirements and the next generation business model of the **eoBuy IP** solution, PSPs, merchants and consumers and other members of the e-commerce and financial communities have the  ability to unlock profits in the area of digital distribution and digital commerce.

12.     **eoBuy's** proprietary process is accomplished by applying its' Code in a discrete  methodology which allows consumers to participate in fractional purchases, while merchants can effectively control and regulate delivery of goods in fractional sales on an individualized at-will basis with real time settlement of accounts.

**Indiezone's Business Model:**

13.     The **Indiezone** business model was designed around its in-house copyrighted and trade-secreted **Ad-Engine** and next-generation e-commerce platform (in this instance

-4-

Complaint

tailored specifically to the digital distribution of independent music paid for via engagement with a proprietary compilation of processes-methods accomplished via its unique Ad-Engine application ).

14.     The **Ad-Engine** enables for advertisers to provide consumers real-time fractional cash rewards for online purchases using ad sponsor dollars to pay consumers direct deposits for watching and engaging with their ads.

15.     In exchange for payment the consumer may provide demographic and psychographic feedback to advertising sponsors who in turn can use the information to target consumers thereby eliminating the need for a shotgun approach to market advertising delivery and simultaneously increasing the value of the relationship and thus the amount paid-out to consumers for their attention and engagement.

16.     Cash payment may be in whole dollars or fractional amounts under .99/00 cents.   This area was a previously unprofitable segment of the e-commerce revenue stream-ecosystem. The **Indiezone** system and **Ad-Engine** in particular, enables advertisers to provide consumers with real-time fractional cash rewards in exchange for their attention and engagement.   The system was developed with a unique methodology and processes enabling the direct compensation to consumers with real money and in real time.

17.     The **Indiezone** model simultaneously allows users to instantly bank their earnings and then spend those earnings by way of credit and debit cards.   The task is accomplished via a bank-account or an extension of a bank-account such as a prepaid banking debit card funded via the money earned while using the **Indie Zone Ad-Engine**, in association with banking and settlement partners, (Payment Service Providers "PSPs").

18.     The earned funds can be used by consumers to make digital purchases within the **Indiezone** technological ecosystem or the funds can be redeemed directly deposits to their bank accounts as maintained by Plaintiff banking partners and spent in the real world.

*Complaint*

**eoBuy's and Indiezone's Joint Business Model:**

19.    The combined technologies and joint deployment of **eoBuy** and **Indiezone** using their unique break-through e-commerce micro formula, and compilation **Ad-Engine** processing are proprietary methods, techniques and processes designed to derive independent economic value in both whole and fractional transactions in this segment of the Internet e-commerce market using methods not generally known to, and not being readily ascertainable by proper means, by other persons who could obtain economic value from its disclosure or use.

### JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

20.    This Court has federal question jurisdiction in this case under 28 U.S.C. 1331, as Plaintiffs have asserted claims arising under the laws of the United States. Specifically, causes of action involving federal questions related to overt and/or predicate criminal acts and continuing illegal acts alleged hereafter which cluster around the willful criminal activities of the individual defendants **Rooke** and **Rogness** involving both state and federal criminal acts and direct acts of racketeering activity including, but not limited to, Copyright infringement 17 U.S.C. 501-506(a)(1)(A); 18 U.S.C. 1030(a)(2)(C),(a)(4)(a)(5)(C):, of the Federal Computer Fraud and Abuse Act; Federal Trademark Act of 1946, as amended (the Lanham Act), 15 U.S.C.  1125(a) and 1125(d); 18 U.S.C. 1341 mail fraud and 1343 wire fraud; 18 U.S.C. 1832 (theft of trade secrets), 18 U.S.C. 1956 and 1957 money laundering, engaging in monetary transactions in property derived from specified unlawful activity; in violation of the RICO Statute 18 U.S.C. 1961-1968, et seq; 18 U.S.C. 2314-2315 possession and receipt of stolen property; and 18 U.S.C. 2319, criminal infringement of a copyright; in violation of the Stored Communications Act, 18 U.S.C. 2701-11.

21.    In the alternative this Court has jurisdiction over the subject matter of this complaint pursuant to 28 USC §1332, for the reason that there is complete diversity of citizenship between the parties and the amount in controversy, as to each defendant, exceeds $75,000.00, exclusive of interest and costs.

22.    Venue is appropriate in the Northern District of California pursuant to 28 U.S.C. 1391, because a substantial part of the events giving rise to the dispute occurred in this district, a substantial part of the property that is the subject of the action is situated in this district, and the

Complaint

Court has personal jurisdiction over each of the parties as alleged throughout this Complaint for activities which have caused injury to the Plaintiffs here in California. Because the agreements establish this as the venue and it is where the company head-quarters are based.

23.     Because Plaintiffs have asserted various claims arising under state law that form part of the same case or controversy as the claims arising under federal law, this Court also has supplemental jurisdiction pursuant to 28 U.S.C. 1367 for violations of Cal. Penal Code 496 receipt of stolen property; Cal. Penal Code 502 unauthorized access to computers; theft of trade secrets Cal. Civ. Code 3426.11.

24.     Defendants' conduct also constitutes common law fraud, conspiracy, conversion computer trespass theft, larceny, aiding and abetting, breach of contract, and unjust enrichment.

25.     Assignment to the San Francisco Division is appropriate pursuant to Civil Local Rule 3-2(d) because a substantial part of the events that give rise to the Commission's claims occurred in Marin County, California, where Plaintiff Indiezone is headquartered.

### THE PARTIES

**Plaintiffs-Jingit Enterprise Victims:**

26.     **eoBuy** is a privately held  foreign corporation, owned by approximately 30 shareholders and having its place of business in the Republic of Ireland and is an entity member-victim of the ***association-in-fact Enterprise(s)***.

27.     **Indiezone** is a privately held Delaware corporation, owned by its majority shareholders having its place of business at 33 Prospect Avenue, Sausalito, California and is an entity member-victim of the ***association-in-fact Enterprise***.

**RICO Person Defendants 18 U.S.C/ 1961:**

28.     ***RICO Defendant,*** **Todd Rooke** whose primary/current place of business is 770 France Avenue South, Edina, Minnesota 55435, is a ***RICO Person,*** within the meaning of RICO, 18 U.S.C. §1961(3) acting as principles within the meaning of 18 U.S.C. §2, distinct from the ***Jingit Enterprise Entities*** in charge of the day-to-day affairs-operations of the ***Jingit Enterprise Entities*** activity alleged herein and is the co-

-7-

founder/member owner and/or Co-CEO-employee of the *Jingit Enterprise Entities*, **Jingit LLC, Jingit Holdings, Jingit Financial**, and **Music. Me.**

29.    *RICO Defendant,* **Todd Rooke** directs the affairs-operations of the *Jingit Enterprise* in the illegal and incremental deployment-use of Plaintiffs' **IP** with the use of the fraudulently obtained investment funds paid into **Jingit Holdings** for payment of the day-to-day and continuing lawful and illegal activities of the of the *Jingit Enterprise Entities*.

30.    *RICO Defendant,* **Joe Rogness** whose primary/current place of business is 770 France Avenue South, Edina, Minnesota 55435, is a *RICO Person,* within the meaning of RICO, 18 U.S.C. §1961(3) acting as principles within the meaning of 18 U.S.C. §2, distinct from the *Jingit Enterprise Entities* in charge of the day-to-day affairs-operations of the *Jingit Enterprise Entities* activity alleged herein and is the co-founder/member owner and/or Co-CEO-employee of the *Jingit Enterprise Entities*, **Jingit LLC, Jingit Holdings, Jingit Financial**, and **Music. Me.**

31.    *RICO Defendant,* **Joe Rogness** directs the affairs-operations of the *Jingit Enterprise* in the illegal and incremental deployment-use of Plaintiffs' **IP** with the use of the fraudulently obtained investment funds paid into **Jingit Holdings** for payment of the day-to-day and continuing lawful and illegal activities of the of the *Jingit Enterprise Entities*.

32.    *RICO Defendant,* **Phil Hazel ("Hazel")** whose primary/current place of business is 770 France Avenue South, Edina, Minnesota 55435, is a *RICO Person,* within the meaning of RICO, 18 U.S.C. §1961(3) acting as a principle within the meaning of 18 U.S.C. § 2,   a member and/or employee of **Jingit Holding** distinct from the *Jingit Enterprise Entities* in charge of the day-to-day operations of the *Jingit Enterprise* activity alleged herein and is knowingly and intentionally aiding and abetting the other *RICO Defendants* directing the *Jingit Enterprise Entity* employees in the lawful affairs of the *Jingit Enterprise* and use of Plaintiffs' illegally obtained infringed-misappropriated **IP** with fraudulently obtained investment funds paid into **Jingit Holdings.**

Complaint

33.     *RICO Defendant,* **Sam Ashkar ("Ashkar")** whose primary/current place of business is 770 France Avenue South, Edina, Minnesota 55435, is a *RICO Person,* within the meaning of RICO, 18 U.S.C. §1961(3) acting as a principle within the meaning of 18 U.S.C. § 2, a member and/or employee of **Jingit Holding** distinct from the *Jingit Enterprise Entities* in charge of the day-to-day operations of the *Jingit Enterprise* activity alleged herein and is knowingly and intentionally aiding and abetting the other *RICO Defendants* directing the *Jingit Enterprise Entity* employees in the lawful affairs of the *Jingit Enterprise* and use of Plaintiffs' illegally obtained infringed-misappropriated **IP** with fraudulently obtained investment funds paid into **Jingit Holdings.**

34.     *RICO Defendant* **Holly Oliver ("Oliver")** *RICO Defendant,* **Phil Hazel ("Hazel")** whose primary/current place of business is 770 France Avenue South, Edina, Minnesota 55435, is a *RICO Person,* within the meaning of RICO, 18 U.S.C. §1961(3) acting as a principle within the meaning of 18 U.S.C. § 2, a member and/or employee of **Jingit Holding** distinct from the *Jingit Enterprise Entities* in charge of the day-to-day operations of the *Jingit Enterprise* activity alleged herein and is knowingly and intentionally aiding and abetting the other *RICO Defendants* directing the *Jingit Enterprise Entity* employees in the lawful affairs of the *Jingit Enterprise* and use of Plaintiffs' illegally obtained infringed-misappropriated **IP** with fraudulently obtained investment funds paid into **Jingit Holdings.**

35.     *RICO Defendant,* **US Bank** is a publicly held corporation, having its place of business at 80 Nicollet Mall, Minneapolis, Minnesota 55402, and is a *RICO Person,* within the meaning of RICO, 18 U.S.C. §1961(3) acting as a principle within the meaning of 18 U.S.C. § 2, and is distinct from the *Jinigt Enterprise* where its employees are in charge of the day-to-day affairs-operations of the *Jinigt Enterprise* activities alleged herein; and in charge of directing or otherwise participating in the illegal affairs of the *Jingit Enterprise* in the misappropriation-infringement and illegal use of Plaintiffs' **IP** which is being accomplished with fraudulently obtained investments funds paid into **Jingit Holdings** and then used for payment of servicing the day-to-day and continuing activities of the *Jingit Enterprise.*

**Defendants In Negligence-Aiding/Abetting or Accessory:**

36. **Jingit Holdings LLC.,** (**"Jingit Holdings"**) f/k/a 7 Ventures LLC whose primary/current place of business is 770 France Avenue South, Edina, Minnesota 55435, was and is a privately held Delaware corporation, owned by its members **Rooke** and **Rogness** who are *RICO Persons,* within the meaning of RICO, 18 U.S.C. §1961(3) and who, together with other *RICO Persons* are using **Jingit Holdings,** as vehicle distinct from its corporate identity where the *RICO Defendants* are in charge of the day-to-day affairs-operations of the **Jingit Holdings,** and in charge of directing the illegal use of **Jingit Holdings,** in the formation of the *Jingit Enterprise.*

37. **Jingit LLC.,** (**"Jingit LLC"**) whose primary/current place of business is 770 France Avenue South, Edina, Minnesota 55435, was and is a privately held Delaware corporation, owned by its members **Rooke** and **Rogness** who are *RICO Persons,* within the meaning of RICO, 18 U.S.C. §1961(3) and who, together with other *RICO Persons* are using **Jingit LLC.,** as vehicle distinct from its corporate identity where the *RICO Defendants* are in charge of the day-to-day affairs-operations of the **Jingit LLC.,** and in charge of directing the illegal use of **Jingit LLC.,** in the formation of the *Jingit Enterprise.*

38. **Jingit Financial Services LLC.,** (**"Jingit Financial"**) whose primary/current place of business is 770 France Avenue South, Edina, Minnesota 55435, was and is a privately held Delaware corporation, owned by its members **Rooke** and **Rogness** who are *RICO Persons,* within the meaning of RICO, 18 U.S.C. §1961(3) and who, together with other *RICO Persons* are using **Jingit Financial.,** as vehicle distinct from its corporate identity where the *RICO Defendants* are in charge of the day-to-day affairs-operations of the **Jingit Financial** and in charge of directing the illegal use of **Jingit Financial** in the formation of the *Jingit Enterprise.*

39. **Music.Me LLC.,** (**"Music.Me"**) whose primary/current place of business is 770 France Avenue South, Edina, Minnesota 55435, was and is a privately held Delaware corporation, owned by its members **Rooke** and **Rogness** who are *RICO*

*Persons*, within the meaning of RICO, 18 U.S.C. §1961(3) and who, together with other **RICO Persons** are using **Music.Me** as vehicle distinct from its corporate identity where the **RICO Defendants** are in charge of the day-to-day affairs-operations of the **Music.Me** and in charge of directing the illegal use of **Music.Me** in the formation of the *Jingit Enterprise.*

40.    **Tony Abena ("Abena")** is, upon information and belief, an officer/director, member or employee of **Jingit LLC.,** having a place of business at 80 Nicollet Mall, Minneapolis, Minnesota 55402, who owed a duty to Plaintiffs and  was, or should have been aware of the fraudulent conduct-acts of the **RICO Defendants** in their illegal activities, in the control and use of **Jingit Holdings** and who was negligent or otherwise aided/abetted, or was an accessory after the fact in allowing the theft-conversion of Plaintiffs' Property by authorizing transactions involving the illegal activities of the *Jingit Enterprise* resulting in injury and damages to Plaintiffs' business-property.

41.    **John E. Fleming ("Fleming")** is, upon information and belief, an officer/director, member or employee of **Jingit LLC.,** having a place of business at 80 Nicollet Mall, Minneapolis, Minnesota 55402, who owed a duty to Plaintiffs and  was, or should have been aware of the fraudulent conduct-acts of the **RICO Defendants** in their illegal activities, in the control and use of **Jingit Holdings** and who was negligent or otherwise aided/abetted or was an accessory after the fact in allowing the theft-conversion of Plaintiffs' Property by authorizing transactions involving the illegal activities of the *Jingit Enterprise* resulting in injury and damages to Plaintiffs' business-property.

42.    **Dan Frawley ("Frawley")** is, upon information and belief, an officer/director, member or employee of Jingit LLC., having a place of business at 80 Nicollet Mall, Minneapolis, Minnesota 55402, who owed a duty to Plaintiffs and  was, or should have been aware of the fraudulent conduct-acts of the **RICO Defendants** in their illegal activities, in the control and use of **Jingit Holdings** and who was negligent or otherwise aided/abetted or was an accessory after the fact in allowing the theft-conversion of Plaintiffs' Property by

Complaint

authorizing transactions involving the illegal activities of the *Jingit Enterprise* resulting in injury and damages to Plaintiffs' business-property.

43.     **Dave Moorehouse II ("Morehouse")** is, upon information and belief, an officer/director, member or employee of Jingit LLC., having a place of business at 80 Nicollet Mall, Minneapolis, Minnesota 55402, who owed a duty to Plaintiffs and  was, or should have been aware of the fraudulent conduct-acts of the *RICO Defendants* in their illegal activities, in the control and use of **Jingit Holdings** and who was negligent or otherwise aided/abetted or was an accessory after the fact in allowing the theft-conversion of Plaintiffs' Property by authorizing transactions involving the illegal activities of the *Jingit Enterprise* resulting in injury and damages to Plaintiffs' business-property.

44.     **Chris Ohlsen ("Ohlsen")** is, upon information and belief, an officer/director, member or employee of Jingit LLC., with a place of business having a place of business at 80 Nicollet Mall, Minneapolis, Minnesota 55402, who owed a duty to Plaintiffs and was, or should have been aware of the fraudulent conduct-acts of the *RICO Defendants* in their illegal activities, in the control and use of **Jingit Holdings** and who was negligent or otherwise aided/abetted or was an accessory after the fact in allowing the theft-conversion of Plaintiffs' Property by authorizing transactions involving the illegal activities of the *Jingit Enterprise* resulting in injury and damages to Plaintiffs' business-property.

45.     **Justin James ("James")** is, upon information and belief, an officer/director, member or employee of Jingit LLC., having a place of business at 80 Nicollet Mall, Minneapolis, Minnesota 55402, who owed a duty to Plaintiffs and  was, or should have been aware of the fraudulent conduct-acts of the *RICO Defendants* in their illegal activities, in the control and use of **Jingit Holdings** and who was negligent or otherwise aided/abetted or was an accessory after the fact in allowing the theft-conversion of Plaintiffs' Property by authorizing transactions involving the illegal activities of the *Jingit Enterprise* resulting in injury and damages to Plaintiffs' business-property.

46.     **Shannon Davis ("Davis")** is, upon information and belief, an officer/director, member or employee of Jingit LLC., having a place of business at 80

Complaint

Nicollet Mall, Minneapolis, Minnesota 55402, who owed a duty to Plaintiffs and was, or should have been aware of the fraudulent conduct-acts of the **RICO Defendants** in their illegal activities, in the control and use of **Jingit Holdings** and who was negligent or otherwise aided/abetted or was an accessory after the fact in allowing the theft-conversion of Plaintiffs' Property by authorizing transactions involving the illegal activities of the **Jingit Enterprise** resulting in injury and damages to Plaintiffs' business-property.

47.    **Chris Karls ("Karls")** is, upon information and belief, an officer/director, member or employee of Jingit LLC., having a place of business at 80 Nicollet Mall, Minneapolis, Minnesota 55402, who owed a duty to Plaintiffs and was, or should have been aware of the fraudulent conduct-acts of the **RICO Defendants** in their illegal activities, in the control and use of **Jingit Holdings** and who was negligent or otherwise aided/abetted or was an accessory after the fact in allowing the theft-conversion of Plaintiffs' Property by authorizing transactions involving the illegal activities of the **Jingit Enterprise** resulting in injury and damages to Plaintiffs' business-property.

**Defendants in Negligence Secondary-Vicarious Infringement:**

48.    **Walmart** is a publically held US corporation, owned by its shareholders and having its place of business at 702 SW 8th-Street Bentonville, Arkansas 72716-8611 who is a nominal Defendant unknowingly infringing in the use of Plaintiffs' **IP**.

49.    **General Electric** is a publically held Delaware corporation, owned by its shareholders and having its place of business at 3135 Easton Turnpike Fairfield, Connecticut 06828 who is a nominal Defendant unknowingly infringing in the use of Plaintiffs' **IP**.

50.    **Target** is a publically held Delaware corporation, owned by its shareholders and having its place of business at 3135 Easton Turnpike Fairfield, Connecticut 06828 who is a nominal Defendant unknowingly infringing in the use of Plaintiffs' **IP**.

51.    Plaintiff does not currently know the true names of defendant DOE(s) and ROE(s) 1 through 10. However, Plaintiff will seek leave of the court to amend this Complaint by alleging the true names and capacities of defendants, Does 1 through 10 when they are ascertained.

- 13 -

Complaint

**The Association-in-Fact *RICO Enterprise*:**

52.    **Jingit Holdings Jingit Financial, Jingit LLC.,** and **Music.Me, Rooke, Rogness, Hazel, Ashkar,** and **Oliver,** together with **Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis, Karls, Wal-Mart, General Electric, Target, DOE(s) and ROE(s),** are at times collectively  and/or in varying combinations-groupings the *Jingit Enterprise* which existing *as an association-in-fact* controlled by the *RICO Person Defendants* **Rooke, Rogness, Hazel, Ashkar, Oliver** and **US Bank.**

53.    The *Enterprise* exists through  a purposeful, continuing  interrelated  and ongoing  a pattern of racketeering activities interplayed between the normal operations of these companies and the affairs of the criminal activities in the *Person* Defendants who are distinct from **Jingit Enterprise Entities** and whose criminal activities effect interstate and international commerce as these terms apply under **18 U.S.C. §§ 1951** and **1962(a)-(d).**

**COMMON CLAIMS**

54.    The theft of Plaintiffs' **IP** and obstruction in Plaintiffs' right to commercial entry to the e-commerce markets was the common target of *RICO Defendants* where: 1) the theft was accomplished  and involved multiple predicate acts of racketeering activity in the form of mail fraud by an overnight carrier, and wire fraud, via the Internet or over the telephone using false and otherwise misleading statements to Plaintiffs used to: 1) induce Plaintiffs to release *RICO Defendants* **Rooke** and **Rogness** from their non-competition Agreements; 2) or third parties who sought out to license Plaintiffs' **IP**; 3) in obtaining the funding for the *Jingit Enterprise Entities* so as to illegally deploy Plaintiffs' **IP** as their own; 4) where in each instance the *RICO Defendants* knowingly and intentionally used these false or otherwise misleading oral and written statements and/or material omission as set forth herein intending to cause Plaintiffs  and other third-parties to rely on  the statements-solicitations; and 4) causing injury to Plaintiffs' businesses and **Property.**

Complaint

**Distinctiveness-purpose-relationship and longevity:**

55.    Notwithstanding that the *Jingit Enterprise* is an *association-in-fact enterprise* each of the individuals or corporate entities are **RICO** *Persons* within the meaning of RICO, 18 U.S.C. §1961(3) acting as principles within the meaning of 18 U.S.C. §2 in committing the acts of racketeering and are separate and district from the *RICO Defendants.*

56.    Each of the *Jingit Enterprise* Corporate *Entities* exists as private companies and operates as legitimate business entities performing corporate functions and otherwise engaging in other lawful activity outside or otherwise independent from the RICO actvities.

57.    Contrary to their fiduciary duties in the performance of the lawful activities of the *Jingit Enterprise Entities,* and under the cover of their existence the *RICO Defendants* have conspired and are using one or several of the *Jingit Enterprise Entities* and **US Bank** for the purpose of performing the illegal Schemes hereafter outlined, and although the *RICO Defendants* often appear to be interacting or performing in their lawful capacities with the individual *Jingit Enterprise Entities* for the most part, they are acting in furtherance of the collective *RICO Defendants* Schemes for the benefit of the *RICO Defendants* alone, and so as to injure Plaintiffs in their business or **Property.**

58.    The lawful activities are undertaken while the *RICO Defendants* simultaneously orchestrate the illegal acts of racketeering activity including mail and wire fraud-money laundering and providing the means opportunity for obtaining-receiving the stolen **Property;** and funding for the *Jingit Enterprise* Scheme.

59.    The Scheme is singular in purpose involving multiple exploits with a targeted victim, and has been carried out on multiple occasions through the continuing relationships forged among the **"Person"** *RICO Defendants* and includes the ongoing criminal activity which exists to this date.

- 15 -

Complaint

60.  **RICO Defendants**, **Rooke** and **Rogness** are the hub of the *Jingit Enterprise* corporate activities where, from their positions as Co-CEO's of these *Jingit Entities* in the operations of the *Jingit Enterprise* they direct the illegal affairs of the *Jingit Enterprise* in coordination with the remaining **RICO Defendants,** who have been strategically placed by them in the *Jingit Enterprise Entities* as employees, members directors/officers.

61.  In the performance and execution of the Scheme, in an overt act designed to maintain the affairs of the *Jingit Enterprise, RICO Defendants* **Rooke** and **Rogness** as Co-CEO's of **Jingit Holdings** the **"funding arm"** of *Jingit Enterprise,* have ensured that **Hazel** and **Ashkar** each assumed either a position of employment or individual positions as officers and/or directors on at least one of the Boards of the *Jingit Enterprises Entities* and in particular the Boards of **Jingit Holdings Jingit Financial, Jingit LLC.,** and **Music.Me.**

62.  From their positions as members, insiders, employees, officers and/or directors the **RICO Defendants** **Rooke** and **Rogness,** by their control direct the remaining *Defendants* in the day-to-day operation of the *Jingit Entities.*

63.  The Schemes and control are accomplished in performance of the racketeering activity by means of electronically-telephonically circulating false and misleading statements to the **Jingit Boards** and its employees concerning the misappropriation of the **IP.**

64.  Often the use of the Plaintiffs' IP is disguised as a patent found in the public domain or as falsely claimed, created by in house engineering-research and development.

65.  In each instance, the **RICO Defendants** knew and were aware the statements and content of the documents were false misleading and otherwise omitted material information to make the statements and/ or reports truthful and that the *Jingit Boards* would rely on them in support of the companies lawful operations.

66.  Each statement and document was material to the manner in which the **RICO Defendants** obtained and controlled the affairs of the Jingit Enterprise.

67.  Since at least July 2010, the **RICO Defendants** have by agreement, on multiple occasions, intentionally and knowingly formed committed, assisted or otherwise

*Complaint*

1  ratified the Schemes of mail and wire fraud intending to injure Plaintiffs' business directly
2  and indirectly using-controlling the **Jingit Enterprise Entities** where they have
3  fraudulently claimed right of ownership to Plaintiffs' **IP** and fraudulently obtained funds
4  for operations of the **Jingit Enterprise Entities** in a manner involving a pattern of
5  racketeering activity.

6      68.   At the direction of **Rooke** and **Rogness,** the rest of the **RICO Defendants**
7  operate the **Jingit Enterprise** for the purpose of concealing the fraud by means of a
8  conspiracy engaging related Schemes which continue to the present, where each
9  **RICO Defendant** has, or knows they will, directly or indirectly commit violations of
10 the law in the continuing infringement and misappropriation of Plaintiffs' **IP.**

11     69.   By means of the conspiracy the **RICO Defendants** illegal acts have
12 caused and are causing injury to the business and Property of the Plaintiffs.

13 **Relatedness and Continuity:**

14     70.   Despite the relationship between the **Rico Person Defendants** and the
15 **Jingit Enterprise** entities, the **RICO Defendants** are distinct from the **Jingit**
16 **Enterprise** where their acts were committed on multiple occasions in violation of
17 USC §§1961-1968; by using the corporate façade and legitimate operations of the
18 **Jingit Enterprise:** 1) with the same *purpose* and results depriving the Plaintiff
19 Corporations of business opportunities and profits by the illegal use-conversion of
20 their **IP** in violation of  18 U.S.C. §§ 1030; 18USC §§ 1956-1957; U.S.C. 18USC
21 §§2314-2315 and 2319;   2) with the same *victims* and in *related* methods of
22 commission where the Schemes to defraud have the *common* types of predicate acts,
23 false and misleading statements through the use of the mails and electronic
24 transmissions involving interstate transmission of statements-documents in violation
25 of 18U.S.C. §§1951 and 18U.S.C.§§1341-1343; and have been committed by the
26 **RICO Defendants** through the **Jingit Enterprise,** by continuous, uninterrupted,
27 criminal activity, which began at the very least 2 years prior to November 2011, and
28 continues to the present.

Complaint

**Continuing Scheme- Pattern-Predicate Acts-Multiple Victims:**

71.     After the theft of Plaintiffs' **IP**, in performance of the acts constituting the **RICO** violations alleged heretafter, the **RICO Defendants** have for at least two years by agreement and conduct formed an **association-in-fact enterprise**, *"Jingit Enterprise";* for the purpose of a series of similar interrelated Schemes designed to provide a vehicle for the continuous and systematic deployment of the Plaintiffs' **IP**.

72.     The Schemes are global in effect and at times constitute separate patterns of racketeering activity involving multiple acts, and from time-to-time all or some of the **RICO Defendants,** where the **RICO Defendants** through a pattern of racketeering activity including mailing and telephonic-electronic communications, as claimed hereafter, have maintained control of the day-to-day affairs and operations of the **Jingit Enterprise Entities** and have illegally used-invested funds obtained through a pattern of racketeering activity both directly and indirectly passing the funds through the **Jingit-Enterprise Entities** so as to maintain control of them creating the disruption-interference in the Plaintiffs' ability to enter the e-commence commercial markets in the continuing cycle of fraud, thus making **eoBuy** and **Indiezone** victims of the **Jingit Enterprise** leaving them without the ability to access their **IP** or raise funds or issue license to their potential licensees.

73.     Plaintiffs and its cliental- potential third-party licensees were defrauded by one or more of these mail and wire dispatches.

74.     This pattern of mails and interstate wire-communications occurred over a period for in excess of two years from the date the **RICO Defendants** Schemes were first put into effect, all in furtherance of the fraud which has caused injury to Plaintiffs business and property.

75.     The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

76.     Thus, Plaintiffs assert claims against all **RICO Defendants** for violating or conspiring to violate 18 U.S. C. §§ 1962 (a),(b) and (c), in whole or in part,  as defined under the specific  sections of the  Statute  which prohibits any person; 1) from the use of,

Complaint

1    or making any income investments, of racketeering funds in the operation of the enterprise
2    engaged in interstate commerce;    2) from acquiring and/or controlling the enterprise
3    through a pattern of racketeering activity engaged in interstate commerce; 3) who is
4    associated with or employed by an enterprise from conducting or participating in the
5    conduct or affairs of the enterprise through a pattern of racketeering activity engaged in
6    interstate commerce.

## PLAINTIFFS' IP CONTENT, AUTHORSHIP,
## AND EXCLUSIVE RIGHT OF OWNERSHIP

9    77.    During its **IP** development period **eoBuy** engaged in-house programming
10    teams employing dozens of developers where programmers spent thousands of man hours
11    in the development of the software to implement and deploy the **eoBuy** system.

12    78.    In July 2002, Credit Suisse invited **eoBuy** to demonstrate its system to high-
13    level banking executives in Zurich, Switzerland.    After demonstration of the **eoBuy**
14    processes Credit Suisse engaged an independent full review of the product processes,
15    based on its unique methods; and on December 30, 2002, the system and the business
16    model were fully endorsed by Credit Suisse as a viable solution for fractional digital e-
17    commerce sales.

18    79.    Thereafter, beta deployment of the system led to an invitation by Hewlett Packard
19    (HP) to develop a strategic partnership for the eoBuy financial processing systems and the
20    introduction of the concept of an on line music store-**Indiezone** as the first merchant portal, go-
21    to-market Proof of Concept for the **eoBuy IP**, financial process- methods.

22    80.    In 2005, **eoBuy** entered into an exclusive negotiation agreement with HP. The
23    exclusivity period was in place from January 31, 2005, and continued until October 30, 2006.
24    Under the terms of the Agreement, HP offered to pay, **eoBuy** a monthly fee of $83,000.00.

25    81.    Two principal studies were carried out during the exclusivity period, a
26    Technical Assessment and an Independent Business Valuation ("Net Present Value Business
27    Analysis") ("Value Analysis") was conducted by an outside and independent company
28    SMARTOrg.

Complaint

82.     HP commissioned the study in order to attribute a valuation to the product and the **IP,** for the purpose a prospective investment by HP into **eoBuy.   The** HP commissioned SMARTOrg valuation put the pre-launch valuation of **eoBuy's** proprietary methods-processing system at $1,300,000,000.00. ($1.3 Billion U.S. Dollars) pre-launch and at $20,000,000,000 ($20 Billion U.S. Dollars) post launch.

83.     The Valuation was based on the potential revenue for generating income based on the 2005 e-commerce statistics and metrics assuming the employment of the unique **eoBuy** processes and methodology in the e-commerce merchant-to-merchant and consumer driven micro digital sales and purchases over the Internet.

84.     In or about January 2005, Connor Fennelly, CEO of **eoBuy** was introduced to Defendant **Rooke.**   At the time **Rooke** was a Director at HP working in the Office of Operations, Strategy and Technology.

85.     From his position as director of strategic business development at HP, **Rooke** was privy to the unique **eoBuy** e-commerce micro-billing and payment processing system and the joint development-deployment strategy of using **Indiezone** as the online store Proof of Concept.

86.     During this period Defendant **Rooke** was acting as liaison in the assessment and valuation efforts on behalf of HP and **eoBuy** in the SmartOrg valuation analysis.

87.     Defendant **Rooke** was aware of the merits of the system as well as its commercial potential and the value of the project based on the SmartOrg Value Analysis presented to HP by virtue of his participation in the project.

88.     After the SmartOrg Value Analysis was delivered in or about October 2006, **eoBuy** and HP entered into negotiations to form a definitive business alliance for the joint development and deployment of the **eoBuy** payment system using the **Indiezone** platform for digital music content as the online distribution platform for as the initial Proof of Concept.

89.     Shortly thereafter HP shifted its internal management and underwent policy changes, wherein negotiations failed to produce an agreement to move forward. **eoBuy** and

Complaint

HP agreed to a release from any further contractual obligations to one another where **eoBuy** was granted the exclusive right-assignment between **eoBuy** and HP for any and all joint **IP** and reports developed during their relationship.

90.     Thereafter **eoBuy** proceeded in the development of the **eoBuy** processes and strategies under a development division/arm of the Company-**Indiezone.**

## FORMATION OF THE PLAN BY DEFENDANTS ROOK AND ROGNESS TO OBTAIN EMPLOYMENT AND OWNERSHIP OF EOBUY

91.     Plaintiffs claim the **IP** theft involves a pattern of organized criminal activity comprising interrelated schemes which began in September 2008, after **Rooke** and **Rogness** executed contracts as work-for-hire employees.

92.     The plan which began with the realization by Defendants **Rooke** and **Rogness** that they would be limited in their opportunity to obtain equal ownership of Plaintiff **Indiezone,** and unable to compete with **eoBuy** and **Indiezone** in real-time micro digital sales and consumer engagement over the Internet.

93.     The core defining character of the Indiezone, Ad-Engine, namely direct and real-time compensation for ad-engagement, consumer ad-targeting and business model were developed  and applied through the **Indiezone's AdEngine** proprietary processes-methods at a time that Rooke and Rogness were work for hire employees.

94.     At all times material hereto, although not formalized in 2008, in addition to his employment with HP, **Rooke** had a prior existing relationship with the Defendant **Rogness** and Defendant **Two Fish LLC.**

95.     At all times material hereto, **Rogness,** while using the entity **Two Fish** a/k/a 7 Ventures LLC,  k/n/a **Jingit Holding LLC.,** had been in the business of selling **Rogness'** own works over the Internet.

96.     At all times material hereto, **Rogness,** like most others involved in music sales over the Internet, was frustrated with the lack of sales brought about by the monetary threshold barriers in Internet transactions for sales.

Complaint

97.    One of the core problems encountered and systemic to Internet transactions was the inability of a merchant to sell content with a perceived value of less than .99 cents.

98.    At all times material hereto, by reason of his relationship with **Rooke**, **Rogness** also became aware of the HP SmartOrg-pre launch valuation of the **eoBuy** proprietary system of $1,300,000,000.00-U.S., Dollars.

99.    At all times material hereto, Defendant **Rooke** entered into an agreement with Defendant **Rogness** having the plan and goal of becoming equal partners in their ownership interest of the **eoBuy IP.** It was agreed among them that each would seek employment with **eoBuy**.

## DEFENDANTS ROOKE AND ROGNESS AGREEMENT
## TO SEEK EMPLOYMENT AND TO OBTAIN OWNERSHIP OF EOBUY

100.    In or about March 2006, **Rooke** left HP as director of strategic business development to seek employment with **eoBuy**.

101.    Prior to leaving HP, fully knowing the potential value of the **eoBuy** payment processing **IP** and the **Indiezone** concept, **Rooke,** contacted Fennelly and sought employment with **eoBuy** claiming his "special" understanding of the **IP** and his ability to move the **IP** to market through his HP and other industry contacts.

102.    **Rooke** told Fennelly he would do so for a deferred salary and an eventual ownership share in **eoBuy.**

103.    Fennelly advised **Rooke** the he would not be able to offer him equity in **eoBuy** initially but would hire him under an executive employment agreement with a partially deferred salary after a trial period of employment with **eoBuy.**

104.    In or about March 2006, **Rooke**, agreed to accept employment with **eoBuy** and was engaged  by **eoBuy** as a work-for-hire employee assuming the position of Chief Strategy Officer and Chief Technical Officer of **eoBuy.**

105.    In or about April-May 2006, at his request, **Rooke** was assigned to work on the Companies' **IP** strategies surrounding the development of the proprietary business model involving **eoBuy's** e-commerce micro processing methodology and its business

– 22 –

strategy development-deployment of an **Indiezone** sale and purchase portal for digital music and other content.

106. In or about August 2006, at all times material hereto, not long after **Rooke** was hired, **Rooke** advised Fennelly that he had a candidate to assist in the joint development and deployment of the Plaintiff Corporations' marketing launch strategy for the **Indiezone**.

107. In or about August 2006, **Rooke** introduced **Rogness** to Fennelly wherein negotiations commenced concerning their future employment.

108. At all times material hereto, **Rogness**, advised Fennelly that he had been an independent musician and was familiar with the sale of music related to the Internet online store concept and understood the barriers of entry to the e-commerce markets for sale and purchases to include fractional sales and purchases below $.99.

109. In or about December 2006, **eoBuy's** Board of Directors' determined that it wanted to develop subsidiary entities to license **eoBuy** technologies in an industry segment or vertical deployment strategy.

110. **EoBuy's** Board determined that the first license would be issued in a joint venture with it in the development of the music portal proof of concept for the sales and purchases in fractional amounts for digital music content with a new entity to be named **Indiezone.**

111. Shareholder interest amounting to 75% ownership of the **Indiezone** founder's stock was to be distributed to the shareholders of **eoBuy** and **eoBuy** itself.

112. Defendants **Rooke** and **Rogness** were advised of the **eoBuy** Board's decision to license the **eoBuy** technology in a subsidiary wherein **Rooke** and **Rogness** seeing an opportunity to gain ownership of the **IP** as it was developing advised Fennelly that they wanted to help develop the **Indiezone** business model but would require employment with a deferred salary and a shareholders stake of 40% of the founder's stock in **Indiezone**.

113. Fennelly advised **Rooke** and **Rogness** of the equity split allotted by **eoBuy's** Board and that he would be unable to meet the founder's stock requested and offered the remaining 20% of the total founder's stock ownership under an employee vesting package

- 23 -

to be divided among **Rooke** and **Rogness** stating to them that any change beyond 20% would dilute the ownership interest of **eoBuy** equity holders, and further advised Defendants that the **Indiezone** offer included vesting was firm; that unless the shareholder interest and other terms-conditions of employment were accepted and agreed to in writing the employment offer with **Indiezone** would be withdrawn.

114.   In or about March 2007, **eoBuy** in preparation for the development of the **Indiezone** music portal, created a new formal corporate structure forming **Indiezone, LLC,** a limited liability company created as a Delaware Corporation.

115.   In or about April 2007, Defendants **Rooke** and **Rogness** requested that Fennelly split the remaining **Indiezone** founder's stock under the vesting program equally among them, wherein if he did so **Rooke** and **Rogness** would each agreed to abide by the terms of any written agreements specifically the terms of their shareholder interest in **Indiezone**; the terms of secrecy in the development and deployment of Plaintiffs' joint **IP-Property;** as well as an assignment of past ideas, and those developed during their employment together with an express acknowledgement of authorship; their agreement not to compete, and to abide by their fiduciary duties of loyalty to Plaintiff Corporations.

116.   In or about May 2007, **Rooke** and **Rogness** executed copies of the Plaintiff Corporations' Employee Invention Assignment and Confidentiality Agreements, their Confirmatory Assignment Agreements and Employee and Stock Purchase Agreements [from time-to-time collectively the "Agreements"], wherein each purchased 5% of the **Indiezone** founder's stock.

117.   The Agreements provided **<u>at-will</u>** employment with absolute and unconditional loyalty of **Rooke** and **Rogness** as employees of **Indiezone** agreeing to the contractual terms of, and for, secrecy-non-disclosure-confidentiality, non-circumvention, non-competition, non-use, assignment and disclosure of all developed and to be developed **IP;** together with their assignment of all of Intellectual Property Rights and/or Moral Rights.

118.   In May 2007, Defendants **Rooke** and **Rogness** agreed, and otherwise confirmed that neither had ever authored, co-authored, created or otherwise had any prior

- 24 -

Complaint

intellectual property rights or moral rights for assignment and affirmed the exclusive **Property** rights of the Plaintiff Corporations as to the authorship/ownership of any **IP** and/or Trade Secrets developed in any of the areas in the e-commerce industry during their employment with **Indiezone,** including micro-payments, payment platforms, content monetization, ad-engines, engagement business models, etc.

119. All of the terms and conditions of the Agreements were in writing, and executed wherein it was agreed by the parties that the terms would survive the termination of the Defendants, **Rooke** and **Rogness.**

120. At all times material hereto, **Rooke** and **Rogness** knew and were aware of the terms and conditions of their employment including the secrecy and non-compete clauses of the Agreements.

121. At all times material hereto, **Rooke** and **Rogness** knew and were aware, that Plaintiffs would rely on the Agreements in providing them with access to their **IP-Property.**

### PLAINTIFFS' INTENT TO MAINTAIN THE SECRECY OF THEIR IP

122. In or about May 2007, **eoBuy** granted a restricted license of its technology to **Indiezone** for the financial transaction component of its business.

123. Said license created restrictions in the use of the unique **eoBuy** processes-methods and technology offered by **Indiezone,** wherein Defendants **Rooke** and **Rogness** knew and were aware of the **eoBuy** licensing and its restrictions and Plaintiffs intent to keep their **IP** secret.

124. Commencing May 2007, Plaintiff Corporations required that all employee communications between the California and Minnesota Offices including communications with third-party customers and investor relations, and any inquiries were to be maintained as e-mail files on a host Server to be preserved for **Indiezone** so as to monitor the Plaintiff Corporations' business relations and communications.

125. The system was instituted to protect the confidential information subject to the laws of California and existing Agreements executed by Defendants **Rooke** and **Rogness** and all other third parties.

Complaint

126.   At all relevant times and commencing in or about May 2007, and continuing until December 29, 2009, the Server was maintained for the purpose of storing e-mail, processing and storing the developing collective **IP** of the Plaintiff Corporations including, but not limited to, the fixed command Codes embedded in the **IP** manuscripts together with the joint methods, techniques and processes of the joint **eoBuy** and **Indiezone** micro billing and processing systems music portal.

127.   At all relevant times the Server was located in the Minnesota offices of **Indiezone** and was used by **Rooke** and **Rogness** for interstate commerce and e-mail communications by the Plaintiff Corporations between its third-party vendors, investors and between Defendants **Rogness** and **Rooke** and the California offices of Plaintiff Corporations.

128.   At all relevant times commencing in or about May 2007, Defendants **Rogness** and **Rooke** were authorized to access the Server for the limited purpose of furthering the development of the Plaintiffs' **IP.**

129.   Commencing May 2007, Plaintiffs maintained both a written copy of their developing **IP** and developing Trade Secrets Manuals as well as a copy of said **IP** and Trade Secret Manuals in electronic format which was password protected stored or otherwise deposited-maintained on the Server.

130.   At all relevant times material hereto, so as to monitor and limit the access and maintain the Server Plaintiff Corporations instituted a policy and/or protocol of safeguarding their **IP** and Trade Secrets by requiring employees to develop unique usernames and passwords when accessing the Server and otherwise storing or retrieving the Companies' **IP** and Trade Secret information.

131.   Commencing May 2007, the employee users of said Server were, on demand, required to provide a written copy of their user name and access password and otherwise agreed to provide a departure debriefing at the end of their employment with the Companies so as to allow new employees to immediately access the Server change usernames and passwords as well as retrieve Plaintiffs' **IP** and/or Trade Secrets.

132.   From time-to-time, by reason of the ongoing development of the deployment strategies for the **IP** and Trade Secrets changes were updated on the Server.

- 26 –

Complaint

133.   Commencing May 2007, the electronic username and password protected **IP** and electronic copies of the Plaintiffs' Trade Secret Manuals were maintained on the Server in Minnesota.

134.   Commencing May 2007, **IP** and Trade Secret information was internally shared and otherwise exchanged among Plaintiff Corporations via a secured e-mail network where unique e-mail addresses- identifiers were created and maintained on the Server.

135.   Commencing May 2007, Defendants **Rooke** and **Rogness** created e-mail addresses using the unique identifiers todd@indiezone.com and joe@Indiezone and relevant alias.

136.   At all times material hereto, defendants were aware of the purpose of the unique usernames and passwords and agreed to disclose said passwords upon demand by **eoBuy** and **Indiezone**.

137.   Said user names and passwords were unique to and known only by **Rooke** and **Rogness** wherein said user names and passwords were used to maintain secrecy-monitor access to the protected materials housed on the host server and used to support the development of the **IP** and Trade Secret applications.

138.   Commencing May 2007, whenever Defendants **Rooke** and **Rogness** wanted to gain access to the Server they entered their unique access usernames and passwords to the security systems for the Server so as to deposit and otherwise access Plaintiffs' **IP** and Trade Secret Manuals in the performance of their daily duties as work for hire employees of **Indiezone**.

139.   Commencing in or about 2007 and continuing until October 2009, Defendants **Rooke** and **Rogness** worked from the **Indiezone** office located in Eden Prairie Minnesota and would from time-to-time visit the **Indiezone** offices located in California.

140.   Over the course of the next 18 months extensive technological and strategic advancement was achieved including the development of **Indiezone Ad-Engine** a unique process not generally known by the public whereby a next generation music distribution

platform (**Indiezone Ad-Engine**) was created which included a platform to enable consumers to engage with advertisers and earn money using the **Ad-Engine** to make purchases online or offline in the real world in micro-fractional sales and purchases.

141. The **Indiezone Ad-Engine** was designed and included a license tailored-made and adapted to implementation of the **eoBuy** payment platform, wherein: 1) beginning on or about July 27, 2007 Cynergy Systems, a US based software development company was presented with a Request for Quote of **Indiezone's Ad-Engine in UML (Unified Markup Language)**; 2) that on August 19, 2007, **Indiezone** submitted its UML documents for software development executing a Statement of Work (SOW) with Cynergy Systems resulting in the creation by Cynergy Systems of a software implementation of the **Indiezone** music platform, the **Indiezone Ad-Engine** as well as a custom **eoBuy** implementation of the payment technology required to underpin the transaction and accounting services of the platform, together with the combined unique trade secret processes of **eoBuy** and **Indiezone IP.**

142. The joint **eoBuy-Indiezone** systems were prepared for launch in beta mode; wherein on February 22, 2008, as directed by Fennelly for the purpose of raising investors' capital for **Indiezone's** entry into the e-commence market and deployment of the joint processes, **Rogness** created a promotional video presenting the unique features and joint processes of the **eoBuy** and **Indiezone** process.

143. On or about June 2, 2009, the Plaintiff Corporations adopted the service mark **Music.Me**, capturing the domain name and otherwise establishing Plaintiff Corporations' exclusive right to ownership and use to the name chosen and assigned to their strategic joint deployment of the **Indiezone Ad-Engine**.

## DEFENDANTS ROOKE AND ROGNESS SCHEME TO EXTORT A LARGER SHARE IN THE OWNERSHIP OF Indie Zone

144. Plaintiffs are informed and believe, based on e-mails and other documentation dispatched by the Defendants **Rooke** and **Rogness** that each knew Plaintiffs' joint deployment of its **IP** was soon to be released and wanted to renegotiate their contracts and equity positions with **Indiezone.**

- 28 –

Complaint

145.   Commencing on or September 8, 2008, **Rooke** and **Rogness** complained to Fennelly that they were dissatisfied with the terms of their employment and shareholder equity packages and demanded additional equity from **Indiezone** for the work they had done on the development of the Companies' **IP** and Trade Secrets.

146.   On or about September 8, 2008, notwithstanding their knowledge that, as Fennelly had advised them during the negotiations for employment, they could not obtain a greater shareholder interest in **Indiezone, Rooke** and **Rogness** presented a new business organizational plan to Fennelly demanding a greater shareholder interest and/or ownership in **Indiezone,** wherein in a predicate act in violation of their contractual agreements designed to extort money/property from Plaintiffs, on or about September 8, 2008, Defendants **Rooke** and **Rogness,** who were in Minnesota dispatched and presented a written communication, via internet transmission, to the Plaintiff Corporations in California demanding a change to the capital structure of the **Indiezone** equity distribution plan which was designed to accomplish their goal.

147.   Defendants **Rooke** and **Rogness,** were demanding the creation of multiple corporate entities that would act as holding companies for the **IP** developed  by reason of their work-for-hire employment with **eoBuy** and/or **Indiezone** and otherwise demanding a change in the overall capital structure of the company with an equal split of the stock as it pertained to **Indiezone** which henceforth would be carved out as a separate business entity or as demanded, they would leave **Indiezone** and start a new  company using what they claimed were their own **"ideas".**

148.   At all times material hereto, Defendants **Rooke** and **Rogness** knew that their claim to leave **Indiezone** and start a new company using their own **"ideas"** was designed to extort a new organizational plan for money-property-equity and that by making such a demand they were in violation of their **at-will** employment Agreements with Plaintiff Corporation, and that their conduct was designed to fraudulently circumvent and dilute the ownership interest of the **eoBuy** shareholders in **Indiezone.**

149.   On or about September 10, 2008, Fennelly, who was in California, called **Rooke** and **Rogness** who were in Minnesota on the telephone advising then that they were

in violation of their fiduciary duties, their written Agreements with **eoBuy** and **Indiezone** investors and refused to make changes in accordance with their demands; wherein Fennelly demanded that **Rooke** and **Rogness** reaffirm their Agreements with **Indiezone** or conduct a technology turnover meeting of the **IP** if they intended to  leave their employment with **Indiezone;** wherein Fennelly advised **Rooke** and **Rogness** that if a violation of their Agreements occurred he would seek injunctive relief as per the terms of their Agreements with **Indiezone** and all other lawful means necessary to safeguard the Companies' **IP.**

150.   At all times material hereto, **Rooke** and **Rogness** were angered by Fennelly's refusal to accept their corporate re-structuring demands and revised equity splits for the Plaintiff's **IP;** wherein shortly after their conversation with Fennelly and over the course of the next several days Defendants **Rooke** and **Rogness** agreed, conspired and planned among themselves to execute the theft- misappropriation-infringement of Plaintiffs' **IP** and began to commit certain overt and predicate acts willfully intending to sabotage and misappropriate Plaintiffs' **IP** and otherwise eliminate the Plaintiff Corporations entry into the digital e-commence Internet-mobile market for  sales and purchase for their own commercial benefit and in the injury to Plaintiffs' business and property.

151.   At all times material hereto, **Rooke** and **Rogness,** in furtherance of their plan, fully knowing they would not honor or abide by the terms of their written Agreements  with **Indiezone** and otherwise honor the licensing agreement **Indiezone** had with **eoBuy,** falsely advised Fennelly, during a return telephone conversation on or about November 11, 2008, from Minnesota to California that the Plaintiff Corporations could rely on their promises and falsely stated to Fennelly during said telephone conversation that they would each abide by the terms of their written Agreements.

152.   At all times material hereto, unbeknownst to Fennelly, although Defendants **Rooke** and **Rogness** had agreed to abide by the terms of their written Agreements specifically the terms of their shareholder ownership interest in **Indiezone,** the terms of secrecy in the development and deployment of Plaintiffs' **Property** as well as assignment of **ideas** and acknowledgement of authorship, each had agreed to move forward with the theft

Complaint

of the Plaintiffs' **IP** and to sabotage the **Indiezone** Servers so as to delay or prevent the launch of the **eoBuy-Indiezone** join technologies so that they could misappropriate the **IP,** be first to the market and claim authorship and ownership of said **IP.**

153.   Thereafter, in contravention of the law, their written employment and secrecy Agreements, as well as their fiduciary obligations and oral commitments reaffirming their loyalty, defendants **Rooke** and **Rogness** in several overt and predicate acts intending to execute their plan by running the affairs of **eoBuy** and **Indiezone,** from **Indiezone's** Minnesota offices began to strategically and deliberately interfere with **Indiezone's** deployment-development timeline by sending e-mails to California intentionally misinforming Fennelly of the development progress-stages of the beta testing and deployment schedules as well as by maintaining secret communications with or otherwise withholding communications concerning inquires of potential investors and outside vendors seeking licenses from **eoBuy** and **Indiezone.**

154.   Over the course of the next 12 months, in the performance of the scheme to defraud-infringe-control, convert and otherwise misappropriate Plaintiffs' **IP,** Defendants **Rooke and Rogness** committed multiple predicate acts in violation of 18 U.S.C. 1961-1968, et seq.

**INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS;
COPYRIGHT INFRINGEMENT; MISAPPROPRIATION NDA**
**Rooke and Rogness- Interference with Prospective Business-Wire-Mail Fraud:**

155.   That on July 7, 2009, Joseph R. Cellura, the CEO of Malibu Entertainment Group (MEG) located in Las Gatos, California made a telephonic inquiry to **Rooke at the Indiezone** Minnesota office asking to speak with Fennelly concerning his prior request of MEG's desire to obtain a license for use of certain **eoBuy-Indiezone** technology on behalf of MEG, and other proposed strategic partners of MEG including, My ESPN, the United States Army, Malibu Entertainment Group, Disney Enterprises, Avinci, China Wireless, Consortium Holding, Inc., Tarsin Inc., Walmart, Target, General Electric and others.

Complaint

156. In response thereto, in the performance of the theft of Plaintiffs' **IP**, in August 2009, over the telephone **Rooke** and **Rogness** from the **Indiezone** offices in Minnesota, fully knowing and intending on fulfilling their plans to illegally seize Plaintiffs' **IP**, and use it for their own economic advantage, in a follow-up telephone call directed to the inquiry made by Cellura, did contact Cellura over the telephone, in California, while intending to deceive him and so as to cause financial harm to Plaintiffs; intending to further the planned theft and so as to conceal the true ownership of Plaintiffs' **IP** did falsely advise Cellura that Fennelly was out of the country; did falsely advise Cellura that Fennelly was pursuing other ventures and that he was no longer in control of **eoBuy** or of **Indiezone;** did falsely advise Cellura that a new company **Two Fish**, as controlled by **Rooke** and **Rogness,** had obtained all of the rights and **IP**-work product from **eoBuy** and **Indiezone**.

157. At all times material hereto, **Rooke** and **Rogness** knew the statements made to Cellura were false; were made intending to make Cellura rely on them, and were made to further their plans to cause economic harm to Plaintiffs in the licensing of the **IP** to Cellura.

158. At all times material hereto, in performance of the **IP** theft, during the period of July 2009 through October 2009, including but not limited to August 10, 2009, August 11, 2009, August 19, 2009, September 4, 2009 and **Rooke** and **Rogness** from the **Indiezone** offices in Minnesota and to Cellura at the MEG offices in California, engaged in multiple electronic communication on multiple occasions wherein said communication were of a false and misleading nature in the continued misrepresentation to Cellura/MEG that **Two-Fish** was the lawful owner or authorized licensor of the **eoBuy-Indiezone IP**-processes being sought by MEG.

**Copyright Infringement Plaintiffs' NDA-Wire Fraud:**

159. At all times material hereto, Plaintiff Corporations in preparation for demonstrating their **IP** had prepared and copyrighted a Non-Disclosure Agreement (NDA) which was unique to the Plaintiff Corporations in their agreement with interested third

1    parties not to disclose certain aspects of their **IP** and trade secrets and which was required to

2    be executed by third-parties, including potential investors and vendors or licensees.

3        160.   On or about October 14, 2009, in performance of the **IP** theft Defendants

4    **Rooke** and **Rogness**, in an act intended to cause economic harm to Plaintiffs, fully

5    knowing that they were violating their Agreements with Plaintiffs did in violation of

6    those Agreements while falsely claiming  to others their ownership-right of use in

7    Plaintiffs' copyrights and trade secrets prepared and altered an **Indiezone** NDA by

8    removing the name **Indiezone** and its logo-service mark and did insert the name "**Two-**

9    **Fish Consulting**" as the only change to the NDA where the entire content was delivered

10   to Cellura, Defendants DOE, ROE and others was otherwise unchanged.

11       161.   At all times material hereto, Defendants **Rooke** and **Rogness,** in performance

12   of the planned theft and to cause economic harm to Plaintiffs, in violation of the law, and

13   the terms of their Agreements with Plaintiffs, failed to disclose to Plaintiffs the intended use

14   of the altered NDA and inquiry made by Cellura on behalf of MEG and its strategic partners

15   including, My ESPN, the United States Army, Malibu Entertainment Group, Disney

16   Enterprises, Avinci, China Wireless, Consortium Holding, Tarsin Inc., Walmart and others.

17       162.   At all times material hereto, Defendants **Rooke** and **Rogness,** in performance

18   of the planned theft of Plaintiffs' **IP,** and so as to cause economic harm to Plaintiffs, in

19   violation of the law, and the terms of their Agreements with Plaintiffs, did, upon

20   information and belief, on multiple occasions deliver copies of the forgoing misappropriated

21   NDA to Cellura, Defendants DOE, ROE and others.

22       163.   In particular, on December 3, 2009, in performance of the **IP** theft and

23   agreement to cause economic harm to Plaintiff Corporations, Defendant **Rogness** with the

24   knowledge-permission of Defendant **Rooke,** did via interstate electronic communications

25   delivery form Edina Minnesota commit copyright infringement of Plaintiffs' **Property** by

26   providing an altered version of Plaintiff Corporations' NDA, falsely inserting the name

27   **Two Fish Consulting**, without other changes to  the content of said document, attached to

28   an e-mail sent to Cellura, in California together with the following communication   a

– 33 –

Complaint

statement intended to harm Plaintiffs' business-**Property** by making Cellura falsely believe that the **Two Fish** was the owner or had obtained a license from Plaintiff Corporations for use of its' **IP** in the service of MEG's business needs.

164.   At all times material hereto, simultaneous with the dispatch of the misappropriated-infringed NDA on December 3, 2009, so as to cause Cellura to do business with Two-Fish via the Internet electronic sent a message contained the following written communication and attachment:

> **From:** Joe Rogness <joe@two----e>
> **Subject: NDA**
> **Date:** December 3, 2009 8:29:20 AM PST
> **To:** Joe Cellura <divotjrc@---t.net>
> Joe,  here is a mutual NDA for our conversation today....Joe
>
> Joe Rogness
> Two Fish
> C: 612-963-4491
> E: joe@two----me

165.   That on or about December 3, 2009, Cellura in reliance on the NDA, and e-mail, from California, via the Internet returned a fully executed NDA to **Rooke** and **Rogness** who were in Minnesota, as provided to him by them.

166.   Thereafter, all times material hereto, after receiving the NDA on or about December 3, 2009, **Rooke** who was in Minnesota, in performance of the scheme and so as to cause Plaintiff's economic harm, and induce Cellura to do business with Cellura and MEG while over the telephone with Cellura who was in California in response to an inquiry by Cellura about using **eoBuy** and **Indiezone IP** did falsely reaffirm and advise Cellura that **eoBuy** and **Indiezone** had licensed its **IP** to **Two Fish** for all purposes and that **Two Fish** would deliver the **eoBuy** micro billing system and **Indiezone Ad-Engine** platform to MEG and its potential clients.

167.   On December 3, 2009, and continuing until at least August 2010, **Rooke** and **Rogness** who were in Minnesota, in performance of the scheme, and so as to cause Plaintiff's economic harm, sent Cellura who was in California, via Internet delivery,

copies of a power point presentation containing the same or substantially similar unique processes, methods and compilation of processes for use and application with My ESPN, the United States Army, Malibu Entertainment Group, Disney Enterprises, Avinci, China Wireless, Consortium Holding Inc., Target, Tarsin Inc., Walmart; together with deal points for the use of the **eoBuy** micro-billing and **Indiezone Ad-Engine** including multiple presentations electronically delivered between Minnesota and California.

168.   The electronic dispatch across state lines of the copyrighted Plaintiffs, NDA and **IP** power point were predicate acts of criminal copyright infringement known to be a false uttering-delivered when made so as to cause Cellura to rely on and engage in commerce with **Rooke** and **Rogness** and was designed to cause economic harm to the Plaintiff Corporations by operation of the fraud, amounting to a pattern of racketeering activities wherein Cellura relied on said false statements to the detriment of MEG causing injury to Plaintiff Corporations.

**Fraudulent Release From Non-Competition Mail-Wire Fraud:**

169.   At all times prior to December 3, 2009, on or about October 14, 2009, in the performance of the illegal activity, and while intending to proceed and illegally obtain control of the Plaintiffs' **IP** so as to deliver it to MEG, My ESPN, the United States Army, Malibu Entertainment Group, Disney Enterprises, Avinci, China Wireless, Consortium Holding, General Electric, Target, Tarsin Inc., Walmart and others, Defendants **Rooke** and **Rogness**, on or about October 14, 2009, via electronic transmission from Minnesota to Fennelly in California did willfully, intentionally and falsely advise Fennelly that they were requesting **Indiezone** to *"temporarily release"* them from their Non-Competition Agreement so that they could assume a temporary consulting assignment within the music industry without being in breach of the Agreements.

170.   That at all times material hereto, Defendants **Rooke** and **Rogness** fully knowing that they had falsely advised Fennelly of their request that **Indiezone** *temporarily release* them from their Non-Compete Agreement so that they could assume

- 35 -

Complaint

a temporary consulting engagement, did falsely promise to maintain the secrecy of the Plaintiffs' **IP**, neither disclosing or using it in any manner; promising to return and otherwise maintain the Plaintiffs' operational systems including the company Servers during their absence.

171.   That on or about October 23, 2009, **Indiezone** in reliance on the foregoing representations aforesaid, and unknown to them at the time of the illegal activities *temporarily released* **Rooke and Rogness** from the Non-Competition terms of their Agreements, however, expressly demanding that they not use Plaintiffs' **IP** in any manner in the future.

172.   That unbeknownst to Fennelly, the statements were made by **Rooke** and **Rogness** were untrue and made in performance of the planned **IP** theft in preparation for delivery to MEG and its strategic partners including, My ESPN, the United States Army, Malibu Entertainment Group, Disney Enterprises, Avinci, China Wireless, Consortium Holding Inc., Target, Tarsin Inc., Walmart; made so as to induce Plaintiffs such that they would rely on the statements that **Rooke** and **Rogness** were only going to be *temporarily* engaged in outside consulting; and otherwise intended to eliminate the required handover of technology under the control of **Rooke** in his CTO position, including delivery of passwords and guidelines needed for accessing and maintaining the technical **IP** infrastructure of the Plaintiff Corporations.

173.   The   statements   were   willful   deliberate   or   otherwise   intentional misrepresentations, and/or false representations, designed to conceal the true nature of their departure from **Indiezone** and intent to defraud, or otherwise induce reliance by Plaintiff Corporations; wherein Plaintiffs were justifiable in their reliance; and by reason of the wrongful conduct and statements made; damages have been caused to Plaintiffs where monetary relief alone will not compensate Plaintiffs in their losses.

174.   That at all times material hereto, Plaintiffs have refused to provide a release from the terms of the IP Agreements and the terms of secrecy, non-disclosure and use and entered into with **Rooke** and **Rogness,** where Defendants have and continue to unlawfully

Complaint

misappropriate, infringe or otherwise use said **IP** without permission, consent or other lawful right.

### DEFENDANTS' INTERSTATE THEFT OF PHYSICAL PROPERTY; DEFENDANTS' COMPUTER SABOTAGE; MAIL FRAUD

**Interstate Theft of Plaintiffs' Property in excess of $5,000.00:**

175.   At all times material hereto, Plaintiffs maintained a single restricted written copy of the Disaster Recovery Plan ("DRP") for Plaintiff Source Code and any other information or resources related to maintain the integrity of the technological systems and files as developed by **Rooke** as CTO and the **eoBuy** and **Indiezone** staffs.

176.   At all times material hereto, DRG was maintained so as to implement and protect against loss of the Source Code and other **IP** files which took in excess of 10 years to develop with a development cost in excess of $20,000,000.00.

177.   At all times material hereto, Defendants **Rooke** and **Rogness** knew and were aware that in the event the system would malfuction that without a DRP and without the hand over, for the reason of the personal  processes known to Rooke and incorporated in the system, the system could not be restored in the event of a systems failure.

178.   At all times material hereto Defendants **Rooke** and **Rogness** knew and were are that they could not beat Plaintiffs with the speed to market they needed to be first unless they could disrupt-delay Plaintiffs' deployment of its **IP**; K new that they would be unable to claim first right of authorship; and knew the cloned version would  openly apparent to the public and the USPTO.

179.   That in preparation of the **IP** theft, so as to obtain an economic advantage and delay-disrupt Plaintiff deployment of its **IP**, in or about July 2009, Defendants **Rooke** and **Rogness** while visiting the California offices of **eoBuy-Indiezone** did, without the permission, consent or authority of Plaintiff Corporations, illegally obtain and remove from the California facilities of Plaintiffs' only version of the DRP other **IP** files as developed by Plaintiffs employees in the creation of the joint deployment of the **eoBuy-Indiezone Ad-Engine** wherein Plaintiff are informed and believe,  Defendants **Rooke** and **Rogness**

Complaint

transported said Property across state lines from California to a location in Edina Minnesota so as to facilitate their illegal use-misappropriation-infringement  of Plaintiffs' **IP** and otherwise interfere with the ability of Plaintiff to be first to deploy its **IP** into the stream of commerce.

180.   Unbeknownst to Plaintiff Corporations, in performance of their scheme the promises of **Rooke** and **Rogness** previously made and concerning their representations that they would abide by their Agreements and the reaffirmation of those promises in September of 2008, the statements made in October 2009, that they were only going to *temporarily* engage in a consulting engagement; their promises to maintain the secrecy and refrain from use of the Plaintiffs' **IP**; their promise to maintain the **Indiezone** Servers and return to their employment with **Indiezone,** each of these statements were knowingly false when made by them to induce Plaintiffs to release them from their Non-Competition Agreement; made so as to conceal the truth of the actual reason for their departure and otherwise eliminate the need for an early turnover of the Server and a comprehensive technical hand-off of the CTO office; made so as to delay the handover of the technical infrastructure of the Plaintiff Corporations joint deployment strategies; and made so as to maintain an economic advantage over the Plaintiff Corporations; and so as to conceal their sabotage and the true provenance of the **IP**.

181.   In response thereto, Fennelly reminded **Rooke** and **Rogness** of their promises not to infringe-use Plaintiffs' **IP**, and on December 17, 2009, **Indiezone** requested a turnover of the Server and transfer, access codes, e-mails and all related data for the continued operation and deployment of the Plaintiffs' **IP** as well as a technology hand-off from **Rooke** regarding the **Indiezone** CTO office.

182.   At all material times hereto, instead of honoring their Agreements on or about December 17, 2009, in violation of their Agreements with Plaintiff Corporations so as to conceal and commit the **IP** theft-infringement-misappropriation of Plaintiffs' **Property**, **Rooke** and **Rogness** in the performance of their plan agreed between themselves to sabotage the **Indiezone** Server by intentionally misdirecting, or otherwise deliberately

Complaint

changing internal passwords, disabling access protocols; modifying the system in manner which could not be detected but would disable the systems future processing capability; by failing to maintain or provide guidelines to maintain access and security certificates; and by refusing to conduct a technical hand-off under established industry protocols.

183. At all material times hereto, on or about December 29, 2009, Defendants **Rooke** and **Rogness,** in furtherance of their planned theft of Plaintiffs' **IP**, agreed to commit and did commit computer sabotage-espionage-theft by means of both electronic and physical computer tampering, in violation of 18 USC §§1029 and 1030, where by intending to sabotage the Server and cause economic harm, Defendants **Rooke** and **Rogness** illegally accessed the Server intentionally misdirecting, or otherwise deliberately changing internal passwords and removing-eliminating- erasing in excess of 20,000 electronic communications—emails which were the **Property** of Plaintiffs; and did copy said **Property** e-mails in both electronic and physical form thereof wherein by doing so each exceeding their authorized access to the Server.

184. Thereafter, in performance of the scheme, on or about December 29, 2009, after engaging in the foregoing illegal conduct, said Defendants, **Rooke** and **Rogness** did from the State of Minnesota dispatch said Server for delivery to Plaintiff by placing or causing the same to be placed into an authorized mail carriers for interstate delivery into the State of California.

185. At all relevant times, by reason of the foregoing, **Rooke** and **Rogness** intentionally eliminated Plaintiffs' ability to maintain the **Indiezone IP** as stored in the Server system and unique deployment environment and thereby effectively prevented **Indiezone** from raising investment funds and communicating with its vendors and entering the e-commerce markets.

186. At all times material hereto, said acts were willful and intended to prevent Plaintiffs' market deployment of the discrete jointly developed techniques of **eoBuy** and **Indiezone** methodologies and processes so as to defraud Plaintiffs and so as to cause economic harm to Plaintiff Corporations and others.

– 39 –

Complaint

## ROOKE, ROGNESS, HAZEL, ASHKAR, OLIVER, AND US BANK'S
## FORMATION OF AN ASSOCIATION-IN-FACT RICO ENTERPRISE

187.   After ensuring the elimination of Plaintiffs' ability to access its **IP** deployment environment, in the performance of the illegal scheme to be the first to market with Plaintiffs' stolen **IP** while falsely claiming it as their own, Defendants **Rooke** and **Rogness,** who form the hub of the criminal activity, after advancing the **IP** theft and intended injury to Plaintiffs' business from inside Plaintiff Corporations, then conspired to obtain an agreement with Defendants **Hazel, Ashkar** and **Oliver** so as to fund the use of the misappropriated **IP.**

188.   Commencing in or about June 2009, Defendants **Rooke** and **Rogness** told **Hazel,** and **Ashkar** and **Oliver** of their plans to take and claim Plaintiffs' **IP** as their own; their plans to prevent Plaintiffs from establishing a proper claim and title to its **IP**; their plans to keep Plaintiffs out of the e-commerce market; their plans to eliminate the written code and trade secret manuals; their plan to sabotage Plaintiffs' server so as to prevent-eliminate Plaintiffs ability to enter interstate markets ahead of  them; and  their plans for financing, raising  funds in support of their illegal activities by falsely claiming Plaintiffs' **IP** as their own, **Rooke** and **Rogness** requested the of assistance-aid of **Hazel, Ashkar** and **Oliver** in obtaining the funding and  starting a series of corporations to present Plaintiffs' **IP** as their own so as to engage in commercial profit for themselves.

189.   Notwithstanding their knowledge of the illegal conduct required of them, **Hazel, Ashkar** and **Oliver** agreed to aid/assist **Rooke** and **Rogness** in the misappropriation-infringement theft of Plaintiffs' **Property** by soliciting investors world-wide, via the Internet and US mails.

190.  In performance and illegal use of the **IP** transactions, at a time prior to November 2011,  Defendants **Rooke** and **Rogness** entered into an negotiations for an agreement with **US Bank** for the purpose of processing the **AdEngine** financial exchange-cash rewards between merchant-advertisers and consumers, wherein **US Bank,** after the fact knew, and became aware of Plaintiffs' claims for the reason that they had been informed by Plaintiffs that its **IP** was being infringed and despite said warnings **US Bank**  continues in

Complaint

the partnership with the Defendants **Rooke**, **Rogness** and **Jingit LLC** causing injury to Plaintiffs business and **Property.**

### THE RICO DEFENDANTS' ILLEGAL FUNDING
### AND REINVESTMENT INTO THE JINGIT ENTERPRISE

191.   Having illegally secured the Plaintiffs' **Property** through the agreed predicate acts accomplished, via a pattern of racketeering activity by means of computer theft and sabotage; mail fraud, wire fraud and other illegal racketeering activities, the ***RICO Defendants*** commencing in or about January 2010, raised and are continuing to raise capital to fund the illegal activities through placement of private debt and equity instruments using **Jingit Holdings** f/k/a 7 Ventures.

192.   The placement of theses private debt instruments were made possible through written solicitations delivered by the ***RICO Defendants*** for payment into **Jingit Holdings** which were accomplished both intra-interstate domestic and foreign investment memorandums sent over the Internet and through the US mails by or caused to be so dispatched by the ***RICO Defendants.***

193.   The scheme involves the individual and collective acts of Defendants **Rooke**, **Rogness**, **Hazel**, **Ashkar** and **Oliver** in seeking out investors and in knowingly making false statements to investors and in the investment memorandums concerning non-existent ownership of copyright, trade-secrets, patent and trademark rights as alleged to be owned by **Jingit LLC.**, and licensed to the other ***Jingit Entities,*** wherein the **IP** is actually original to, and is the exclusive **Property** of Plaintiff Corporations.

194.   The funding memorandum falsely asserts an exclusive right of ownership to Plaintiffs' **Property**, whereby the Defendants via **Jingit Holding** falsely claim to be the inventors with right of authorship of the Plaintiffs' **Property** escalating to improperly asserting the pending registration of the copyrights, trademarks and patents commencing 2010 and continuing to date; wherein in addition the Defendants **Rooke**, **Rogness**, **Hazel**, **Ashkar** and **Oliver** falsely assert that **Jingit Holding**'s has been granted USPTO provisional approvals of Plaintiffs' **Property** falsely claiming it as Patentable works.

195.   That at all times herein after mentioned, on February 18, 2010, unbeknownst to investors and under the cover of **7 Ventures**, Defendants **Rooke**, **Rogness** and **Ashkar** as officers

Complaint

of **7 Ventures,** in furtherance of the ***Jingit Enterprise,*** and so as to cause Plaintiffs economic harm, did from the State of Minnesota, electronically file a Regulation D Offering statement with the United States Securities and Exchange Commission wherein the sum of $115,000.00 was raised by falsely claiming in the placement memorandum ownership of Plaintiffs' **IP.**

196.    That at all times herein after mentioned, on April 8, 2010, unbeknownst to investors under the cover of **Jingit Holding f/k/a 7 Ventures,** Defendants **Rooke, Rogness** and **Ashkar** as officers of **Jingit Holding,** in furtherance of the ***Jingit Enterprise,*** and so as to cause Plaintiffs economic harm, did from the State of Minnesota, electronically file a Regulation D Offering statement with the United States Securities and Exchange Commission wherein the sum of $385,000.00 was raised by falsely claiming in the placement memorandum ownership of Plaintiffs **IP.**

197.    That at all time herein after mentioned, on January 6, 2011, unbeknownst to investors under the cover of **Jingit Holding** Defendants **Rooke, Rogness** and **Ashkar** as officers of **Jingit Holding,** in furtherance of the ***Jingit Enterprise,*** and so as to cause Plaintiffs economic harm, did from the State of Minnesota, electronically file a Regulation D filing statement with the United States Securities and Exchange Commission wherein the sum of $280,000.00 was raised by falsely claiming in the placement memorandum ownership of Plaintiffs' **IP.**

198.    That at all times herein after mentioned, on February 10, 2011, unbeknownst to investors under the cover of **Jingit Holding** Defendants **Rooke, Rogness, Hazel,** and **Ashkar** as officers of **Jingit Holding,** in furtherance of the ***Jingit Enterprise,*** and so as to cause Plaintiffs economic harm, did from the State of Minnesota, electronically file a Regulation D Offering statement with the United States Securities and Exchange Commission wherein the sum of $385,000.00 was raised by falsely claiming ownership of Plaintiffs' **IP.**

199.    That at all time herein after mentioned, on November 19, 2012 unbeknownst to investors under the cover of **Jingit Holding** Defendants **Rooke, Rogness, Ashkar** and **Oliver** as officers of **Jingit Holding,** in furtherance of the ***Jingit Enterprise,*** and so as to cause Plaintiffs

Complaint

economic harm, did from the State of Minnesota, electronically filed a Regulation D Offering statement with the United States Securities and Exchange Commission wherein the sum of $6,999,000.0 was raised by falsely claiming ownership of Plaintiffs' **IP**.

200. That on or about the dates alleged above Defendants **Rooke**, **Rogness**, **Ashkar**, **Hazel** and **Oliver** conducted false and misleading financial transactions, wherein the financial transactions and the proceeds in the amounts and on the dates set forth above were accomplished via interstate electronic transactions-communications, while falsely claiming in those transactions ownership of Plaintiffs' **IP**, where by and having used unlawful means and activities in the theft of Plaintiffs' **IP** each of the *RICO Defendants* knew the funding-transaction involved the proceeds of the **IP** theft and other unlawful activity; where each *RICO Defendant* intended to promote the carrying on of the **IP** theft and other unlawful activity; where each *RICO Defendant* conducted the illegal financial transaction from the State of Minnesota with knowledge that the transactions were designed, in whole or in part, to conceal or disguise the nature, location, source, and/or ownership arising from the theft of Plaintiffs' **IP**; where each Defendant conducted the financial transaction with the knowledge that the transaction was designed in whole or in part to affect interstate commerce in the commission of commercial fraud under both state and federal law and further designed to injure the Plaintiffs business-property.

201. Thus far, by falsely claiming ownership of Plaintiffs' **IP**, Defendants **Rooke**, **Rogness**, **Hazel**, **Ashka**r and **Oliver** by way of **Jingit Holdings**, have raised in excess of $9,000,000.00. The funds raised by the *RICO Defendants*, are being used to further the illegal operations and for the *Jingit Enterprise* in the continued systematic and illegal deployment of Plaintiffs' **IP**.

202. The continuing criminal cycle of obtaining funding while falsely claiming ownership of Plaintiffs' **IP** is used to support the ongoing illegal activities of both the *Jingit Enterprise* and has cause injury to the Plaintiffs in allowing Defendants to maintain a continuing financial advantage over the Plaintiffs' deployment and Plaintiffs strategic entry into the market.

- 43 -

Complaint

203.   To further the illegal activities of **RICO Defendants**, **Rooke and Rogness** have filed a false and misleading patent application with the USPTO using investors' funds to run the website **Jingit.com** as owned by **Jingit LLC**.

## ROOKE AND ROGNESS PLAN TO CLAIM THE IP AS FIRST AUTHORSHIP; FRAUD IN OBTAINING COPYRIGHT APPROVALS, PATENTS, AND TRADEMARK REGISTRATIONS

204.   That at all times material hereto, without a licensing agreement to show investors **Rooke** and **Rogness** knew and were aware that they would have to claim that they were the original authors of Plaintiffs' **IP** wherein the investment community in Silicon Valley and elsewhere were, as was Cellura, skeptical about the provenance and original authorship claims of **Rooke** and **Rogness** as to Plaintiffs' **IP** without proof of ownership.

205.   At all times material hereto, **RICO Defendants** were aware that in order to obtain a copyright, patent or trademark an applicant is required to attest to the truth and accuracy of the statements made in obtaining a registration, and further swearing in sum and substance that the applicant is the owner of the copyright, patent, trade name, trademark or service mark sought to be registered and no other person, firm, association, union or corporation has the right to such use in such class, either in the identical form described, or in any such resemblance.

206.   At all times material hereto, **RICO Defendants** were aware that intentional material misstatements are incompatible with the administration of intellectual property rights, and are grounds for invalidation and unenforceability of any application.

207.   That at all times material hereto **Rooke** and **Rogness** knew that they could not provide a proper provenance and claims of original authorship or license to investors concerning their claim to the Plaintiffs **IP**, and knew that unless they could provide registrations with the USPTO as a patent they could not raise capital, wherein each knew that they would have to disguise or otherwise conceal for the USPTO the Plaintiffs' **IP** claiming it as their own, or risk the fact that any application would be rejected by the

- 44 -

USPTO, each agreed to filing of false statements, patents and otherwise invalid patents so as to obtain USPTO approval of their application as proof of ownership for investors.

208. At all times material hereto, **RICO Defendants** were aware of the policy adopted by **eoBuy** and **Indiezone** as recommended by their attorneys that in house copyright would be adopted until such time that Plaintiff Corporations were ready to jointly deploy their **IP**.

209. At all times material hereto, **RICO Defendants** were aware that Federal laws and regulations govern copyright approval, patents and trademark registrations which impose duties of candor and reasonable inquiry and the duty to disclose the truth upon all applicants in their filings.

210. At all times material hereto, relying on the internal policy established by Plaintiff Corporations concerning internal copyrighting, **RICO Defendants Rooke** and **Rogness** did willfully file false statements in applications to the USCO and USPTO Offices for copyrights, patents and trademark registrations in violation of 18 USC 1001, wherein both falsely acknowledged in sworn declarations the original authorship or Plaintiffs' **IP**.

211. At all times material hereto, **RICO Defendants** were aware that federal laws provide for the invalidation and unenforceability of copyrights, patents, and trademarks which are obtained through fraud and other inequitable conduct.

212. At all times material hereto, **RICO Defendants** were aware there are serious consequences of fraud in obtaining copyright approval, patent and trademark registrations; each are set out in the law and regulations of the USCO and USPTO and US Codes and that despite said knowledge **RICO Defendants** did willfully submit false statement to the USCO and USPTO falsely claiming ownership and otherwise disguising the Plaintiffs **IP** presenting it as their own.

213. Each discrete step in the filing scheme is narrowly tailored to isolate the truth concerning the true original authorship-ownership of the Plaintiff Corporations **IP** falsely portraying that the copyright, patent or trademark applications as valid, and that any given belief as to the pending application is reasonable.

- 45 -

Complaint

214.   Each of the copyrights, patents and trademark registrations were submitted improvidently to the USPTO by use of the Corporate Enterprise in furtherance of the Association Enterprise because of **RICO Defendants** fraud in disclosure of the Plaintiff Corporations ownership claims; fraud in the claimed use and processes of the IP; that whatever unregistered rights remain asserted by **RICO Defendants** were asserted fraudulently, involving material misstatements and omissions to the public and the government and are unlawful because they violate the duties of candor and of reasonable inquiry that are imposed on every applicant to the USCO and USPTO.

215.   In furtherance of their overt conduct and their planned theft of Plaintiffs' **IP**, **RICO Defendants Rooke** and **Rogness** intentionally and willfully omitted from the Jingit application(s) with the US government the true details of the original authorship-ownership of the copyrights, patents and trademarks and processes for the purpose of furthering the illegal acts of the Enterprise(s).

216.   Plaintiffs are currently seeking invalidation by filing objections with the USPTO of the **RICO Defendants** false and misleading claims of ownership and the attempt to mislead or disguise the **IP** as something other than what it is claimed to be.

217.   Plaintiffs are the filed owners of their **IP** copyright-copyrightable **Property** as lodged with US Copyright Office as pending and which exists beyond and in addition to their in house claims.

## THE CONTINUING PATTERN OF RACKETEERING ACTIVITIES; COPYRIGHT, TRADEMARK, AND TRADE DRESS INFRINGEMENT

218.   On or about January 1, 2010, by reason of the NDA provided to CEO Cellura in December 3, 2009, **Rooke** and **Rogness**, who were in Minnesota in furtherance of the Enterprises goal to exploit the belief by Cellura, who was in California, via the telephone stated that **Two Fish** would provide Media and its vendors a license and master services agreement sanctioned and otherwise granted to **Two Fish** from **eoBuy** and **Indiezone** and to include the **eoBuy-Indiezone Ad-Engine IP** services for micro service billing.

219.   On January 1,4,5,7,11,12, 2010, February 1,2,2,10, 12, 2010 **Rogness** who was in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs

economic harm, sent Cellura, who was in California via electronic delivery, the **Two Fish** Media PowerPoint presentation containing the ENTIRE content titled MEGINTRODUCTIONV1.

220.   That in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm, on or about January 5, 2010, **Rooke** and **Rogness** adopt the name **7 Ventures** using it inter-changeably and from time-to-time replacing the **Two Fish** name as the vehicle for operating the Enterprise.

221.   That in furtherance of the Enterprise, on or about January 7, 2010, **Ashkar** who was in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm, sent Cellura who was in California via electronic delivery, an approval of the Malibu Entertainment Group slide deck and presentation.

222.   That in furtherance of the Enterprise, on each of the foregoing dates **Rogness** who was in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm in response to Cellura, who was in California in response to his inquiry via an electronic delivery to Cellura, wherein **Rogness** offered a slide deck and other to written aids, via the internet to include use of **eoBuy-Indiezone IP** services for micro service billing for a project involving the US Army as administered by US Army Colonel Derik Crotts.

223.   That in furtherance of the Enterprise, on January 7, 2010, **Rogness** who was in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm, sent Cellura who was in California via electronic delivery, the **Two Fish** the master services distribution Agreement wherein **Rogness** in coordination with **Ashkar** who was in Minnesota advised Cellura that they would roll the **Indiezone IP** into MEG and that they could pass the processing transaction on to aVinci which would allow MEG to collect royalties from aVinci and split on the **eoBuy** micro transaction income with **Two Fish.**

224.   On January 7, 2010, **Rooke** and **Rogness** who was in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm, sent Cellura who was in California, via electronic delivery, their demand with the deal points for the use of

the **eoBuy** micro billing and **Indiezone Ad-Engine** in a corporation called China Wireless.

225.   At all times material hereto Pat Shuster was an agent, servant and/or employees of MEG acting at the direction of and with the permission, consent and authority of Cellura wherein he communicated with either **Rooke** and/or **Rogness** over the telephone or via e-mails.

226.   Commencing on or about January 10, 2010, during a telephone conversation **Rogness** who was in Minnesota advised Cellura who was in California, and Pat Shuster, who was upon information and belief was in Georgia, in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm, that the **IP** technology and platform would support both federated and non-federated micro transactions.

227.   On or about January 19, 2012, Cellura who was in California requested that **Rogness** who was in Minnesota send a letter to US Army Colonel Derik Crotts detailing the **IP**.

228.   Commencing on or about January 19, 2010, in furtherance of the Enterprise **Rogness** who was in Minnesota dispatched Pat Shuster, who was upon information and belief was in Georgia  via the internet so as to cause Plaintiffs economic harm, an agreement exchanged, for the use of the Plaintiffs' **IP** technology and platform to be provided for use by aVinci.

229.   On February 17, 2010, **Rooke** and **Rogness** who were in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm, sent Cellura who was in California, via electronic delivery, a contract so as to provide use of Plaintiffs' **IP** for a California based mobile phone platform company called Tarsin Inc.

230.   On February 25, 2010, **Rogness** who was in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm, sent to Cellura in California, Pat Shuster in Georgia and John Osborne, CEO of Tarsin who was also in California, via electronic delivery, a slide deck with an outline of the plan and players to provide use of Plaintiffs' **IP** for Tarsin Inc.

231.   At all times hereinafter mentioned, to March 11, 2010, **Rooke** and **Rogness** while in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm provided-delivered Plaintiffs' **IP** to aVinci for its use in the sale of online products while using the Plaintiffs' eoBuy–payment processing platform and Indiezone's

Complaint

Ad Engine technology. joint **IP** e-commerce micro transaction processing and **Ad Engine**.

232.   That at all times hereinafter mentioned, on May 17, 2010, Defendants **Rooke** and **Rogness** who were in Minnesota, in furtherance of the Enterprise, and in criminal act of infringement-misappropriation demanded payment for use of the **7 Ventures (formerly Two Fish)** payment  system advising Cellura that they want to be paid for work from November 9, 2009 thru February 10, 2010.

233.   On or about June 12, 2010, Cellura who was in California requested that **Rogness** who was in Minnesota provide a copy of the license agreement as claimed provided by **eoBuy** and **Indiezone** allowing **Two Fish** to use Plaintiffs' **IP** under the license so as to issue a use license to MEG as they claimed was provided by Plaintiffs' to them.

234.   On or about June 12, 2010, **Rogness** and **Rooke** recognizing that they would be unable to produce the requested license agreement demanded by Cellura ceased communications with him.

## THE ILLEGAL PARTNERSHIPS' INFRINGING USE OF PLAINTIFFS' COPYRIGHT, TRADE DRESS, AND TRADE SECRETS- SECONDARY AND VICARIOUS

235.   At all times hereinafter mentioned, the Plaintiffs' **IP**  is composed of original authorship of copyrighted-copyrightable works, portions of Plaintiffs' trade secrets, unique processes developed at the time **Rooke** and **Rogness** were work-for-hire employees.

236.   At all times material hereto, the Enterprise members in violation of their Agreements cloned, copied-infringed-misappropriated or otherwise processed and publically disclosed the joint **IP** works, causing other to infringe on Plaintiffs' **IP** works products, methods, techniques and processes of **eoBuy** and **Indiezone** falsely claiming said **IP** as their own.

237.   The planned theft of Plaintiffs' **IP**, which appears to have been in the making for some time prior to uncovering the illegal acts herein alleged was first introduced to the mass public and outside of beta testing at the "**Finnovate Conference Showcasing the Future of Financial & Banking Technology**" in September 2011 when **Jingit Holdings**

- 49 -

falsely introduced **Jingit.com** while deploying Plaintiffs' unique **Music. Me. Ad Engine** concept for instant sale, purchases and payment by merchants-sponsors.

238.   At all times hereinafter mentioned, in or about August 2011, notwithstanding their written Agreements otherwise, Defendants **Rooke** and **Rogness** and certain Doe and/or Roe Defendants, in furtherance of the Enterprise racketeering activities, so as to cause Plaintiffs economic harm, without the permission consent or authority of the Plaintiff Corporations, after illegally accessing or exceeding their authorized access authority of the company Server/s did enter into a partnership agreement with Defendant **US BANK** for the purpose of illegally using Plaintiffs' **IP** so as to engage **eoBuy's** micro processing and **Indiezone's** unique **Ad Engine** concept over **US BANK's** interstate banking network.

239.   At all times hereinafter mentioned, prior to after August 2011, **US Bank** agreed to allow its banking charter and interstate banking network to be used to facilitate the interstate banking for the debit card processes of proceed via the **Jingit.com portal** in manner where the deployment of the **IP**   engaged for e-commerce micro payment transactions and ad sponsor payments allowing **Jingit.com** members to open deposit accounts with **US BANK** and obtain a **Jingit** Debit Card for deposit and debit purchase transactions.

240.   At all times hereinafter mentioned, the deployment was accomplished in a manner such that **US BANK** would have the exclusive access to the infringing **IP** users via the **Jingit.com** website.

241.   That after discovering the presence of **US BANK** on the **Jingit.com** beta website in or about November 2011, Fennelly did contact **US BANK,** notifying **US BANK** of the infringement and misappropriation and illegal use of Plaintiff's **IP**; that there was no right to use or licensed issued to **Rooke**, **Rogness** or **Jingit LLC** and that the use of Plaintiffs' **IP** was illegal, wherein Fennelly demanded that **US BANK** cease and desist from the unauthorized use of the Plaintiff Corporations **IP**.

242.   At all times hereinafter mentioned, after November 2011, **US BANK** knew and was aware of the claims of Fennelly on behalf of the Plaintiff Corporations and,

Complaint

notwithstanding notice to it, continued to us its banking charter and interstate banking network to facilitate the means for interstate banking and debit card processing of the e-commerce micro payment transaction and ad sponsor payments by issuing the **Jingit** Debit Card for processing the cloned **eoBuy** e-commerce micro billing platform the cloned **Indiezone Ad-Engine** by infringing **Jingit.com** users.

243. That at all times hereinafter mentioned, prior to November 2011 and continuing **US BANK** has caused or otherwise facilitated the infringement of Plaintiffs' **IP** and caused economic harm to the Plaintiff Corporations.

## FORMATION AND CONTINUED OPERATIONS OF THE JINGIT ENTERPRISE

244. **Rooke, Rogness Hazel, Ashkar, Jingit LLC., Music. Me,** and **US Bank** are all *persons* within the meaning of RICO, 18 U.S.C. §1961(3) separate and distinct from the *Enterprise Entities* and hereafter collectively constitute the *RICO Defendants* as an association in fact.

245. By their agreed conduct the *RICO Defendants*, operate the affairs of the *Jingit Enterprise* through the *Jingit Enterprise Entities* under the names **Jingit LLC. Muisc.Me., Jingit Holdings**, and **Jingit Financial Services.**

246. To further their scheme, once the Plaintiffs' **IP** was secured the *RICO Defendants* created **Jingit, LLC., Muisc.Me, Jingit Holdings**, and **Jingit Financial Services** wherein **Rooke** and **Rogness** are the majority membership owners and/or officers of the aforesaid entities who, together with the assistance of **Hazel** and **Ashkar**, who are also membership owners and/or employees of these entities, run manage or otherwise control the day-to-day affairs and operations of these companies so as to develop the incremental deployment of Plaintiffs' **IP** into new entities directly in competition with **eoBuy** and **Indiezone**.

247. Collectively, **Rooke, Rogness, Hazel** and **Ashkar, US Bank, Jingit LLC., Muisc.Me, Jingit Holdings**, and **Jingit Financial Services** together with

Complaint

**Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis, Karls, Walmart, General Electric, Target, DOE(s) and ROE(s),** constitute the *Jingit Enterprise* where each are used or being used, from-time-to-time, as vehicles for the illegal activities of the *RICO Defendants* in their false claims of ownership to Plaintiffs' **IP,** and in the operations of the affairs of the *Jingit Enterprise* in raising capital and illegally deploying Plaintiffs **IP** on the **Jingit.com** Website.

248.  Portions of the *Jingit Enterprise* as individual entities often operate as legitimate businesses performing corporate functions in sales, purchasing, marketing, licensing and otherwise engaging in other lawful activities.

249.  In spite of the often legitimate corporate undertaking, the *RICO Defendants* act to use the identities of the *Jingit Enterprise* to strategically and systematically invest the illegal capital raised by **Jingit Holdings** so as to maintain control and run the affairs of the legitimate operations of the *Jingit Entities* including the payment of rent, salaries, and insurance, taxes and other routine operating expenses.

250.  **Jingit Holdings** is the entity which is used to maintain the claimed ownership of the **eoBuy** micro billing system and **Indiezone Ad Engine**; and was established to file patents with the USPTO and used by the *RICO Defendants* to raise capital for the operation of the remaining *Jingit Enterprise Entities.*

251.  **Jingit Financial Services** is the entity which is used to issue vendor licenses of Plaintiffs' misappropriate **IP** and is the vehicle from which the *RICO Defendants* control the delivery of the Plaintiffs **IP** to merchants including the nominal Defendants, **Walmart, General Electric and Target** and others.

252.  **Jingit LLC.,** features **Jingit.com** as it Website and is directly infringing or otherwise illegally using Plaintiffs' proprietary features developed for the **Indiezone Ad-Engine** and its methods processes-codes, as well as Plaintiff **Indiezones'** trade dress-mark **Music. Me,** together with the illegal use of Plaintiffs' proprietary processes, methods and features of the **eoBuy** micro billing system and is the vehicle

Complaint

used to control consumer and merchant transaction as aided by *RICO Defendant* US **Bank.**

253.   **Rooke** and **Rogness** as the majority shareholders and/or officers of the *Jingit Enterprise Entities* together with the assistance of **Hazel** and **Ashkar** and **US Bank** use the façade of the legitimate operations of the *Jingit Enterprise* to conceal their illegal conduct including the infusion of cash and the systematic and incremental deployment of Plaintiffs' misappropriated **IP.**

254.   In each instance, **Rooke, Rogness, Hazel** and **Ashkar, Jingit Holdings Jingit LLC., Music. Me, Jingit Financial** and **US Bank** are willfully engaged in a continuing cycle of illegal use of Plaintiffs' **IP,** including their copyright-works, copyrightable-works, trade secrets, service mark and other **Property.**

255.   **The IP** has been intentionally and strategically released in incremental phases through the *Jingit Enterprise Entities* allowing for the repeated illegal investment of funds raised by falsely claiming ownership of Plaintiffs' **IP.**

256.   The operations of the *Jingit Enterprise Entities* by means of reinvestment and use of the proceeds of funds raised by the racketeering activities of the *RICO Defendants* through the use of **Jingit Holdings** has directly cause harm to Plaintiffs business and **Property.**

257.   The daily operations are controlled by **Rooke, Rogness, Hazel** and **Ashkar, US Bank, Jingit LLC, Music. Me, Jingit Holdings, Jingit Financial Services** together with other corporate officer/directors/employees of **Jingit LLC., Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis, Karls,** who are each aware of the illegal source of the **IP,** and who despite their knowledge assist and otherwise aid the continuing acts of racketeering by assisting the *RICO Defendants* in branding Plaintiffs' **IP** as their own using the misappropriated-infringed **IP** including trade mark and dress **Music. Me LLC.,** in electronic format over the Internet.

258.   In each instance, despite their knowledge of the misappropriation-infringement **Rooke, Rogness, Hazel** and **Ashkar, US Bank, Jingit Holdings, Jingit**

Complaint

**Financial Services** and **Jingit Investments** along with **Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis, Karls,** have built and launched the Website **Jingit.com** wherein each has caused the direct and secondary infringement of Plaintiffs' IP and thus allowed the RICO Defendants the opportunity to continue raising capital via the US Mails and Internet under the false claims or ownership in Plaintiffs' **IP**.

## DEFENDANTS' SECONDARY AND VICARIOUS USE OF PLAINTIFFS' COPYRIGHT, TRADE DRESS, AND TRADE SECRETS

259.   At all times hereinafter mentioned, in or about November 2011, **Jingit LLC,** and certain Doe and/or Roe Defendants, in furtherance of the **Jingit Enterprise,** and via racketeering activities, so as to cause Plaintiffs economic harm, did enter into a sponsorship agreement with Defendant **Kraft Foods, GE Lighting** and **Walmart** for the purpose of using Plaintiffs' **IP**.

260.   That at all times hereinafter mentioned, prior to November 2011 and continuing **Kraft Foods, GE Lighting** and **Walmart** have offered incentives to consumers by provided cash rewards to consumers and for advertisement engagement exchange and have facilitated the infringement of Plaintiffs' **IP** by their sponsorship **of the Jingit.com Website** which has cause economic harm to the Plaintiff Corporations.

261.   That the use of Plaintiff IP was without, Plaintiffs' permission, consent or other lawful authority.

## MISAPPROPRIATION- INFRINGMENT OF COPYRIGHT, TRADE DRESS, AND FUNCTIONAL SIMILARITIES OF EOBUY'S AND INDIEZONE'S BUSINESS MODELS OF THE JINGIT ENTERPRISE

262.   **Jingit.com** is the clone of **Indiezone, Indiezone's** identical functionality is in almost every feature offered by **Jingit.com** with almost identical user interface.

263.   **Jingit.com** offers and its operations incorporate 8 identical features developed and unique to **Indie Zone's** featured operations under its trade secret applications and in the compilation of the Plaintiffs' joint **IP**.

- 54 –

Complaint



vs.



Complaint

264. The features 1-8 above are identified in the screenshots and their functionality and/or methods-processes infringe or otherwise misappropriate using the unique methods and processes of Plaintiffs' propriety **IP**-trade secrets, trademark and trade-dress including:

> #1 Bank Total;
> #2 Login;
> #3 Increase your pay;
> #4 Streamed Ad content;
> #5 Progress bar;
> #6 Ad queue;
> #7 Link to content;
> #8 Co-operation-Partnership with a bank.

265. Each of the features 1-8 were developed during a time that **Rooke** and **Rogness** were work-for-hire employees of **Indiezone**.

## CAUSES OF ACTION
### Count I.
### Violations of 18 U.S.C. § 1962(a)
### *( RICO Defendants Rooke, Rogness, Hazel Ashkar and Oliver)* *

266. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs numbered "1" through "264" with the same force and effect as though set forth herein.

267. *RICO Defendants* **Rooke** and **Rogness** are members/owners and/or officers-employees of the *Jingit Enterprise Entities* who, together with the assistance of *RICO Defendants* **Hazel, Ashkar,** and Oliver who are also members/owners and/or officers-employees of the *Jingit Enterprise Entities*, together **Jingit LLC.,** and **US Bank** have misappropriated-infringed Plaintiffs' **IP** through a pattern of racketeering activity, and then by falsely claiming ownership of Plaintiffs' **IP,** they raised funds which were deposited into **Jingit Holdings.**

268. That manner in which the Plaintiffs' misappropriated-infringed **IP** was acquired and used to raise funds into **Jingit Holdings** is separated and distinct from the *RICO Defendants* false claims of authorship to Plaintiffs' **IP** and right of patents as filed with the USPTO which has allowed the *RICO Defendants* to establish the *Jingit Enterprise*

Complaint

*Entities* and launder those funds in their reinvested into both **Jingit LLC.,** and **Jingit Financial Services LLC.,** where these entities systematically and incrementally illegally deploy Plaintiffs' **IP** causing injury to Plaintiffs' business and **Property.**

269. The **RICO Defendants** did not merely reinvest the proceeds of the racketeering activity used to raise the funds back into the same entity **Jingit Holdings,** but rather they used the fraudulently obtained funds to establish and support the day-to-day operations of the new *Jingit Enterprise Entities* **Jingit LLC.,** and **Jingit Financial Services LLC.,** falsely claiming patents and featuring Plaintiffs' trademark **Music.Me** and the micro payment processing and rewards exchange methods of the **AdEngine** on the Jingit.com Website.

270. The illegal Server sabotage, theft of the DRG, which has allowed the false claims of ownership and investment has resulted in the incremental deployment of Plaintiffs' **IP,** has and continues to cause economic harm to Plaintiffs in the continued interference and derailment of Plaintiffs' entry into the commercial e-commence markets.

271. The theft-misappropriation infringement was committed in a manner designed to avoid detection of the **RICO Defendants** fraud and accomplished by using the facilities and powers of the mail and wire services and interstate commerce in the combined cover of the *Jingit Enterprise Entities.*

272. The *Jingit Enterprise* is a devise, a Scheme or artifice used by the **RICO Defendants** to defraud Plaintiffs and others for the purpose of executing such Schemes or artifices or attempting to do so, where the *Jingit Enterprise Entities* **and RICO Defendants** and all remaining Defendants constitute an *association-in-fact enterprise to* which from time-to-time has on multiple occasions by way of **RICO Defendants** and others placed into the hands of an authorized carrier for mail and wire services sent and delivered by the such carriers, and knowingly caused to be delivered, matters and things intended to accomplish the goals of the **RICO Defendants**.

273. In the performance of the fraud the **RICO Defendants** devised a Scheme or artifice to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice

Complaint

or attempting to do so in the theft of Plaintiffs' **Property** where the ***RICO Defendants*** caused to be placed with an authorized carrier for mail delivery, a knowingly sabotaged computer-server in manner designed to accomplish the Scheme and goals of the ***RICO Defendants.***

274.   In the performance of the fraud the ***RICO Defendants*** devised a Scheme or artifice to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice or attempting to do so in the theft of Plaintiffs' Property where the ***RICO Defendants*** caused to be placed on multiple occasions with an authorized Internet provider for electronic delivery knowingly false communications and things intended to accomplish the goals of the ***RICO Defendants*** including e-mails to Cellura  and his associated entities containing illegally copyrighted and infringed **IP** and other materials belonging exclusively to Plaintiffs.

275.   In the performance of the fraud the ***RICO Defendants*** devised a Scheme or artifice to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice or attempting to do so in the fraud which generated the funds as described above and which were obtained through a pattern of racketeering activity resulted in the deposit-reinvestment of funds into **Jingit Holdings** for the creation of **Jingit LLC., and Jingit Financial Services and:** 1) constitutes mail-wire fraud where a pattern of racketeering activity where; 2) the   laundering of money in the reinvestment-use of those funds into the ***Jingit Enterprise*** in the manner accomplished, mail and wire fraud forms separate overt or otherwise a series of predicate acts of racketeering activity and money laundering from the operations of **Jingit Holdings,** 3) which has caused injury to Plaintiffs' business and property; 4) and, continues to have an effect on interstate commerce.

276.   The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5). The acts were in violation of 17 U.S.C. 501-506(a)(1)(A); 18 U.S.C. 1030(a)(2)(C), of the Federal Computer Fraud and Abuse Act; Federal Trademark Act of 1946, as amended (the Lanham Act), 15 U.S.C. 1125(a) and 1125(d); 18 U.S.C. 1341 mail fraud and 1343 wire fraud; 18 U.S.C. 1832 (theft of trade secrets), 18 U.S.C. 1956 and 1957 money laundering, engaging in monetary transactions in property derived from specified

Complaint

unlawful activity; in violation of the RICO Statute 18 U.S.C.  1961-1968, et seq; 18 U.S.C. 2314-2315 possession and receipt of stolen property; and 18 U.S.C. 2319, criminal infringement of a copyright; in violation of the Stored Communications Act, 18 U.S.C. 2701.

277.   By reason of, and but for the foregoing illegal activities of computer mail and wire fraud, a direct and proximate result of the **RICO Defendants'** racketeering activities and violations of 18 U.S.C. §1962(a), but for these illegal acts, Plaintiffs would not have been damaged, including the loss of their **IP**, investors, loss of corporate opportunities for profit and the usurpation of those opportunities which has been caused by the attendant profits to the **RICO Defendants** causing losses to Plaintiffs' in the conduct of the *Jingit Enterprise,* with the resulting injury to their businesses and property in the sums of no less than $20,000,000.00 Million Dollars  in actual loss and One Billion Three Hundred Thousand ($1,300,000,000.00) Dollars in loss of economic advantage.

278.   By reason of, and but for the foregoing, the **RICO Defendants** actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to treble damages as provide by  18 U.S.C. 1964(a).

### Count II.
### Violations of 18 U.S.C. § 1962(b)
### *(RICO Defendants Rooke, Rogness, Hazel Ashkar and Oliver )*

279.   Plaintiffs repeat and reallege each and every allegation set forth in paragraphs numbered "1" through " 278", with the same force and effect as though set forth herein.

280.   The creation of the Jingit Entities and *ownership interest* of the **RICO Defendants Rooke, Rogness,  Hazel, Ashkar and  Oliver,** together with the use-investment of the fraudulently generated funds; the illegal directions-orders of *RICO Defendant* **Rooke,** and **Rogness,** in their positions as members, officer/directors and/or employees of the **Jingit Holding**,  the **funding arm** of the *Jingit Enterprise* entities; together with the strategic placement of the *Jingit    Enterprise* employees,

Complaint

members/owners and/or officers/directors, **RICO Defendants Hazel and Ashkar, Oliver** and the use of **US Bank**; the association and employment of Defendants **Abena, Fleming, Frawley, Moorehouse, James, Davis, Karls, Wal-Mart, General Electric, Target, DOE(s) and ROE(s),** as described above, provides the manner of control over the daily operations of the *Jingit Enterprise Entities* and forms *an association-in-fact enterprise* engaged in the commission of overt or otherwise predicate acts of mail and wire fraud in the control and activity of both the lawful and unlawful operations of the *Jingit Enterprise Entities* and the association brought about by the *RICO Defendants*.

281. The theft-misappropriation infringement was committed in a manner designed to avoid detection of the *RICO Defendants* fraud and accomplished by using the facilities and powers of the mail and wire services and interstate commerce in the combined cover of the *Jingit Enterprise Entities.*

282. In the performance of the fraud the *RICO Defendants* devised a Scheme or artifice to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice or attempting to do so in the theft of Plaintiffs' Property where the *RICO Defendants* caused to be placed on multiple occasions with an authorized carrier for mail delivery, containing knowingly false communications and things intended to accomplish the Scheme-goals of the *RICO Defendants.*

283. In the performance of the fraud the *RICO Defendants* devised a Scheme or artifice to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice or attempting to do so in the theft of Plaintiffs' Property where the *RICO Defendants* caused to be placed on multiple occasions with an authorized Internet provider for electronic mail delivery knowingly false communications and things intended to accomplish the goals of the *RICO Defendants.*

284. The *Jingit Enterprise* is a devise, a Scheme or artifice used to defraud Plaintiffs and others for the purpose of executing such Schemes or artifices or attempting to do so, where the *Jingit Enterprise* constitutes an *association-in-fact* which from time-to-time has on multiple occasions by way of *RICO Defendants* and others placed

- 60 -

Complaint

1   into the hands of an authorized carrier for mail and wire services sent and delivered by

2   the such carriers, and knowingly caused to be delivered, matters and things intended to

3   accomplish the goals of the **RICO Defendants**.

4      285.   The fraud which generated the funds as described above and which resulted in

5   the deposit of  funds into **Jingit Holdings** for the creation of **Jingit LLC., and Jingit**

6   **Financial Services:** 1) constitutes mail-wire fraud where a pattern of racketeering activity

7   where; 2) the control-reinvestment-use of those funds into the **Jingit Enterprise** in the

8   manner accomplished, mail and wire fraud forms separate overt or otherwise predicate acts

9   of racketeering activity and money laundering from the operations of the **Jingit Enterprise,**

10  3) which has caused injury to Plaintiffs business and property; 4) and, continues to have an

11  effect on interstate commerce.

12     286.   The acts set forth above constitute a pattern of racketeering activity pursuant to 18

13  U.S.C. §1961(5). The acts were in violation of 17 U.S.C. 501-506(a)(1)(A); 18 U.S.C.

14  1030(a)(2)(C), of the Federal Computer Fraud and Abuse Act; Federal Trademark Act of 1946,

15  as amended (the Lanham Act), 15 U.S.C. 1125(a) and 1125(d); 18 U.S.C. 1341 mail fraud and

16  1343 wire fraud; 18 U.S.C. 1832 (theft of trade secrets), 18 U.S.C. 1956 and 1957 money

17  laundering, engaging in monetary transactions in property derived from specified unlawful

18  activity; in violation of the RICO Statute 18 U.S.C. 1961-1968, et seq; 18 U.S.C. 2314-2315

19  possession and receipt of stolen property; and 18 U.S.C. 2319, criminal infringement of a

20  copyright; in violation of the Stored Communications Act, 18 U.S.C. 2701.

21     287.   By reason of, and but for the foregoing illegal activities of computer mail and wire

22  fraud, a direct and proximate result of the **RICO Defendants'** racketeering activities and violations of

23  18 U.S.C. §1962(a), but for these illegal acts, Plaintiffs have been damaged, including the loss of their

24  **IP,** investors, loss of corporate opportunities for profit and the usurpation of those opportunities

25  which has been caused by the attendant profits to the **RICO Defendants** causing losses to Plaintiffs'

26  in the conduct of the **Jingit Enterprise,** with the resulting injury to their businesses and property in

27  the sums of no less than $20,000,000.00 Million Dollars  in actual loss and One Billion Three

28  Hundred Thousand ($1,300,000,000.00) Dollars in loss of economic advantage.

Complaint

288. By reason of, and but for the foregoing, the **RICO Defendants** actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to treble damages as provide by 18 U.S.C. 1964(b).

### Count III.
### Violations of 18 U.S.C. § 1962(c)
### *(All RICO Defendants)*

289. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs numbered "1" through "287" with the same force and effect as though set forth herein.

290. The **Jingit Enterprise Entities** are the vehicles used by the **RICO Defendants** who are agents of, employed by or officers and/or directors associated with the **Jingit Enterprise** who are directly or indirectly, operating or managing the affairs of the **Jingit Enterprise** through a pattern of racketeering activity including mail and wire fraud-engaged in laundering the funds obtained through the Schemes perpetrated using Plaintiffs' stolen **IP**.

291. The **RICO Defendants** are **Persons,** within the meaning of RICO, 18 U.S.C. §1961(3) acting as principles within the meaning of 18 U.S.C. §2, distinct from the **Jingit Enterprise Entities.**

292. The **RICO Defendants** violated 18 U.S.C. § 1962(c) by directly or indirectly conducting or participating in the conduct-affairs of the **Jingit Enterprise** through a pattern of racketeering activity as an association-in-fact enterprise where there exists decision making process separate from the unlawful purpose of the **Jingit Enterprise Entities** which have intentionally injured Plaintiffs in their business and **Property** in a manner which affects interstate commerce.

293. The Scheme is accomplished by misleading investors in true ownership of Plaintiff **IP** where said funds are derived from illegal racketeering activity.

294. The theft-misappropriation infringement was committed in a manner designed to avoid detection of the **RICO Defendants** fraud and accomplished by using the facilities

– 62 –

1   and powers of the mail and wire services and interstate commerce in the combined cover of

2   the *Jingit Enterprise Entities.*

3          295.   In the performance of the fraud the **RICO Defendants** devised a Scheme or

4   artifice to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice

5   or attempting to do so in the theft of Plaintiffs' Property where the **RICO Defendants**

6   caused to be placed on multiple occasions with an authorized carrier for mail delivery,

7   knowingly false communications and things intended to accomplish the Scheme-goals of

8   the **RICO Defendants.**

9          296.   In the performance of the fraud the **RICO Defendants** devised a Scheme or artifice

10   to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice or attempting

11   to do so in the theft of Plaintiffs' Property where the **RICO Defendants** caused to be placed on

12   multiple occasions with an authorized Internet provider for electronic mail delivery knowingly

13   false communications and things intended to accomplish the goals of the **RICO Defendants.**

14          297.   The *Jingit Enterprise* is a devise, a Scheme or artifice used to defraud Plaintiffs and

15   others for the purpose of executing such Schemes or artifices or attempting to do so, where the

16   *Jingit Enterprise* constitutes an *association-in-fact* which from time-to-time has on multiple

17   occasions by way of **RICO Defendants** and others placed into the hands of an authorized carrier

18   for mail and wire services sent and delivered by the such carriers, and knowingly caused to be

19   delivered, matters and things intended to accomplish the goals of the **RICO Defendants.**

20          298.   The fraud which generated the funds as described above and which resulted in the

21   deposit of  funds into **Jingit Holdings** for the creation of **Jingit LLC., and Jingit Financial**

22   **Services:** 1) constitutes mail-wire fraud where a pattern of racketeering activity where; 2) the

23   control-reinvestment-use of those funds into the *Jingit Enterprise* in the manner accomplished,

24   mail and wire fraud forms separate overt or otherwise predicate acts of racketeering activity and

25   money laundering from the operations of the *Jingit Enterprise,* 3) which has caused injury to

26   Plaintiffs business and property; 4) and, continues to have an effect on interstate commerce.

27          299.   The acts set forth above constitute a pattern of racketeering activity

28   pursuant to 18 U.S.C.  §1961(5). The acts were in violation of 17 U.S.C. 501-

Complaint

506(a)(1)(A); 18 U.S.C. 1029(a)(2)(C); (a)(3), (a)(4); (a)(5)(B) &(C) relating to fraud in connection with an access device; 18 U.S.C. 1030(a)(2)(C), of the Federal Computer Fraud and Abuse Act; Federal Trademark Act of 1946, as amended (the Lanham Act), 15 U.S.C. 1125(a) and 1125(d); 18 U.S.C. 1341 mail fraud and 1343 wire fraud; 18 U.S.C. 1832 (theft of trade secrets), 18 U.S.C. 1956 and 1957 money laundering, engaging in monetary transactions in property derived from specified unlawful activity; in violation of the RICO Statute 18 U.S.C. 1961-1968, et seq; 18 U.S.C. 2314-2315 possession and receipt of stolen property; and 18 U.S.C. 2319, criminal infringement of a copyright; in violation of the Stored Communications Act, 18 U.S.C. 2701- 11.

300.  By reason of, and but for the foregoing illegal activities of computer mail and wire fraud, a direct and proximate result of the *RICO Defendants'* racketeering activities and violations of 18 U.S.C. §1962(a), but for these illegal acts, Plaintiffs have been damaged, including the loss of their **IP**, investors, loss of corporate opportunities for profit and the usurpation of those opportunities which has been caused by the attendant profits to the *RICO Defendants* causing losses to Plaintiffs' in the conduct of the *Jingit Enterprise,* with the resulting injury to their businesses and property in the sums of no less than $20,000,000.00 Million Dollars  in actual loss and One Billion Three Hundred Thousand ($1,300,000,000.00) Dollars in loss of economic advantage.

301.  By reason of, and but for the foregoing, the *RICO Defendants* actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to treble damages as provide by  18 U.S.C. 1964(c).

### Count IV.
### Violations of 18 U.S.C. § 1962(d)
### *(All Defendants)* *

302.  Plaintiffs repeat and reallege each and every allegation set forth in paragraphs numbered "1" through "301" with the same force and effect as though set forth herein.

303.  In performance of the Scheme the *RICO Defendants* as principals knowingly, intentionally and unlawfully, received and were aided and abetted,  and did conspire with

- 64 –

Complaint

each other  and Defendants **Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis, Karls,** to commit at least two predicate acts of racketeering within the past ten years where as such their conduct constitutes a pattern of illegal activity as detailed heretofore.

304.   The pattern of these illegal acts was performed by each of the ***RICO Defendants*** as a director, officer, agent or employee of each the ***Jingit Enterprise Entities*** in such a manner and in each instance that such act was authorized or ratified by, and done on behalf of the ***RICO Defendants'*** Scheme collectively and individually.

305.   The ***RICO Defendants* together with Defendants Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis, Karls,** agreed, combined and acted with a common by engaging in the unlawful acts described above.

306.   The ***RICO Defendants*** agreed, combined and acted with a common plan and purpose to infringe, misappropriate the  Plaintiffs **IP** and other property, by engaging in the unlawful acts described above.

307.   At all times material hereto, commencing in or about July 2009 and continuing to date, **Rooke** and **Rogness** together with **Hazel Ashkar** and Olivier agreed to and did commit multiple overt and predicate criminal acts, amounting to a pattern of illegal activity including but were not limited to: 1) the theft and illegal use of written and electronic copies of Plaintiffs' **IP**; 2) the willful disruption, interference and otherwise deliberate sabotage of the Plaintiffs' Server/Servers so as to interfere in Plaintiffs' active deployment, planned commercial roll-out and entry of their **IP** into the stream of commerce where said illegal acts were accomplished  by means of interstate mail and wire fraud; 3) by making false claims of ownership to Plaintiffs' **IP** in applications to the USPTO; 5) by raising capital in a nationwide scheme by means of electronic transactions thorough false claims of ownership to Plaintiffs **IP**; 6) by using the investment of that illegally generated money and depositing the money into a series of corporations established, owned, managed and controlled by them for the purpose of interstate distribution of the misappropriated **IP**; 7) by using said corporations to create and establish the systematic-incremental deployment of the Plaintiffs' **IP** as their own while using Plaintiffs Mark; 8) by the continuing incremental release of said

- 65 –

illegally obtained **IP**; 9) by causing continued, intentional and willful direct financial harm/damages to the Plaintiff Corporations.

308.   The ***RICO Defendants*** committed overt acts, as described above, and conspired or otherwise agreed to indirectly or directly violate 18 U.S.C. §§ 1962 (a), (b) and (c).

309.   The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5). The acts were in violation of 17 U.S.C. 501-506(a)(1)(A); 18 U.S.C. 1030(a)(2)(C), of the Federal Computer Fraud and Abuse Act; Federal Trademark Act of 1946, as amended (the Lanham Act), 15 U.S.C. 1125(a) and 1125(d); 18 U.S.C. 1341 mail fraud and 1343 wire fraud; 18 U.S.C. 1832 (theft of trade secrets), 18 U.S.C. 1956 and 1957 money laundering, engaging in monetary transactions in property derived from specified unlawful activity; in violation of the RICO Statute 18 U.S.C. 1961-1968, et seq; 18 U.S.C. 2314-2315 possession and receipt of stolen property; and 18 U.S.C. 2319, criminal infringement of a copyright; in violation of the Stored Communications Act, 18 U.S.C. 2701.

310.   At all times material hereto, on multiple occasions to further their plans Defendant, **Rooke** and **Rogness, Hazel, Ashkar,** and **Oliver** via the mails or wires of the US solicited funds in furtherance of their illegal plan.

311.   Defendants devised a scheme or artifice to defraud Plaintiffs and others for the purpose of executing such scheme or artifice or attempting to do so in the theft of Plaintiffs' **Property**; Defendants knowingly placed or caused to be placed on multiple occasions with an authorized carrier for the mail matters and things intended to accomplish the goals of the Defendants' illegal activities, the theft of Plaintiff's **IP**.

312.   Defendants devised a scheme or artifice to defraud Plaintiffs for obtaining their **Property** by means of false or fraudulent pretenses, representations, or promises, by means of wire, communication in interstate writings-emails for the purpose of executing such scheme or artifice intended to accomplish the goals of the Defendants' illegal activities, the theft of Plaintiff's **IP**.

Complaint

313. The dispatches of these mailing and wire communications involved interstate communications as aforesaid and were organized overt and predicate acts committed and being committed by the individual Defendants **Rooke** and **Rogness, Hazel, Ashkar and Oliver** which were acts accomplished for the intended willful theft of Plaintiffs' **IP**, as well as fraud in the illegal financial scheme and of the goals of the group therein so as to finance the continuing illegal acts of the RICO Defendants by reason of their joint illegal conduct there exists a an *association-in- fact Enterprise*.

314. By reason of, and but for the foregoing illegal activities of computer mail and wire fraud, a direct and proximate result of the ***RICO Defendants'*** racketeering activities and violations of 18 U.S.C. §1962(a), but for these illegal acts, Plaintiffs have been damaged, including the loss of their **IP**, investors, loss of corporate opportunities for profit and the usurpation of those opportunities which has been caused by the attendant profits to the ***RICO Defendants*** causing losses to Plaintiffs' in the conduct of the ***Jingit Enterprise,*** with the resulting injury to their businesses and property in the sums of no less than $20,000,000.00 Million Dollars in actual loss and One Billion Three Hundred Thousand ($1,300,000,000.00) Dollars in loss of economic advantage.

315. By reason of, and but for the foregoing, the Defendants' actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to treble damages as provide by 18 U.S.C. 1964(c); for violations of 1962 (a-b-c and d).

### Count V.
### Copyright Infringement
### (Against All Defendants)

316. Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "315" above of this Complaint as though fully set forth here and again.

317. Plaintiffs own valid and enforceable copyrightable works in all of their **IP** and support materials, which are creative works of original authorship.

- 67 –

Complaint

318.   Plaintiffs have filed all necessary Registration Statements as owners of the copyrightable works in all of their **IP** and support materials, which are creative works of original authorship.

319.   Plaintiffs have a pre-existing right of Registration of said Copyrights, and right of Certificates of Registration that cover all of the **IP** and support materials taken, copied and illegally being used by the Defendants.

320.   **eoBuy** owned one or more exclusive rights in certain copyrights at issue in this case at a point in time during which Defendants infringed those exclusive rights.

321.   **Indiezone** has also obtained from **eoBuy**, through transfer agreements, licensing agreements, all rights, title, and interest for use in the copyrights infringed on by Defendants.

322.   **Indiezone** owned one or more exclusive rights in certain copyrights at issue in this case at a point in time during which Defendants infringed those exclusive rights.

323.   Defendants have infringed the copyrights in the foregoing **IP** and support materials, covered by the exclusive right of use.

324.   The registrations constitute proof of original authorship and generally cover, but are not limited to, multiple hard copy versions of **IP** Code or **IP** Processes, including the updates, patches and fixes incorporated in each relevant versions, all RFP - UML-of which the *Jingit Enterprise* and the remaining *RICO Defendants* have illegally infringed, used or misappropriated without a license for Plaintiffs' **IP** use.

325.   The infringed/misappropriated **IP** covers numerous versions of discrete portions of Code-or Process-and/or-RFP –UML, which Defendants are illegally using to create the **Jingit.com** Processes-which mirror the **Indiezone** Processes as developed during the employment period of- *RICO Defendants* **Rogness** and **Rooke**.

326.   Their use of discrete portions of these in-house developed processes and also the updates, patches and fixes that **Jingit.com** uses without a license has allowed Defendants to infringe discrete portions of the developed processes by illegally taking without license the **IP** and support materials that are substantially similar to these discrete portions which allow the operation and process of **Jingit.com**.

– 68 –

327.   Through the illegal acts alleged above, Defendants have violated the exclusive rights of the Plaintiff Corporations to reproduce and make use of its copyrightable works, Plaintiffs' **IP** and support materials, including materials covered and prohibited by employment agreements without authorization or license, to create customer environments for commercial use and profit- as deployed on the **Jingit.com** website;- using Plaintiffs' software Code and processes-and/or-RFP -UML-for other improper business purposes, including, raising capital for reinvestment into the ***Jingit Enterprise***, without limitation, training employees, troubleshooting, researching general and specific support issues, and marketing to customer and prospective customers; whereby said illegal acts were obtained by generating and deriving software Code from proprietary and protected trade secret processes using architectural schematics, process flow charts and any other means that enable the Defendants to illegally reverse engineer Plaintiffs Intellectual Property; Distributed Plaintiffs' trade secret architecture and process trade secrets to programmers and developers (both in-house and out-sourced) for the purpose of re-generating software Code to replicate Plaintiff's **IP**; downloaded Plaintiff Corporations copyrighted Code and/or-RFP-UML-materials onto its computers in violation of 17 U.S.C. § 106; and, repeatedly copying, co-mingling and cross-using the downloaded **IP** materials to populate different customer folders, support other customers, and as a general resource to provide support in the ordinary course of the ***Jingit Enterprise's*** illegal business.

328.   Defendants have violated the exclusive rights of Plaintiff Corporations to control the distribution, creation of derivative works and public display of copyrighted works by removing the final manuals for Plaintiffs' Corporate offices, downloading, copying, creating derivative works from and/or distributing Plaintiffs' **IP** material and/or derivative works to Defendants' customers, via posting to its website, by electronic mail, through file transfer protocol, or otherwise, including at least -a material portion and secret of Plaintiffs **IP** solution, in violation of 17 U.S.C. § 106.

329.   Defendants were not authorized to take possession of Plaintiff manuals, copy, download, reproduce, or create derivative works from, distribute, or publicly display

- 69 –

Plaintiffs copyrighted **IP** applications and support materials without a specific license for which Defendant have no lawful right of use or right to possess with such a license.

**Contributory and/or Vicariously Infringement.**

330.   In addition to directly infringing the exclusive rights of Plaintiffs, Defendants have contributory and/or vicariously infringed the exclusive rights of Plaintiffs in the ***Jingit Enterprise's*** applications and support materials by taking possession of Plaintiffs' manuals, controlling, directing, intentionally encouraging, inducing or materially contributing to the illegal copying, distribution, public display or creation of derivative works from Plaintiffs' copyrighted **IP** and support materials. Defendants also obtained a direct financial benefit from the above alleged infringing activities while declining to exercise the demand and right they controlled to stop it or limit it.

331.   Defendants knew (or should have known that taking Plaintiffs' manuals, copying, distributing, public display of, and creating derivative works of and from Plaintiffs software applications and support materials, which Defendants copied and shared in the name of customers who had no license to copy, distribute, publicly display or create derivative works from those materials, infringed the exclusive rights of Plaintiffs in those materials.

**Damages**

332.   Plaintiffs are entitled to damages in an amount to be proven at trial, including profits attributable to the infringement not taken into account in computing actual damages-17 U.S.C. § 504(b).

333.   Plaintiffs are entitled to statutory damages under 17 U.S.C. § 504(c) based on Defendants' infringements - after the dates of copyright registration - of certain copyrighted works used to create -the local customer environments and the subsequent individual further copying and use of each such environment.

334.   Defendants' infringement of the exclusive rights of Plaintiffs has also caused Plaintiffs irreparable injury. Unless restrained and enjoined, Defendants will continue to commit such acts.

Complaint

**Injunction-Impound.**

335.   Plaintiffs' remedies at law are not adequate to compensate them for these inflicted and threatened injuries, entitling Plaintiffs -to remedies including injunctive relief as provided by 17 U.S.C. 502, and an order impounding or destroying any and all infringing materials and other information which could injure Plaintiffs pursuant to 17 U.S.C. 503.

**Count VI.**
**Federal Trademark Infringement**
**15 U.S.C. §§ 1114 and 1125(a)**
**(Against all Defendants)**

336.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "334" above  of this Complaint as though fully set forth here and again.

337.   Plaintiffs own valid and enforceable trademark **Music.Me** which was obtained in or about July 2009 and was otherwise a product and the creative work of original authorship.

338.   The actions of Defendants described  establishes that each has engaged in the unauthorized use of the **Music.Me** as a trademark, and confusingly similar variations thereof, in commerce to advertise, promote, market, and cause the use of Plaintiffs' the mark **Muisc.Me** to further the use of the **Jingit.com Website** and the **Jingit-credit cards** used in the sale of music products throughout the United States including California, wherein said acts constitute trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125(a).

339.   The actions of Defendants, if not enjoined, will continue. Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the **Music. Me** mark, and injury to Plaintiff's business. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

340.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover damages in an amount to be determined at trial, profits made by Defendants on sales of products by use of the Mark and the costs of this action.

341.    By reason of the foregoing, Plaintiffs are informed and believe, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiff to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

### Count VII.
### Federal Unfair Competition and False Advertising 15 U.S.C. §1125(a)
### (Against all Defendants)

342.    Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "341" above of this Complaint as though fully set forth here and again.

343.    Defendants' actions described above and specifically, without limitation, Defendants' use of the **Music.Me** trademark, and confusingly similar variations thereof, in commerce to advertise, market, and sell products throughout the United States including California; their use of misleading representations regarding the ownership of the software and processes; and the ***RICO Defendants*** knowledge, participation, and inducement thereof, constitute unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).

344.    Consumers are likely to be misled and deceived by Defendants' representations regarding Plaintiffs' ownership and processes. Defendants knew or should have known that their statements were false or likely to mislead.

345.    By reason of the forgoing Plaintiffs have sustained an actual and proximate injury resulting from the ***Defendants'*** willful and intentional actions, Plaintiffs have suffered damages in an amount to be determined at trial, and unless ***Defendants*** are enjoined, Plaintiffs will continue to suffer irreparable harm and damage to its business, reputation, and goodwill.

- 72 -

*Complaint*

346.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to damages for Defendants' Lanham Act violations, an accounting for profits made by Defendants in the illegal use of their **IP**, as well as recovery of the costs of this action.

347.    By reason of the foregoing, Plaintiffs are informed and believe, and on that basis allege, that Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exemplary case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

### Count VIII.
### Federal Trademark Dilution 15 U.S.C. §1125(c)
### (Against all Defendants)

348.    Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "347" above of this Complaint as though fully set forth here and again.

349.    The actions of Defendants described above and specifically, without limitation their unauthorized use of the trademark-**Music.Me,** and confusingly similar variations thereof, in commerce to advertise, market, and sell music products under the mark **Music.Me** throughout the United States including California, are likely to cause dilution by blurring and tarnishment in violation of 15 U.S.C. § 1125(c).

350.    The actions of Defendants, if not enjoined, will continue. Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the **Music.Me** trade-mark, and injury to Plaintiff's business. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and 15 U.S.C. §1125(c).

351.    Plaintiffs are therefore entitled to recover damages in an amount to be determined at trial, profits made by Defendants, and the costs of this action pursuant to 15 U.S.C. § 1117.

352.    By reason of, and but for the foregoing, the ***RICO Defendants*** actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to an award of punitive or exemplary damages to be determined by a jury.

- 73 -

## Count IX.
## Violation of Federal Computer Fraud and Abuse Act
## (18 U.S.C. 1030(a)(2)(C), (a)(4) (a)(5)(C)
## *(Defendant Rooke and Rogness)*

353.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "352" above of this Complaint as though fully set forth here and again.

354.   Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. 1030(a)(2)(C), by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer while intending to cause economic harm to Plaintiffs business and **Property.**

**Misappropriation of Confidential Information:**

355.   Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. 1030(a)(4), by knowingly, and with intent to defraud Plaintiffs accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and by means of such conduct furthered the intended fraud and obtained one or more things of value, including but not limited to the Companies **IP,** support materials and Trade Secrets.

356.   Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C 1030(a)(5)(B) &(C) and (iii) by intentionally accessing a protected computer without authorization, causing damage to Plaintiffs, recklessly or without due regard for their actions and have eliminated in excess 20,000 e-mails.

357.   The computer system or systems that Defendants accessed as described above constitute a protected computer within the meaning of 18 U.S.C. 1030(e)(2).

**Damages.**

358.   Plaintiffs have suffered damage and loss by reason of these violations, including, without limitation, harm to Plaintiffs data, programs, computer systems, and other losses in an amount to be proved at trial, but, in any event, in an amount well over $5,000.00 aggregated over a one-year period.

- 74 -

Complaint

**Injunction.**

359. Defendants' unlawful access to and theft from Plaintiffs computers have caused Plaintiffs irreparable injury to the business and **Property.**

360. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiffs remedies at law are not adequate to compensate them for these inflicted and threatened injuries, entitling Plaintiffs to remedies including injunctive relief as provided by 18 U.S.C. 1030(g).

**Count X.**
**Violation of Federal Computer Fraud and Abuse Act**
**(18 U.S.C. 2701 (a)(2)**
***( Defendants Rooke and Rogness)***

361. Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1"  through "360" above  of this Complaint as though fully set forth here and again.

362. Defendants have violated 18 U.S.C. 2701 (a)(2), by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer while intending to cause economic harm to Plaintiffs business and Property.

**Misappropriation of Confidential Information:**

363. Defendants have violated 18 U.S.C. 2701 (a)(2), by knowingly, and with intent to defraud Plaintiffs, accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and by means of such conduct furthered the intended fraud and obtained one or more things of value, including but not limited to the Companies IP, support materials and Trade Secrets.

364. Defendants have violated 18 U.S.C. 2701 (a)(2), by intentionally accessing a protected computer without authorization, causing damage to Plaintiffs, recklessly or without due regard for their actions and have eliminated in excess of 20,000 e-mails.

- 75 –

Complaint

365.   The computer system or systems that Defendants accessed as described above constitute a protected computer within the meaning of 18 U.S.C. 2701 (a)(2).

**Damages.**

366.   Plaintiffs have suffered damage and loss by reason of these violations, including, without limitation, harm to Plaintiffs data, programs, and computer systems, and other losses and damage in an amount to be proved at trial, but, in any event, in an amount well over $5,000.00 aggregated over a one-year period.

**Injunction.**

367.   Defendants unlawful access to and theft from Plaintiffs computers have caused Plaintiffs irreparable injury to the business and Property. Unless restrained and enjoined, Defendants will continue to commit such acts.   Plaintiffs remedies at law are not adequate to compensate them for these inflicted and threatened injuries, entitling Plaintiffs to remedies including injunctive relief as provided by 18 U.S.C. 1030(g).

**State Law Claims**
**Count XI.**
**Aiding and Abetting**
**\*(All *RICO Defendants*, and Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis)\***

368.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "367" above of this Complaint as though fully set forth here and again.

369.   Plaintiffs are informed and believe and thereon allege that the Defendants and each of them aided abetted, instructed, informed, participated in, agreed with, encouraged and gave substantial assistance to each other in support of the theft, infringement-misappropriation of Plaintiffs IP and other wrongful conduct alleged herein for the ultimate purpose of injuring Plaintiffs in the business and property.

370.   That at all time material hereto, Plaintiffs are informed and believe and thereon allege that Defendants **Rooke, Rogness, Hazel, Ashkar, Oliver, Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis and US Bank** were aware and knew that the claims of ownership or other right

Complaint

to use Plaintiffs' **IP** were false claims and that the **IP** was Plaintiffs' exclusive property created at a time the Defendants **Rooke** and **Rogness** were work for hire employees of **Indiezone.**

371.    That at all time material hereto, Plaintiffs are informed and believe and thereon allege that Defendants **Rooke, Rogness, Hazel, Ashkar, Oliver, Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis and US Bank** were aware and knew that **Rooke** and **Rogness** where infringing-misappropriating Plaintiff **IP** and illegally using it to create income on the **Jingit.com** Website and presented to merchant and consumer users falsely claiming it as their own.

372.    Plaintiffs are informed and believe, and thereon allege that Defendants **Rooke, Rogness, Hazel, Ashkar, Oliver, Abena, Fleming,  Frawley,  Moorehouse, Ohlsen, James, Davis and US Bank**  and each of them agreed and knowingly conspired among themselves to seek merchants and consumers to use the Jigit.com Website and join or otherwise participate in the **US Bank** sponsored **Jingit** debit-cards.

373.    Plaintiffs are informed and believe, and thereon allege that in excess of 3 million consumers have joined the Jingit Website and are to infringe or otherwise misappropriate the Plaintiffs' **IP**, using or intending to use the **US Bank** Jingit Debit-Card.

374.    Plaintiffs are informed and believe and thereon allege that Defendants **Rooke, Rogness, Hazel, Ashkar, Oliver, Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis and US Bank's** actions constitute the adding and abetting of unlawful acts, including but not limited to claims for breach of contract, breach of fiduciary duty, fraud, misrepresentation, computer fraud, receipt of stolen property, unfair business practices, intentional/negligent interference in prospective economic advantage and negligence.

375.    By reason of, and but for the foregoing illegal activities there exists a direct and proximate result in damages to Plaintiffs, including the loss of their **IP**, investors, loss of corporate opportunities for profit and the usurpation of those opportunities which has been caused by the attendant profits to the all Defendants causing losses to Plaintiffs' in the conduct of and with the resulting injury to their businesses and property in the sums of no

1   less than $20,000,000.00 Million Dollars  in actual loss and One Billion Three Hundred

2   Thousand ($1,300,000,000.00) Dollars in loss of economic advantage.

3      376.   By reason of, and but for the foregoing, the Defendants' actions have been

4   illegal willful and outrageous and undertaken with reckless indifference to the rights of

5   Plaintiffs, and as such Plaintiffs are entitled to exemplary damages.

6                              **Count XII.**
7           **Misappropriation of Trade Secret Cal. Civ. Code  3426.11.**
8   *(All RICO Defendants* and **Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis )***

9

10     377.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of

11  paragraphs numbered "1"  through "376" above  of this Complaint as though fully set forth

12  here and again.

13     378.   Plaintiffs have established their **IP** ownership of their individual and jointly

14  development and deployment strategies/plans and their existence of the unique methods

15  and processes advancing numerous proprietary micro billing and it associated **AdEngine**

16  methods and processes.

17     379.   The misappropriated **IP** covers numerous versions of discrete portions of Code-

18  or Process-and/or-RFP –UML and the unique completion of these processes, which Defendants

19  are illegally using to create the **Jingit.com** advancing processes-which mirror the eobuy and

20  **Indiezone AdEngine** methods processes  as developed during the employment period of-

21  **Rogness** and **Rooke**.

22     380.   Plaintiffs developed these proprietary methods and processes ("confidential

23  information") at great expense and in a continuing process over a long period of time at

24  a sum in excess of $20,000,000.00.

25     381.   The **eobuy** and **Indiezone** processes/methods and  other  confidential

26  information were not readily know to others or to a competitor and have provided a

27  significant competitive advantage and have and continue to cause a significant loss to

28  Plaintiffs.

Complaint

382.   The confidential information is not generally known to the public or available to others in the industry and has been the subject of reasonable efforts to maintain its confidentiality and/or secrecy, including: restricting access to the confidential information to those employees, consultants, and other suppliers of Plaintiffs who must use the confidential information in performing their agreements with Plaintiffs and by restricting access to the places where the confidential information was put to use.

383.   Plaintiffs are informed and believe and on that basis allege, by reason of, and but for the foregoing illegal activities of computer mail and wire fraud,, a direct and proximate result of the ***RICO Defendants'*** racketeering activities and violations of both state and federal law but for these illegal acts.

384.   Plaintiffs have not been damaged, including the loss of their **IP**, investors, loss of corporate opportunities for profit and the usurpation of those opportunities which has been caused by the attendant profits to the ***RICO Defendants*** causing losses to Plaintiffs' in the conduct of the ***Jingit Enterprise,*** with the resulting injury to their businesses and property in the sums of no less than One Billion Three Hundred Thousand ($1,300,000,000.00) Dollars.

385.   By reason of, and but for the foregoing, the Defendants' actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to exemplary damages in an mount as high as the law will.

### Count XIII.
### Negligence-Negligence Per Se
### (Against All Defendants)

386.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "385" above of this Complaint as though fully set forth here and again.

Complaint

387.   That at all times material hereto, **Jingit Holdings Jingit Financial, Jingit LLC., and Music.Me, Rooke, Rogness, Hazel, Ashkar, Oliver and US Bank Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, and Davis** owed a duty to Plaintiff not to use, or cause other to use, infringe or otherwise misappropriate Plaintiffs' **IP.**

388.   That at all time material hereto Defendants **Jingit Holdings Jingit Financial, Jingit LLC., and Music.Me, Rooke, Rogness, Hazel, Ashkar, Oliver and US Bank Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, and Davis** had a duty to advise users of the Jingit Website that they were using the **IP** belonging to Plaintiffs and failed to do so.

389.   That at all time material hereto Defendants **Jingit Holdings Jingit Financial, Jingit LLC., and Music.Me, Rooke, Rogness, Hazel, Ashkar, Oliver and US Bank Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, and Davis** have caused consumers DOE and ROE 1-10, merchants Wal-Mart, General Electric and Target and others to use, infringe or otherwise misappropriate Plaintiffs' **IP.**

390.   By reason of, and but for the foregoing illegal activities there exists a direct and proximate result in damages to Plaintiffs, including the loss of their **IP**, investors, loss of corporate opportunities for profit and the usurpation of those opportunities which has been caused by the attendant profits to the all Defendants causing losses to Plaintiffs' in the conduct of and with the resulting injury to their businesses and property in the sums of no less than $20,000,000.00 Million Dollars in actual loss and One Billion Three Hundred Thousand ($1,300,000,000.00) Dollars in loss of economic advantage.

391.   By reason of, and but for the foregoing, the Defendants' actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to exemplary damages.

### Count XIV.
### Statutory Unfair Competition False Advertising
### California Business and Professions Code §17200 *et seq.*
### *(Against all RICO Defendants, Jingit LLC and Music. Me)*

392.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "391." above of this Complaint as though fully set forth here and again.

- 80 -

393.   **RICO Defendants'** actions described above and the use of the **Jingit Enterprise Entities** specifically, without limitation, **Jingit Holding, Jingit LLC.,** and **Jingit Financial** and in the unauthorized use of the trade-dress of **Indiezone**, together with the unauthorized use of the **Music.Me** trademark, and other confusingly similar variations thereof, in commerce to advertise, market, and sell **Jingit Financial** licenses to merchants in the use of the **AdEngine**; the **Jingit.com** consumer memberships for participation in merchant-consumer engagement via the unauthorized use of the **AdEngine** throughout the United States and California; their use of misleading or otherwise their misrepresentations regarding the ownership of Plaintiffs' **IP** and **RICO Defendants** knowledge, participation, and inducement of **Defendants Wal-Mart-General Electric Target DOE(s) and ROE(s) 1-10,** Constitute trademark infringement, false advertising, and unfair competition in violation of the laws of the State of California.

394.   By these actions, the **RICO Defendants** have engaged in false advertising and unfair competition in violation of the statutory law of the state of California, Cal. Bus. & Prof. Code and 17200, *et seq.*, and, as a result, Plaintiffs have suffered and will continue to suffer damage to its business, reputation, and goodwill and other **Property.**

395.   By these actions a direct and proximate result of **Defendants'** willful and intentional actions, Plaintiffs have suffered damages in an amount to be determined at trial and, unless the all named **RICO Defendants** are restrained, Plaintiffs will continue to suffer irreparable damage.

**Contributory Trademark Infringement**

396.   **RICO Defendants'** actions described above and the use of the **Jingit Enterprise Entities** specifically, without limitation, **Jingit Holding, Jingit LLC.,** and **Jingit Financial** and **US Bank** in the unauthorized use of the trade-dress of **Indiezone**, together with the unauthorized use of the **Music.Me** trademark, and other confusingly similar variations thereof, in commerce to advertise, market, and sell **Jingit.com** memberships for participation in merchant-consumer engagement via the unauthorized use of the **AdEngine** throughout the United States and California; constitutes

contributory trademark infringement in violation of federal law and the common law of the State of California.

397. The actions of **RICO Defendants** if not enjoined, will continue. Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of the trade-dress and **AdEngine** methods and goodwill associated with the **Music. Me** trade mark, and injury to Plaintiff's business and **Property.**

398. By reason of, and but for the foregoing, the **RICO Defendants** actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to an award of punitive or exemplary damages to be determined by a jury.

**Vicarious Trademark Infringement**

399. **RICO Defendants'** actions described above and the use of the **Jingit Enterprise Entities** specifically, without limitation, **Jingit Holding, Jingit LLC.,** and **Jingit Financial** and **US Bank** in the unauthorized use of the trade-dress of **Indiezone**, together with the unauthorized use of the **Music.Me** trademark, and other confusingly similar variations thereof, in commerce to advertise, market, and sell **Jingit.com** memberships for participation in merchant-consumer engagement via the unauthorized use of the **AdEngine** throughout the United States and California; in violation of federal law and the common law of the State of California.

400. The **RICO Defendants** each have the ability to control the actions of each Defendant and by licensing the advertising activities for the merchant Defendants Wal-Mart- General Electric Target DOE(s) and ROE(s) 1-10, they have derived a direct financial benefit from the illegal acts of the said Defendants.

401. The actions of the **RICO Defendants** and each other Defendant, if not enjoined, will continue. Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the **Muisc.Me** trademark, and injury to Plaintiff's business and **Property.**

402. By reason of, and but for the foregoing, the **RICO Defendants** actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of

Complaint

1   Plaintiffs, and as such Plaintiffs are entitled to an award of punitive or exemplary damages

2   to be determined by a jury.

3                                      **Count XV.**

4                **Unfair Competition - Cal. Bus. & Prof. Code § 17500**

5                ***(Against all RICO Defendants,  Jingit LLC and Music. Me)***

6        403.    Plaintiffs repeat, incorporate and otherwise allege by reference the allegations

7   of paragraphs numbered "1"  through "402" above  of this Complaint as though fully set

8   forth here and again.

9        404.    Defendants have engaged in unlawful business acts or practices by committing

10  acts including misappropriation of confidential information computer fraud, trespass, breach

11  of contract, interference with business relationships, and other illegal acts and practices as

12  alleged above, all in an effort to gain unfair competitive advantage over Plaintiffs.

13       405.    These unlawful business acts or practices were committed pursuant to business

14  activity related to Plaintiffs' IP and related support and maintenance for that software and

15  Plaintiff unique processes.

16       406.    The acts and conduct of Defendants constitute fraudulent, unlawful, and unfair

17  competition as defined by California Bus. & Prof. Code §§ 17500, et seq.

18       407.    Defendants' conduct constitutes violations of numerous state and federal statutes

19  and codes, including, but not limited to, violation of the Computer Fraud and Abuse Act, 18

20  U.S.C. §§ 1030 et seq., receipt of stolen property, Cal. Penal Code § 496, unauthorized access to

21  computers, Cal. Penal Code § 502, wire fraud, 18 U.S.C. § 1343, violation of RICO, 18 U.S.C. §

22  1962, fraud and related activity in connection with an access device, 18 U.S.C. § 1029, and

23  violation of the Stored Communications Act, 18 U.S.C. §§ 2701.

24       408.    Defendants' conduct also constitutes trespass to chattels, intentional

25  interference with prospective economic advantage, negligent interference with prospective

26  economic advantage, and unjust enrichment.

27       409.    Defendants have improperly and unlawfully taken commercial advantage of

28  Plaintiffs confidential, proprietary, and copyrighted software their support materials, the

- 83 -

Complaint

1    underlying processes and applications. In light of Defendants' conduct, it would be

2    inequitable to allow Defendants to retain the benefit of the funds obtained though the

3    unauthorized and unlawful use of that property.

4          410.   Defendants' unfair business practices have unjustly minimized competitive

5    Plaintiffs' advantages and have caused and are causing Plaintiff's to suffer damages.

6          411.   By reason of such unfair competition, Plaintiffs have also suffered irreparable

7    injury and, unless Defendants are enjoined from such unfair competition, will continue to

8    suffer irreparable injury, whereby Plaintiffs have no adequate remedy at law.

9          412.   Defendants should be compelled to disgorge and/or restore any and all

10   revenues, earnings, profits, compensation, and benefits they may have obtained in violation

11   of California Business & Professions Code § 17200 et seq., including, but not limited to,

12   returning any revenue earned from the unlawful and unfair use of Plaintiffs' stolen property,

13   and should be enjoined from further unlawful, unfair, and deceptive business practices.

14

### Count XVI.
### Computer Data Access and Fraud Act
### Cal. Penal Codes §§ 496 and  502
### *( RICO Defendants Rooke and Rogness)*

18         413.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations

19   of paragraphs numbered "1" through "412" above  of this Complaint as though fully set

20   forth here and again.

21   **Misappropriation of Confidential Information:**

22         414.   Defendants **Rooke** and **Rogness** have violated California Penal Codes  §§496

23   and 502(c)(2) by willfully, intentionally, knowingly and fraudulently, without permission

24   exceeding their former right of access and by taking, copying-possessing, deleting in excess

25   20,000 corporate e-mails,  while making use of programs, data, and files from Plaintiffs'

26   Server computer system, and/or computer networks-Server.

27         415.   Plaintiffs are the exclusive owners of said data comprising Plaintiffs' **IP** and

28   support materials, and which has been illegally obtained by Defendants as alleged above.

Complaint

**Damages:**

416.   By reason of and as a result of the acts Defendants **Rooke** and **Rogness** as a direct and proximate result of their unlawful conduct within the meaning of California Penal Code §§496 and 502, Defendants **Rooke** and **Rogness** have caused damage to Plaintiffs in an amount to be proven at trial.- Plaintiffs are also entitled to recover their reasonable attorneys' fees pursuant to California Penal Codes§§ 496 and  502(e).

**Punitive Damages:**

417.   Plaintiffs are informed and believe that the aforementioned acts of the Defendants **Rooke** and **Rogness** were willful and malicious in that the acts described above were done with the deliberate intent to injure Plaintiffs business and advance the business of the *Jingit Enterprise* and their own wealth while willfully, intentionally and knowingly causing harm to Plaintiffs business and **Property**.    Plaintiffs are therefore entitled to punitive damages.

**Injunctive Relief:**

418.   Plaintiffs have also suffered irreparable injury from these acts, and due to the continuing threat of such injury, have no adequate remedy at law, entitling-them to injunctive relief.

**Count XVII.**
**Fraud-Misrepresentation**
***(RICO Defendants Rooke and Rogness)***

419.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "418" above of this Complaint as though fully set forth here and again.

420.   At all times relevant hereto, *RICO Defendants* **Rooke and Rogness** jointly and/or severally  were and are unlawfully in possession of Plaintiffs' **IP** with a stated valuation of $1,300,000,000 US Dollars  and have through the *Jingit Enterprise Entities* willfully and fraudulently converted Plaintiffs **IP** and are unlawfully-falsely holding themselves out to the public and others claiming that they are the owners of the

Complaint

Plaintiffs' **IP** and have the right to use said **IP** in the and conduct the affairs and business of the *Jingit Enterprise Entities* while in the district of this Court and throughout the world, to the detriment and loss of Plaintiffs in their business and Property.

421. At all times relevant hereto, the *RICO Defendants* **Rooke** and **Rogness** jointly and/or severally were and are acting as an *association-in-fact* and have unlawfully-fraudulently invested/taken possession and control of the **IP** to the detriment and loss of Plaintiffs **eoBuy** and **Indiezone.**

422. In performance of the Scheme and fraudulent inducement of Plaintiffs, so as to cause them to allow *RICO Defendants Rooke* and *Rogness* to remain in their employment past their demand for a new equity distribution so as to provide them the opportunity to further infringe or otherwise misappropriate Plaintiffs **IP** and then enter into a release Agreements not to compete on multiple occasions as described heretofore and at above, and thereafter the *RICO Defendants* **Rooke** and **Rogness** in each stage of the fraudulent Scheme did telephonically and/or electronically falsely stated to Plaintiffs claims of loyalty and temporary employment which *RICO Defendants* **Rooke** and **Rogness** knew were false-misleading when uttered and intended to induce Plaintiffs' reliance on in their consent-agreement to allow them to temporarily leave their employ without a turnover of the **IP,** wherein Plaintiff relied on their statements to their detriment.

423. The *RICO Defendants* make the foregoing statements in violation of their Agreements, fiduciary and common law duties, fully knowing that each statement was a fraudulent, misrepresented which omitted material information so as to make them true.

424. The *RICO Defendants* **Rooke** and **Rogness** knowingly and intentionally made false and material misrepresentations and omissions, participated in the fraudulent Scheme as set forth above, to induce to Plaintiffs to enter into a release agreement form their employment in the furtherance of the Scheme to them and injure them in their business and property.

425. The false statements, acts, misrepresentations, and material omissions of the *RICO Defendants* **Rooke** and **Rogness** as set forth above were designed and served to create

and sustain a false reliance by Plaintiffs so as to create the appearance of their continuing activities and business operations.

426. The **RICO Defendants** Rooke and **Rogness** knew or were willful and reckless in knowing of the material omissions and representations referred to herein. Had this information been truthfully and completely disclosed, the **RICO Defendants** Rooke and **Rogness** would have been unable to consummate the Agreement and gain control of Plaintiff's **IP.**

427. The acts and omissions of the **RICO Defendants** Rooke and Rogness as set forth herein, constituted a Plan, Scheme and unlawful course of conduct that operated as a fraud and deceit on Plaintiffs, the purpose and effect of which was to induce Plaintiff to enter into the Agreement with the **RICO Defendants,** Rooke and Rogness while the **RICO Defendants** fraudulently and willfully planned to convert the Plaintiffs **IP.**

428. By reason of, and but for the foregoing, the **RICO Defendants** directly and indirectly committed fraud in that they: (a) employed devices, Schemes and artifices to defraud; (b) omitted/altered or failed to state material facts in the Agreement in order to make the Agreements-documents, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices in the course of business that operated as a fraud and deceit upon each Plaintiff.

429. By reason of the foregoing, a direct and proximate result of the **RICO Defendants'** Rooke and Rogness fraud, Plaintiffs have been damaged, including the loss of investments, loss of corporate opportunities for profit and the usurpation of those opportunities which has been caused to create the attendant profits to the **RICO Defendants** Rooke and Rogness, Hazel, Ashkar, Jingit Holdings, Jingit Financial and Jingit LLC., causing losses to Plaintiffs in the conduct of the **Jingit Enterprise,** with the resulting injury to their businesses and property in the sum of $1,300,000,000 US Dollars by the **RICO Defendants** intentional and wrongful usurpation-destruction seizure of the Joint Venture funds-projects.

430. By reason of, and but for the foregoing, the **RICO Defendants** actions have been illegal willful and outrageous and undertaken with reckless indifference to the

- 87 –

1    rights of Plaintiffs, and as such Plaintiffs are entitled to an award of punitive or

2    exemplary damages to be determined by a jury.

### Count XVIII.
### Intentional Interference With Prospective Economic Advantage
### *(All RICO Defendants)*

6        431.   Plaintiffs repeat, incorporate and otherwise allege by reference the

7    allegations of paragraphs numbered "1" through "430" above of this Complaint as

8    though fully set forth here and again.

9        432.   Both **eoBuy** and **Indiezone** had a joint deployment and deployment

10   strategy and business expectancy in the secrecy of the **IP** created by way of their

11   combined unique, proprietary trade secrets and software processes and in continuing

12   advantageous economic relationships with retailers and merchandisers including, Mexi,

13   Wal-Mart, Kraft General Electric, Target and other prospective purchasers and

14   licensees of Plaintiffs' support services and us licenses for its software and trade

15   secrets.

16       433.   These relationships contained the probability of future economic benefit in

17   the form of profitable support service contracts and enterprise software licenses. Had the

18   **RICO Defendants** refrained from engaging in the unlawful and wrongful affairs of the

19   **Jingit Enterprise** and activities through the conduct described in this complaint, there is

20   a substantial probability that the support customers of **eoBuy** and **Indiezone** would have

21   initiated licenses and continued to renew licenses with expanded support contracts

22   between their companies and Plaintiffs rather than with the **Jingit Enterprise** as

23   controlled by **RICO Defendants**.

24   <u>**Intentional Interference:**</u>

25       434.  The **RICO Defendants** knew about these economic relationships as

26   established by the Plaintiffs' joint deployment strategies and agreements described

27   above, and knew that these relationships would be interfered with and disrupted when

28   the **RICO Defendants** intentionally accessed Plaintiffs' Server and used their knowledge

- 88 -

Complaint

to sabotage the Server where they acted with disregard to their Agreements and fiduciary duties, and instead, they illegally:

- gained unauthorized access to Plaintiffs' Server systems into Plaintiffs' password-protected files in violation of the agreements governing such access;

- gained unauthorized access to the unique codes compellation and processes encoded into the software and support materials available on the Server systems through in violation of the agreements governing such access, including by using log in credentials with no right or license to the software and support materials taken and destroyed by the *RICO Defendants*;

- breached the agreements governing access to, and use of, the files and the software and support materials available through it;

- lured Plaintiffs current and prospective customers by making promotional and marketing videos and statements regarding false authorship and other false claims of ownership and otherwise provided access to the Public's use of the unique processes and trade secrets of Plaintiffs which was-were only made possible because of the *RICO Defendants'* improper access to, and taking from, Plaintiffs Server systems files intended to be maintained as secret;

- used information learned through the improper access to, and taking from the Server systems files intended to provide support services to the Plaintiffs' operation and used them in the affairs of the *Jingit Enterprise* for the financial gain of each *RICO Defendant* and,

Complaint

- 89 –

- gaining unauthorized access to Plaintiff **IP** and thereafter releasing the **IP** through deceptive representations to users customers, causing those customers to infringe on Plaintiffs property for a lack of license agreements with Plaintiffs, disseminating-distribution of the **IP** software hundreds and thousands of times onto unauthorized users systems, and using those copies for various improper purposes, including without limitation the unauthorized branding of Plaintiffs IP as the property of the ***Jingit Enterprise.***

435.   ***RICO Defendants*** conduct was wrongful by a measure beyond the fact of the interference itself. ***RICO Defendants*** gained unauthorized access to Plaintiffs' Server systems through protected password-files, breached the agreements governing access to the system, and use of it, including the software and support materials available through it, and wrongfully used the Plaintiffs' **Property** that they found there to advance their services eliminate or hinder Plaintiffs entry into the e-commerce markets, and otherwise obtain and retain profits for current and prospective clients to the past and continued exclusion of the Plaintiffs with the willful, intentional in injury to their business and **Property**.

**Prospective Clients-Economic Advantage:**

436.   Simultaneously, the ***RICO Defendants*** manipulated Plaintiffs' known customers using the Plaintiffs' unique processes and deployment strategies installing them onto the ***RICO Defendants*** own computer systems and using them to lure away Plaintiffs' current and prospective clients.

437.   This conduct, as alleged above means of action constitutes violations of numerous state and federal statutes and codes, including, but not limited to, violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq., receipt of stolen property, cal. Penal code § 496, unauthorized access to computers, cal. Penal code § 502, wire fraud, 18 U.S.C. § 1343, violation of RICO, 18 U.S.C. § 1962, fraud and related

activity in connection with an access device, 18 U.S.C. § 1029, and violation of the Stored communications Act, 18 U.S.C. § 2701. Defendants' conduct also constitutes trespass to chattels, breach of contract, and unjust enrichment.

438. By reason and result of the **RICO Defendants'** acts, the above-described relationships have been actually disrupted, causing certain current and prospective clients to lose interest and otherwise cancel commitments with Plaintiffs and instead enter into agreements with the **Jingit Enterprise** entities in the use of the unique **eoBuy** micro billing and **Indiezone Ad Engine** processing.

**Damages:**

439. By reason and result of the foregoing there exists a direct and proximate result of harm form the **RICO Defendants'** actions, wherein Plaintiffs have suffered economic harm, including, but not limited to, loss of profits from sales or licenses to current and potential customers in the purchase-use of Plaintiffs' licenses, support services in an amount to be proven at trial.

**Injunctive Releif:**

440. In each instance the **RICO Defendants'** wrongful-illegal conduct was a substantial factor in causing this harm. Unless Defendants are restrained by appropriate injunctive relief, their actions are likely to recur and will cause Plaintiffs irreparable injury for which there is no adequate remedy at law.

### Count XIX.
### Negligent Interference With Prospective Economic Advantage
### *(All Defendants)*

441. Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "440" above of this Complaint as though fully set forth here and again.

442. Both **eoBuy** and **Indiezone** had a joint deployment and deployment strategy and business expectancy in the secrecy of the **IP** created by way of their combined unique, proprietary trade secrets and software processes and in continuing advantageous economic

1  relationships with retailers and merchandisers including Wal-Mart, Kraft General Electric,

2  Target and other prospective purchasers and licensees of Plaintiffs' support services and us

3  licenses for its software and trade secrets.

4  443.  These relationships contained the probability of future economic benefit in the

5  form of profitable support service contracts and enterprise software licenses. Had the **RICO**

6  **Defendants** refrained from engaging in the unlawful and wrongful affairs of the **Jingit**

7  **Enterprise** and activities through the conduct described in this complaint, there is a substantial

8  probability that the support customers of **eoBuy** and **Indiezone** would have initiated licenses

9  and continued to renew licenses with expanded support contracts between their companies and

10  Plaintiffs rather than with the **Jingit Enterprise** as controlled by **RICO Defendants**.

11  **Negligent Interference:**

12  444.  The **RICO Defendants** knew or should have known about these economic

13  relationships as established by the Plaintiffs' joint deployment strategies and agreements

14  described above, and knew or should have known that these relationships would be

15  interfered with and disrupted when the **RICO Defendants** accessed Plaintiffs' Server and

16  damage the Server where they acted with reckless-careless disregard to their Agreements

17  and fiduciary duties, and improperly:

18  •  gained unauthorized access to Plaintiffs' Server systems

19  into Plaintiffs' password-protected files in violation of the

20  agreements governing such access;

21  •  gained unauthorized access to the unique codes

22  compellation and processes encoded into the software and support

23  materials available on the Server systems through in violation of

24  the agreements governing such access, including by using log in

25  credentials with no right or license to the software and support

26  materials taken and destroyed by the **RICO Defendants**;

27  •  breached the agreements governing access to, and use of, the

28  files and the software and support materials available through it;

- 92 –

- • lured Plaintiffs current and prospective customers by making promotional and marketing videos and statements regarding false authorship and other false claims of ownership and otherwise provided access to the Public's use of the unique processes and trade secrets of Plaintiffs which was-were only made possible because of the *RICO Defendants'* improper access to, and taking from, Plaintiffs Server systems files intended to be maintained as secret;

- • used information learned through the improper access to, and taking from the Server systems files intended to provide support services to the Plaintiffs' operation and used them in the affairs of the *Jingit Enterprise* for the financial gain of each *RICO Defendant* and,

- • gaining unauthorized access to Plaintiff **IP** and thereafter releasing the **IP** through deceptive representations to users customers, causing those customers to infringe on Plaintiffs property for a lack of license agreements with Plaintiffs, disseminating-distribution of the **IP** software hundreds and thousands of times onto unauthorized users systems, and using those copies for various improper purposes, including without limitation the unauthorized branding of Plaintiffs IP as the property of the *Jingit Enterprise.*

445.   Defendants' conduct was wrongful-negligent by a measure beyond the fact of the interference itself. Defendants gained unauthorized access to Plaintiffs' Server systems through protected password-files, breached the agreements governing access to the system, and use of it, including the software and support materials available through it, and wrongfully used the Plaintiffs' **Property** that they found there to advance their services

- 93 -

Complaint

eliminate or hinder Plaintiffs entry into the e-commerce markets, and otherwise obtain and retain profits for current and prospective clients to the past and continued exclusion of the Plaintiffs with the willful, intentional in injury to their business and **Property**.

**Prospective Clients-Economic Advantage:**

446. Simultaneously, the ***RICO Defendants*** manipulated Plaintiffs' known customers using the Plaintiffs' unique processes and deployment strategies installing them onto the ***RICO Defendants*** own computer systems and using them to lure away Plaintiffs' current and prospective clients.

447. This conduct, as alleged above means of action constitutes violations of numerous state and federal statutes and codes, including, but not limited to, violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq., receipt of stolen property, cal. Penal code § 496, unauthorized access to computers, cal. Penal code § 502, wire fraud, 18 U.S.C. § 1343, violation of RICO, 18 U.S.C. § 1962, fraud and related activity in connection with an access device, 18 U.S.C. § 1029, and violation of the Stored communications Act, 18 U.S.C. § 2701. Defendants' conduct also constitutes trespass to chattels, breach of contract, and unjust enrichment.

448. By reason and result of the ***RICO Defendants'*** acts, the above-described relationships have been actually disrupted, causing certain current and prospective clients to lose interest and otherwise cancel commitments with Plaintiffs and instead enter into agreements with the ***Jingit Enterprise*** entities in the use of the unique **eoBuy** micro billing and **Indiezone Ad Engine** processing.

**Damages:**

449. By reason and result of the foregoing there exists a direct and proximate result of harm form the ***RICO Defendants'*** actions, wherein Plaintiffs have suffered economic harm, including, but not limited to, loss of profits from sales or licenses to current and potential customers in the purchase-use of Plaintiffs' licenses, support services in an amount to be proven at trial.

- 94 –

**Injunctive Releif:**

450.    In each instance the ***RICO Defendants'*** wrongful-illegal conduct was a substantial factor in causing this harm. Unless Defendants are restrained by appropriate injunctive relief, their actions are likely to recur and will cause Plaintiffs irreparable injury for which there is no adequate remedy at law.

**Count XX.**
**Breach of Contract**
***(Against Rooke and Rogness)*

451.    Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "450" above  of this Complaint as though fully set forth here and again.

**Agreement:**

452.    Defendants **Rooke** and **Rogness** agreed to be bound by the Terms of their employment agreements with Plaintiff and the special terms of secrecy and confidentiality together with the legal restrictions rights and duties, and/or the legal obligations contained in those documents.

453.    Plaintiffs performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions.

**Breach of Agreement:**

454.    Defendants have breached the terms of their agreements the legal duties restrictions, among other things:

• gained unauthorized access to Plaintiffs' Server systems into Plaintiffs' password-protected files in violation of the agreements governing such access;

• gained unauthorized access to the unique codes compellation and processes encoded into the software and support materials available on the Server systems through in

violation of the agreements governing such access, including by using log in credentials with no right or license to the software and support materials taken and destroyed by the **RICO Defendants**;

• breached the agreements governing access to, and use of, the files and the software and support materials available through it;

• lured Plaintiffs current and prospective customers by making promotional and marketing videos and statements regarding false authorship and other false claims of ownership and otherwise provided access to the Public's use of the unique processes and trade secrets of Plaintiffs which was-were only made possible because of the **RICO Defendants'** improper access to, and taking from, Plaintiffs Server systems files intended to be maintained as secret;

• used information learned through the improper access to, and taking from the Server systems files intended to provide support services to the Plaintiffs' operation and used them in the affairs of the **Jingit Enterprise** for the financial gain of each **RICO Defendant** and,

• gaining unauthorized access to Plaintiff **IP** and thereafter releasing the **IP** through deceptive representations to users customers, causing those customers to infringe on Plaintiffs property for a lack of license agreements with Plaintiffs, disseminating-distribution of the **IP** software hundreds and thousands of times onto unauthorized users systems, and using those copies for various improper purposes, including without limitation the unauthorized branding of Plaintiffs IP as the property of the **Jingit Enterprise.**

**Damages:**

455.   By reason of the breach of their Agreements with Plaintiffs Defendants **Rooke** and **Rogness** violated the terms and legal restrictions, therein causing damages to Plaintiffs in an amount to be proven at trial.

**Count XXI.**
**Trespass To Chattels**
*(Against Rooke and Rogness)*

456.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "455" above of this Complaint as though fully set forth here and again.

**Trespass:**

457.   At all times mentioned in this Complaint, Plaintiffs had legal title or license to and actual possession of one another's **IP** and support materials on the Server system, as described above.

458.   Defendants intentionally interfered with the use or possession of both the **IP** and supporting system, and the copies of support materials housed for licensed access through their Server. Defendants' trespass and interference proximately caused damage to Plaintiffs **Property**, including, but not limited to, damage to the functionality of Plaintiffs Server, damage to Plaintiffs rights to dominion and control over its **Property**, and damage to the confidential nature of the information on its Server.

**Damages:**

459.   By reason of the Defendants illegal acts Plaintiffs' **Property** has been greatly diminish in value and deprived Plaintiff of the intended exclusive uses of its **IP** and unique processing system.

460.   Plaintiffs are entitled to recover any and all damages it sustained as a result of such trespass, in an amount to be determined at trial, but in no event a sum less than One Billion Three Hundred Million $1,300,000,000 Dollars.

Complaint

**Injunctive Relief:**

461.    Defendants' trespass interfered with, and damaged, the integrity and functionality of Plaintiffs' **IP** and support materials by reason of their partial disclosure and illegal use if said **IP**.

462.    Defendants will continue to commit such acts and  will continue to disclose the IP which therefore threatens to cause irreparable harm to Plaintiffs, for which no remedy at law is adequate to compensate it for the injuries inflicted and threatened.

### Count XXII.
### Unjust Enrichment/Restitution
### *(Against All Defendants)* *

463.    Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1"  through "462" above  of this Complaint as though fully set forth here and again.

464.    Defendants unjustly received financial and other business benefits at the expense of Plaintiffs through the *RICO Defendants'* wrongful conduct, including Defendants' breach of the agreements and laws-Codes governing access to and use of Plaintiffs Computer network and support system and its unique interface to Plaintiff's planned business deployment.

465.    By reason of the foregoing illegal conduct Defendants have wrongfully obtained an unfair economic and technical advantage.

466.    Likewise, Defendants' trespassed into Plaintiffs' computer network, and Defendants computer fraud concerning their **IP** and support materials, which took substantial time and to develop and at a cost of in excess of Twenty Million ($20,000,000) Dollars.

467.    The *RICO Defendants* continue to unjustly retain these benefits at the expense of Plaintiffs. It would be unjust for Defendants to retain any value they obtained as a result of their wrongful conduct.

### COUNT XXIII.
### Breach of Fiduciary Duties
### * (RICO Defendants Rooke and Rogness)* *

468.    Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "467" above  of this Complaint as though fully set forth here and again.

Complaint

469.   The Defendants **Rooke** and **Rogness** have violated the fiduciary duties owed to the Plaintiffs Corporations and its shareholders and have acted to put their personal interests ahead of the interests; of Plaintiff Corporations and its shareholders or abandoned their duties.

470.   These Defendants have   taken actions which ensure their interests at the expense of Plaintiff Corporations and its  shareholders and taken an unfair advantage by effectively remove the Plaintiffs their right to deploy their **IP.**

471.   By the acts, transactions, and courses of conduct alleged herein, *RICO Defendants* Rooke and Rogness, individually and acting as a part of a common plan/Scheme will unfairly deprive Plaintiff and of their exclusive right to their **IP**.

472.   Plaintiffs  will suffer irreparable harm unless the actions of these Defendants are enjoined and a process of turnover of the **Jingit** operations is immediately order by a Court of competent jurisdiction.

## Count XXIV.
### Imposition of Constructive Trust
### Appointment of Referee Injunctive Relief
### * (Against All Defendants) *

473.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "472" above of this Complaint as though ully set forth here and again.

474.   *RICO Defendants,* **Rooke** and **Rogness** were in a confidential and fiduciary relationship of trust and loyalty with each of the Plaintiff Corporations wherein there were written Agreements providing a promise on the part of these not to disclose, to keep secret, and otherwise refrain from the improper use and dissemination-distribution of Plaintiffs' **IP** and Trade Secrets.

475.   Commencing in or about June of 2009, *RICO Defendants* Rooke and **Rogness** 2009, began to violate their duty of trust, intentionally, willfully and with disregard of the Agreements with Plaintiffs and began to infringe or otherwise misappropriate Plaintiffs' **IP**.

476.   In performance of the scheme to infringe-misappropriate Plaintiffs **IP**, *RICO Defendants*, collectively and each individually, are currently in possession, or will in the future

- 99 –

*Complaint*

will come into possession, of funds-assets, which are rightfully the property of Plaintiffs, by operation of the *Jingit Enterprise*.

477.    The *RICO Defendants* have no legal right to hold and/or enjoy any such funds-assets in equity and good conscience, as such, any funds which come into the possession of the *RICO Defendants* shall only do so as a direct consequence of their scheme and artifice to defraud the Plaintiffs.

478.    Plaintiffs are entitled to the establishment of a constructive trust consisting of the benefit conferred upon Defendants by the revenues derived from their wrongful conduct and for the expense of Plaintiffs work including as alleged above, any and all profits derived from their wrongful conduct.

479.    That by reason of the foregoing, Plaintiffs are entitled to the appointment of a Referee; upon the imposition of the constructive trust over any profits made directly or indirectly and arising from the conduct complained of herein together with permanent injunctive relief prohibiting the Defendants from claiming ownership or use of Plaintiffs' **IP** in any manner.

### Count XXV.
### An Accounting
### *(All Defendants)* *

480.    Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "479" above of this Complaint as though fully set forth here and again.

481.    Since at least June 2009, the *RICO Defendants* have conspired to conduct business through the use of unlawful conduct including, but not limited to:

> (a)    Breaching the Agreements governing access to or use of Plaintiffs' Server, their **IP** and trade secrets;

> (b)    Intentionally and/or negligently interfering with Plaintiffs' prospective economic advantage with its existing and potential customers;

Complaint

(c)     Improperly, willfully, and unlawfully taking commercial advantage of the investment in Plaintiffs' **IP** and by **Jangit** for the purpose of sabotaging Plaintiff's ability to do business and compete in the e-commerce market; and,

(d)     Fraudulently accessing and intentionally trespassing on Plaintiff's password-protected customer support network, without authorization or consent, and in otherwise exceeding authorized consent in furtherance of their unlawful and deceptive scheme as described above.

482.   Defendants have received money as a result of their illegal activities and other wrongful misconduct, all at the expense of, and undertaken at the expense of Plaintiffs, and as such said money is rightfully due to Plaintiffs.

483.   The amount of money due from Defendants to Plaintiffs is presently unknown to Plaintiffs and cannot be ascertained without an accounting of the income and gross profits Defendants have obtained through their wrongful and unlawful conduct.

484.   Plaintiffs are entitled, therefore, to a full accounting of all financial transaction involving all of the **RICO Defendant**s and the **Jingit Enterprise** as to all transaction between them and any third party-creditors-debtors involving the use of Plaintiff's copyright, trade secrets and/or conversion of Plaintiffs property.

## Count XXVI.
## Permanent Injunction
### *(All Defendants)*

485.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "484 above of this Complaint as though fully set forth here and again.

486.   That by reason of the foregoing, Plaintiffs are entitled a preliminary injunction, and a permanent injunction, all enjoining **Defendants,** and each of them, and

Complaint

their agents, servants, and employees, and all persons acting under, in concert with, or for them in the use of Plaintiffs' **IP** any and all claims of ownership thereof.

### Count XXVII.
### Declaratory Judgment
### *(All Defendants)*

487.    Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "486" above of this Complaint as though fully set forth here and again.

488.    An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend the Defendants have infringed, misappropriated or are otherwise unlawfully used its **IP** without lawful right authority or consent.

489.    Plaintiffs' desires a judicial determination of its rights and duties, and a declaration as to ownership of the **eoBuy** and **Indiezone IP**.

490.    A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may exercise their exclusive rights of ownership.

491.    That by reason of the unlawful conduct of the Defendants, Plaintiffs have and will continue to suffer financial loss and other burdens now being suffered by unsettled state of affairs.

492.    To date, Plaintiffs have suffered actual damages in excess of $20,000,000, with a potential loss in excess of $1,300,000,000.

### Prayer For Relief

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendants as follows:

That Plaintiffs be granted injunctive and monetary relief, with the resulting injury to their businesses and property, in an amount to be proven at trial, including profits attributable to the infringement not taken into account in computing actual damages-17 U.S.C. § 504(b) and statutory damages under 17 U.S.C. § 504(c), on each of the foregoing claims under both the federal and state laws and under the common law for

claim involving or related to allegations of Copyright infringement 17 U.S.C. 501-506(a)(1)(A), 17 U.S.C. 106 Exclusive rights in copyrighted works; 15 U.S.C. 1114, 18 U.S.C. 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(B), 1030(a)(5)(C), 1030(c)(2), 1030(g), 18 U.S.C. 1029 of the Federal Computer Fraud and Abuse Act; Trade Mark-Trade Dress; Federal Trademark Act of 1946, as amended (the Lanham Act), 15 U.S.C. 1125(a), 1125(c) 1125(d), in an amount to be determined at trial, profits made by Defendants on sales of products by use of the Mark and the costs of this action; 18 U.S.C. 1341 mail fraud and 1343 wire fraud; 18 U.S.C. 1832 (theft of trade secrets), 18 U.S.C. 1956 and 1957 money laundering, engaging in monetary transactions in property derived from specified unlawful activity; in violation of the RICO Statute 18 U.S.C. 1961-1968, et seq., in the sums of no less than $20,000,000.00 Million Dollars in actual loss and One Billion Three Hundred Thousand ($1,300,000,000.00) Dollars in loss of economic advantage; 18 U.S.C. 2314-2315 possession and receipt of stolen property; and 18 U.S.C. 2319, criminal infringement of a copyright; in violation of the Stored Communications Act, 18 U.S.C. 2701- 1, 2701(a)(2); California Business and Professions Code §§ 17200 and 17500 *et seq.*; Cal. Penal Code 496 receipt of stolen property; Cal. Penal Code 502 unauthorized access to computers; theft of trade secrets Cal. Civ. Code 3426.11 any and all other federal laws; California state laws and common law applications for Negligence per se, Negligent Interference with Prospective Economic Advantage; Intentional Interference with Prospective Economic Advantage, Trespass to Chattels, and Unjust Enrichment, Fraud-Misrepresentation, Aiding and Abetting; California state laws and common law applications for direct, contributory or vicarious copyright infringement, direct, contributory or vicarious trademark infringement, in the sums of no less than $20,000,000.00 Million Dollars in actual loss and One Billion Three Hundred Thousand ($1,300,000,000.00) Dollars in loss of economic advantage; specifically, that the ***RICO Defendants*** and all of their respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them be enjoined from:

A. Using the **IP** including its trademark **Music.Me,** or any trademark confusingly similar to the **Music.Me** trademark, in connection with the marketing, promotion, advertising, sale, or distribution of any of its products or services;

    1. directly or indirectly engaging in false advertising or promotions of **Jingit** products;

    2. making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact in connection with the ownership, promotion, advertisement, packaging, display, sale, offering for sale, processing, methodology, circulation or distribution of Plaintiffs' **IP** software/products-proprietary processes by making false representations regarding Plaintiffs' ownership or right of use;

B. That **_RICO Defendants_** file, within ten (10) days from entry of a preliminary injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Defendants have and will comply with the terms of the injunction as ordered by this Court;

C. That the **_RICO Defendants_** be ordered to correct any erroneous impression persons may have derived concerning the nature, characteristics, or qualities of Plaintiffs' **IP** including without limitation:

    1. the sending of a registered letter (with a copy to Plaintiffs to all internet search engines, including but not limited to, Google, Yahoo!, Bing and other search engines, requesting that Defendants' keyword advertising and sponsored advertisements be removed from their search engines;

    2. the placement of corrective advertising on the Jingit LLC., websites informing sponsors consumers of their prior misrepresentations regarding Plaintiff's **IP** and the false statements of ownership;

    3. the removal of all false and misleading links to any other Defendants websites;

Complaint

1     D. That the **RICO Defendants** be adjudged to have violated the foregoing

2     Codes, Statues, and laws by unfairly competing against Plaintiffs by using false, deceptive

3     or misleading means of acquiring Plaintiffs' **IP**;

4     E. That the **RICO Defendants** be adjudged to have unlawfully and unfairly

5     competed against Plaintiff under the laws of the State of California, Cal. Bus. & Prof. Code

6     § 17200, *et seq.*;

7     F. That Defendants be adjudged to have competed unlawfully and unfairly

8     against Plaintiff by engaging in false or misleading advertising under the laws of the State

9     of California, Cal. Bus. & Prof. Code § 17500, *et seq.*;

10    H. That Plaintiff be awarded damages pursuant to 15 U.S.C. § 1117(a),

11    sufficient to compensate it for the damage caused by Defendants' false and misleading

12    statements with the resulting injury to their businesses and property in the sums of no less

13    than $20,000,000.00 Million Dollars in actual loss and One Billion Three Hundred

14    Thousand ($1,300,000,000.00) Dollars in loss of economic advantage.

15    I. That Plaintiffs be awarded Defendants' profits derived by reason of said

16    acts, or as determined by said accounting;

17    J. That such damages and profits be trebled and awarded to Plaintiffs and that

18    it be awarded its costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117, as a

19    result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act;

20    K. That Plaintiff be awarded damages in an amount sufficient to compensate it

21    for the damage caused by Defendants' unfair competition and false advertising under

22    California Business and Professions Code §§ 17200 and 17500 *et seq.*, and contributory

23    trademark infringement and vicarious trademark infringement under federal law and

24    California common law;

25    L. That Plaintiffs be granted prejudgment and post judgment interest;

26    M. That Plaintiffs be granted costs associated with the prosecution of this

27    action;

28    N. That Plaintiffs be granted such further relief as the Court may deem just.

Complaint

1 | Dated: September 10, 2013

2

3 | Douglas R. Dollinger, Esq.--Pro Hoc Vice
Bar No. N.Y. 2354926
4 | 260 Main Street
Goshen, New York 10924
5 | Tel.    845.915.6800
Facs.   845.915.6801
6 | E-mail ddollingeresq@gmail.com

7

8 | Seth D. Heyman, Esq.
CA Bar No. 194120CA
9 | 2600 Michelson Drive, Suite 900,
Irvine, CA 92612.
10 | Tel: 855.439.6628
Fax: 855.407.7714
11 | e-mail sdh@heymanlegal.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint

– 106 –