James W. Morando, CA Bar No. 87896
Deepak Gupta, CA Bar No. 226991
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: 415.954.4457
Facsimile: 415.954.4480
Email:  jmorando@fbm.com
Email:  dgupta@fbm.com

Catherine Ahlin-Halverson, CA Bar No. 209391
Alain M. Baudry, MN Bar No. 186685 (*Pro hac vice* application pending)
Keiko L. Sugisaka, MN Bar No. 266152 (*Pro hac vice* application pending)
Joseph P. Ceronsky, MN Bar No. 391059 (*Pro hac vice* application pending)
MASLON EDELMAN BORMAN & BRAND, LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-4140
Telephone: 612-672-8200
Facsimile: 612-672-8344
Email:  catherine.ahlin@maslon.com

**ATTORNEYS FOR DEFENDANTS JINGIT LLC, JINGIT HOLDINGS, LLC, JINGIT FINANCIAL SERVICES, LLC, MUSIC.ME, LLC, TODD ROOKE, JOE ROGNESS, SAM ASHKAR, PHIL HAZEL, HOLLY OLIVER, SHANNON DAVIS, JUSTIN JAMES, CHRIS OHLSEN, DAN FRAWLEY, DAVE MOOREHOUSE, II, TONY ABENA, CHRIS KARLS AND JOHN E. FLEMING**

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| Indiezone, Inc., a Delaware corporation, and EoBuy, Limited an Irish private limited company, | Case No:  CV 13-04280 YGR/EDL |
| Plaintiffs, | Hearing Date: February 18, 2014<br>Hearing Time: 2:00 p.m.<br>Place: Oakland Courthouse<br>Courtroom: 5, Second Floor |
| vs. | |
| Todd Rooke, Joe Rogness, Phil Hazel, Sam Ashkar, Holly Oliver and U.S. Bank, collectively the ***RICO Defendants***; | |

1
2
3
4
5

Jingit LLC, Jingit Holdings, LLC, Jingit Financial Services LLC., Music.Me, LLC., Tony Abena, John E. Fleming, Dan Frawley, Dave Moorehouse II, Chris Ohlsen, Justin James, Shannon Davis, Chris Karls in their capacities as officers, agents and/or employees of Jingit LLC, *Defendants in Negligence, and Aiding/Abetting*;

6
7

Wal-Mart, General Electric, Target, DOE(s) and ROE(s) 1 through 10, *Defendants in Negligence Secondary-Vicarious Infringement*,

8

Defendants.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MOTION OF DEFENDANTS ROOKE AND ROGNESS TO COMPEL ARBITRATION WITH INDIEZONE, INC., DISMISS PLAINTIFF EOBUY, LIMITED AND MOTION OF REMAINING DEFENDANTS TO STAY ALL REMAINING PROCEEDINGS**

# **TABLE OF CONTENTS**

**PAGE**

NOTICE OF MOTION ........................................................................................................ 1

MOTION ........................................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................ 2

INTRODUCTION ............................................................................................................. 2

STATEMENT OF FACTS ............................................................................................... 4

    I.    Rooke and Rogness Executed Employee Agreements with Indiezone
          Containing Mandatory Arbitration Provisions.................................................. 4

    II.    Plaintiffs' Complaint......................................................................................... 5

    III.    EoBuy is a Dissolved Corporation Under Irish Law. ....................................... 7

ARGUMENT .................................................................................................................... 7

    I.    This Court Should Compel Arbitration Between Indiezone and Rooke and
          Rogness. ............................................................................................................ 7

          A.    Federal Policy Favors Arbitration and All Doubts Are to Be Resolved
               in Favor of Arbitration. ...................................................................... 7

          B.    Rooke and Rogness' Employee Agreements with Indiezone Contain
               Valid Arbitration Provisions Compelling Mandatory and Exclusive
               Arbitration of All Disputes. ................................................................ 8

          C.    The Entire Dispute Between Indiezone and Rooke and Rogness Falls
               Within the Broad Scope of the Arbitration Clause. ........................... 9

    II.    This Court Should Dismiss Plaintiff eoBuy Because It Lacks Capacity to
          Bring Suit. ....................................................................................................... 10

    III.    Alternatively, This Court Should Compel eoBuy to Arbitrate Because It Was a
          Joint Venturer With Indiezone and Its Claims are Based on the Employee
          Agreements That Mandate Arbitration. .......................................................... 13

          A.    EoBuy Would Be Compelled to Arbitrate Claims Against Rooke and
               Rogness Under an Estoppel Theory.................................................. 13

          B.    EoBuy Would Be Compelled to Arbitrate Its Claims Against
               Defendants Rooke and Rogness Under Agency Theory.................... 15

    IV.    This Court Should Stay Proceedings As to All Remaining Defendants. ................... 16

CONCLUSION ................................................................................................................ 20

1

## TABLE OF AUTHORITIES

2

3

## CASES

4

5

*Ahtna Gov't Servs. Corp. v. 52 Rausch*, No. C 03-00130, 2003 U.S. Dist. LEXIS 2460
(N.D. Cal. Feb. 18, 2003) ............................................................................................ 16

6

*Alosio v. Iranian Shipping Lines, S.A.*, 426 F. Supp. 687 (S.D.N.Y. 1976) ...................................... 11

7

*Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2012 U.S. Dist. LEXIS 67102
(N.D. Cal. May 14, 2012) ............................................................................................ 12

8

9

*AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011) ................................................................ 7

10

*Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914 (9th Cir. 2011) ................................................ 9

11

*Chicago Title and Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp.*, 302 U.S. 120 (1937) ...... 10

12

*Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006) .......................................................................... 13

13

*Community Electric Service, Inc. v. National Electrical Contractors Ass'n*, 869 F.2d 1235
(9th Cir. 1989) ............................................................................................................. 11

14

*Copytele, Inc. v. AU Optronics Corp.*, No. C-13-0380, 2013 U.S. Dist. LEXIS 95645
(N.D. Cal. July 9, 2013) ......................................................................................... 17, 18

15

16

*Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017 (N.D. Cal. 2012) ............................................................ 4

17

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ................................................................... 7

18

*Edwards v. First Am. Corp.*, No. 07-03796, 2012 U.S. Dist. LEXIS 174957
(C.D. Cal. Nov. 30, 2012) ............................................................................................. 8

19

20

*Eshelman v. Orthoclear Holdings, Inc.*, No. C 07-1429, 2009 U.S. Dist. LEXIS 19293
(N.D. Cal. Feb. 27, 2009) ............................................................................................ 12

21

*Haskins v. Fuller-O'Brien, Inc.*, No. 11-cv-05142, 2013 U.S. Dist. LEXIS 60912
(N.D. Cal. Apr. 26, 2013) ............................................................................................ 11

22

23

*Healthtrac, Inc. v. Sinclair*, 302 F. Supp. 2d 1125 (N.D. Cal. 2004) ................................................ 11

24

*Howard Elec. & Mech. v. Briscoe Co.*, 754 F.2d 847 (9th Cir. 1985) ................................................. 7

25

*Larson v. Speetjens*, No. C 05-3176, 2006 U.S. Dist. LEXIS 66459
(N.D. Cal. Sept. 1, 2006) ........................................................................................ 14, 16

26

27

*Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185 (9th Cir. 1986) .............................................. 13

28

*Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 817 F.2d 1448 (9th Cir. 1987) ...................... 11

*Lewis v. Russell*, 838 F. Supp. 2d 1063 (E.D. Cal. 2012) ................................................... 11

*Marzocchi v. Tara Tiger, Inc.*, No. 12-cv-4433, 2013 U.S. Dist. LEXIS 39677
    (N.D. Cal. Mar. 21, 2013) ................................................................ 8, 15

*Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831 (N.D. Cal. 2013) ..................... 7, 8

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ........................... 8, 16

*Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013) ............................................ 14, 15

*Peck Ormsby Constr. Co. v. City of Rigby,* 526 Fed. Appx. 769, 770 (9th Cir. 2013) ............... 13, 15

*Pullen v. Victory Woodwork, Inc.*, No. 2:07-CV-00417, 2007 U.S. Dist. LEXIS 46573
    (E.D. Cal. June 27, 2007) ................................................................ 13, 14

*Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844 (9th Cir. 2013) ........................................ 13

*Ramirez v. Freescore, LLC*, No. 8:11-cv-0720, 2011 U.S. Dist. LEXIS 97374
    (C.D. Cal. Aug. 30, 2011) ................................................................. 5

*Randhawa v. Skylux, Inc.*, No. 2:09-2304, 2010 U.S. Dist. LEXIS 113131
    (E.D. Cal. Oct. 15, 2010) ................................................................. 17

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) ........................................ 7, 9

*Souza v. Great Am. Ins. Co.*, No. 13-cv-03361, 2013 U.S. Dist. LEXIS 144913
    (N.D. Cal. Oct. 7, 2013 ................................................................. 17, 18

*Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011) ......................... 16

*Tech. & Intellectual Prop. Strategies Group PC v. Insperity, Inc.*, No. 12-CV-03163
    2012 U.S. Dist. LEXIS 170714 (N.D. Cal. Nov. 29, 2012) ................................ 17, 18

*Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924 (N.D. Cal. 2012) ............................. 8, 9

*Universe Sales Co. v. Silver Castle, Ltd.*, 182 F.3d 1036 (9th Cir. 1999) ......................... 12

*Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 28 Cal. Rptr. 3d 752
    (Cal. Ct. App. 2005) ................................................................... 15

*Wolf v. Langemeier*, No. 2:09-CV-03086, 2010 U.S. Dist. LEXIS 87017
    (E.D. Cal. Aug. 24, 2010) ............................................................... 17

**STATUTES**

9 U.S.C. § 2 ................................................................................................ 1, 3, 8

9 U.S.C. § 3 ................................................................................................. 1, 16

**RULES**

Fed. R. Civ. P. 12(b) ...................................................................................... 1, 3

Fed. R. Civ. P. 17(a) ........................................................................................... 1

Fed. R. Civ. P. 17(b) .................................................................................. 1, 3, 11

Fed. R. Civ. P. 44.1 ........................................................................................... 12

**OTHER AUTHORITY**

16A Carol A. Jones, *Fletcher Cyclopedia Corporations* § 8142 (2012) ............................................ 10

**NOTICE OF MOTION**

Please take notice that on February 18, 2014, at 2:00 p.m., or as soon thereafter as counsel may be heard, at the Oakland Courthouse, Courtroom 5, Second Floor, before the Honorable Yvonne Gonzalez Rogers, Judge of the United States District Court for the District of Northern California, Defendants will move for an order compelling arbitration with Indiezone, Inc., dismissing eoBuy, Limited, and staying the remaining proceedings pending arbitration.

**MOTION**

Defendants Todd Rooke and Joe Rogness move the Honorable Yvonne Gonzalez Rogers to compel arbitration of all claims against them by Plaintiff Indiezone, Inc. pursuant to 9 U.S.C. § 2 and the binding arbitration clause in their Indiezone Employee Agreements.  Defendants Todd Rooke, Joe Rogness, Jingit, LLC, Jingit Holdings, LLC, Jingit Financial Services, LLC, Sam Ashkar, Phil Hazel, Holly Oliver, Shannon Davis, Justin James, Chris Ohlsen, Dan Frawley, Dave Moorehouse II, Tony Abena, Chris Karls, John E. Fleming, and Music.Me, LLC move to dismiss eoBuy, Limited pursuant to Fed. R. Civ. P. 17(b)(2) and 12(b)(6) because it is a defunct Irish corporation with no capacity to sue.[1]  Finally, all served Defendants except Rooke and Rogness move to stay the remaining claims against them pending the outcome of the arbitration against Rooke and Rogness pursuant to 9 U.S.C. § 3 because all claims against all other Defendants are wholly dependent on Indiezone's arbitrable claims that the Rooke and Rogness misappropriated trade secrets or other proprietary information of Plaintiffs.  The motions are based on the files, records, and proceedings herein, the arguments and any supporting affidavits made hereto, arguments of counsel to be made before the Court, Fed. R. Civ. P. 12(b) and 17(a) and 9 U.S.C. §§ 2 & 3.

---

[1]  Defendants Walmart, General Electric and Target have not yet been served with the Complaint and are not parties to this motion.  Defendant U.S. Bank N.A. separately joins the motion to stay all proceedings against it pending the outcome of the Indiezone arbitration.

## STATEMENT OF ISSUES TO BE DECIDED

1.   Do the Employee Agreements between Plaintiff Indiezone, Inc. and Defendants Todd Rooke and Joe Rogness mandate arbitration of the claims between these parties?

2.   Does Plaintiff eoBuy, Limited lack capacity to bring suit because it is a dissolved Irish corporation, or, alternatively, would it be likewise compelled to arbitrate all claims against Rooke/Rogness?

3.   Should the Court stay all remaining proceedings between Plaintiffs and the non-Rooke/Rogness moving Defendants pending the outcome of the arbitration between Indiezone, Rooke and Rogness?

## INTRODUCTION

Plaintiffs' Complaint is prolix, but at its core alleges that Defendants Todd Rooke ("Rooke") and Joe Rogness ("Rogness"), while employed by Indiezone, Inc. ("Indiezone"), misappropriated Indiezone's and eoBuy's intellectual property and later misused it in the operation of a new company, Jingit, LLC.  The very first paragraph of the Complaint explains "[t]he claims presented in this Complaint comprise allegations of a criminal agreement, a conspiracy, involving the … theft of Plaintiff eoBuy's and Plaintiff Indiezone's … intellectual property…."  (Compl. ¶ 1.)  From this garden variety tort claim, Plaintiffs have concocted a fantastical theory that Jingit, and all its independent vendors and bankers somehow participated in a criminal conspiracy, including violations of the federal Racketeering Influence and Corrupt Organizations Act ("RICO"), by entering into sponsorship or other contracts with Jingit.

While the claims in Plaintiffs' Complaint contain a litany of pleading defects too numerous to catalogue, it is not necessary at this juncture for the Court to go through the time consuming process of having to address those issues.  That is because this entire case may be summarily disposed based upon three basic and inviolable legal grounds.

First, all claims asserted against Rogness and Rooke, former Indiezone employees, are subject to mandatory arbitration.  Every single claim in the Complaint derives from the central allegation in paragraph 1 that, while employed by Indiezone, Rooke and Rogness allegedly

misappropriated information from Indiezone and its joint venture partner, eoBuy, Limited ("eoBuy").  Rooke and Rogness each executed Employee Agreements with Indiezone containing both confidentiality provisions prohibiting Rooke and Rogness from misappropriating confidential information and a broad arbitration clause providing for mandatory arbitration of all claims arising out of or relating to the Employee Agreements or any breach thereof.  (Compl. ¶ 116.)  Because every single claim rests on a theory that Rooke and Rogness misappropriated confidential information, all claims asserted by Indiezone against Rooke and Rogness are therefore subject to mandatory arbitration pursuant to 9 U.S.C. § 2.

Concededly, Rooke and Rogness did not enter into these employee agreements with Indiezone's joint venture partner, eoBuy.  Eobuy, however, is indisputably a dissolved Irish corporation and therefore lacks the capacity to sue under Irish law.  *See* Declaration of Brian Walker ("Walker Decl.").  Pursuant to Fed. R. Civ. P. 17(b) and well settled federal law, eoBuy therefore lacks capacity to bring suit in any United States District Court.  As a result, all claims brought by it should be dismissed pursuant to Fed. R. Civ. P. 17(b)(2) and 12(b)(6).  Even if eoBuy had capacity to sue, it should also be compelled to arbitrate because by Plaintiffs' own admission it is a joint venturer with Indiezone, and it is estopped from avoiding arbitration because it too asserts breaches of the Indiezone employee agreements against Rooke and Rogness that contain the binding arbitration clause.

Finally, Indiezone's claims against the remaining moving Defendants should be stayed pending the arbitration because they too rely entirely on the allegation that Rooke and Rogness misappropriated Plaintiffs' intellectual property, the very subject of the mandatory arbitration between Indiezone, Rooke and Rogness.  Where non-arbitrable claims against third parties are dependent on the outcome of arbitrable claims between other parties, federal courts routinely stay litigation of the non-arbitrable claims to preserve judicial resources, avoid the risk of inconsistent

results, and adhere to the deference to arbitration proceedings mandated by the Federal Arbitration Act.  Thus, the claims against all remaining Defendants should be stayed pending the outcome of the arbitration between Indiezone, Rooke and Rogness.

## STATEMENT OF FACTS

Rooke and Rogness are Co-Founders and Co-CEOs of Defendant Jingit, LLC, a company that facilitates electronic payments between retailers or brands and consumers when consumers watch online advertisements and engage with and purchase products in stores.  (Compl. ¶¶ 28-31 & 37; *see also* https://www.jingit.com/home/how-jingit-works/.)[2]  They are also former employees of Indiezone.  (*Id.* ¶¶ 116-17.)  According to the Complaint, eoBuy's business consisted of licensing a "payment processing and content monetization platform … which enables … real-time settlement of fractional transactions in amounts less than .99 cents via the internet for sale of digital content."  (*Id.* ¶ 7.)  Indiezone began sometime between 2006 and 2008 as "a development division/arm of [eoBuy]."  (*Id.* ¶ 90.)  Around December 2006, eoBuy decided to license its technology "in a joint venture … for the sales and purchases in fractional amounts for digital music content with a new entity [also] to be named Indiezone."  (*Id.* ¶¶ 109-10.)  In May 2007, eoBuy created Indiezone, LLC under Delaware law and granted it a license of eoBuy technology for financial transactions.  (*Id.* ¶¶ 114 & 122.)  Plaintiffs describe Indiezone's business as an "Ad-Engine" used for digital distribution of products such as music.  (*Id.* ¶ 13.)  The Complaint does not allege that eoBuy or Indiezone ever actually conducted any business—only that eoBuy licensed a technology to Indiezone for a joint venture.  (*Id.* ¶¶ 90-186.)  Plaintiffs claim the alleged theft of intellectual property by Rooke and Rogness prevented Indiezone from "raising investment funds."  (*Id.* ¶ 185.)

I.     **Rooke and Rogness Executed Employee Agreements with Indiezone Containing Mandatory Arbitration Provisions.**

---

[2] The jingit.com website is repeatedly referenced in the Complaint and may therefore be cited herein.  *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1022 (N.D. Cal. 2012).

The Complaint alleges that Indiezone required Rooke and Rogness to execute Employee Agreements at the commencement of their employment.   (Compl. ¶ 116.)   Rooke and Rogness executed their agreements with Indiezone on February 27, 2008, and November 28, 2007, respectively.   (Declaration of Todd Rooke ("Rooke Decl."), Ex. A; Declaration of Joe Rogness ("Rogness Decl."), Ex. A.)[3]   Both agreements contain the identical provision compelling mandatory and exclusive arbitration of all disputes:

> **Arbitration.**   You and the Company shall submit to mandatory and exclusive binding arbitration of any controversy or claim arising out of, or relating to, this Agreement or any breach hereof, <u>provided</u>, <u>however</u>, that the parties retain their right to, and shall not be prohibited, limited or in any other way restricted from, seeking or obtaining equitable relief from a court having jurisdiction over the parties. Such arbitration shall be governed by the Federal Arbitration Act and conducted through the American Arbitration Association in the State of California, Santa Clara County, before a single neutral arbitrator, in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association in effect at that time. The parties may conduct only essential discovery prior to the hearing, as defined by the AAA arbitrator. The arbitrator shall issue a written decision that contains the essential findings and conclusions on which the decision is based. You shall bear only those costs of arbitration you would otherwise bear had you brought a claim covered by this Agreement in court. Judgment upon the determination or award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

(*Id.* ¶ 7) (emphasis in original).   The Employee Agreements also contain a confidentiality provision prohibiting Rooke and Rogness from competing with Indiezone and requiring them to sign an Employee Invention Assignment and Confidentiality Agreement.   (*Id.* ¶ 3.)   The latter agreement required Rooke and Rogness to keep all Indiezone proprietary information confidential both during and after their employment.   (Rooke Decl., Ex. B ¶ 7.)

## II.   Plaintiffs' Complaint.

---

[3]   Because the Complaint refers to the Employee Agreements, they are incorporated by reference and may be considered by the Court in a motion to compel arbitration. Even if the agreements were not referenced in the Complaint the Court could still consider them in a motion to compel arbitration.   *See Ramirez v. Freescore, LLC*, No. 8:11-cv-0720, 2011 U.S. Dist. LEXIS 97374, at *4 (C.D. Cal. Aug. 30, 2011).

Plaintiffs Indiezone and eoBuy filed the Complaint in the current litigation on September 16, 2013.  (Compl., ECF 1.)  The Complaint includes twenty-seven causes of action, (*id.* ¶¶ 266-492), each of which rests on the fundamental allegation that Rooke and Rogness stole Plaintiffs' alleged intellectual property while they worked for Indiezone, and later misappropriated it in their operation of Jingit (*see, e.g., id.* ¶¶ 1-5).[4]  The first paragraph explains "[t]he claims presented in this Complaint comprise allegations of a criminal agreement, a conspiracy, involving the … theft of Plaintiff eoBuy's and Plaintiff Indiezone's … intellectual property…."  (*Id.* ¶ 1.)

While the Complaint is brought against twenty-one different Defendants, twelve of these are "Aiding/Abetting" Defendants,[5] and three more are "Secondary-Vicarious Infringement" Defendants.[6]  (*Id.* ¶¶ 36-51.)  The "Aiding/Abetting" Defendants are alleged to be "vehicles for … the operations of the affairs of the Jingit Enterprise in raising capital and illegally deploying Plaintiffs [sic] IP on the Jingit.com Website."  (*Id.* ¶ 247.)  The "Secondary-Vicarious Infringement" Defendants simply entered into sponsorship agreements with Jingit, which allegedly "facilitated the infringement of Plaintiffs' IP."  (*Id.* ¶¶ 259-60.)

Only Defendants Rooke, Rogness, Phil Hazel, Sam Ashkar, Holly Oliver and U.S. Bank are designated as the "RICO Defendants."  (*Id.*)  Of the "RICO Defendants," only Rooke and Rogness are alleged to have had access to, and misappropriated, Plaintiffs' intellectual property, and they are the only Defendants who worked for Plaintiffs.  (*Id.* ¶¶ 91, 150 & 154.)  The remaining "RICO

---

[4] Exhibit A to the Declaration of Alain M. Baudry ("Baudry Decl.") is a copy of Plaintiffs' Complaint with paragraphs highlighted within every cause of action demonstrating how each rests on the fundamental claim that Rooke and Rogness allegedly misappropriated Plaintiffs' intellectual property.

[5] The "Aiding/Abetting" Defendants are Jingit, LLC, Jingit Holdings, LLC, Jingit Financial Services, LLC, Music.Me, LLC, and Tony Abena, John E. Fleming, Dan Frawley, Dave Moorehouse II, Chris Ohlsen, Justin James, Shannon Davis and Chris Karls in their capacities as officers, agents and/or employees of Jingit LLC.  (Compl. ¶¶ 36-47.)

[6] The "Secondary-Vicarious Infringement" Defendants are Wal-Mart, General Electric, Target, DOE(s) and ROE(s) 1 through 10.  (Compl. ¶¶ 48-51.)  They have not been served and are not part of this current motion.

Defendants" allegedly "promot[ed] the carrying on of the IP theft" and participat[ed] in financial transactions "arising from the theft of Plaintiffs' IP."  (*Id.* ¶ 200.)

## III.    EoBuy is a Dissolved Corporation Under Irish Law.

Plaintiff eoBuy, Limited was an Irish private limited company.  (Compl. ¶ 26.)  However, it was formally dissolved from the Irish Registrar of Companies as of April 4, 2008, almost six years ago.  (Declaration of Brian Walker ("Walker Decl.") ¶¶ 5-7, Ex. A.)  The fact of eoBuy's dissolution is reflected in the public records of the Irish Registrar, and may also be independently verified by the Court by entering the name "eoBuy" into the Registrar's public website, available at www.cro.ie/search.  (Walker Decl., ¶ 6 & Ex. A.)

## <u>ARGUMENT</u>

## I.    This Court Should Compel Arbitration Between Indiezone and Rooke and Rogness.

### A.    Federal Policy Favors Arbitration and All Doubts Are to Be Resolved in Favor of Arbitration.

"The Federal Arbitration Act … reflects a liberal federal policy favoring arbitration and requires federal courts to compel arbitration of any claim covered by a written and enforceable arbitration agreement."  *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 836 (N.D. Cal. 2013) (citing *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745-47 (2011) (citation omitted)).  "The standard for demonstrating arbitrability is not high. The Supreme Court has held that the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).  Arbitration agreements "are to be rigorously enforced…. [T]he district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms."  *Id.* (citing *Howard Elec. & Mech. v. Briscoe Co.*, 754 F.2d 847, 849 (9th Cir. 1985)).  "Because of the strong policy favoring

arbitration, doubts are to be resolved in favor of the party moving to compel arbitration." *Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 929 (N.D. Cal. 2012) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Given the strong federal policy in favor of arbitration there can be no real dispute that every claim in the Complaint asserted against both Rooke and Rogness is subject to mandatory arbitration.[7]

**B.**   **Rooke and Rogness' Employee Agreements with Indiezone Contain Valid Arbitration Provisions Compelling Mandatory and Exclusive Arbitration of All Disputes.**

Both Rooke and Rogness' Employee Agreements with Indiezone contain the identical provision compelling "mandatory and exclusive binding arbitration of any controversy or claim arising out of, or relating to, this Agreement or any breach hereof…."  (Rooke Decl., Ex. A, ¶ 7; Rogness Decl., Ex. A, ¶ 7.)  "Agreements to arbitrate are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *Morvant*, 870 F. Supp. 2d at 836 (citing 9 U.S.C. § 2)).  Therefore, they may only be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.  *Id.*

Here, Indiezone cannot challenge the validity of Rooke and Rogness' Employee Agreements because it is suing for breach of those very same agreements.  (*See, e.g.,* Compl. ¶¶ 116-21, 148-53, 160-62, 169-74, 180-82, 452-55.)  A party cannot bring suit based on a contract with an arbitration provision and simultaneously avoid that provision.  *Marzocchi v. Tara Tiger, Inc.*, No. 12-cv-4433, 2013 U.S. Dist. LEXIS 39677, at *8-9 (N.D. Cal. Mar. 21, 2013) ("Plaintiff has sued for breach of contract—she cannot have it both ways. Either there was an enforceable contract or not; if so, she is bound by all its terms including the arbitration agreement.").  Therefore, this Court should have no difficulty finding that Indiezone has valid agreements to arbitrate with Rooke and Rogness.

---

[7]   In moving to arbitrate the claims, Rooke and Rogness in no way concede their validity. However, they move to compel arbitration in lieu of moving to dismiss because the latter would risk waiver of their right to arbitrate.  *See Edwards v. First Am. Corp.*, No. 07-03796, 2012 U.S. Dist. LEXIS 174957, at *32-33 (C.D. Cal. Nov. 30, 2012).

### C.   The Entire Dispute Between Indiezone and Rooke and Rogness Falls Within the Broad Scope of the Arbitration Clause.

An arbitration clause "embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Simula*, 175 F.3d at 720 (citation omitted).  Indeed, "'to require arbitration, the allegations of the complaint need only 'touch matters' covered by the agreement containing the arbitration provision, and 'all doubts are to be resolved in favor of arbitrability.'" *Ulbrich*, 887 F. Supp. 2d at 931 (quoting *Simula*, 175 F.3d at 721).  In the arbitration provision of the Employee Agreements with Rooke and Rogness, Indiezone chose the broadest, "arising out of, or relating to" language.  (Rooke Decl., Ex. A, ¶ 7; Rogness Decl., Ex. A, ¶ 7.)  "[W]hen parties intend to include a broad arbitration provision, they provide for arbitration 'arising out of or relating to' the agreement."  *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011); *see also Simula*, 175 F.3d at 721 ("Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly…. [This language] reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.").  Here, Indiezone intentionally drafted the broadest possible arbitration clause.

Every one of Indiezone's causes of action "arises out of" or "relates to" the Employee Agreements or breach thereof.  In fact, every count in the Complaint relies on the allegation that Rooke and Rogness misappropriated Indiezone's intellectual property, (Compl. ¶¶ 266-492; *see also* Baudry Decl., Ex. A), and Indiezone bases these claims on the allegation that this violated Rooke and Rogness' "Agreements," (*see, e.g.,* Compl. ¶¶ 116-21, 148-53, 160-62, 169-74, 180-82, 452-55).[8]

---

[8]   Plaintiffs' use of "Agreements" includes Rooke and Rogness' "Employee Agreement," "Employee Invention Assignment and Confidentiality Agreement," "Confirmatory Assignment Agreement" and "Stock Purchase Agreement." (Compl. ¶ 116.)  The Employee Agreement contains the arbitration clause and also references and incorporates the Employee Invention Assignment and Confidentiality Agreement and Stock Purchase Agreement.  (Rooke Decl. Ex. A ¶¶ 3, 4 & 7;

According to the Plaintiffs' own allegations, the purported scheme to misappropriate Indiezone's intellectual property directly violated Rooke and Rogness' Employee Agreements with Indiezone, which required "secrecy-non-disclosure-confidentiality, non-circumvention, non-competition, non-use, assignment and disclosure of all developed and to be developed IP." (Compl. ¶ 117.)  "Plaintiffs rel[ied] on the Agreements in providing [Rooke and Rogness] with access to their IP-Property."  (*Id.* ¶ 121.)  But, according to Plaintiffs, "[a]t all times material hereto, … although Defendants Rooke and Rogness had agreed to abide by the terms of their written Agreements[,] specifically … the terms of secrecy in the development and deployment of Plaintiffs' Property as well as assignment of ideas and acknowledgement of authorship, each had agreed to move forward with the theft of Plaintiffs' IP…."  (*Id.* ¶ 152.)  "Thereafter, in contravention of … their written employment and secrecy Agreements, … Rooke and Rogness [took] several overt and predicate acts intending to execute their plan…."  (*Id.* ¶ 153.)

All of Indiezone's claims are based upon the central allegation that Rooke and Rogness misappropriated its intellectual property in direct violation of the parties' Employee Agreement. Therefore, by definition, all of the claims arise out of or relate to the Employee Agreements or alleged breaches thereof.  The Court should compel arbitration of all Indiezone claims against Rooke and Rogness pursuant to the arbitration clause in the Employee Agreements.

## II.  This Court Should Dismiss Plaintiff eoBuy Because It Lacks Capacity to Bring Suit.

It has long been the law that the dissolution of a corporation ends its existence and its capacity to bring claims.  *See, e.g., Chicago Title and Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp.*, 302 U.S. 120, 124-5 (1937) ("[A] private corporation in this country can exist only under the express law of the state or sovereignty by which it was created. Its dissolution puts an end to its existence, the result of which may be likened to the death of a natural person."); 16A Carol A. Jones,

Rogness Decl. Ex. A ¶¶ 3, 4 & 7.)

*Fletcher Cyclopedia Corporations* § 8142 at pp. 306-07 (2012) ("Once a dissolved corporation has finished winding up its affairs, its existence generally has terminated and it loses its power to sue and be sued.").

In light of this black letter law, a court must dismiss any action by a dissolved corporation because, by definition, the defunct corporation lacks the capacity to sue or be sued.  *See Community Electric Service, Inc. v. National Electrical Contractors Ass'n*, 869 F.2d 1235, 1239 (9th Cir. 1989) (affirming dismissal because delinquent corporation lacked capacity to sue); *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 817 F.2d 1448, 1451 (9th Cir. 1987) (affirming dismissal of suit because dissolved corporation lacked capacity to be sued).   Defendants properly raise lack of capacity in Rule 12 motions because courts may take judicial notice of public records evidencing dissolution of a corporation without converting the motion to one for summary judgment.  *Lewis v. Russell*, 838 F. Supp. 2d 1063, 1067 n.3 (E.D. Cal. 2012) (taking judicial notice of public record showing dissolution of company and granting motion for judgment on the pleadings); *Haskins v. Fuller-O'Brien, Inc.*, No. 11-cv-05142, 2013 U.S. Dist. LEXIS 60912, at *4 n.2 (N.D. Cal. Apr. 26, 2013) (taking judicial notice of public record showing dissolution of company and granting Rule 12(b)(6) motion to dismiss); *see also Levin Metals*, 817 F.2d at 1451 (affirming Rule 12(b)(6) dismissal of suit against dissolved corporation).

Federal Rule of Civil Procedure 17(b)(2) provides that a corporation's capacity to sue is determined by the law under which it was organized; this is true for both domestic and foreign corporations.  *Community Electric Service*, 869 F.2d at 1239 and *Levin Metals*, 817 F.2d at 1451 (California law); *Healthtrac, Inc. v. Sinclair*, 302 F. Supp. 2d 1125, 1127 (N.D. Cal. 2004) (Canadian law).  Thus, if a foreign corporation lacks capacity to sue under the law of the country in which it was organized, a United States District Court shall dismiss it from the case.  *See Alosio v.*

*Iranian Shipping Lines, S.A.*, 426 F. Supp. 687, 690 (S.D.N.Y. 1976) (dismissing corporation for lack of capacity to sue because it was dissolved under Iranian law).

EoBuy's capacity to sue is governed by Irish law because, as it admits, it is an Irish corporation.  (Compl. Caption, p. 1 & ¶ 26.)  "'The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.'" *Universe Sales Co. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1038 (9th Cir. 1999) (quoting Fed. R. Civ. P. 44.1).  Despite the numerous means through which a court may ascertain foreign law, "expert testimony accompanied by extracts from foreign legal materials has been and will likely continue to be the basic mode of proving foreign law." *Id.* A court may properly consider parties' declarations regarding foreign law on a motion to dismiss. *See Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2012 U.S. Dist. LEXIS 67102, at *37-39 (N.D. Cal. May 14, 2012) (relying on parties' declarations regarding foreign law on motion to dismiss); *Eshelman v. Orthoclear Holdings, Inc.*, No. C 07-1429, 2009 U.S. Dist. LEXIS 19293, at *28-29 (N.D. Cal. Feb. 27, 2009) (taking judicial notice of and relying on foreign law in granting motion to dismiss).

In this case, the moving Defendants submit the declaration of an Irish Barrister, Brian Walker, confirming (1) eoBuy is officially and publicly listed as a dissolved corporation by Ireland's Registrar of Companies, and (2) under Irish law, a dissolved corporation has no legal existence and may no longer carry on business, enter into contracts or participate in litigation.  (Walker Decl. ¶¶ 5-9, Exs. A & B).  The Court need not just rely on the Irish public record attached to Barrister Walker's declaration but may independently confirm eoBuy's dissolved status online through the Irish Registrar's public website, available at www.cro.ie/search.  (Walker Decl., ¶ 6.)  Because eoBuy is dissolved and lacks capacity to sue under Irish law, it, and all claims it asserts, should be dismissed.

1

2

**III.    Alternatively, This Court Should Compel eoBuy to Arbitrate Because It Was a Joint Venturer With Indiezone and Its Claims are Based on the Employee Agreements That Mandate Arbitration.**

3

4

5

6

7

8

9

10

11

12

13

14

15

Although eoBuy is not a signatory to Indiezone's Employee Agreements with Rooke and Rogness, under both agency and estoppel principles, the Ninth Circuit and California Federal District courts have repeatedly compelled non-signatory plaintiffs to arbitrate with signatory defendants where the non-signatory plaintiff brings claims based on the agreement *or* where the non-signatory plaintiff has an agency relationship with the signatory plaintiff. *Pullen v. Victory Woodwork, Inc.*, No. 2:07-CV-00417, 2007 U.S. Dist. LEXIS 46573, at *7 (E.D. Cal. June 27, 2007) (citing *Comer v. Micor, Inc.,* 436 F.3d 1098, 1101 (9th Cir. 2006) and *Letizia v. Prudential Bache Sec., Inc.,* 802 F.2d 1185 (9th Cir. 1986)).  Here estoppel and agency would each independently require eoBuy to arbitrate the claims it jointly is prosecuting with Indiezone both because eoBuy seeks to vindicate rights under the employee agreements containing the arbitration clause and because it admits a joint venture relationship with Indiezone.

16

17

**A.    EoBuy Would Be Compelled to Arbitrate Claims Against Rooke and Rogness Under an Estoppel Theory.**

18

19

20

21

22

23

24

25

26

27

28

The Ninth Circuit has made clear that non-signatory plaintiffs who assert rights under agreements containing arbitration clauses are also bound by those clauses by equitable estoppel. *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.") (citation omitted).  For example, just this year in *Peck Ormsby Constr. Co. v. City of Rigby*, the Ninth Circuit reversed an Idaho district court's denial of a motion to compel a non-signatory cross-claimant to arbitrate on estoppel grounds where the non-signatory based its claims on the agreement containing the arbitration clause "[e]ven though the [non-signatory cross-claimant] never signed the [agreement], it cannot accept its benefits and at the same time question its validity…. By suing, the [non-signatory] now seeks to further enjoy the benefits of the [agreement],

yet avoid its burdens by refusing arbitration. This it cannot do."  526 Fed. Appx. 769, 770 (9th Cir. 2013) (citation omitted); *see also Larson v. Speetjens*, No. C 05-3176, 2006 U.S. Dist. LEXIS 66459, at *14-24 (N.D. Cal. Sept. 1, 2006) (holding non-signatory plaintiff estopped from avoiding arbitration "when he has consistently maintained that other provisions of the same contract should be enforced to benefit him" and "Plaintiffs' claims are inextricably intertwined with the Agreements") (citation omitted); *Pullen*, 2007 U.S. Dist. LEXIS 46573, at *8 (compelling non-signatory to arbitrate because "[w]hen a nonsignatory seeks to enforce provisions of a contract to which it was not a party, equitable estoppel must prevents [sic] that entity from avoiding the obligations and burdens that also exist under the contract.").[9]

EoBuy is estopped from refusing to arbitrate because it brings the exact same claims as Indiezone seeking to vindicate the alleged breaches by Rooke and Rogness of the Employee Agreements.  As explained *supra*, all of the claims are based on alleged misappropriation of Plaintiffs' intellectual property, which both Indiezone and eoBuy claim violates Rooke and Rogness' agreements.  Thus, Eobuy itself wraps itself in the mantle of the protections of the Rooke and Rogness employee agreements with Indiezone.  EoBuy alleges Rooke and Rogness "executed copies of the Plaintiff Corporations<u>'</u> [employee agreements]" (Compl. ¶ 116), which protected "Plaintiff<u>s'</u> <u>joint</u> IP-Property" and created "fiduciary duties … to Plaintiff Corporations<u>,</u>" (Compl. ¶ 115) (emphasis added).  Allegedly, "Plaintiff<u>s</u> [relied] on the Agreements in providing [Rooke and Rogness] with access to <u>their</u> IP-Property."  (*Id.* ¶ 121) (emphasis added).[10]

---

[9] These cases are distinguished from those in which a *non-signatory defendant* attempts to compel a *signatory plaintiff* to arbitrate, which the Ninth Circuit has rejected because the plaintiff's claims do not rely on or relate to the agreement containing the arbitration clause.  *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229-32 (9th Cir. 2013).  Here, signatory Defendants (Rooke and Rogness) would compel the non-signatory Plaintiff (eoBuy) to arbitrate because eoBuy explicitly bases its claims on the agreements containing the arbitration clause.

[10] EoBuy also seeks the protections of the employee agreements in another way.  Indiezone, the licensee of eoBuy's alleged intellectual property, bases its claims on the alleged misappropriation of eoBuy's licensed intellectual property.  (*See, e.g.*, Compl. ¶¶ 122-23 & 151-53.)  To allow eoBuy

The alleged misappropriation, according to eoBuy, violated the employee agreements.  (*See, e.g.,* Compl. ¶¶ 116-21, 148-53, 160-62, 169-74, 180-82, 452-55).   For example, "although Defendants Rooke and Rogness had agreed to abide by the terms of their written Agreements[,] specifically … the terms of secrecy in the development and deployment of Plaintiffs' Property … each had agreed to move forward with the theft of Plaintiffs' IP…."  (*Id.* ¶ 152) (emphasis added.) "Thereafter, in contravention of … their written employment and secrecy Agreements, … Rooke and Rogness [took] several overt and predicate acts intending to execute their plan…." (*Id.* ¶ 153); ultimately "illegally deploying Plaintiffs' IP on the Jingit.com Website," (*Id.* ¶ 247) (emphasis added).   Indeed, both Indiezone and eoBuy assert the identical breach of contract claim against Rooke and Rogness only, alleging among other things, breach of the employee agreements caused "damages to Plaintiffs." (Complaint, Count XX, ¶¶ 451-455).   Eobuy cannot, on the one hand, claim to be entitled to the protections of the employee agreements while simultaneously seek to disavow the unambiguous obligation to arbitrate set forth therein.  *City of Rigby*, 526 Fed. Appx. at 770; *Marzocchi v. Tara Tiger, Inc.*, No. 12-cv-4433, 2013 U.S. Dist. LEXIS 39677, at *8-9 (N.D. Cal. Mar. 21, 2013).

### B.      EoBuy Would Be Compelled to Arbitrate Its Claims Against Defendants Rooke and Rogness Under Agency Theory.

"In California, '[a] nonsignatory to an agreement to arbitrate may be required to arbitrate … if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory.'"  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013) (quoting *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co*., 28 Cal. Rptr. 3d 752, 756 (Cal. Ct. App. 2005)).  This Court twice recently compelled arbitration of claims by non-signatory plaintiffs

---

itself to avoid arbitration while its licensee is compelled to arbitrate claims regarding the same property would be inequitable.

when the non-signatory plaintiff had an agency relationship with the signatory plaintiff—specifically when the two engaged in a joint venture. *Ahtna Gov't Servs. Corp. v. 52 Rausch*, No. C 03-00130, 2003 U.S. Dist. LEXIS 2460, at *31-36 (N.D. Cal. Feb. 18, 2003) (compelling non-signatory plaintiff to arbitrate because it held itself out as joint venturer with signatory plaintiff and joint venture constituted agency relationship); *see also Speetjens*, 2006 U.S. Dist. LEXIS 66459, at *24-28 (holding signatory plaintiff bound non-signatory plaintiff to arbitration clause under agency principles).

Here, the admission by Plaintiffs of an agency relationship between eoBuy and Indiezone is an independent basis for compelling eoBuy to arbitrate its claims against Rooke and Rogness. Plaintiffs explicitly say eoBuy licensed its technology, allegedly stolen by Rooke and Rogness, "in a joint venture … with a new entity to be named Indiezone."  (Compl. ¶¶ 109-10) (emphasis added). Elsewhere, Plaintiffs describe Indiezone as a "development division/arm of [eoBuy]."  (*Id.* ¶ 90.) Under *Ahtna*, to the extent eoBuy had capacity to sue, Plaintiffs' self-described "joint venture" or "development arm" relationship constitutes an agency relationship and compels eoBuy to arbitrate along with Indiezone. *Ahtna*, 2003 U.S. Dist. LEXIS 2460, at *31-36.

## IV.    This Court Should Stay Proceedings As to All Remaining Defendants.

The Federal Arbitration Act directs that district courts, after compelling arbitration, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  A court may additionally stay remaining claims between parties not subject to the arbitration agreement.  *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 917 (N.D. Cal. 2011) (quoting *Moses H. Cone Memorial Hospital*, 460 U.S. at 20-21, n.3 ("It may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration.")).  "'In deciding whether to stay non-arbitrable claims, a court considers economy and efficiency, the similarity of the issues of law and fact to those

1    that will be considered during arbitration, and the potential for inconsistent findings absent a stay.'"

2    *Randhawa v. Skylux, Inc.*, No. 2:09-2304, 2010 U.S. Dist. LEXIS 113131, at *9 (E.D. Cal. Oct. 15,

3    2010) (quoting *Wolf v. Langemeier*, No. 2:09-CV-03086, 2010 U.S. Dist. LEXIS 87017, at *22

4    (E.D. Cal. Aug. 24, 2010)).  Here, each of these factors compels the conclusion that the remaining

5    claims against remaining Defendants should be stayed pending the outcome of the arbitration

6    determining the fundamental issue of whether Plaintiffs' intellectual property was misappropriated,

7    an issue which underpins every claim in the case.

8

9           This Court routinely stays claims against non-signatories to an arbitration agreement when

10   they are based on common fact issues and where liability of non-signatories is dependent on that of

11   signatories.  For example, in *Copytele, Inc. v. AU Optronics Corp.*, this Court stayed claims against

12   non-signatories pending arbitration because plaintiff alleged "concerted action on the part of

13   [signatory] and [non-signatory] – [thus] rulings made in the [signatory] arbitration clearly have the

14   potential to simplify the rulings here with respect to the claims against [non-signatory]."  No. C-13-

15   0380, 2013 U.S. Dist. LEXIS 95645, at *7 (N.D. Cal. July 9, 2013); *see also Souza v. Great Am. Ins.

16   Co.*, No. 13-cv-03361, 2013 U.S. Dist. LEXIS 144913, at *23-24 (N.D. Cal. Oct. 7, 2013) (staying

17   claims against non-signatory "comports with judicial economy and consistency because the [non-

18   signatory]'s liability was dependent upon the liability of the [signatory], and absent a stay, the

19   parties would be litigating and arbitrating substantially the same issues.") (citation omitted); *Tech. &

20   Intellectual Prop. Strategies Group PC v. Insperity, Inc.*, No. 12-CV-03163, 2012 U.S. Dist. LEXIS

21   170714, at *38-39 (N.D. Cal. Nov. 29, 2012) (staying claims against non-signatory "as arbitration of

22   any claims against [signatory] are likely to predominate over any individual claims against [non-

23   signatory], and [signatory]'s defense of these claims may have a preclusive effect over identical

24   claims raised against [non-signatory]").

25

26

27

28

1   In this case, just as in *Copytele*, *Souza* and *Insperity*, Plaintiffs' claims against all Defendants

2   other than Rooke and Rogness are dependent upon the fundamental claim that Rooke and Rogness

3   misappropriated Plaintiffs' intellectual property.  If an arbitrator determines Rooke and Rogness did

4   not act improperly with respect to the alleged intellectual property, then all claims against all other

5   Defendants are by definition resolved.  It makes no sense to proceed with the rest of the litigation

6   until the fundamental threshold issue of whether any alleged misappropriating occurred is resolved

7   through binding arbitration.  While the twenty-seven causes of action are alleged against twenty-one

8   different Defendants, Plaintiffs themselves label twelve of these as "Aiding/Abetting" Defendants,

9   and three more as "Secondary-Vicarious Infringement" Defendants.  (Compl. ¶¶ 36-51.)  Plaintiffs'

10  own characterization of these fifteen Defendants shows their potential liability is wholly dependent

11  on an adverse finding regarding Rooke and Rogness.[11]

12      The "Aiding/Abetting" Defendants are alleged to be "vehicles for the illegal activities of the

13  RICO Defendants in their false claims of ownership to Plaintiffs' IP, and in the operations of the

14  affairs of the Jingit Enterprise in raising capital and illegally deploying Plaintiffs [sic] IP on the

15  Jingit.com Website."  (*Id.* ¶ 247.)  It logically follows that if Rooke and Rogness did not

16  misappropriate Plaintiffs' alleged intellectual property, the "Aiding/Abetting" Defendants are not

17  "vehicles" for any illegal behavior and are not "deploying" anyone's property but Jingit's.

18      The "Secondary-Vicarious Infringement" Defendants (also called "nominal Defendants" (*Id.*

19  ¶ 251)) are merely alleged to have entered into a sponsorship agreement with Jingit, which

20  "facilitated the infringement of Plaintiffs' IP."  (*Id.* ¶ 259-60.)  If Rooke and Rogness did not

---

[11] Indeed, in his sworn declaration in support of Plaintiffs' recent motion for an extension of time to serve the "Secondary-Vicarious Infringement" Defendants, Plaintiffs' counsel himself explains these Defendants have not been served "for the reason that the forgoing defendants are nominal as to the claims of the Complaint."  (Attorney's Declaration in Support the Motion For An Extension of Time to Serve and File Proof of Service Over the Defendants Wal-Mart, General Electric, Target, DOE(s) and ROE(s) 1- through 10, ECF 20, ¶ 4.)

29764\3985184.1
#1009839

1    misappropriate Plaintiffs' alleged intellectual property in their operation of Jingit, the "Secondary-

2    Vicarious Infringement" Defendants are not "facilitating" infringement.

3        This leaves only Phil Hazel, Sam Ashkar, Holly Oliver and U.S. Bank as the "RICO

4    Defendants" not compelled to arbitrate with Plaintiffs.  (*Id.* ¶¶ 32-35.)  However, Plaintiffs' claims

5    against these Defendants are also wholly dependent on the assertion that Rooke and Rogness

6    misappropriated intellectual property.  Hazel, Ashkar and Oliver are accused of raising funds in

7    order to form Jingit for the purpose of deploying Plaintiffs' intellectual property, (*see, e.g., id.*

8    ¶¶ 188 & 201), "promot[ing] the carrying on of the IP theft" and participating in financial

9    transactions "arising from the theft of Plaintiffs' IP," (*id.* ¶ 200).  Rooke and Rogness allegedly

10   "enter[ed] into a partnership agreement with Defendant US BANK for the purpose of illegally using

11   Plaintiffs' IP."  (*Id.* ¶ 238).  Once again, if Rooke and Rogness did not misappropriate Plaintiffs'

12   alleged intellectual property, the "RICO Defendants'" alleged participation in the operation of Jingit

13   cannot be a RICO violation.

14       Plaintiffs' very own allegations make clear that all claims against the remaining Defendants

15   are entirely dependent on a finding that Rooke and Rogness are misappropriating Plaintiffs'

16   intellectual property in their operation of Jingit.  That issue can and must be resolved through

17   binding arbitration.  All other Defendants are accused of participating in the formation and operation

18   of Jingit.  If the arbitrator finds Rooke and Rogness did not misappropriate intellectual property, then

19   all of the claims against all the remaining defendants fail as a matter of law.  Because the claims

20   against all Defendants are based on the same facts and dependent on those against Rooke and

21   Rogness, this Court should stay the claims against the remaining Defendants pending arbitration

22   between Indiezone and Rooke and Rogness.

1

## <u>CONCLUSION</u>

2

For the foregoing reasons, moving Defendants respectfully ask this Court to compel

3

arbitration between Indiezone and Rooke and Rogness, dismiss eoBuy and stay litigation against the

4

remaining Defendants pending the arbitration.

5

Dated: January 10, 2014                    **MASLON EDELMAN BORMAN & BRAND, LLP**

6

7

By:     s/Catherine Ahlin-Halverson

8                                              Catherine Ahlin-Halverson, CA Bar No. 209391

9       **ATTORNEYS FOR DEFENDANTS JINGIT LLC, JINGIT
        HOLDINGS, LLC, JINGIT FINANCIAL SERVICES,**

10      **LLC, MUSIC.ME, LLC, TODD ROOKE, JOE ROGNESS,
        SAM ASHKAR, PHIL HAZEL, HOLLY OLIVER,**

11      **SHANNON DAVIS, JUSTIN JAMES, CHRIS OHLSEN,
        DAN FRAWLEY, DAVE MOOREHOUSE II, TONY**

12      **ABENA, CHRIS KARLS AND JOHN E. FLEMING**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#1009839