Douglas R. Dollinger (*pro hac vice*) (NY Bar No. 2354926)
The Law Offices of Douglas R. Dollinger
& Associates
50 Main Street-Suite 1000
White Plains, NY 10606
Telephone:      845-915-6800
Facsimile:      845-915-6801
E-mail:ddollingeresq@gmail.com

Seth D. Heyman (CA Bar No. 194120CA)
Heyman Law Offices
2600 Michelson Drive- Suite 900
Irvine, CA 92612
Telephone:      855-439-6628
Facsimile:      855-407-7714
E-mail:sdh@heymanlegal.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Indiezone, Inc., a Delaware corporation, and EoBuy, Limited an Irish private limited company, | Case No:  3:13-cv-04280 YGR |
| Plaintiffs, | |
| vs. | |
| Todd Rooke, Joe Rogness, Phil Hazel, Sam Ashkar, Holly Oliver and U.S. Bank, collectively the **RICO Defendants**; | **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS** |
| Jingit LLC, Jingit Holdings, LLC, Jingit Financial Services LLC., Music.Me, LLC., Tony Abena, John E. Fleming, Dan Frawley, Dave Moorehouse II, Chris Ohlsen, Justin James, Shannon Davis, Chris Karls in their capacities as officers, agents and/or employees of Jingit LLC, **Defendants in Negligence, and Aiding/Abetting**; | |
| Wal-Mart, General Electric, Target, DOE(s) and ROE(s) 1 through 10, **Defendants in Negligence Secondary-Vicarious Infringement**, | |
| Defendants. | |

# TABLE OF AUTHORITIES

**CASES:**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995)………………10

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*

      *[(2d Cir. 1999)] 170 F.3d 349, 353*…………………………………………..12

*Batzel v. Smith, 333 F.3d 1018, 1035–36 (9th Cir. 2003)*……………………………13

*Bridas S.A.P.I.C. v. Government of Turkmenistan (5th Cir. 2003)*

      *345 F.3d 347, 361-362* ....................................................................12, 13

*C. V. Starr & Co. v. Boston Reinsurance Corp. (1987)*

      *190 Cal.App.3d 1637, 1642.)* …………………………………………10

*County of Contra Costa, supra, 47 Cal.App.4th at pp. 244-245*..…………………..11

*Cronus Investments, Inc. v. Concierge Services, supra, 35 Cal.4th at p. 393*………..11

*DeSuza v. Andersack, 133 Cal.Rptr. 920, 924 (Cal.Ct.App. 1976)*…………………..13

*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)………………………10

*DuPont, supra, 269 F.3d at p. 200*……………………………………………....…12

*Goldman v. KPMG LLP, 92 Cal.Rptr.3d 534 (Cal.Ct.App. 2009)*..…………………12

*Gravillis v. Coldwell Banker Residential Brokerage Co.*

      (2006) 143 Cal.App.4th 761, 783…………………………………10, 16

*In re Oil Spill by the Amoco Cadiz, 659 F.2d 789, 795-96 (7th Cir.1981)*……………14

*InterGen, supra, 344 F.3d at pp. 145-146*……………………………………………12

*Phoenix Can. Oil Co. v. Texaco, Inc., 842 F.2d 1466, 1477 (3d Cir.1988)*………......14

*Pioneer Take Out Corp. v. Bhavsar (1989) 209*

Cal.App.3d 1353, 1354-1355, 1358 …………………………………………..11

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1122 (3d*

*Cir.1993)*………………………………………………………………..14

*Thomson-CSF,* 64 F.3d at 777…………………………………………………14

*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 162, citations omitted……….……..15

**STATUTES**

9 U.S.C. § 2 (2006)……………………………………………………………………10

15 U.S.C.  1125(a) and  25(d)………………………………………………………3

17 U.S.C. 501-506(a)(1)(A)…………………………………………………………3

1030(a)(2)(C),(a)(4)(a)(5)(C)………………………………………………………3

18 U.S.C. 1341…………………………………………………………………………3

18 U.S.C. 1343…………………………………………………………………………3

18 U.S.C. 1832…………………………………………………………………………3

18 U.S.C. 1956…………………………………………………………………………3

18 U.S.C. 1957…………………………………………………………………………3

18 U.S.C.  1961-1968………………………………………………………………3

18 U.S.C. 2314-2315…………………………………………………………………3

18 U.S.C. 2319…………………………………………………………………………3

18 U.S.C.  2701- 11…………………………………………………………………3

Cal. Penal Code 496…………………………………………………………………3

Cal. Penal Code 502…………………………………………………………………3

Cal. Civ. Code § 2295………………………………………………………………13

Cal. Civ. Code  3426.11……………………………………………………………3

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 17(b)…………………………………………………………… 8

Fed. R. Civ. P. 12(b)(6)………………………………………………………8

**CALIFORNIA RULES OF CIVIL PROCEDURE**

California Civil Procedure Section 1281.2(c)……………………………… 10, 11, 15

Plaintiffs, eoBuy and IndieZone, by and through their attorneys of record, respectfully submit this Memorandum in Opposition to the Defendants' Motions to Compel Arbitration and Dismiss or Stay these Proceedings. **[DE 29-35.]**

## Introduction

Plaintiffs eobuy and Indiezone brought suit in this Court to recover monetary damages and for the ***equitable relief*** related to their exclusive ownership of eoBuy's and Indiezone's Intellectual Property ("IP or from time-to-time Property").

Plaintiffs claim Defendants are engaged in the theft and illegal use of their Property employing specified illegal activities which include: Copyright Infringement 17 U.S.C. 501-506(a)(1)(A); 18 U.S.C. 1030(a)(2)(C),(a)(4)(a)(5)(C); the Federal Computer Fraud and Abuse Act; Federal Trademark Act of 1946, as amended (the Lanham Act) 15 U.S.C.  1125(a) and 1125(d); 18 U.S.C. 1341 mail fraud and 1343 wire fraud; 18 U.S.C. 1832 (theft of trade secrets), 18 U.S.C. 1956 and 1957 money laundering, engaging in monetary transactions in property derived from specified unlawful activity; in violation of the RICO Statute 18 U.S.C.  1961-1968, et seq; 18 U.S.C. 2314-2315 possession and receipt of stolen property; and 18 U.S.C. 2319, criminal infringement of a copyright; in violation of the Stored Communications Act, 18 U.S.C. 2701- 11**.  [DE-1.]**

Plaintiffs State law claims include violations of Cal. Penal Code 496 receipt of stolen property; Cal. Penal Code 502 unauthorized access to computers; theft of trade secrets Cal. Civ. Code  3426.11.  Defendants' conduct also constitutes common law fraud, conspiracy, conversion computer trespass theft, larceny, aiding and abetting, breach of contract, and unjust enrichment.

By their Motion to Compel Arbitration Defendant Rooke and Rogness seek to enforce a term of their Employment Agreements, the language of the arbitration clause contained therein, despite the express language otherwise, in claims that the improper use of Plaintiff IP is NOT a matter subject to arbitration.

For the most part the defendants ignore the express language of the arbitration clause and attempt to rewrite the Employment Agreement to deny the fact that the parties expressly carved out the very conduct Plaintiffs allege the Defendants are in violation of, the theft of their Property.

Although couched in terms of an employer and employee dispute the matter does not involve the employer's over reaching conduct but instead the criminal conduct of Defendants Rooke and Rogness post their voluntary separation from their employment with Indiezone. The use of the arbitration clause in the manner proposed is not mandated by the Employment Agreement as this court has discretion to deny the Motions or Stay the arbitration.

**Statement of Issues Presented**

(i)    May eobuy be estopped from maintaining a plenary action for its claims involving infringement and misappropriation of its IP on the claim of agency.

(ii)    Was the boilerplate Arbitration Clause intended to encompass the claims of post-employment separation involving claims of criminal activity of Rooke and Rogness and the remaining defendants where the central purpose of the Invention/Confidentiality Agreement, and Employment Agreements were tainted by illegality, especially where the parties expressly carved out and contemplated in those Agreements that there would be no restriction to the right of equitable relief involving the rights of Property ownership belonging exclusively to the Plaintiffs' and from which it was agreed the right to equitable relief would be imposed by a court of competent jurisdiction?

**Facts/Background**

Between January 2008 and September 2009, Indiezone hired Rooke and Rogness as at will work for hire employees.  Each was provided the right and did purchase Founder's Shares of Indiezone. **[DE-1.]**  Employment and shareholder ownership were expressly conditioned, however, on Rooke and Rogness each signing an Employee Invention Assignment and Confidentiality Agreement ("Invention/Confidentiality Agreement" or from time-to-time the "Assignment") **[DE-1.]** as well as Employment Agreements which containing an Arbitration Clause with a carve out ("Employment Agreement" or the "Agreement") **[DE-1.]**

**The Employee Invention Assignment and Confidentiality Agreement**

Under the provisions of the Assignment and Confirmation Defendants expressly acknowledged an understanding of the purpose of the Assignment; that the Company was engaged in a continuous program of research, development, production and marketing in connection with its business and that it was **_critical_** for the Company to preserve and protect its **_"Proprietary Information"_,** its rights in **_"Inventions"_** and in all related intellectual property rights. Each agreed they were entering into their Employee Invention Assignment and Confidentiality Agreement as a condition of their employment with the Company.

Rooke and Rogness also acknowledged that they understood they were at-will work for hire employees who were assigning their work product inventions**;** any copyrightable works prepared by them  within the scope of their employment as "works for hire" under the "Copyright Act" and that the Company would be considered the author and owner of such copyrightable works; each agreed that all Inventions that (i) were developed using equipment, supplies, facilities or trade secrets of the Company, (ii) or as a result from work performed by them for the Company, or (iii) related to the Company's business or actual or demonstrably anticipated research and development (the **_"Assigned Inventions",_** would be **the sole and exclusive property of the Company**; each agreed to assign, and did assign, the **_Assigned Inventions_** to the Company; each acknowledged and agreed that they had no inventions, original works of authorship, developments and trade secrets which were made by them prior to the date of the Assignment which belong to them and or existing as **_"Prior Inventions";_** each acknowledge and understood the nature of, confidence and trust with respect to any information of a confidential or secret nature that could be disclosed to them by the Company or a third party that related to the business of the Company or to the business of any parent, subsidiary, affiliate, customer or supplier of the Company or any other party with whom the Company agreed to hold information *of such* party in confidence where such Proprietary Information included, but was not limited to, Assigned Inventions, marketing plans, product plans, business strategies, financial information, forecasts, personnel information customer lists and data, and domain names; each agree that both during their employment and after their termination,  they would keep and hold all such

Proprietary Information in strict confidence and trust not using  or disclosing any Proprietary Information without the prior written consent of the Company, except as may be necessary to perform my duties as an employee of the Company for the benefit of the Company; and upon termination of their employment with the Company, each agreed to promptly deliver to the Company all documents and materials of any nature pertaining to their work with the Company and, upon Company request to execute a document confirming their agreement to honor their  responsibilities contained in their Assignment, further  agreeing not take with them or retain any documents or materials or copies thereof containing any Proprietary Information; each agreed not to compete with the Company; each agreed not to solicit suppliers/customers;  not to solicit employees/consultants of the Company wherein each acknowledged and agreed and understood that in the event of a breach or threatened breach of the Assignment by them **the Company would be entitled to injunctive relief to enforce the Assignment** so as to avoid irreparable harm. **[DE 32-2.]**

The Assignment did not contain an arbitration clause and limited the jurisidiction of disputes concening Property rights to  the courts for a final judgment on the issue of injuctive relief. eoBuy was not a signor to either Agreement.

**Employment Agreement:**

Under the provisions of the Employment Agreement Defendants Rooke and Rogness were provided and expressly acknowledged an understanding of their starting salary, benefits the need for confidentiality with an acknowledgement of Assignment,  that they are at will Employees, and they may have limited participation as employees in the Indiezone stock purchase plan.

The Employment Agreement contained an arbitration clause with an express carve out for the Company's Property rights and provided for equitable relief:

> "7.    **Arbitration.** You and the Company shall submit to mandatory and exclusive binding arbitration of any controversy or claim arising out of, or relating to, this Agreement or any breach hereof, **provided, however, that**

**<u>the parties retain their right to, and shall not be prohibited, limited or in any other way restricted from, seeking or obtaining equitable relief from a court having jurisdiction over the parties.</u>** Such arbitration shall be governed by the Federal Arbitration Act and conducted through the American Arbitration Association in the State of California, Santa Clara County, before a single neutral arbitrator, in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association in effect at that time. The parties may conduct only essential discovery prior to the hearing, as defined by the AAA arbitrator. The arbitrator shall issue a written decision that contains the essential findings and conclusions on which the decision is based. You shall bear only those costs of arbitration you would otherwise bear had you brought a claim covered by this Agreement in court. Judgment upon the determination or award rendered by the arbitrator may be entered in any court having jurisdiction thereof. **[Emphasis added.] [DE 32-2.]**

On October 14, 2009, Rooke and Rogness advised Indiezone's CEO Conor Fennelly that they were seeking temporary leave from Indiezone to seek consulting work.  On or about December 13, 2009, Rooke and Rogness and Indiezone mutually terminated their at will employment with Indiezone in writing wherein Defendants were released from the noncompetition clauses of the Employment Agreements.

Thereafter, the collective defendants began infringing Plaintiff IP and the illegal use-misappropriation of Plaintiffs trade secrets by means and conduct involving specified unlawful activities**. [DE-1.]**

## Arguments

The collective Defendants have taken a united and two (2) stepped approach in their analysis and arguments in the demand for arbitration, dismissal and/or to stay the proceedings involving the Federal RICO and non RICO claims as well as the California state law claims of eoBuy and Indie Zone: 1) eoBuy lacks standing; 2) in the alternative, if eoBuy does have standing arbitration is required under theories of estoppel and agency.

### Point I.

### eobuy is a Legal Entity and has Standing to Bring this Action and is not Required to Submit this Dispute to Arbitration under Either a  Theory of Estoppel or Agency

The lynchpin and first step in Defendants' arguments turn on the flawed elimination of eoBuy as a plaintiff where it is claimed not to have standing to pursue damages based on their primary reliance under federal law Fed. R. Civ. P. 17(b).  The argument turns on the reason that eoBuy is not an existing legal entity under Irish law; hence it is not authorized to proceed in the instant action for recovery of damages as alleged on its behalf in the Complaint and the action should be dismissed pursuant to Fed R. Civ. P. 12(b)(6). **[DE-29.]**

In support of the arguments for lack of standing the Defendants offered the Declaration of Brian Walker a Barrister-At-Law practicing in Dublin, Ireland. **[DE-30.]** There is no genuine  contest that Barrister Walker performed the task he was employed for or that his findings concerning the entity eobuy Limited as formed in 2003 are not inaccurate and that the entity he researched was dissolved on April 1, 2008.  **[DE-30.]**

With this said however, had defense counsel conferred with this office prior to embarking on their trip abroad they would have been provided the details of the matter concerning the entity named herein, details which were and are well known by Defendants Rooke and Rogness and which have been either misplaced-misunderstood, or ignored intending to avoided the realities of Plaintiff eoBuy's existence.

The Declaration of Conor Fennelly, the CEO of eoBuy and Indiezone confirms that the entity referenced by Mr. Walker formed under Irish law in 2003, was intentionally allowed to fall into dissolution in April 2008.

1   Prior to doing so, in or about January 2008, all of the assets and IP of eoBuy Ltd.,

2   were placed into a holding company Amdex, Pte.  In or about July 2008 that same IP was

3   transferred into eobuy Ventures Ltd.  eobuy Ventures Ltd., has been doing business as Eobuy

4   since 2008 and is the entity that entered into the licensing agreement with Indiezone in 2007.

5   Based on the declaration of Mr. Fennelly it would appear that Defendants Rooke and

6   Rogness were aware of these facts and that they knew of the transfers out to Amdex, Pte and

7   into eoBuy Ventures Ltd.  They knew these facts for the reason that they were excluded from

8   partaking in or becoming shareholders of eobuy Ventures Ltd the new company formed to

9   realign the original investors' shareholder interest; they were instead provided an opportunity

10  to obtain their shareholders interest in Indiezone.  In fact the intended exclusion of them from

11  shareholder ownership of eoBuy represents a fundamental reason behind the theft of Plaintiffs'

12  IP.

13  Positioned against the rights of Rooke and Rogness, while recognizing their limited

14  status as former at-will work for hire employees of Indiezone  the collective defendants

15  move forward to the second step in their analysis arguing and relying on the arbitration

16  clause of the Rooke and Rogness Employment Agreements with Indiezone attempting to

17  create an issue where none exists as  a matter of law.

18  Defendants claim that eoBuy, a nonsignor to the Employment Agreement is bound by

19  the arbitration clause under principles of estoppel and agency as the basis for their Motions

20  to Compel Arbitration, Dismiss or Stay these proceeding.

21  Notwithstanding the arguments otherwise the facts  and record, and in  particular the

22  lack of any factual recital by Rooke or Rogness concerning the issue do not support the

22  claims-arguments for the reason that eoBuy's rights exists independent of and beyond the

23  rights of Indiezone to prosecute the RICO and California state law claims in a plenary

24  action.

25  And, to suggest that the arbitration clause contained in the Employment Agreement

26  was intended to include the criminal activities of post-employment severance of Rooke and

27  Rogness binding eoBuy to an arbitration forum for the illegal use of eoBuy's separate IP is

28  a claim without a scintilla of support in either the facts-documents thus far presented in this

case or the law as it exists and is followed in the State of California. Defendants purposeful limitation on matters of fact and relying on the generalities of the Complaint are not dispositive of the issue, eobuy is not bound-estopped as a nonsignatory by the arbitration clause of the Employment Agreements under the terms of a joint venture with a limited forum for the resolution of this dispute for more than one reason and this Court has the discretion to stay or deny arbitration.

**The Employment Agreement and Assignment are Governed by California Law**

The Federal Arbitration Act ("FAA") provides that an arbitration contract "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*." 9 U.S.C. § 2 (2006) (emphasis added). In interpreting that Act, the United States Supreme Court has declared that "[s]tates may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of *any* contract.'" *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995) (quoting 9 U.S.C. § 2). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

In this case, the Agreement are governed by the laws of California. **[DE.32-2. ]**

**Cal Civ. P. Section 1281.(2)(c)**

Under California Civil Procedure Section 1281.2(c), the trial court has the discretion to, among other things, stay or deny arbitration if one or more parties to the action is not subject to arbitration, and multiple proceedings might result in conflicting rulings involving the same transaction. *Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 783.

While there is a strong public policy in favor of arbitration, there is an "equally compelling argument that the Legislature has also authorized trial courts to refuse enforcement of an arbitration agreement [or stay the arbitration] when, as here, there is a possibility of conflicting rulings. *C. V. Starr & Co. v. Boston Reinsurance Corp*. (1987) 190 Cal.App.3d 1637, 1642.)

"Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement." *(Cronus Investments, Inc. v. Concierge Services,* supra, 35 Cal.4th at p. 393, italics added; see also *Pioneer Take Out Corp. v. Bhavsar* (1989) 209 Cal.App.3d 1353, 1354-1355, 1358 [arbitration order stayed pending resolution of class action involving same parties and transaction].

Beyond its joint IP with Indiezone are the violations in the independent use of eoBuy's IP not licensed to Indiezone.  **[DE1 ¶¶1, 5,6 123.]**  Its separate IP is now being infringed on-misappropriated by Rooke and Rogness, Jingit, US Bank and the remaining defendants.

Under these circumstances eoBuy has independent standing to proceed in this action and its claims are not dependent on any agreement Indiezone had with Rooke and Rogness and the Court should stay the arbitration of Indiezone pending the resolution of the action. Significantly, as set forth in the affidavit of Mr. Fennelly eoBuy's IP stands independent of the Indiezone processes.  **[Fennelly Aff.¶ 14-15.]**

The infringement and misappropriation have resulted in both interdependent and independent claims, each can be easily separated but could result in inconsistent verdicts on those claims which are the result of a violation of the theft of the joint IP and those which are independent of the relationship between eoBuy and Indiezone.

**Equitable Estoppel does not Apply to  Eobuy as Nonsignatory to the Employment Agreement.**

The right to arbitrate assumes that the parties have elected to use it as an alternative to the judicial process.  Arbitration is consensual and not mandatory. The fundamental assumption of arbitration is that it may be invoked as an alternative to the settlement of disputes by means other than the judicial process solely because **all parties** have chosen to arbitrate them.  Although strong public policy in favor of arbitration does exist, it does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement *County of Contra Costa*, supra, 47 Cal.App.4th at pp. 244-245.)

Flushed out to its most liberal application of the law on the facts before the Court, if the arguments proposed for Rooke and Rogness are to be accepted that Plaintiff eoBuy's claims on some level are entirely dependent on the existence of the Employment Agreement

1   and the arbitration clause, "the law is clear that this is not enough for equitable estoppel.

2   *Goldman v. KPMG LLP*, 92 Cal.Rptr.3d 534 (Cal.Ct.App. 2009).

3       Generally, federal courts have been hesitant to estop a nonsignatory seeking to

4   avoid arbitration. *InterGen, supra,* 344 F.3d at pp. 145-146   In such instances, "estoppel

5   has been limited to 'cases [that] involve nonsignatories who, during the life of the

6   contract, have embraced the contract despite their non-signatory status but then, during

7   litigation, attempt to repudiate the arbitration clause in the contract." [(DuPont, supra,

8   269 F.3d at p. 200]; accord *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.* [(2d Cir.

9   1999)] 170 F.3d 349, 353 [] (holding a nonsignatory bound by a contract under which it

10  received the direct benefits of lower insurance rates and the ability to sail under the

11  French Flag)." *(InterGen,* supra, 344 F.3d at p. 146.)

12      Under federal decisional law, "[a] nonsignatory is estopped from refusing to

13  comply with an arbitration clause 'when it receives a "direct benefit" from a contract

14  containing an arbitration clause.' [Citations.]" (International Paper, supra, 206 F.3d at p.

15  418.) "Direct benefits estoppel applies when a nonsignatory 'knowingly exploits the

16  agreement containing the arbitration clause." *Bridas S.A.P.I.C. v. Government of*

17  *Turkmenistan* (5th Cir. 2003) 345 F.3d 347, 361-362.

18      Notwithstanding the bare assertions giving rise to an estoppel claim the record is without a

19  single factually statement in support of the argument for the Court to invoke the estoppel doctrine.

20      Plaintiff eoBuy's' claims against Defendants do not rely on, and are not

21  intertwined with, the substance of the Employment Agreement or Assignment alone and

22  are independent of those agreements. eobuy's claims against Defendant Rooke and

22  Rogness while factually related to the Employment Agreements and Assignments[1] are not

23  inextricably intertwined with those agreements.

24      Other than by unsupported conclusory statements defendants have failed to establish that

25  eoBuy's claims are "intertwined" with the Employment Agreements or that eoBuy has

26  "exploited" those agreements to the degree that requires a finding of a "direct benefit" estoppel.

27  ────────────────
    [1] Glaringly absent from the Assignment is any reference to arbitration. And in fact the document
28  itself makes it clear Plaintiff Indiezone is the exclusive owner of any "work for hire" developed IP
    which is the subject of the claimed infringement-misappropriation beyond the license to Indiezone.

1    Each of the claims stands independent the any agreement entered into between Rooke,

2  Rogness and Indiezone.  *Bridas S.A.P.I.C. v. Government of Turkmenistan,* supra, 345 F.3d

3  at pp. 361-362.)  Accordingly, the doctrine of equitable estoppel does not require eoBuy to

4  arbitrate their claims against Rooke and Rogness.

5  **Defendants Failed to Establish an Agency was Created or Existed between eobuy and Indiezone**

6  **allowing  Indiezone to  Bind  eobuy to Arbitrate its Claims of Infringement/ Misappropriation**

7    "Agency requires that the principal maintain control over the agent's actions. *DeSuza v.*

8  *Andersack,* 133 Cal.Rptr. 920, 924 (Cal.Ct.App. 1976) ("The right of the alleged principal to

9  control the behavior of the alleged agent is an essential element which must be actually present

10  in order to establish the existence of agency , and has long been recognized as such in the

11  decisional law."); *accord Batzel v. Smith,* 333 F.3d 1018, 1035–36 (9th Cir. 2003).

12    There is no reason to assume that Indiezone represented eoBuy or that it was intended to

13  have Indiezone represent eoBuy in the licensing of its independent IP  in dealings with third

14  persons, " Cal. Civ. Code § 2295.

15    Defendants are not entitled to compel arbitration of eoBuy's claims based merely on the

16  fact that it has licensed portion of its IP to Indiezone, especially where there exist independent

17  processes and trade secrets which were reserved to the rights of eoBuy.

18    "Agency requires that the principal maintain control over the agent's actions. *DeSuza v.*

19  *Andersack*, 133 Cal.Rptr. 920, 924 (Cal.Ct.App. 1976) ("The right of the alleged principal to

20  control the behavior of the alleged agent is an essential element which must be factually present

21  in order to establish the existence of agency, and has long been recognized as such in the

22  decisional law."); *accord Batzel v. Smith*, 333 F.3d 1018, 1035–36 (9th Cir. 2003).

22    Indeed, to the extent the record contains any evidence that is probative of the nature of

23  the arrangement between the two companies, it suggests that an agency relationship was

24  expressly disavowed by the restricted licensee agreement they entered into.

25    It is hornbook law that an agent can commit its (nonsignatory) principal to an

26  arbitration agreement. *See* Restatement (Second) of Agency § 7 (1958); *see also*

27  *Thomson-CSF,* 64 F.3d at 777; *In re Oil Spill by the Amoco Cadiz,* 659 F.2d 789, 795-96

28  (7th Cir.1981); *cf. Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110,

1122 (3d Cir.1993) (extending a principal's arbitration obligation to its nonsignatory agent).

"Not only must an [agency] arrangement exist ... so that one [party] acts on behalf of the other and within usual agency principles, but the arrangement must be relevant to the [legal obligation in dispute]." *Phoenix Can. Oil Co. v. Texaco, Inc.,* 842 F.2d 1466, 1477 (3d Cir.1988). For present purposes, that means that Rooke and Rogness must demonstrate not only that Indiezone was eoBuy's agent but also that it acted as such in executing the Employment Agreement and Assignment.

Defendants did not establish, on this record, an agency relationship between Indiezone and eoBuy ever existed or that it extended to the execution of the Employment Agreement and Assignment. Moreover, that agreement (and, thus, the agency relationship created thereby) did not extend to any right to use eoBuy's infringed/ misappropriated IP and that the resolution of that claim would be limited to the arbitration.

## **Both eoBuy and Indiezone are entitled to Injunctive Relief**

Putting aside any right of the arbitration forum claimed to be imposed on Indiezone in this case, beyond the rights of eoBuy to a plenary action of its own RICO and state law claims and any inconsistent verdict which might be drawn as to the defendants infringement and misappropriation of Plaintiff eoBuy's IP is the clause which appears not only in the Employment Agreement but in the Invention/Confidentiality Agreement.

On this point Indiezone and Defendants Rooke and Rogness intentionally carved out language which expressly recognizes the purpose of the Assignment and the limitations of an agreement to arbitrate as a means to preserve its exclusive ownership rights to the proprietary nature and confidence of its inventions created during their at will periods of employment as work for hire employees of Indiezone.**[DE 32-2¶¶1,3,14]**

All telling is the Assignment's lack of any reference to arbitration and the inclusion of the express understanding that Plaintiff Indiezone would be entitled to **"Injunctive Relief"** in the courts so as to prevent irreparable harm. **[DE 32-2¶14]**

Despite this broad coverage of claims, the arbitration clause, specifically exempts equitable claims from arbitration. In particular, the Agreement states as follows:

1   **. . .** the parties retain their right to, and shall not be prohibited, limited

2   or in any other way restricted from, seeking or obtaining equitable relief

3   from a court having jurisdiction over the parties .   .   .

4   Under California law the courts "interpret [an] Agreement . . . in light of [its] plain

5   meaning. . . . Under the plain meaning rule, courts give the words of the contract . . . their

6   usual and ordinary meaning. . . . [W]e interpret the words in their ordinary sense,

7   according to the plain meaning a layperson would attach to them.' ( *Valencia v. Smyth*

8   (2010) 185 Cal.App.4th 153, 162, citations omitted.)

9   A natural reading of clause limits the arbitration to non-equitable claims involving

10  Indiezone only.

11   It is clear the parties intended to carve out an exception to arbitration for all

12  equitable claims. They did so with the specific language " shall not be prohibited, limited

13  or in any other way restricted from seeking or obtaining equitable relief from a court

14  having jurisdiction over the parties".

15  The only permissible contract interpretation is that that the equitable claims

16  exception in the clause was intended to apply only to claims designed to maintain the

17  ownership claims of Indiezone.   The clear meaning to be assigned to the clause was that

18  the parties agreed that the arbitrator could not decide both equitable and legal claims and

19  that the provision for court jurisdiction on equitable matters was not simply ancillary to

20  the arbitration

21  Moreover, for the reason that California law controls the agreement to arbitrate

22  under California Civil Procedure Section 1281.2(c), the trial court having the discretion

22  to, among other things, stay or deny arbitration if one or more parties to the action is not

23  subject to arbitration, and multiple proceedings might result in conflicting rulings

24  involving the same transaction the term can only mean the parties intended to give a court

25  the authority to issue equitable remedies, such as a temporary injunction, to prevent

26  irreparable harm. Thus, it makes sense that if the parties wanted to give themselves the

27  ability to seek temporary equitable remedies using the exclusive jurisdiction of the courts

28  over equitable relief.

**If The Court Grants The Motion To Compel Arbitration, to Indiezone it**
**<u>Should Stay the Arbitration Pending the Outcome of a Plenary Trial</u>**

In the event the Court compels arbitration, it has discretion to stay the matter. *Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 783.

<u>**Conclusion**</u>

For the foregoing reasons, Plaintiffs respectfully requests that the Court deny Defendant's Motion to Compel Arbitration, Stay or Dismiss the proceedings because the nonsignatroy is not bound by the Employment Agreement and the Assignment and has claims which are not dependent on those Agreements and in the alternative stay the arbitration until after a trial of the claims of eoBuy.

Respectfully submitted, and dated: January 7, 2014.


/S/_____
Douglas R. Dollinger, Esq., NY Bar No. 2354926
Appearing *Pro Hac Vice*
The Law Offices of Douglas R. Dollinger
& Associates
50 Main Street-Suite 1000
White Plains, New York 10606
Telephone:    845-915-6800
Facsimile:    845-915-6801
E-mail: ddollingeresq@gmail.com


/S/_____
Seth D. Heyman, Esq., CA Bar No. 194120
2600 Michelson Drive, Suite 900
Irvine, CA 92612
Telephone: 855-439-6628
Facsimile: 855-207-3967
Email: sdh@heymanlegal.com

Attorneys for Plaintiff

1 Douglas R. Dollinger, Esq., NY Bar No. 2354926
Appearing *Pro Hac Vice*
2 The Law Offices of Douglas R. Dollinger
& Associates
3 50 Main Street-Suite 1000
4 White Plains, New York 10606
Telephone:    845-915-6800
5 Facsimile:    845-915-6801
E-mail: ddollingeresq@gmail.com
6

7
8 Seth D. Heyman, Esq., CA Bar No. 194120
2600 Michelson Drive, Suite 900
9 Irvine, CA 92612
Telephone: 855-439-6628
10 Facsimile: 855-207-3967
11 Email: sdh@heymanlegal.com
Attorneys for Plaintiff
12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
13 **SAN FRANCISCO DIVISION**

14

15 Indiezone, Inc., a Delaware corporation, and )   **Case No. 13-cv-**
EoBuy, Limited an Irish private limited company, )
16 )
)
17 ***Plaintiffs,*** )
vs. )
18 )
) **Order Denying Defendants' Motions**
) **to Compel Arbitration, Stay or Dismiss**
19 Todd Rooke, Joe Rogness, Phil Hazel, Sam Ashkar, )
Holly Oliver and U.S. Bank, collectively the ***RICO Defendants***; )
20 )
and )
21 )
)
22 Jingit LLC., Jingit Holdings LLC., Jingit Financial, Services LLC., )
Music. Me, LLC., Tony Abena, John E. Fleming, Dan Frawley, )
22 Dave Moorehouse II, Chris Ohlsen, Justin James, )
Shannon Davis, Chris Karls in their capacities as officers, )
23 agents and/or employees of the Jingit LLC., )
***Defendants in Negligence, and Aiding/Abetting;*** )
24 )
)
25 and )
)
26 Wal-Mart, General Electric, Target, DOE(s) and ROE(s) 1 )
through 10, ***Defendants in Negligence Secondary*** )
27 ***-Vicarious Infringement,*** )
)
28 Defendants. )

1    **IT IS HEREBY ORDERED THAT:**

2         After duly considering the Defendants' Motion to Compel Arbitration, Stay or

3    Dismiss these proceedings in this matter the Court finds good cause exists and the Motions

4    are hereby DENIED.

5

6     Dated:  March ___, 2014

7                                                    _____

8                                                    United States District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21