1  James W. Morando, CA Bar No. 87896
   Deepak Gupta, CA Bar No. 226991
2  FARELLA BRAUN & MARTEL LLP
3  235 Montgomery Street, 17th Floor
   San Francisco, California 94104
4  Telephone: 415.954.4457
   Facsimile: 415.954.4480
5  Email: jmorando@fbm.com
   Email: dgupta@fbm.com
6

7  Keiko L. Sugisaka, MN Bar No. 266152 (admitted *Pro hac vice*)
   Joseph P. Ceronsky, MN Bar No. 391059 (admitted *Pro hac vice*)
8  MASLON EDELMAN BORMAN & BRAND, LLP
   3300 Wells Fargo Center
9  90 South Seventh Street
   Minneapolis, MN 55402-4140
10 Telephone: 612-672-8200
   Facsimile: 612-672-8344
11 Email: keiko.sugisaka@maslon.com

12 **ATTORNEYS FOR DEFENDANTS JINGIT
   LLC, JINGIT HOLDINGS, LLC, JINGIT
13 FINANCIAL SERVICES, LLC, TODD
   ROOKE, JOE ROGNESS, SAM ASHKAR,
14 PHIL HAZEL, HOLLY OLIVER, SHANNON
   DAVIS, JUSTIN JAMES, CHRIS OHLSEN,
15 DAN FRAWLEY, DAVE MOOREHOUSE, II,
   TONY ABENA, CHRIS KARLS, JOHN E.
16 FLEMING, AND MUSIC.ME, LLC**

17                  **UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA**
18                          **OAKLAND DIVISION**

19
   Indiezone, Inc., a Delaware corporation, and EoBuy,    Case No: CV 13-04280 YGR/EDL
20 Limited an Irish private limited company,              Hearing Date: March 25, 2014
                                                          Hearing Time: 2:00 p.m.
21                  Plaintiffs,                           Place: Oakland Courthouse
                                                          Courtroom: 5, Second Floor
22 vs.

23 Todd Rooke, Joe Rogness, Phil Hazel, Sam Ashkar,       **DEFENDANTS' REPLY IN SUPPORT
   Holly Oliver and U.S. Bank, collectively the *RICO*    OF MOTION OF DEFENDANTS
24 *Defendants*;                                          ROOKE AND ROGNESS TO COMPEL
                                                          ARBITRATION WITH INDIEZONE,
25 Jingit LLC, Jingit Holdings, LLC, Jingit Financial     INC., DISMISS PLAINTIFF EOBUY,
   Services LLC., Music.Me, LLC., Tony Abena, John        LIMITED AND MOTION OF
26 E. Fleming, Dan Frawley, Dave Moorehouse II,           REMAINING DEFENDANTS TO
   Chris Ohlsen, Justin James, Shannon Davis, Chris       STAY ALL REMAINING
27 Karls in their capacities as officers, agents and/or   PROCEEDINGS**
   employees of Jingit LLC, *Defendants in Negligence,*
28

***and Aiding/Abetting***;

Wal-Mart, General Electric, Target, DOE(s) and ROE(s) 1 through 10, ***Defendants in Negligence Secondary-Vicarious Infringement***,

Defendants.

## INTRODUCTION

Plaintiffs' Response *admits* that plaintiff eoBuy, Limited is a dissolved corporation and thus lacks capacity to sue; therefore the current plaintiff eoBuy, Limited cannot maintain this action and should be dismissed. While Plaintiffs have recently filed a motion for leave to amend the Complaint to add another purported entity, eoBuy Ventures Limited, as a plaintiff, the Court has not yet considered that motion and, when it does, Defendants believe that it will be denied since the proposed new plaintiff is not, as Plaintiffs have represented, an existing private limited company formed under the laws of Ireland.  To the contrary, there is no such entity that has been organized in Ireland and as such the proposed new plaintiff also would not have capacity to sue.  Moreover, even if the Court were to permit Plaintiffs to file their proposed Amended Complaint so as to have "eoBuy Ventures Limited" added as a plaintiff, this would not change the analysis or conclusion that based on the allegations in both the original and proposed Amended Complaint, (ECF 57-1, Exhibit A) that entity too would still be compelled to arbitrate under estoppel and agency theories.

Plaintiffs' sole remaining argument that Indiezone can avoid its commitment to arbitrate also fails because, as the Ninth Circuit and other courts have held, the inclusion of a reference to an option to seek equitable relief from a court in an otherwise broad arbitration clause is not sufficient to overcome the presumption and policies in favor of compelling arbitration.  In light of the broad arbitration clause in this case, Plaintiffs may not avoid mandatory arbitration merely by citing to their prayer for equitable relief in their Complaint.

# ARGUMENT

## I.    Plaintiffs Admit that eoBuy Limited Lacks Capacity to Sue; Thus, It Should be Dismissed.

Plaintiffs voice zero opposition to Defendants' argument that plaintiff eoBuy, Limited should be dismissed because, as a dissolved corporation, it lacks the capacity to sue. Indeed, Plaintiffs *confirm* that the plaintiff eoBuy, Limited was dissolved in 2008. ("There is no genuine contest that … eobuy Limited … was dissolved on April 1, 2008" Pls.' Mem. in Opp'n, ECF 54, p. 9; *see also* Declaration of Conor Fennelly ("Fennelly Decl."), ECF 54-1, ¶ 1.) Accordingly, the present plaintiff eoBuy, Limited lacks capacity to sue, and cannot maintain this action against Defendants. Defendants' motion to dismiss should therefore be granted and plaintiff eoBuy, Limited dismissed.[1]

## II.    Arbitration Should Still be Ordered Despite Plaintiffs' Pending Motion for Leave to Amend the Complaint to Add the Purported Entity "EoBuy Ventures Limited" as a Plaintiff.

Having conceded that plaintiff eoBuy, Limited must be dismissed, Plaintiffs have filed a motion for leave to file an amended complaint to permit a purported entity called "eoBuy Ventures Limited" to be added as a plaintiff.  (ECF 57.)  The proposed Amended Complaint would substitute this purported entity in place of the original plaintiff eoBuy, Limited, but otherwise leave all substantive allegations set forth in the original Complaint and basis for the claims of this "eoBuy" plaintiff unchanged. Plaintiffs suggest that the purported "eoBuy Ventures Limited" entity will have the capacity to sue because the assets and intellectual property of "eoBuy Limited" were transferred to "eobuy Ventures Limited."  (Pls.' Mem. in Opp'n, ECF 54, p. 10.)

Defendants believe that Plaintiffs' motion for leave to amend should and will be denied. Despite the statement in the declaration of Conor Fennelly that the IP and licenses of eoBuy Limited

---

[1] Defendants also note that the corporate status of plaintiff Indiezone, Inc. had been forfeited under Delaware law since June 11, 2009, and was only recently reinstated on January 24, 2014. (Declaration of Joseph P. Ceronsky, Exs. A & B.)  It appears that Indiezone's reinstatement of its corporate status, however, is retroactively effective. *See* Del. Code Ann. Title 8, § 312(e).

were transferred "…into the newly formed company eoBuy Ventures Limited a company formed under the laws of Ireland" (ECF 54-1, ¶ 3), in fact there is no such company which exists or which was formed under the laws of Ireland.  (*See* Supplemental Declaration of Brian Walker, ¶¶ 3-4, Ex. A.)  To the contrary, there is no present or existing entity named "eoBuy Ventures Limited" that has been organized in Ireland.  (*Id.*)  Nor is there a record of any other entity organized under the laws of Ireland with the term "eoBuy" as part of its name with the exception of the dissolved plaintiff eoBuy Limited.  (*Id.* ¶ 5, Ex. B.)[2]   As such, any proposed amendment to add such an entity as a plaintiff would be futile since it too would lack capacity to sue.

Moreover, even if the Court were to permit Plaintiffs to file their proposed Amended Complaint (ECF 57-1, Exhibit A) so as to have "eoBuy Ventures Limited" added as a plaintiff, this would not change the analysis or conclusion that, by relying on the very same allegations as eoBuy, Limited, the newly proffered entity too would be compelled to arbitrate under estoppel and agency theories.  As Plaintiffs have admitted, "estoppel applies when a nonsignatory knowingly exploits the agreement containing the arbitration clause," and also that "eobuy's claims … [are] factually related to the Employment Agreements," which contain the arbitration clause. (Pls.' Mem. in Opp'n, ECF 54, p. 13) (quotations omitted).  Plaintiffs' assertion that "eoBuy's" claims are not "intertwined" and that eoBuy and Indiezone's "interdependent and independent claims … can easily [be] separated," (*id.* p. 12) is unsupported by, and is in fact wholly incongruent with the factual allegations of the Complaint, which are repeated verbatim in the proposed Amended Complaint. Plaintiffs' Complaint makes no distinction at any point between the two companies' property or claims.  Rather, "eoBuy" asserts the identical claims based on the same facts and legal theories—including breach of contract—as Indiezone, alleging Rooke and Rogness "executed copies of the Plaintiff Corporations'

---

[2] Instead, Conor Fennelly recently registered the trade name "eobuy" on February 21, 2014, as doing business for an Irish company called "Laraghcon Chauffeur Drive Limited."  (*Id.* ¶ 6, Ex. C.)

[Employee Agreements]" (Compl. ¶ 116), which protected "Plaintiffs' joint IP-Property" and created "fiduciary duties … to Plaintiff Corporations," (Compl. ¶ 115) (emphasis added). And, that "Plaintiffs [relied] on the Agreements in providing [Rooke and Rogness] with access to their IP-Property." (*Id.* ¶ 121) (emphasis added).

Plaintiffs' mischaracterizations in their opposition of the allegations of their own Complaint in an attempt to avoid arbitration lack any supporting basis. Indeed, Plaintiffs' opposition cites to just four paragraphs in its Complaint (ECF 54, p. 6, lines 6-7 citing paragraphs 1, 5, 6 and 123) and none of these paragraphs set forth any alleged independent claims arising from any "separate IP" and in fact confirm that the claims of both purported Plaintiffs are the same.[3] Plaintiffs' Complaint makes clear that eoBuy seeks to exploit the Employee Agreements by basing its claims on it. "By suing, the [non-signatory] now seeks to further enjoy the benefits of the [agreement], yet avoid its burdens by refusing arbitration. This it cannot do." *Peck Ormsby Constr. Co. v. City of Rigby*, 526 Fed. Appx. 769, 770 (9th Cir. 2013) (holding non-signatory estopped from avoiding arbitration) (citation omitted).[4]

Plaintiffs' assertion that the Court has the discretion to stay or deny arbitration because of

---

[3] In an apparent last ditch attempt to avoid arbitration, Plaintiffs attempt to suggest that there has been some sort of violation of "eoBuy's" independent IP through an entirely conclusory statement in the declaration of Conor Fennelly. (Fennelly Decl., ECF 54-1, ¶ 15.) In the first place, there are simply no such claims or allegations in the Complaint, or in the proposed Amended Complaint. Moreover, even Mr. Fennelly's declaration does not at all identify, explain or support the assertion of a claim relating to the violation of any alleged independent "eoBuy IP." This single conclusory, unexplained and unsubstantiated statement from Mr. Fennelly's declaration cannot overcome Plaintiffs' theory repeated ad nauseam in the Complaint—that Defendants' alleged misappropriation of "Plaintiffs' joint IP-Property" violated their Employee Agreements, which contain the arbitration clause. (*See, e.g.,* Compl. ¶¶ 116-21, 148-53, 160-62, 169-74, 180-82, 452-55).

[4] Plaintiffs' attempt to argue that eoBuy would not be bound to arbitrate under agency theory also fails. Plaintiffs do not even try to refute that eoBuy engaged in a self-described "joint venture" with Indiezone. (Compl. ¶¶ 109-10.) Under *Ahtna,* such a joint venture constitutes an agency relationship and subjects eoBuy to mandatory arbitration along with Indiezone. *See Ahtna Gov't Servs. Corp. v. 52 Rausch,* No. C 03-00130, 2003 U.S. Dist. LEXIS 2460, at *31-36 (N.D. Cal. Feb. 18, 2003); (Defs.' Mem. in Supp., ECF 29, Sec. III.B., pp. 21-22.)

possible conflicting rulings based on California procedural law, including California Code of Civil Procedure § 1281.2(c)), is misplaced, because *here*, the FAA applies.  (Pls.' Mem. in Opp'n, ECF 54, p. 11.)  Indeed, the Employee Agreements explicitly state that "*arbitration shall be governed by the Federal Arbitration Act*…."  (Ex. A to Declaration of Todd Rooke ("Rooke Decl."), ECF 32-1, p. 3, ¶ 7) (emphasis added).  The California Code of Civil Procedure simply has no application here.[5]  Indeed, the California Court of Appeal case that Plaintiffs cite, *Gravillis v. Coldwell Banker Residential Brokerage Co.*, 143 Cal. App. 4th 761 (2006), easily distinguishes itself from the instant situation.  The arbitration agreement at issue there expressly stated that "any dispute arising out of the [agreement will be] decided by neutral arbitration *as provided by California law*…." 143 Cal. App. 4th at 784 (quotation omitted).  Accordingly, the *Gravillis* Court concluded, "Because the Agreement provides that a motion to compel arbitration is to be decided under California law…we need not decide if the FAA applies." *Id.*; s*ee also Covillo v. Specialty's Cafe*, No. C-11-00594, 2012 U.S. Dist. LEXIS 114602, at *2 (N.D. Cal. Aug. 14, 2012) ("The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce, including employment agreements.") (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001)).

## III.    Indiezone Cannot Evade Its Agreement to Arbitrate Merely Because It has Included a Request for Equitable Relief.

The sole remaining argument made by Plaintiffs is that Indiezone should be able to avoid its agreement to arbitrate because Plaintiffs have included a request for equitable relief in their Complaint.  However, as the Ninth Circuit and other courts have held, where parties agree to an otherwise broad arbitration clause, the mere reference in that clause to an ancillary right to seek

---

[5] It is unclear why Plaintiffs also cite the doctrine that state law contract defenses may be used to invalidate an arbitration agreement. (Pls.' Mem. in Opp'n, ECF 54, p. 11.)  Plaintiffs are not arguing that the arbitration agreement itself should be invalidated, rather, they argue California's arbitration statute governs the application of the arbitration agreement in lieu of the FAA, which, as explained *supra*, it does not.

equitable relief from a court is insufficient to overcome the presumption and strong policies in favor of arbitration.

Here, as discussed in the motion, the parties agreed to a very broad clause providing for "mandatory and exclusive binding arbitration of any controversy or claim arising out of, or relating to, this Agreement or any breach hereof…." The relevant language from the arbitration clause states:

> **Arbitration.** You and the Company shall submit to mandatory and exclusive binding arbitration of any controversy or claim arising out of, or relating to, this Agreement or any breach hereof, provided, however, that the parties retain their right to, and shall not be prohibited, limited or in any other way restricted from, seeking or obtaining equitable relief from a court having jurisdiction over the parties.

(Ex. A to Rooke Decl., ECF Doc. 32-1, p. 3, ¶ 7.)  Without providing any supporting authority or evidence,[6] Plaintiffs claim that "[t]he clear meaning to be assigned to the [equitable relief] clause was that the parties agreed that the arbitrator could not decide both equitable and legal claims and that the provision for court jurisdiction on equitable matters was not simply ancillary to the arbitration." (Pls.' Mem. in Opp'n, ECF 54, p. 16.)[7] This interpretation contravenes the plain language of the arbitration provision, which states that the parties "shall" submit "any" controversy to arbitration and makes this "mandatory" and "exclusive."   Indeed, Plaintiffs' interpretation is

---

[6] The statements in Conor Fennelly's declaration addressing the arbitration provision at issue (Dkt No. 54-1, ¶¶ 10-13) consist of nothing more than an argumentative characterization of the language of the agreement and do not constitute admissible evidence probative of the parties' contractual intent.

[7] Plaintiffs are incorrect in claiming that the Employment Agreements contain "express language" providing that "claims that the improper use of Plaintiff IP is NOT a matter subject to arbitration." (Pls.' Mem. in Opp'n, ECF 54, p. 4.)  There is no such exception in the arbitration clause for claims relating to Plaintiffs' intellectual property, express or otherwise, there is simply a general allowance for equitable relief.  (*See* Ex. A to Rooke Decl., ECF 32-1, p. 3, ¶ 7.) Plaintiffs also stress that the Confidentiality and Assignment Agreement does not contain an arbitration clause. (Pls.' Mem. in Opp'n, ECF 54, p. 15.)  However, they admit Rooke and Rogness "enter[ed] into their Employee Invention Assignment and Confidentiality Agreement *as a condition of their employment* with the Company." (*Id.* p. 6) (emphasis added).  Indeed, the Employee Agreement *requires* execution of the Employee Invention Assignment and Confidentiality Agreement. (Ex. A to Rooke Decl., ECF 32-1, p. 2, ¶ 3.) Therefore, any claims related to the Assignment and Confidentiality Agreement "arise from or relate to" the Employee Agreement, which mandates arbitration.

inconsistent with both the breadth of this provision and the FAA's presumption in favor of arbitrability. Attempts to defeat such relatively standard arbitration clause language based on such an argument have been repeatedly rejected in the courts, including by the Ninth Circuit.

In *Comedy Club, Inc. v. Improv West Associates,* 553 F.3d 1277 (9th Cir. 2009), the Ninth Circuit was faced with a substantially similar arbitration clause that also provided for arbitration of "all disputes relating to or arising under" the agreement at issue, but which also stated that the parties could seek to pursue equitable remedies in Court. In *Comedy Club,* the arbitration clause at issue stated both that:

> "(1) [a]ll disputes relating to or arising under this Agreement . . . shall be resolved by arbitration" and

> "(2) [n]otwithstanding this agreement to arbitrate, the parties, in addition to arbitration, shall be entitled to pursue equitable remedies and agree that the state and federal courts shall have exclusive jurisdiction for such purpose and for the purpose of compelling arbitration and/or enforcing any arbitration award."

*Comedy Club*, 553 F.3d at 1285.

Despite the argument made by the plaintiff in that case—just like that made by the Plaintiffs here—that the second clause provided courts sole jurisdiction over equitable claims, the Ninth Circuit held that the arbitrator had authority over "all disputes, equitable and legal." *Id.* at 1286. In analyzing the issue, the Ninth Circuit first observed that: "It is well established 'that where the contract contains an arbitration clause, there is a presumption of arbitrability.'" *Id.* at 1284 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). In light of that presumption, the *Comedy Club* Court held that "'[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id.* In light of the strong presumption and policies favoring arbitration, the Ninth Circuit held that the equitable claims clause "was intended to apply only to claims designed to

maintain the status quo between the parties" and that "[t]he provision for court jurisdiction over equitable matters was ancillary to the arbitration." *Id.* at 1285.

Application of the Ninth Circuit's ruling in *Comedy Club* to the instant case leads to the same result. Here, too, the parties agreed to a broad arbitration clause providing for "mandatory and exclusive binding arbitration" and the inclusion of additional language providing that the parties "retain their right" and are not "prohibited" from seeking "equitable relief from a court" does nothing more than suggest an ancillary right to the arbitration. Other courts addressing the same issue have reached the same result. For example, in *Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.*, 816 F. Supp. 213 (S.D.N.Y. 1993), the District Court was also faced with the same type of language in an arbitration clause and ordered arbitration holding that this interpretation promoted "harmony" between the strong presumption in favor arbitrability and contractual language contemplating equitable relief for narrow purposes. *Id.* at 217-18. The *Remy* Court noted in particular the danger of "transforming arbitrable claims into non-arbitrable ones depending on the form of relief prayed for." *See also WMT Investors, LLC v. Visionwall Corp.*, No. 10509, 2010 U.S. Dist. LEXIS 65869, at *6, *10 (S.D.N.Y. June 28, 2010) (holding plaintiff's claims for equitable relief subject to arbitration where "an agreement contains both a broadly worded arbitration clause and a clause allowing the parties to seek equitable relief from courts…. Plaintiff may seek a preliminary injunction in this Court (which it has not done) and also seek a permanent injunction from this Court if Plaintiff prevails in the arbitration (which has not occurred)."); *Clarus Med. v. Myelotec, Inc.*, No. 05-934, 2005 U.S. Dist. LEXIS 30540, at *12-13 (D. Minn. Nov. 30, 2005) ("[T]he equitable relief [exception] does not <u>exclude</u> injunctive relief from the arbitration clause…, but rather provides that each party is 'entitled' to seek injunctive relief for some disputes. This language does not mandate that such disputes be brought before a court rather than an arbitrator….").

*Comedy Club*, *Remy*, *WMT Investors* and *Clarus* show that where, as here, an agreement contains both a broad arbitration clause as well as language permitting parties to seek equitable relief in court, this additional language in the arbitration clause is not sufficient to overcome the strong presumption in favor of arbitration and to permit a party to avoid arbitration merely by including a request for equitable relief in its complaint. Under the federal presumption for and strong policies favoring arbitration, all claims asserted against defendants Rooke and Rogness—equitable and legal—are subject to the broad arbitration clause.

**IV.    Plaintiffs Do Not Contest that if Arbitration Is Ordered as to the Claims Against Defendants Rooke and Rogness, then the Court Should Stay Proceedings as to All Other Claims and Defendants.**

As discussed in Section IV of Defendants' opening Memorandum in Support, due to considerations of judicial economy and efficiency, the claims against the Defendants other than defendants Rooke and Rogness should be stayed pending the outcome of the arbitration given that these claims are all dependent upon the fundamental claim that defendants Rooke and Rogness have allegedly misappropriated Plaintiffs' intellectual property. (ECF 29, pp. 16-19).  In their opposition, Plaintiffs do not contest this point, nor can they in light of the allegations of their Complaint. Accordingly, Defendants' request that, assuming the Court orders arbitration of the claims against defendants Rooke and Rogness, this proceeding should otherwise be stayed pending the outcome of the arbitration should be granted.[8]

## CONCLUSION

For the reasons set forth in the motion and in the foregoing, moving Defendants respectfully ask this Court to compel arbitration between Indiezone and Rooke and Rogness, dismiss eoBuy, Limited and stay litigation against the remaining Defendants pending the arbitration.

---

[8] Similarly, even in the event that the Court were to grant Plaintiffs' motion to amend and allow the purported entity called "eoBuy Ventures Limited" to be added as a plaintiff, for the same reasons the Court should still stay eoBuy's claims against the other Defendants pending the arbitration outcome.

1

2    Dated: March 3, 2014

3                                           **MASLON EDELMAN BORMAN & BRAND, LLP**

4

5                                           By:    /s/ Joseph P. Ceronsky
                                                   Joseph P. Ceronsky (MN Bar No. 391059)
6                                                  (admitted *Pro hac vice*)

7                                           **ATTORNEYS FOR DEFENDANTS JINGIT LLC,
                                            JINGIT HOLDINGS, LLC, JINGIT FINANCIAL
8                                           SERVICES, LLC, MUSIC.ME, LLC, TODD
                                            ROOKE, JOE ROGNESS, SAM ASHKAR, PHIL
9                                           HAZEL, HOLLY OLIVER, SHANNON DAVIS,
                                            JUSTIN JAMES, CHRIS OHLSEN, DAN
10                                          FRAWLEY, DAVE MOOREHOUSE II, TONY
                                            ABENA, CHRIS KARLS AND JOHN E.
11   #1023611                               FLEMING**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28