1  Douglas R. Dollinger (*pro hac vice*) (NY Bar No. 2354926)
   The Law Offices of Douglas R. Dollinger
2  & Associates
3  50 Main Street-Suite 1000
   White Plains, NY 10606
4  Telephone:    845-915-6800
   Facsimile:    845-915-6801
5  E-mail:ddollingeresq@gmail.com

6  Seth D. Heyman (CA Bar No. 194120CA)
7  Heyman Law Offices
   2600 Michelson Drive- Suite 900
8  Irvine, CA 92612
   Telephone:    855-439-6628
9  Facsimile:    855-407-7714
10 E-mail:sdh@heymanlegal.com
   Attorneys for Plaintiffs

11              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
12                     OAKLAND DIVISION

| | |
|---|---|
| Indiezone, Inc., a Delaware corporation, and EoBuy, Limited an Irish private limited company, | Case No. CV13-04280 YGR/EDL |
| Plaintiffs, | Supplemental Declaration of Conor Fennelly in Opposition of the Motions to Compel Arbitration Dismiss or to Stay And the Motion to Amend the Complaint |
| vs. | |
| Todd Rooke, Joe Rogness, Phil Hazel, Sam Ashkar, Holly Oliver and U.S. Bank, collectively the *RICO Defendants*; | |
| Jingit LLC., Jingit Holdings LLC., Jingit Financial, Services LLC., Music. Me, LLC., Tony Abena, John E. Fleming, Dan Frawley, Dave Moorehouse II, Chris Ohlsen, Justin James, Shannon Davis, Chris Karls in their capacities as officers, agents and/or employees of the Jingit LLC., *Defendants in Negligence, and Aiding/Abetting*; | |
| Wal-Mart, General Electric, Target, DOE(s) and ROE(s) 1 through 10, *Defendants in Negligence Secondary -Vicarious Infringement*, | |
| Defendants. | |

26     Conor Fennelly, CEO of Indiezone and EoBuy Licensing Limited declaring on this 1st
27 day of April 2014, in correction and supplemental to my Declaration of February 18, 2014,
28 under the penalties of perjury stating that I make this declaration in opposition to the claims

- 1 -

of the appearing defendants to these proceeding and in opposition to the Motions before the Court.

1. I have read the Declaration of Brian Walker and believe it to be accurate in all respects as it concerns eoBuy Ltd and eoBuy ventures LTD formed in 2003 and administratively dissolved on or about April 2008.

2. However, with this said, on or about November 15th 2007, the Board of Directors of eoBuy Licensing Ltd., for reasons of revising the shareholder structure and settlement of claims, a vote was taken allowing the company to administratively dissolve on April 1, 2008.

3. Prior to the foregoing, assets eobuy's IP and licenses were assigned to EoBuy's holding corporation Amdex, Pte. Several months later the IP and licenses were transferred back into the newly formed company eoBuy Licensing Limited a company formed under the laws of Ireland.

4. I was previously of the belief that the name of the Company was eoBuy Ventures Limited and simply forgot that the Corporate Office of Registry of Ireland had not approved the name. In response to the inquiry from Plaintiffs' Counsel Mr. Dollinger I reviewed the Corporate filings. The Company is officially named eoBuy Licensing Limited and was registered under its former name in July 15, 2008. **[See- Exhibit "A".]**

5. In any event eoBuy Licensing Limited has been doing business as eoBuy since August 2008 and has remained the eoBuy IP repository since that date.

6. These facts are not new, nor were they unknown to the Defendants Rooke and Rogness. It was during this period they were negotiating equity positions for themselves.

7. In response to the requests of Rooke and Rogness concerning the desire to obtain eoBuy equity each were advised specifically that the shareholders of eoBuy were limited and that none could be issued to them.

8. Turning to their Employment Agreements and IP Assignments; at all times Defendants Rooke and Rogness knew, were aware, agreed and understood to the provisions of their Employment Agreement and Assignment.

9. Both Rooke and Rogness understood the provisions of the Assignment and Confirmation, Defendants expressly acknowledged an understanding of the purpose of the Assignment; that the Company was engaged in a continuous program of research, development, production and marketing in connection with its business and that it was **_critical_** for the Company to preserve and protect its **_"Proprietary Information"_**, its rights in **_"Inventions"_** and in all related intellectual property rights. Each agreed they were entering into their Employee Invention Assignment and Confidentiality Agreement as a condition of their employment with the Company.

10. Rooke and Rogness also acknowledged that they understood they were at-will work for hire employees who were assigning their work product inventions; any copyrightable works prepared by them within the scope of their employment as "works for hire" under the "Copyright Act" and that the Company would be considered the author and owner of such copyrightable works; each agreed that all Inventions that (i) were developed using equipment, supplies, facilities or trade secrets of the Company, (ii) or as a result from work performed by them for the Company, or (iii) related to the Company's business or actual or demonstrably anticipated research and development (the **_"Assigned Inventions"_**, would be **the sole and exclusive property of the Company**; each agreed to assign, and did assign, the **_Assigned Inventions_** to the Company; each acknowledged and agreed that they had no inventions, original works of authorship, developments and trade secrets which were made by them prior to the date of the Assignment which belong to them and or existing as **_"Prior Inventions"_**; each acknowledged and understood the nature of, confidence and trust with respect to any information of a confidential or secret nature that could be disclosed to them by the Company or a third party that related to the business of the Company or to the business of any parent, subsidiary, affiliate, customer or supplier of the Company or any other party with whom the Company agreed to hold information _of such_ party in confidence where such Proprietary Information included, but was not limited to, Assigned Inventions, marketing plans, product plans, business strategies, financial information, forecasts, personnel information customer lists and data, and domain names; each agree that both

during their employment and after their termination, they would keep and hold all such Proprietary Information in strict confidence and trust not using or disclosing any Proprietary Information without the prior written consent of the Company, except as may be necessary to perform my duties as an employee of the Company for the benefit of the Company; and upon termination of their employment with the Company, each agreed to promptly deliver to the Company all documents and materials of any nature pertaining to their work with the Company and, upon Company request to execute a document confirming their agreement to honor their responsibilities contained in their Assignment, further agreeing not take with them or retain any documents or materials or copies thereof containing any Proprietary Information; each agreed not to compete with the Company; each agreed not to solicit suppliers/customers; not to solicit employees/consultants of the Company wherein each acknowledged and agreed and understood that in the event of a breach or threatened breach of the Assignment by them **the Company would be entitled to injunctive relief to enforce the Assignment** so as to avoid irreparable harm. [DE 32-2.]

11. The Assignment did not contain an arbitration clause and limited the jurisidiction of disputes concening Property rights to the courts for a final judgment on the issue of injuctive relief. eoBuy was not a signor to either Agreement.

Under the provisions of the Employment Agreement Defendants Rooke and Rogness were provided and expressly acknowledged an understanding of their starting salary, benefits the need for confidentiality with an acknowledgement of Assignment, that they were at will employees, and they may had limited participation as employees in the Indiezone stock purchase plan.

12. The Employment Agreement contained an arbitration clause with an express carve out for the Company's Property rights and provided for equitable relief for all claims not related to the conditions of their employment.

13. For the reasons of secrecy and the express ownership of all indiezone IP and licenses to Indiezone Rooke and Rogeness received and signed the Assignment and Confirmation Agreements related to Indiezone's exclusive ownership of the IP.

14. The provision for protection of Indiezone's IP was set forth as a carve out and express exclusion from arbitration and provide that the parties retain their right to, and shall not be prohibited, limited or in any other way restricted from, seeking or obtaining equitable relief from a court having jurisdiction over the parties.

15. This provision not only applied to Indiezone but allowed Rooke and Rogness to pursue a claim in the event that had IP they were bringing to the Indie Zone. They did not have any such IP but had they had a right to injunctive relief if they would have been and have been protected by the terms of their Employment Agreements in the Courts and not limited by their right to arbitration.

16. By my position as CEO of Indiezone and eoBuy I was familiar with the IP which was licensed to Indiezone by eoBuy. The license was restricted and limited the use of eoBuy's IP.

17. Over the past several months based on observation of the Jingit Website it has become apparent, what defendants have done is combined both the unique processes of the Companies' IP and employed certain trade secrets in a manner which was intended to remain secret, not intended to be jointly licensed or otherwise presented in the public domain. In other words Rooke and Rogness are now using IP owned exclusively by eoBuy and not licensed to Indiezone. Moreover, the IP which is presently being used by Jingit.com was never licensed to Indiezone but was known to defendant Rooke as a former employee of eoBuy.

18. By reason of the foregoing, in the event the Court grants Defendants application for arbitration Plaintiffs intend to seek a preliminary injunction so as to avoid irreparable harm as is their right under the Employment Agreements and Assignments entered into with Rooke and Rogness.

19. Finally, Indiezone has never had authority to act on behalf of eoBuy as its agent and has never had control of the IP maintained by eoBuy except as to the IP licensed to it by eoBuy.

Conor Fennelly CEO-Indiezone and eoBuy