1   economic harm, did from the State of Minnesota, electronically filed a Regulation D Offering

2   statement with the United States Securities and Exchange Commission wherein the sum of

3   $6,999,000.0 was raised by falsely claiming ownership of Plaintiffs' IP.

4       200. That on or about the dates alleged above Defendants **Rooke, Rogness,**

5   **Ashkar, Hazel** and **Oliver** conducted false and misleading financial transactions, wherein

6   the financial transactions and the proceeds in the amounts and on the dates set forth above

7   were accomplished via interstate electronic transactions-communications, while falsely

8   claiming in those transactions ownership of Plaintiffs' IP, where by and having used

9   unlawful means and activities in the theft of Plaintiffs' IP each of the ***RICO Defendants***

10   knew the funding-transaction involved the proceeds of the **IP** theft and other unlawful

11   activity; where each ***RICO Defendant*** intended to promote the carrying on of the **IP** theft

12   and other unlawful activity; where each ***RICO Defendant*** conducted the illegal financial

13   transaction from the State of Minnesota with knowledge that the transactions were

14   designed, in whole or in part, to conceal or disguise the nature, location, source, and/or

15   ownership arising from the theft of Plaintiffs' IP; where each Defendant conducted the

16   financial transaction with the knowledge that the transaction was designed in whole or in

17   part to affect interstate commerce in the commission of commercial fraud under both state

18   and federal law and further designed to injure the Plaintiffs business-property.

19       201. Thus far, by falsely claiming ownership of Plaintiffs' IP, Defendants **Rooke,**

20   **Rogness, Hazel, Ashkar** and **Oliver** by way of **Jingit Holdings**, have raised in excess of

21   $9,000,000.00. The funds raised by the ***RICO Defendants***, are being used to further the

22   illegal operations and for the ***Jingit Enterprise*** in the continued systematic and illegal

23   deployment of Plaintiffs' IP.

24       202. The continuing criminal cycle of obtaining funding while falsely claiming

25   ownership of Plaintiffs' IP is used to support the ongoing illegal activities of both the ***Jingit***

26   ***Enterprise*** and has cause injury to the Plaintiffs in allowing Defendants to maintain a

27   continuing financial advantage over the Plaintiffs' deployment and Plaintiffs strategic entry

28   into the market.

Complaint

203. To further the illegal activities of *RICO Defendants*, **Rooke and Rogness** have filed a false and misleading patent application with the USPTO using investors' funds to run the website **Jingit.com** as owned by **Jingit LLC**.

## ROOKE AND ROGNESS PLAN TO CLAIM THE IP AS FIRST AUTHORSHIP; FRAUD IN OBTAINING COPYRIGHT APPROVALS, PATENTS, AND TRADEMARK REGISTRATIONS

204. That at all times material hereto, without a licensing agreement to show investors **Rooke** and **Rogness** knew and were aware that they would have to claim that they were the original authors of Plaintiffs' **IP** wherein the investment community in Silicon Valley and elsewhere were, as was Cellura, skeptical about the provenance and original authorship claims of **Rooke and Rogness** as to Plaintiffs' **IP** without proof of ownership.

205. At all times material hereto, *RICO Defendants* were aware that in order to obtain a copyright, patent or trademark an applicant is required to attest to the truth and accuracy of the statements made in obtaining a registration, and further swearing in sum and substance that the applicant is the owner of the copyright, patent, trade name, trademark or service mark sought to be registered and no other person, firm, association, union or corporation has the right to such use in such class, either in the identical form described, or in any such resemblance.

206. At all times material hereto, *RICO Defendants* were aware that intentional material misstatements are incompatible with the administration of intellectual property rights, and are grounds for invalidation and unenforceability of any application.

207. That at all times material hereto **Rooke** and **Rogness** knew that they could not provide a proper provenance and claims of original authorship or license to investors concerning their claim to the Plaintiffs **IP**, and knew that unless they could provide registrations with the USPTO as a patent they could not raise capital, wherein each knew that they would have to disguise or otherwise conceal for the USPTO the Plaintiffs' **IP** claiming it as their own, or risk the fact that any application would be rejected by the

- 44 -

Complaint

USPTO, each agreed to filing of false statements, patents and otherwise invalid patents so as to obtain USPTO approval of their application as proof of ownership for investors.

208. At all times material hereto, *RICO Defendants* were aware of the policy adopted by **eoBuy** and **Indiezone** as recommended by their attorneys that in house copyright would be adopted until such time that Plaintiff Corporations were ready to jointly deploy their **IP**.

209. At all times material hereto, *RICO Defendants* were aware that Federal laws and regulations govern copyright approval, patents and trademark registrations which impose duties of candor and reasonable inquiry and the duty to disclose the truth upon all applicants in their filings.

210. At all times material hereto, relying on the internal policy established by Plaintiff Corporations concerning internal copyrighting, *RICO Defendants* **Rooke** and **Rogness** did willfully file false statements in applications to the USCO and USPTO Offices for copyrights, patents and trademark registrations in violation of 18 USC 1001, wherein both falsely acknowledged in sworn declarations the original authorship or Plaintiffs' **IP**.

211. At all times material hereto, *RICO Defendants* were aware that federal laws provide for the invalidation and unenforceability of copyrights, patents, and trademarks which are obtained through fraud and other inequitable conduct.

212. At all times material hereto, *RICO Defendants* were aware there are serious consequences of fraud in obtaining copyright approval, patent and trademark registrations; each are set out in the law and regulations of the USCO and USPTO and US Codes and that despite said knowledge *RICO Defendants* did willfully submit false statement to the USCO and USPTO falsely claiming ownership and otherwise disguising the Plaintiffs IP presenting it as their own.

213. Each discrete step in the filing scheme is narrowly tailored to isolate the truth concerning the true original authorship-ownership of the Plaintiff Corporations **IP** falsely portraying that the copyright, patent or trademark applications as valid, and that any given belief as to the pending application is reasonable.

Complaint

214. Each of the copyrights, patents and trademark registrations were submitted improvidently to the USPTO by use of the Corporate Enterprise in furtherance of the Association Enterprise because of **RICO Defendants** fraud in disclosure of the Plaintiff Corporations ownership claims; fraud in the claimed use and processes of the IP; that whatever unregistered rights remain asserted by **RICO Defendants** were asserted fraudulently, involving material misstatements and omissions to the public and the government and are unlawful because they violate the duties of candor and of reasonable inquiry that are imposed on every applicant to the USCO and USPTO.

215. In furtherance of their overt conduct and their planned theft of Plaintiffs' IP, **RICO Defendants** Rooke and Rogness intentionally and willfully omitted from the Jingit application(s) with the US government the true details of the original authorship-ownership of the copyrights, patents and trademarks and processes for the purpose of furthering the illegal acts of the Enterprise(s).

216. Plaintiffs are currently seeking invalidation by filing objections with the USPTO of the **RICO Defendants** false and misleading claims of ownership and the attempt to mislead or disguise the **IP** as something other than what it is claimed to be.

217. Plaintiffs are the filed owners of their **IP** copyright-copyrightable **Property** as lodged with US Copyright Office as pending and which exists beyond and in addition to their in house claims.

### THE CONTINUING PATTERN OF RACKETEERING ACTIVITIES; COPYRIGHT, TRADEMARK, AND TRADE DRESS INFRINGEMENT

218. On or about January 1, 2010, by reason of the NDA provided to CEO Cellura in December 3, 2009, **Rooke** and **Rogness**, who were in Minnesota in furtherance of the Enterprises goal to exploit the belief by Cellura, who was in California, via the telephone stated that **Two Fish** would provide Media and its vendors a license and master services agreement sanctioned and otherwise granted to **Two Fish** from **eoBuy** and **Indiezone** and to include the **eoBuy-Indiezone Ad-Engine IP** services for micro service billing.

219. On January 1,4,5,7,11,12, 2010, February 1,2,2,10, 12, 2010 **Rogness** who was in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs

Complaint

1  economic harm, sent Cellura, who was in California via electronic delivery, the **Two**

2  **Fish** Media PowerPoint presentation containing the ENTIRE content titled

3  MEGINTRODUCTIONV1.

4  220. That in furtherance of the Enterprise, and so as to cause Plaintiffs economic

5  harm, on or about January 5, 2010, **Rooke** and **Rogness** adopt the name 7 **Ventures** using

6  it inter-changeably and from time-to-time replacing the **Two Fish** name as the vehicle for

7  operating the Enterprise.

8  221. That in furtherance of the Enterprise, on or about January 7, 2010, **Ashkar**

9  who was in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs

10  economic harm, sent Cellura who was in California via electronic delivery, an approval of

11  the Malibu Entertainment Group slide deck and presentation.

12  222. That in furtherance of the Enterprise, on each of the foregoing dates **Rogness**

13  who was in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs

14  economic harm in response to Cellura, who was in California in response to his inquiry via

15  an electronic delivery to Cellura, wherein **Rogness** offered a slide deck and other to written

16  aids, via the internet to include use of **eoBuy-Indiezone IP** services for micro service

17  billing for a project involving the US Army as administered by US Army Colonel Derik

18  Crotts.

19  223. That in furtherance of the Enterprise, on January 7, 2010, **Rogness** who was in

20  Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm,

21  sent Cellura who was in California via electronic delivery, the **Two Fish** the master services

22  distribution Agreement wherein **Rogness** in coordination with **Ashkar** who was in

23  Minnesota advised Cellura that they would roll the **Indiezone IP** into MEG and that they

24  could pass the processing transaction on to aVinci which would allow MEG to collect

25  royalties from aVinci and split on the **eoBuy** micro transaction income with **Two Fish**.

26  224. On January 7, 2010, **Rooke** and **Rogness** who was in Minnesota, in

27  furtherance of the Enterprise, and so as to cause Plaintiffs economic harm, sent Cellura who

28  was in California, via electronic delivery, their demand with the deal points for the use of

- 47 -

Complaint

the eoBuy micro billing and **Indiezone Ad-Engine** in a corporation called China Wireless.

225. At all times material hereto Pat Shuster was an agent, servant and/or employees of MEG acting at the direction of and with the permission, consent and authority of Cellura wherein he communicated with either **Rooke** and/or **Rogness** over the telephone or via e-mails.

226. Commencing on or about January 10, 2010, during a telephone conversation **Rogness** who was in Minnesota advised Cellura who was in California, and Pat Shuster, who was upon information and belief was in Georgia, in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm, that the **IP** technology and platform would support both federated and non-federated micro transactions.

227. On or about January 19, 2012, Cellura who was in California requested that **Rogness** who was in Minnesota send a letter to US Army Colonel Derik Crotts detailing the **IP**.

228. Commencing on or about January 19, 2010, in furtherance of the Enterprise **Rogness** who was in Minnesota dispatched Pat Shuster, who was upon information and belief was in Georgia via the internet so as to cause Plaintiffs economic harm, an agreement exchanged, for the use of the Plaintiffs' **IP** technology and platform to be provided for use by aVinci.

229. On February 17, 2010, **Rooke** and **Rogness** who were in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm, sent Cellura who was in California, via electronic delivery, a contract so as to provide use of Plaintiffs' **IP** for a California based mobile phone platform company called Tarsin Inc.

230. On February 25, 2010, **Rogness** who was in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm, sent to Cellura in California, Pat Shuster in Georgia and John Osborne, CEO of Tarsin who was also in California, via electronic delivery, a slide deck with an outline of the plan and players to provide use of Plaintiffs' **IP** for Tarsin Inc.

231. At all times hereinafter mentioned, to March 11, 2010, **Rooke** and **Rogness** while in Minnesota, in furtherance of the Enterprise, and so as to cause Plaintiffs economic harm provided-delivered Plaintiffs' **IP** to aVinci for its use in the sale of online products while using the Plaintiffs' eoBuy–payment processing platform and Indiezone's

-48-

1    Ad Engine technology. joint **IP** e-commerce micro transaction processing and **Ad Engine**.

2    232. That at all times hereinafter mentioned, on May 17, 2010, Defendants **Rooke**

3 and **Rogness** who were in Minnesota, in furtherance of the Enterprise, and in criminal act

4 of infringement-misappropriation demanded payment for use of the 7 **Ventures (formerly**

5 **Two Fish)** payment system advising Cellura that they want to be paid for work from

6 November 9, 2009 thru February 10, 2010.

7    233. On or about June 12, 2010, Cellura who was in California requested that

8 **Rogness** who was in Minnesota provide a copy of the license agreement as claimed

9 provided by **eoBuy** and **Indiezone** allowing **Two Fish** to use Plaintiffs' **IP** under the

10 license so as to issue a use license to MEG as they claimed was provided by Plaintiffs' to

11 them.

12    234. On or about June 12, 2010, **Rogness** and **Rooke** recognizing that they would

13 be unable to produce the requested license agreement demanded by Cellura ceased

14 communications with him.

15 **THE ILLEGAL PARTNERSHIPS' INFRINGING USE OF PLAINTIFFS' COPYRIGHT,**
16 **TRADE DRESS, AND TRADE SECRETS- SECONDARY AND VICARIOUS**

17    235. At all times hereinafter mentioned, the Plaintiffs' **IP** is composed of original

18 authorship of copyrighted-copyrightable works, portions of Plaintiffs' trade secrets, unique

19 processes developed at the time **Rooke** and **Rogness** were work-for-hire employees.

20    236. At all times material hereto, the Enterprise members in violation of their

21 Agreements cloned, copied-infringed-misappropriated or otherwise processed and

22 publically disclosed the joint **IP** works. causing other to infringe on Plaintiffs' **IP** works

23 products, methods, techniques and processes of **eoBuy** and **Indiezone** falsely claiming said

24 **IP** as their own.

25    237. The planned theft of Plaintiffs' **IP**, which appears to have been in the making

26 for some time prior to uncovering the illegal acts herein alleged was first introduced to the

27 mass public and outside of beta testing at the **"Finnovate Conference Showcasing the**

28 **Future of Financial & Banking Technology"** in September 2011 when **Jingit Holdings**

Complaint

1  falsely introduced **Jingit.com** while deploying Plaintiffs' unique **Music. Me. Ad Engine**

2  concept for instant sale, purchases and payment by merchants-sponsors.

3      238.  At all times hereinafter mentioned, in or about August 2011, notwithstanding

4  their written Agreements otherwise, Defendants **Rooke** and **Rogness** and certain Doe and/or

5  Roe Defendants, in furtherance of the Enterprise racketeering activities, so as to cause

6  Plaintiffs economic harm, without the permission consent or authority of the Plaintiff

7  Corporations, after illegally accessing or exceeding their authorized access authority of the

8  company Server/s did enter into a partnership agreement with Defendant **US BANK** for the

9  purpose of illegally using Plaintiffs' **IP** so as to engage **eoBuy's** micro processing and

10  **Indiezone's** unique **Ad Engine** concept over **US BANK's** interstate banking network.

11      239.  At all times hereinafter mentioned, prior to after August 2011, **US Bank**

12  agreed to allow its banking charter and interstate banking network to be used to facilitate

13  the interstate banking for the debit card processes of proceed via the **Jingit.com portal** in

14  manner where the deployment of the **IP**  engaged for e-commerce micro payment

15  transactions and ad sponsor payments allowing **Jingit.com** members to open deposit

16  accounts with **US BANK** and obtain a **Jingit** Debit Card for deposit and debit purchase

17  transactions.

18      240.  At all times hereinafter mentioned, the deployment was accomplished in a

19  manner such that **US BANK** would have the exclusive access to the infringing **IP** users via

20  the **Jingit.com** website.

21      241.  That after discovering the presence of **US BANK** on the **Jingit.com** beta

22  website in or about November 2011, Fennelly did contact **US BANK**, notifying **US BANK**

23  of the infringement and misappropriation and illegal use of Plaintiff's **IP**; that there was no

24  right to use or licensed issued to **Rooke, Rogness** or **Jingit LLC** and that the use of

25  Plaintiffs' **IP** was illegal, wherein Fennelly demanded that **US BANK** cease and desist from

26  the unauthorized use of the Plaintiff Corporations **IP**.

27      242.  At all times hereinafter mentioned, after November 2011, **US BANK** knew

28  and was aware of the claims of Fennelly on behalf of the Plaintiff Corporations and,

Complaint

1   notwithstanding notice to it, continued to us its banking charter and interstate banking

2   network to facilitate the means for interstate banking and debit card processing of the e-

3   commerce micro payment transaction and ad sponsor payments by issuing the **Jingit** Debit

4   Card for processing the cloned **eoBuy** e-commerce micro billing platform the cloned

5   **Indiezone Ad-Engine** by infringing **Jingit.com** users.

6       243. That at all times hereinafter mentioned, prior to November 2011 and

7   continuing **US BANK** has caused or otherwise facilitated the infringement of Plaintiffs' **IP**

8   and caused economic harm to the Plaintiff Corporations.

9

10                  **FORMATION AND CONTINUED OPERATIONS**

                      **OF THE JINGIT ENTERPRISE**

11

12      244. **Rooke, Rogness Hazel, Ashkar, Jingit LLC., Music. Me,** and **US Bank**

13  are all *persons* within the meaning of RICO, 18 U.S.C. §1961(3) separate and distinct

14  from the *Enterprise Entities* and hereafter collectively constitute the *RICO*

15  *Defendants* as an association in fact.

16      245. By their agreed conduct the *RICO Defendants*, operate the affairs of the

17  *Jingit Enterprise* through the *Jingit Enterprise Entities* under the names **Jingit LLC.**

18  **Muisc.Me., Jingit Holdings,** and **Jingit Financial Services.**

19      246. To further their scheme, once the Plaintiffs' IP was secured the *RICO*

20  *Defendants* created **Jingit, LLC., Muisc.Me, Jingit Holdings,** and **Jingit Financial**

21  **Services** wherein **Rooke** and **Rogness** are the majority membership owners and/or

22  officers of the aforesaid entities who, together with the assistance of **Hazel** and

23  **Ashkar**, who are also membership owners and/or employees of these entities, run

24  manage or otherwise control the day-to-day affairs and operations of these companies

25  so as to develop the incremental deployment of Plaintiffs' **IP** into new entities directly

26  in competition with **eoBuy** and **Indiezone**.

27      247. Collectively, **Rooke, Rogness, Hazel** and **Ashkar, US Bank, Jingit**

28  **LLC., Muisc.Me, Jingit Holdings,** and **Jingit Financial Services** together with

Complaint

Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis, Karls, Walmart, General Electric, Target, DOE(s) and ROE(s), constitute the *Jingit Enterprise* where each are used or being used, from-time-to-time, as vehicles for the illegal activities of the *RICO Defendants* in their false claims of ownership to Plaintiffs' IP, and in the operations of the affairs of the *Jingit Enterprise* in raising capital and illegally deploying Plaintiffs IP on the Jingit.com Website.

248. Portions of the *Jingit Enterprise* as individual entities often operate as legitimate businesses performing corporate functions in sales, purchasing, marketing, licensing and otherwise engaging in other lawful activities.

249. In spite of the often legitimate corporate undertaking, the *RICO Defendants* act to use the identities of the *Jingit Enterprise* to strategically and systematically invest the illegal capital raised by **Jingit Holdings** so as to maintain control and run the affairs of the legitimate operations of the *Jingit Entities* including the payment of rent, salaries, and insurance, taxes and other routine operating expenses.

250. **Jingit Holdings** is the entity which is used to maintain the claimed ownership of the **eoBuy** micro billing system and **Indiezone Ad Engine**; and was established to file patents with the USPTO and used by the *RICO Defendants* to raise capital for the operation of the remaining *Jingit Enterprise Entities*.

251. **Jingit Financial Services** is the entity which is used to issue vendor licenses of Plaintiffs' misappropriate IP and is the vehicle from which the *RICO Defendants* control the delivery of the Plaintiffs IP to merchants including the nominal Defendants, **Walmart, General Electric and Target** and others.

252. **Jingit LLC.,** features **Jingit.com** as it Website and is directly infringing or otherwise illegally using Plaintiffs' proprietary features developed for the **Indiezone Ad-Engine** and its methods processes-codes, as well as Plaintiff **Indiezones'** trade dress-mark **Music. Me,** together with the illegal use of Plaintiffs' proprietary processes, methods and features of the **eoBuy** micro billing system and is the vehicle

Complaint

1  used to control consumer and merchant transaction as aided by **RICO Defendant** US

2  **Bank.**

3     253.  **Rooke** and **Rogness** as the majority shareholders and/or officers of the

4  *Jingit Enterprise Entities* together with the assistance of **Hazel** and **Ashkar** and US

5  **Bank** use the façade of the legitimate operations of the *Jingit Enterprise* to conceal

6  their illegal conduct including the infusion of cash and the systematic and incremental

7  deployment of Plaintiffs' misappropriated IP.

8     254.  In each instance, **Rooke, Rogness, Hazel** and **Ashkar, Jingit Holdings**

9  **Jingit LLC., Music. Me, Jingit Financial** and **US Bank** are willfully engaged in a

10 continuing cycle of illegal use of Plaintiffs' IP, including their copyright-works,

11 copyrightable-works, trade secrets, service mark and other **Property.**

12    255.  **The IP** has been intentionally and strategically released in incremental

13 phases through the *Jingit Enterprise Entities* allowing for the repeated illegal

14 investment of funds raised by falsely claiming ownership of Plaintiffs' **IP.**

15    256.  The operations of the *Jingit Enterprise Entities* by means of reinvestment

16 and use of the proceeds of funds raised by the racketeering activities of the **RICO**

17 **Defendants** through the use of **Jingit Holdings** has directly cause harm to Plaintiffs

18 business and **Property.**

19    257.  The daily operations are controlled by **Rooke, Rogness, Hazel** and

20 **Ashkar, US Bank, Jingit LLC, Music. Me, Jingit Holdings, Jingit Financial**

21 **Services** together with other corporate officer/directors/employees of **Jingit LLC.,**

22 **Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis, Karls,** who are each

23 aware of the illegal source of the **IP,** and who despite their knowledge assist and

24 otherwise aid the continuing acts of racketeering by assisting the **RICO Defendants** in

25 branding Plaintiffs' **IP** as their own using the misappropriated-infringed **IP** including

26 trade mark and dress **Music. Me LLC.,** in electronic format over the Internet.

27    258.  In each instance, despite their knowledge of the misappropriation-

28 infringement **Rooke, Rogness, Hazel** and **Ashkar, US Bank, Jingit Holdings, Jingit**

Complaint

Financial Services and Jingit Investments along with Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis, Karls, have built and launched the Website Jingit.com wherein each has caused the direct and secondary infringement of Plaintiffs' IP and thus allowed the RICO Defendants the opportunity to continue raising capital via the US Mails and Internet under the false claims or ownership in Plaintiffs' IP.

## DEFENDANTS' SECONDARY AND VICARIOUS USE OF PLAINTIFFS' COPYRIGHT, TRADE DRESS, AND TRADE SECRETS

259. At all times hereinafter mentioned, in or about November 2011, Jingit LLC, and certain Doe and/or Roe Defendants, in furtherance of the Jingit Enterprise, and via racketeering activities, so as to cause Plaintiffs economic harm, did enter into a sponsorship agreement with Defendant Kraft Foods, GE Lighting and Walmart for the purpose of using Plaintiffs' IP.

260. That at all times hereinafter mentioned, prior to November 2011 and continuing Kraft Foods, GE Lighting and Walmart have offered incentives to consumers by provided cash rewards to consumers and for advertisement engagement exchange and have facilitated the infringement of Plaintiffs' IP by their sponsorship of the Jingit.com Website which has cause economic harm to the Plaintiff Corporations.

261. That the use of Plaintiff IP was without, Plaintiffs' permission, consent or other lawful authority.

## MISAPPROPRIATION- INFRINGMENT OF COPYRIGHT, TRADE DRESS, AND FUNCTIONAL SIMILARITIES OF EOBUY'S AND INDIEZONE'S BUSINESS MODELS OF THE JINGIT ENTERPRISE

262. Jingit.com is the clone of Indiezone, Indiezone's identical functionality is in almost every feature offered by Jingit.com with almost identical user interface.

263. Jingit.com offers and its operations incorporate 8 identical features developed and unique to Indie Zone's featured operations under its trade secret applications and in the compilation of the Plaintiffs' joint IP.

- 54 -

Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



vs.



Complaint