264. The features 1-8 above are identified in the screenshots and their functionality and/or methods-processes infringe or otherwise misappropriate using the unique methods and processes of Plaintiffs' propriety **IP**-trade secrets, trademark and trade-dress including:

> #1 Bank Total;
> #2 Login;
> #3 Increase your pay;
> #4 Streamed Ad content;
> #5 Progress bar;
> #6 Ad queue;
> #7 Link to content;
> #8 Co-operation-Partnership with a bank.

265. Each of the features 1-8 were developed during a time that **Rooke** and **Rogness** were work-for-hire employees of **Indiezone.**

## CAUSES OF ACTION
### Count I.
### Violations of 18 U.S.C. § 1962(a)
### *( RICO Defendants Rooke, Rogness, Hazel Ashkar and Oliver)* *

266. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs numbered "1" through "264" with the same force and effect as though set forth herein.

267. *RICO Defendants* **Rooke** and **Rogness** are members/owners and/or officers-employees of the *Jingit Enterprise Entities* who, together with the assistance of *RICO Defendants* **Hazel**, **Ashkar**, and Oliver who are also members/owners and/or officers-employees of the *Jingit Enterprise Entities*, together **Jingit LLC.**, and **US Bank** have misappropriated-infringed Plaintiffs' **IP** through a pattern of racketeering activity, and then by falsely claiming ownership of Plaintiffs' **IP**, they raised funds which were deposited into **Jingit Holdings.**

268. That manner in which the Plaintiffs' misappropriated-infringed **IP** was acquired and used to raise funds into **Jingit Holdings** is separated and distinct from the *RICO Defendants* false claims of authorship to Plaintiffs' **IP** and right of patents as filed with the USPTO which has allowed the *RICO Defendants* to establish the *Jingit Enterprise*

Complaint

1   *Entities* and launder those funds in their reinvested into both **Jingit LLC.**, and **Jingit**

2   **Financial Services LLC.**, where these entities systematically and incrementally illegally

3   deploy Plaintiffs' **IP** causing injury to Plaintiffs' business and **Property.**

4        269.   The ***RICO Defendants*** did not merely reinvest the proceeds of the

5   racketeering activity used to raise the funds back into the same entity **Jingit Holdings**, but

6   rather they used the fraudulently obtained funds to establish and support the day-to-day

7   operations of the new ***Jingit Enterprise Entities*** **Jingit LLC.**, and **Jingit Financial**

8   **Services LLC.**, falsely claiming patents and featuring Plaintiffs' trademark **Music.Me** and

9   the micro payment processing and rewards exchange methods of the **AdEngine** on the

10  Jingit.com Website.

11       270.   The illegal Server sabotage, theft of the DRG, which has allowed the false

12  claims of ownership and investment has resulted in the incremental deployment of

13  Plaintiffs' **IP**, has and continues to cause economic harm to Plaintiffs in the continued

14  interference and derailment of Plaintiffs' entry into the commercial e-commerce markets.

15       271.   The theft-misappropriation infringement was committed in a manner designed

16  to avoid detection of the ***RICO Defendants*** fraud and accomplished by using the facilities

17  and powers of the mail and wire services and interstate commerce in the combined cover of

18  the ***Jingit Enterprise Entities.***

19       272.   The ***Jingit Enterprise*** is a devise, a Scheme or artifice used by the ***RICO***

20  ***Defendants*** to defraud Plaintiffs and others for the purpose of executing such Schemes or

21  artifices or attempting to do so, where the ***Jingit Enterprise Entities*** **and RICO**

22  **Defendants** and all remaining Defendants constitute an ***association-in-fact enterprise to***

23  which from time-to-time has on multiple occasions by way of ***RICO Defendants*** and others

24  placed into the hands of an authorized carrier for mail and wire services sent and delivered

25  by the such carriers, and knowingly caused to be delivered, matters and things intended to

26  accomplish the goals of the ***RICO Defendants***.

27       273.   In the performance of the fraud the ***RICO Defendants*** devised a Scheme or

28  artifice to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice

Complaint

1  or attempting to do so in the theft of Plaintiffs' **Property** where the *RICO Defendants* caused

2  to be placed with an authorized carrier for mail delivery, a knowingly sabotaged computer-

3  server in manner designed to accomplish the Scheme and goals of the *RICO Defendants.*

4  274.  In the performance of the fraud the *RICO Defendants* devised a Scheme or

5  artifice to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice

6  or attempting to do so in the theft of Plaintiffs' Property where the *RICO Defendants*

7  caused to be placed on multiple occasions with an authorized Internet provider for

8  electronic delivery knowingly false communications and things intended to accomplish the

9  goals of the *RICO Defendants* including e-mails to Cellura  and his associated entities

10 containing illegally copyrighted and infringed **IP** and other materials belonging exclusively

11 to Plaintiffs.

12 275.  In the performance of the fraud the *RICO Defendants* devised a Scheme or

13 artifice to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice

14 or attempting to do so in the fraud which generated the funds as described above and which

15 were obtained through a pattern of racketeering activity resulted in the deposit-reinvestment

16 of funds into **Jingit Holdings** for the creation of **Jingit LLC., and Jingit Financial**

17 **Services and:** 1) constitutes mail-wire fraud where a pattern of racketeering activity where;

18 2) the  laundering of money in the reinvestment-use of those funds into the *Jingit*

19 *Enterprise* in the manner accomplished, mail and wire fraud forms separate overt or

20 otherwise a series of predicate acts of racketeering activity and money laundering from the

21 operations of **Jingit Holdings**, 3) which has caused injury to Plaintiffs' business and

22 property; 4) and, continues to have an effect on interstate commerce.

23 276.  The acts set forth above constitute a pattern of racketeering activity pursuant to

24 18 U.S.C. §1961(5). The acts were in violation of 17 U.S.C. 501-506(a)(1)(A): 18 U.S.C.

25 1030(a)(2)(C), of the Federal Computer Fraud and Abuse Act; Federal Trademark Act of

26 1946, as amended (the Lanham Act), 15 U.S.C.  1125(a) and  1125(d); 18 U.S.C. 1341 mail

27 fraud and 1343 wire fraud; 18 U.S.C. 1832 (theft of trade secrets), 18 U.S.C. 1956 and 1957

28 money laundering, engaging in monetary transactions in property derived from specified

- 58 -

1 unlawful activity; in violation of the RICO Statute 18 U.S.C. 1961-1968, et seq; 18 U.S.C.

2 2314-2315 possession and receipt of stolen property; and 18 U.S.C. 2319, criminal

3 infringement of a copyright; in violation of the Stored Communications Act, 18 U.S.C. 2701.

4     277. By reason of, and but for the foregoing illegal activities of computer mail and

5 wire fraud, a direct and proximate result of the **RICO Defendants'** racketeering activities

6 and violations of 18 U.S.C. §1962(a), but for these illegal acts, Plaintiffs would not have

7 been damaged, including the loss of their **IP**, investors, loss of corporate opportunities for

8 profit and the usurpation of those opportunities which has been caused by the attendant

9 profits to the **RICO Defendants** causing losses to Plaintiffs' in the conduct of the **Jingit**

10 **Enterprise,** with the resulting injury to their businesses and property in the sums of no less

11 than $20,000,000.00 Million Dollars in actual loss and One Billion Three Hundred

12 Thousand ($1,300,000,000.00) Dollars in loss of economic advantage.

13     278. By reason of, and but for the foregoing, the **RICO Defendants** actions have

14 been illegal willful and outrageous and undertaken with reckless indifference to the rights of

15 Plaintiffs, and as such Plaintiffs are entitled to treble damages as provide by 18 U.S.C.

16 1964(a).

**Count II.**
**Violations of 18 U.S.C. § 1962(b)**
***(RICO Defendants* Rooke, Rogness, Hazel Ashkar and Oliver )***

20     279. Plaintiffs repeat and reallege each and every allegation set forth in

21 paragraphs numbered "1" through " 278", with the same force and effect as though set

22 forth herein.

23     280. The creation of the Jingit Entities and *ownership interest* of the **RICO**

24 **Defendants Rooke, Rogness, Hazel, Ashkar and Oliver**, together with the use-

25 investment of the fraudulently generated funds; the illegal directions-orders of *RICO*

26 *Defendant* Rooke, and **Rogness**, in their positions as members, officer/directors and/or

27 employees of the **Jingit Holding**, the **funding arm** of the *Jingit Enterprise* entities;

28 together with the strategic placement of the *Jingit Enterprise* employees,

- 59 –

Complaint

members/owners and/or officers/directors, **RICO Defendants Hazel and Ashkar, Oliver** and the use of **US Bank**; the association and employment of Defendants **Abena, Fleming, Frawley, Moorehouse, James, Davis, Karls, Wal-Mart, General Electric, Target, DOE(s) and ROE(s),** as described above, provides the manner of control over the daily operations of the ***Jingit Enterprise Entities*** and forms ***an association-in-fact enterprise*** engaged in the commission of overt or otherwise predicate acts of mail and wire fraud in the control and activity of both the lawful and unlawful operations of the ***Jingit Enterprise Entities*** and the association brought about by the **RICO Defendants**.

281. The theft-misappropriation infringement was committed in a manner designed to avoid detection of the **RICO Defendants** fraud and accomplished by using the facilities and powers of the mail and wire services and interstate commerce in the combined cover of the ***Jingit Enterprise Entities***.

282. In the performance of the fraud the **RICO Defendants** devised a Scheme or artifice to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice or attempting to do so in the theft of Plaintiffs' Property where the **RICO Defendants** caused to be placed on multiple occasions with an authorized carrier for mail delivery, containing knowingly false communications and things intended to accomplish the Scheme-goals of the **RICO Defendants**.

283. In the performance of the fraud the **RICO Defendants** devised a Scheme or artifice to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice or attempting to do so in the theft of Plaintiffs' Property where the **RICO Defendants** caused to be placed on multiple occasions with an authorized Internet provider for electronic mail delivery knowingly false communications and things intended to accomplish the goals of the **RICO Defendants**.

284. The ***Jingit Enterprise*** is a devise, a Scheme or artifice used to defraud Plaintiffs and others for the purpose of executing such Schemes or artifices or attempting to do so, where the ***Jingit Enterprise*** constitutes an ***association-in-fact*** which from time-to-time has on multiple occasions by way of **RICO Defendants** and others placed

- 60 –

1  into the hands of an authorized carrier for mail and wire services sent and delivered by

2  the such carriers, and knowingly caused to be delivered, matters and things intended to

3  accomplish the goals of the **RICO Defendants.**

4      285. The fraud which generated the funds as described above and which resulted in

5  the deposit of funds into **Jingit Holdings** for the creation of **Jingit LLC., and Jingit**

6  **Financial Services:** 1) constitutes mail-wire fraud where a pattern of racketeering activity

7  where; 2) the control-reinvestment-use of those funds into the **Jingit Enterprise** in the

8  manner accomplished, mail and wire fraud forms separate overt or otherwise predicate acts

9  of racketeering activity and money laundering from the operations of the **Jingit Enterprise,**

10  3) which has caused injury to Plaintiffs business and property; 4) and, continues to have an

11  effect on interstate commerce.

12      286. The acts set forth above constitute a pattern of racketeering activity pursuant to 18

13  U.S.C. §1961(5). The acts were in violation of 17 U.S.C. 501-506(a)(1)(A); 18 U.S.C.

14  1030(a)(2)(C), of the Federal Computer Fraud and Abuse Act; Federal Trademark Act of 1946,

15  as amended (the Lanham Act), 15 U.S.C. 1125(a) and 1125(d); 18 U.S.C. 1341 mail fraud and

16  1343 wire fraud; 18 U.S.C. 1832 (theft of trade secrets), 18 U.S.C. 1956 and 1957 money

17  laundering, engaging in monetary transactions in property derived from specified unlawful

18  activity; in violation of the RICO Statute 18 U.S.C. 1961-1968, et seq; 18 U.S.C. 2314-2315

19  possession and receipt of stolen property; and 18 U.S.C. 2319, criminal infringement of a

20  copyright; in violation of the Stored Communications Act, 18 U.S.C. 2701.

21      287. By reason of, and but for the foregoing illegal activities of computer mail and wire

22  fraud, a direct and proximate result of the **RICO Defendants'** racketeering activities and violations of

23  18 U.S.C. §1962(a), but for these illegal acts, Plaintiffs have been damaged, including the loss of their

24  **IP**, investors, loss of corporate opportunities for profit and the usurpation of those opportunities

25  which has been caused by the attendant profits to the **RICO Defendants** causing losses to Plaintiffs'

26  in the conduct of the **Jingit Enterprise,** with the resulting injury to their businesses and property in

27  the sums of no less than $20,000,000.00 Million Dollars in actual loss and One Billion Three

28  Hundred Thousand ($1,300,000,000.00) Dollars in loss of economic advantage.

Complaint

288. By reason of, and but for the foregoing, the **RICO Defendants** actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to treble damages as provide by 18 U.S.C. 1964(b).

**Count III.**
**Violations of 18 U.S.C. § 1962(c)**
***(All RICO Defendants)***

289. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs numbered "1" through "287" with the same force and effect as though set forth herein.

290. The **Jingit Enterprise Entities** are the vehicles used by the **RICO Defendants** who are agents of, employed by or officers and/or directors associated with the **Jingit Enterprise** who are directly or indirectly, operating or managing the affairs of the **Jingit Enterprise** through a pattern of racketeering activity including mail and wire fraud-engaged in laundering the funds obtained through the Schemes perpetrated using Plaintiffs' stolen IP.

291. The **RICO Defendants** are **Persons,** within the meaning of RICO, 18 U.S.C. §1961(3) acting as principles within the meaning of 18 U.S.C. §2, distinct from the **Jingit Enterprise Entities.**

292. The **RICO Defendants** violated 18 U.S.C. § 1962(c) by directly or indirectly conducting or participating in the conduct-affairs of the **Jingit Enterprise** through a pattern of racketeering activity as an association-in-fact enterprise where there exists decision making process separate from the unlawful purpose of the **Jingit Enterprise Entities** which have intentionally injured Plaintiffs in their business and **Property** in a manner which affects interstate commerce.

293. The Scheme is accomplished by misleading investors in true ownership of Plaintiff **IP** where said funds are derived from illegal racketeering activity.

294. The theft-misappropriation infringement was committed in a manner designed to avoid detection of the **RICO Defendants** fraud and accomplished by using the facilities

- 62 -

Complaint

1  and powers of the mail and wire services and interstate commerce in the combined cover of
2  the *Jingit Enterprise Entities.*

3      295.  In the performance of the fraud the *RICO Defendants* devised a Scheme or
4  artifice to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice
5  or attempting to do so in the theft of Plaintiffs' Property where the *RICO Defendants*
6  caused to be placed on multiple occasions with an authorized carrier for mail delivery,
7  knowingly false communications and things intended to accomplish the Scheme-goals of
8  the *RICO Defendants.*

9      296.  In the performance of the fraud the *RICO Defendants* devised a Scheme or artifice
10  to defraud Plaintiffs and others for the purpose of executing such Scheme or artifice or attempting
11  to do so in the theft of Plaintiffs' Property where the *RICO Defendants* caused to be placed on
12  multiple occasions with an authorized Internet provider for electronic mail delivery knowingly
13  false communications and things intended to accomplish the goals of the *RICO Defendants.*

14      297.  The *Jingit Enterprise* is a devise, a Scheme or artifice used to defraud Plaintiffs and
15  others for the purpose of executing such Schemes or artifices or attempting to do so, where the
16  *Jingit Enterprise* constitutes an *association-in-fact* which from time-to-time has on multiple
17  occasions by way of *RICO Defendants* and others placed into the hands of an authorized carrier
18  for mail and wire services sent and delivered by the such carriers, and knowingly caused to be
19  delivered, matters and things intended to accomplish the goals of the *RICO Defendants*.

20      298.  The fraud which generated the funds as described above and which resulted in the
21  deposit of funds into **Jingit Holdings** for the creation of **Jingit LLC., and Jingit Financial**
22  **Services**: 1) constitutes mail-wire fraud where a pattern of racketeering activity where; 2) the
23  control-reinvestment-use of those funds into the *Jingit Enterprise* in the manner accomplished,
24  mail and wire fraud forms separate overt or otherwise predicate acts of racketeering activity and
25  money laundering from the operations of the *Jingit Enterprise,* 3) which has caused injury to
26  Plaintiffs business and property; 4) and, continues to have an effect on interstate commerce.

27      299.  The acts set forth above constitute a pattern of racketeering activity
28  pursuant to 18 U.S.C. §1961(5). The acts were in violation of 17 U.S.C. 501-

Complaint

506(a)(1)(A); 18 U.S.C. 1029(a)(2)(C); (a)(3), (a)(4); (a)(5)(B) &(C) relating to fraud in connection with an access device; 18 U.S.C. 1030(a)(2)(C), of the Federal Computer Fraud and Abuse Act; Federal Trademark Act of 1946, as amended (the Lanham Act), 15 U.S.C. 1125(a) and 1125(d); 18 U.S.C. 1341 mail fraud and 1343 wire fraud; 18 U.S.C. 1832 (theft of trade secrets), 18 U.S.C. 1956 and 1957 money laundering, engaging in monetary transactions in property derived from specified unlawful activity; in violation of the RICO Statute 18 U.S.C. 1961-1968, et seq; 18 U.S.C. 2314-2315 possession and receipt of stolen property; and 18 U.S.C. 2319, criminal infringement of a copyright; in violation of the Stored Communications Act, 18 U.S.C. 2701- 11.

300.    By reason of, and but for the foregoing illegal activities of computer mail and wire fraud, a direct and proximate result of the **RICO Defendants'** racketeering activities and violations of 18 U.S.C. §1962(a), but for these illegal acts, Plaintiffs have been damaged, including the loss of their **IP**, investors, loss of corporate opportunities for profit and the usurpation of those opportunities which has been caused by the attendant profits to the **RICO Defendants** causing losses to Plaintiffs' in the conduct of the **Jingit Enterprise,** with the resulting injury to their businesses and property in the sums of no less than $20,000,000.00 Million Dollars  in actual loss and One Billion Three Hundred Thousand ($1,300,000,000.00) Dollars in loss of economic advantage.

301.    By reason of, and but for the foregoing, the **RICO Defendants** actions have been illegal, willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to treble damages as provide by  18 U.S.C. 1964(c).

### Count IV.
### Violations of 18 U.S.C. § 1962(d)
### *(All Defendants)*

302.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs numbered "1" through "301" with the same force and effect as though set forth herein.

303.    In performance of the Scheme the **RICO Defendants** as principals knowingly, intentionally and unlawfully, received and were aided and abetted,  and did conspire with

- 64 -

Complaint

1  each other  and Defendants **Abena, Fleming, Frawley, Moorehouse, Ohlsen, James,**
2  **Davis, Karls,**  to commit at least two predicate acts of racketeering within the past ten years
3  where as such their conduct constitutes a pattern of illegal activity as detailed heretofore.

4  304.  The pattern of these illegal acts was performed by each of the ***RICO***
5  ***Defendants*** as a director, officer, agent or employee of each the ***Jingit Enterprise Entities***
6  in such a manner and in each instance that such act was authorized or ratified by, and done
7  on behalf of the ***RICO Defendants'*** Scheme collectively and individually.

8  305.  The ***RICO Defendants* together with Defendants Abena, Fleming, Frawley,**
9  **Moorehouse, Ohlsen, James, Davis, Karls,**  agreed, combined and acted  with a common
10  by engaging in the unlawful acts described above.

11  306.  The ***RICO Defendants*** agreed, combined and acted  with a common plan and
12  purpose to infringe, misappropriate the  Plaintiffs **IP** and other property, by engaging in the
13  unlawful acts described above.

14  307.  At all times material hereto, commencing in or about July 2009 and continuing
15  to date, **Rooke** and **Rogness** together with **Hazel Ashkar** and Olvier agreed to and did
16  commit multiple overt and predicate criminal acts, amounting to a pattern of illegal activity
17  including but were not limited to: 1) the theft and illegal use of written and electronic copies
18  of Plaintiffs' **IP**; 2) the willful disruption, interference and otherwise deliberate sabotage of
19  the Plaintiffs' Server/Servers so as to interfere in Plaintiffs' active deployment, planned
20  commercial roll-out and entry of their **IP** into the stream of commerce where said illegal
21  acts were accomplished  by means of interstate mail and wire fraud; 3) by making false
22  claims of ownership to Plaintiffs' **IP** in applications to the USPTO; 5) by raising capital in a
23  nationwide scheme by means of electronic transactions thorough false claims of ownership
24  to Plaintiffs **IP**; 6) by using the investment of that illegally generated money and depositing
25  the money into a series of corporations established, owned, managed and controlled by
26  them for the purpose of interstate distribution of the misappropriated IP; 7) by using said
27  corporations to create and establish the systematic-incremental deployment of the Plaintiffs'
28  **IP** as their own while using Plaintiffs Mark; 8) by the continuing incremental release of said

1    illegally obtained **IP**; 9) by causing continued, intentional and willful direct financial

2    harm/damages to the Plaintiff Corporations.

3        308.   The ***RICO Defendants*** committed overt acts, as described above, and

4    conspired or otherwise agreed to indirectly or directly violate 18 U.S.C. §§ 1962 (a), (b) and

5    (c).

6        309.   The acts set forth above constitute a pattern of racketeering activity pursuant to

7    18 U.S.C. §1961(5). The acts were in violation of 17 U.S.C. 501-506(a)(1)(A); 18 U.S.C.

8    1030(a)(2)(C), of the Federal Computer Fraud and Abuse Act; Federal Trademark Act of

9    1946, as amended (the Lanham Act), 15 U.S.C. 1125(a) and 1125(d); 18 U.S.C. 1341 mail

10   fraud and 1343 wire fraud; 18 U.S.C. 1832 (theft of trade secrets), 18 U.S.C. 1956 and 1957

11   money laundering, engaging in monetary transactions in property derived from specified

12   unlawful activity; in violation of the RICO Statute 18 U.S.C. 1961-1968, et seq; 18 U.S.C.

13   2314-2315 possession and receipt of stolen property; and 18 U.S.C. 2319, criminal

14   infringement of a copyright; in violation of the Stored Communications Act, 18 U.S.C.

15   2701.

16       310.   At all times material hereto, on multiple occasions to further their plans

17   Defendant, **Rooke** and **Rogness, Hazel, Ashkar,** and **Oliver** via the mails or wires of the

18   US solicited funds in furtherance of their illegal plan.

19       311.   Defendants devised a scheme or artifice to defraud Plaintiffs and others for the

20   purpose of executing such scheme or artifice or attempting to do so in the theft of Plaintiffs'

21   **Property**; Defendants knowingly placed or caused to be placed on multiple occasions with

22   an authorized carrier for the mail matters and things intended to accomplish the goals of the

23   Defendants' illegal activities, the theft of Plaintiff's **IP**.

24       312.   Defendants devised a scheme or artifice to defraud Plaintiffs for obtaining

25   their **Property** by means of false or fraudulent pretenses, representations, or promises, by

26   means of wire, communication in interstate writings-emails for the purpose of executing

27   such scheme or artifice intended to accomplish the goals of the Defendants' illegal

28   activities, the theft of Plaintiff's **IP**.

- 66 -

313. The dispatches of these mailing and wire communications involved interstate communications as aforesaid and were organized overt and predicate acts committed and being committed by the individual Defendants **Rooke** and **Rogness, Hazel, Ashkar and Oliver** which were acts accomplished for the intended willful theft of Plaintiffs' **IP**, as well as fraud in the illegal financial scheme and of the goals of the group therein so as to finance the continuing illegal acts of the RICO Defendants by reason of their joint illegal conduct there exists a an *association-in-fact Enterprise*.

314. By reason of, and but for the foregoing illegal activities of computer mail and wire fraud, a direct and proximate result of the **RICO Defendants'** racketeering activities and violations of 18 U.S.C. §1962(a), but for these illegal acts, Plaintiffs have been damaged, including the loss of their **IP**, investors, loss of corporate opportunities for profit and the usurpation of those opportunities which has been caused by the attendant profits to the **RICO Defendants** causing losses to Plaintiffs' in the conduct of the *Jingit Enterprise,* with the resulting injury to their businesses and property in the sums of no less than $20,000,000.00 Million Dollars in actual loss and One Billion Three Hundred Thousand ($1,300,000,000.00) Dollars in loss of economic advantage.

315. By reason of, and but for the foregoing, the Defendants' actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to treble damages as provide by 18 U.S.C. 1964(c); for violations of 1962 (a-b-c and d).

### Count V.
### Copyright Infringement
### (Against All Defendants)

316. Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "315" above of this Complaint as though fully set forth here and again.

317. Plaintiffs own valid and enforceable copyrightable works in all of their **IP** and support materials, which are creative works of original authorship.

- 67

318. Plaintiffs have filed all necessary Registration Statements as owners of the copyrightable works in all of their **IP** and support materials, which are creative works of original authorship.

319. Plaintiffs have a pre-existing right of Registration of said Copyrights, and right of Certificates of Registration that cover all of the **IP** and support materials taken, copied and illegally being used by the Defendants.

320. **eoBuy** owned one or more exclusive rights in certain copyrights at issue in this case at a point in time during which Defendants infringed those exclusive rights.

321. **Indiezone** has also obtained from **eoBuy**, through transfer agreements, licensing agreements, all rights, title, and interest for use in the copyrights infringed on by Defendants.

322. **Indiezone** owned one or more exclusive rights in certain copyrights at issue in this case at a point in time during which Defendants infringed those exclusive rights.

323. Defendants have infringed the copyrights in the foregoing **IP** and support materials, covered by the exclusive right of use.

324. The registrations constitute proof of original authorship and generally cover, but are not limited to, multiple hard copy versions of **IP** Code or **IP** Processes, including the updates, patches and fixes incorporated in each relevant versions, all RFP - UML-of which the *Jingit Enterprise* and the remaining *RICO Defendants* have illegally infringed, used or misappropriated without a license for Plaintiffs' **IP** use.

325. The infringed/misappropriated **IP** covers numerous versions of discrete portions of Code-or Process-and/or-RFP –UML, which Defendants are illegally using to create the **Jingit.com** Processes-which mirror the **Indiezone** Processes as developed during the employment period of- *RICO Defendants* **Rogness** and **Rooke.**

326. Their use of discrete portions of these in-house developed processes and also the updates, patches and fixes that **Jingit.com** uses without a license has allowed Defendants to infringe discrete portions of the developed processes by illegally taking without license the **IP** and support materials that are substantially similar to these discrete portions which allow the operation and process of **Jingit.com.**

- 68 -

327.   Through the illegal acts alleged above, Defendants have violated the exclusive rights of the Plaintiff Corporations to reproduce and make use of its copyrightable works, Plaintiffs' IP and support materials, including materials covered and prohibited by employment agreements without authorization or license, to create customer environments for commercial use and profit- as deployed on the **Jingit.com** website;- using Plaintiffs' software Code and processes-and/or-RFP -UML-for other improper business purposes, including, raising capital for reinvestment into the ***Jingit Enterprise***, without limitation, training employees, troubleshooting, researching general and specific support issues, and marketing to customer and prospective customers; whereby said illegal acts were obtained by generating and deriving software Code from proprietary and protected trade secret processes using architectural schematics, process flow charts and any other means that enable the Defendants to illegally reverse engineer Plaintiffs Intellectual Property; Distributed Plaintiffs' trade secret architecture and process trade secrets to programmers and developers (both in-house and out-sourced) for the purpose of re-generating software Code to replicate Plaintiff's IP; downloaded Plaintiff Corporations copyrighted Code and/or-RFP-UML.-materials onto its computers in violation of 17 U.S.C. § 106; and, repeatedly copying, co-mingling and cross-using the downloaded IP materials to populate different customer folders, support other customers, and as a general resource to provide support in the ordinary course of the ***Jingit Enterprise's*** illegal business.

328.   Defendants have violated the exclusive rights of Plaintiff Corporations to control the distribution, creation of derivative works and public display of copyrighted works by removing the final manuals for Plaintiffs' Corporate offices, downloading, copying, creating derivative works from and/or distributing Plaintiffs' IP material and/or derivative works to Defendants' customers, via posting to its website, by electronic mail, through file transfer protocol, or otherwise, including at least -a material portion and secret of Plaintiffs IP solution, in violation of 17 U.S.C. § 106.

329.   Defendants were not authorized to take possession of Plaintiff manuals, copy, download, reproduce, or create derivative works from, distribute, or publicly display

- 69 –

1   Plaintiffs copyrighted **IP** applications and support materials without a specific license for
2   which Defendant have no lawful right of use or right to possess with such a license.

3   **Contributory and/or Vicariously Infringement.**

4   330.   In addition to directly infringing the exclusive rights of Plaintiffs, Defendants
5   have contributory and/or vicariously infringed the exclusive rights of Plaintiffs in the ***Jingit***
6   ***Enterprise's*** applications and support materials by taking possession of Plaintiffs' manuals,
7   controlling, directing, intentionally encouraging, inducing or materially contributing to the
8   illegal copying, distribution, public display or creation of derivative works from Plaintiffs'
9   copyrighted **IP** and support materials. Defendants also obtained a direct financial benefit
10  from the above alleged infringing activities while declining to exercise the demand and
11  right they controlled to stop it or limit it.

12  331.   Defendants knew (or should have known that taking Plaintiffs' manuals,
13  copying, distributing, public display of, and creating derivative works of and from Plaintiffs
14  software applications and support materials, which Defendants copied and shared in the
15  name of customers who had no license to copy, distribute, publicly display or create
16  derivative works from those materials, infringed the exclusive rights of Plaintiffs in those
17  materials.

18  **Damages**

19  332.   Plaintiffs are entitled to damages in an amount to be proven at trial, including
20  profits attributable to the infringement not taken into account in computing actual damages-
21  17 U.S.C. § 504(b).

22  333.   Plaintiffs are entitled to statutory damages under 17 U.S.C. § 504(c) based on
23  Defendants' infringements - after the dates of copyright registration - of certain copyrighted
24  works used to create -the local customer environments and the subsequent individual further
25  copying and use of each such environment.

26  334.   Defendants' infringement of the exclusive rights of Plaintiffs has also caused
27  Plaintiffs irreparable injury. Unless restrained and enjoined, Defendants will continue to
28  commit such acts.

*Complaint*

1   Injunction-Impound.

2       335.  Plaintiffs' remedies at law are not adequate to compensate them for these

3   inflicted and threatened injuries, entitling Plaintiffs -to remedies including injunctive

4   relief as provided by 17 U.S.C. 502, and an order impounding or destroying any and all

5   infringing materials and other information which could injure Plaintiffs pursuant to 17

6   U.S.C. 503.

7

8   

**Count VI.**
**Federal Trademark Infringement**
**15 U.S.C. §§ 1114 and 1125(a)**
**(Against all Defendants)**

9

10

11       336.  Plaintiffs repeat, incorporate and otherwise allege by reference the

12   allegations of paragraphs numbered "1" through "334" above  of this Complaint as

13   though fully set forth here and again.

14       337.  Plaintiffs own valid and enforceable trademark **Music.Me** which was

15   obtained in or about July 2009 and was otherwise a product and the creative work of

16   original authorship.

17       338.  The actions of Defendants described  establishes that each has engaged in

18   the unauthorized use of the **Music.Me** as a trademark, and confusingly similar variations

19   thereof, in commerce to advertise, promote, market, and cause the use of Plaintiffs' the

20   mark **Muisc.Me** to further the use of the **Jingit.com Website** and the **Jingit-credit**

21   **cards** used in the sale of music products throughout the United States including

22   California, wherein said acts constitute trademark infringement in violation of 15 U.S.C.

23   §§ 1114 and 1125(a).

24       339.  The actions of Defendants, if not enjoined, will continue. Plaintiffs have

25   suffered and continue to suffer damages in an amount to be proven at trial consisting of,

26   among other things, diminution in the value of and goodwill associated with the **Music.**

27   **Me** mark, and injury to Plaintiff's business. Plaintiff is therefore entitled to injunctive

28   relief pursuant to 15 U.S.C. § 1116.

- 71 -

340.   Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover damages in an amount to be determined at trial, profits made by Defendants on sales of products by use of the Mark and the costs of this action.

341.   By reason of the foregoing, Plaintiffs are informed and believe, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiff to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## Count VII.
### Federal Unfair Competition and False Advertising 15 U.S.C. §1125(a)
### (Against all Defendants)

342.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "341" above of this Complaint as though fully set forth here and again.

343.   Defendants' actions described above and specifically, without limitation, Defendants' use of the **Music.Me** trademark, and confusingly similar variations thereof, in commerce to advertise, market, and sell products throughout the United States including California; their use of misleading representations regarding the ownership of the software and processes; and the **RICO Defendants** knowledge, participation, and inducement thereof, constitute unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).

344.   Consumers are likely to be misled and deceived by Defendants' representations regarding Plaintiffs' ownership and processes. Defendants knew or should have known that their statements were false or likely to mislead.

345.   By reason of the forgoing Plaintiffs have sustained an actual and proximate injury resulting from the **Defendants'** willful and intentional actions, Plaintiffs have suffered damages in an amount to be determined at trial, and unless **Defendants** are enjoined, Plaintiffs will continue to suffer irreparable harm and damage to its business, reputation, and goodwill.

- 72 -

Complaint

346.   Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to damages for Defendants' Lanham Act violations, an accounting for profits made by Defendants in the illegal use of their **IP**, as well as recovery of the costs of this action.

347.   By reason of the foregoing, Plaintiffs are informed and believe, and on that basis allege, that Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exemplary case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

### Count VIII.
### Federal Trademark Dilution 15 U.S.C. §1125(c)
### (Against all Defendants)

348.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "347" above of this Complaint as though fully set forth here and again.

349.   The actions of Defendants described above and specifically, without limitation their unauthorized use of the trademark **Music.Me**, and confusingly similar variations thereof, in commerce to advertise, market, and sell music products under the mark **Music.Me** throughout the United States including California, are likely to cause dilution by blurring and tarnishment in violation of 15 U.S.C. § 1125(c).

350.   The actions of Defendants, if not enjoined, will continue. Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the **Music.Me** trade-mark, and injury to Plaintiff's business. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and 15 U.S.C. §1125(c).

351.   Plaintiffs are therefore entitled to recover damages in an amount to be determined at trial, profits made by Defendants, and the costs of this action pursuant to 15 U.S.C. § 1117.

352.   By reason of, and but for the foregoing, the ***RICO Defendants*** actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to an award of punitive or exemplary damages to be determined by a jury.

- 73 -

## Count IX.
### Violation of Federal Computer Fraud and Abuse Act
### (18 U.S.C. 1030(a)(2)(C), (a)(4) (a)(5)(C)
### *(Defendant Rooke and Rogness)*

353. Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "352" above of this Complaint as though fully set forth here and again.

354. Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. 1030(a)(2)(C), by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer while intending to cause economic harm to Plaintiffs business and **Property**.

**Misappropriation of Confidential Information:**

355. Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. 1030(a)(4), by knowingly, and with intent to defraud Plaintiffs accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and by means of such conduct furthered the intended fraud and obtained one or more things of value, including but not limited to the Companies IP, support materials and Trade Secrets.

356. Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C 1030(a)(5)(B) &(C) and (iii) by intentionally accessing a protected computer without authorization, causing damage to Plaintiffs, recklessly or without due regard for their actions and have eliminated in excess 20,000 e-mails.

357. The computer system or systems that Defendants accessed as described above constitute a protected computer within the meaning of 18 U.S.C. 1030(e)(2).

**Damages.**

358. Plaintiffs have suffered damage and loss by reason of these violations, including, without limitation, harm to Plaintiffs data, programs, computer systems, and other losses in an amount to be proved at trial, but, in any event, in an amount well over $5,000.00 aggregated over a one-year period.

- 74 -

Complaint

**Injunction.**

359.   Defendants' unlawful access to and theft from Plaintiffs computers have caused Plaintiffs irreparable injury to the business and **Property.**

360.   Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiffs remedies at law are not adequate to compensate them for these inflicted and threatened injuries, entitling Plaintiffs to remedies including injunctive relief as provided by 18 U.S.C. 1030(g).

**Count X.**
**Violation of Federal Computer Fraud and Abuse Act**
**(18 U.S.C. 2701 (a)(2)**
*\* ( Defendants Rooke and Rogness)\**

361.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "360" above of this Complaint as though fully set forth here and again.

362.   Defendants have violated 18 U.S.C. 2701 (a)(2), by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer while intending to cause economic harm to Plaintiffs business and Property.

**Misappropriation of Confidential Information:**

363.   Defendants have violated 18 U.S.C. 2701 (a)(2), by knowingly, and with intent to defraud Plaintiffs, accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and by means of such conduct furthered the intended fraud and obtained one or more things of value, including but not limited to the Companies IP, support materials and Trade Secrets.

364.   Defendants have violated 18 U.S.C. 2701 (a)(2), by intentionally accessing a protected computer without authorization, causing damage to Plaintiffs, recklessly or without due regard for their actions and have eliminated in excess of 20,000 e-mails.

- 75

365.   The computer system or systems that Defendants accessed as described above constitute a protected computer within the meaning of 18 U.S.C. 2701 (a)(2).

**Damages.**

366.   Plaintiffs have suffered damage and loss by reason of these violations, including, without limitation, harm to Plaintiffs data, programs, and computer systems, and other losses and damage in an amount to be proved at trial, but, in any event, in an amount well over $5,000.00 aggregated over a one-year period.

**Injunction.**

367.   Defendants unlawful access to and theft from Plaintiffs computers have caused Plaintiffs irreparable injury to the business and Property. Unless restrained and enjoined, Defendants will continue to commit such acts.   Plaintiffs remedies at law are not adequate to compensate them for these inflicted and threatened injuries, entitling Plaintiffs to remedies including injunctive relief as provided by 18 U.S.C. 1030(g).

<u>**State Law Claims**</u>
**Count XI.**
**Aiding and Abetting**
*(All *RICO Defendants*, and Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis)*

368.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "367" above  of this Complaint as though fully set forth here and again.

369.   Plaintiffs are informed and believe and thereon allege that the Defendants and each of them aided abetted, instructed, informed, participated in, agreed with, encouraged and gave substantial assistance to each other in support of the theft, infringement-misappropriation of Plaintiffs IP and other wrongful conduct alleged herein for the ultimate purpose of injuring Plaintiffs in the business and property.

370.   That at all time material hereto, Plaintiffs are informed and believe and thereon allege that Defendants **Rooke, Rogness, Hazel, Ashkar, Oliver, Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis and US Bank** were aware and knew that the claims of ownership or other right

- 76 -

Complaint

1 | to use Plaintiffs' **IP** were false claims and that the **IP** was Plaintiffs' exclusive property created at a

2 | time the Defendants **Rooke** and **Rogness** were work for hire employees of **Indiezone.**

3 |     371. That at all time material hereto, Plaintiffs are informed and believe and

4 | thereon allege that Defendants **Rooke, Rogness, Hazel, Ashkar, Oliver, Abena, Fleming,**

5 | **Frawley, Moorehouse, Ohlsen, James, Davis and US Bank** were aware and knew that

6 | **Rooke** and **Rogness** where infringing-misappropriating Plaintiff IP and illegally using it to

7 | create income on the **Jingit.com** Website and presented to merchant and consumer users

8 | falsely claiming it as their own.

9 |     372. Plaintiffs are informed and believe, and thereon allege that Defendants **Rooke,**

10 | **Rogness, Hazel, Ashkar, Oliver, Abena, Fleming, Frawley, Moorehouse, Ohlsen,**

11 | **James, Davis and US Bank** and each of them agreed and knowingly conspired among

12 | themselves to seek merchants and consumers to use the Jigit.com Website and join or

13 | otherwise participate in the **US Bank** sponsored **Jingit** debit-cards.

14 |     373. Plaintiffs are informed and believe, and thereon allege that in excess of 3

15 | million consumers have joined the Jingit Website and are to infringe or otherwise

16 | misappropriate the Plaintiffs' **IP**, using or intending to use the **US Bank** Jingit Debit-Card.

17 |     374. Plaintiffs are informed and believe and thereon allege that Defendants

18 | **Rooke, Rogness, Hazel, Ashkar, Oliver, Abena, Fleming, Frawley, Moorehouse,**

19 | **Ohlsen, James, Davis and US Bank's** actions constitute the adding and abetting of

20 | unlawful acts, including but not limited to claims for breach of contract, breach of

21 | fiduciary duty, fraud, misrepresentation, computer fraud, receipt of stolen property,

22 | unfair business practices, intentional/negligent interference in prospective economic

23 | advantage and negligence.

24 |     375. By reason of, and but for the foregoing illegal activities there exists a direct

25 | and proximate result in damages to Plaintiffs, including the loss of their **IP**, investors, loss

26 | of corporate opportunities for profit and the usurpation of those opportunities which has

27 | been caused by the attendant profits to the all Defendants causing losses to Plaintiffs' in the

28 | conduct of and with the resulting injury to their businesses and property in the sums of no

1  less than $20,000,000.00 Million Dollars  in actual loss and One Billion Three Hundred
2  Thousand ($1,300,000,000.00) Dollars in loss of economic advantage.

3  376.  By reason of, and but for the foregoing, the Defendants' actions have been
4  illegal willful and outrageous and undertaken with reckless indifference to the rights of
5  Plaintiffs, and as such Plaintiffs are entitled to exemplary damages.

6  ## Count XII.
7  ### Misappropriation of Trade Secret Cal. Civ. Code 3426.11.
8  *(All RICO Defendants and Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, Davis )*

9
10  377.  Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of
11  paragraphs numbered "1" through "376" above  of this Complaint as though fully set forth
12  here and again.

13  378.  Plaintiffs have established their **IP** ownership of their individual and jointly
14  development and deployment strategies/plans and their existence of the unique methods
15  and processes advancing numerous proprietary micro billing and it associated **AdEngine**
16  methods and processes.

17  379.  The misappropriated **IP** covers numerous versions of discrete portions of Code-
18  or Process-and/or-RFP –UML and the unique completion of these processes, which Defendants
19  are illegally using to create the **Jingit.com** advancing processes-which mirror the eobuy and
20  **Indiezone AdEngine** methods processes as developed during the employment period of-
21  **Rogness** and **Rooke**.

22  380.  Plaintiffs developed these proprietary methods and processes ("confidential
23  information") at great expense and in a continuing process over a long period of time at
24  a sum in excess of $20,000,000.00.

25  381.  The **eobuy** and **Indiezone** processes/methods and other confidential
26  information were not readily know to others or to a competitor and have provided a
27  significant competitive advantage and have and continue to cause a significant loss to
28  Plaintiffs.

Complaint

382.   The confidential information is not generally known to the public or available to others in the industry and has been the subject of reasonable efforts to maintain its confidentiality and/or secrecy, including: restricting access to the confidential information to those employees, consultants, and other suppliers of Plaintiffs who must use the confidential information in performing their agreements with Plaintiffs and by restricting access to the places where the confidential information was put to use.

383.   Plaintiffs are informed and believe and on that basis allege, by reason of, and but for the foregoing illegal activities of computer mail and wire fraud,, a direct and proximate result of the ***RICO Defendants'*** racketeering activities and violations of both state and federal law but for these illegal acts.

384.   Plaintiffs have not been damaged, including the loss of their **IP**, investors, loss of corporate opportunities for profit and the usurpation of those opportunities which has been caused by the attendant profits to the ***RICO Defendants*** causing losses to Plaintiffs' in the conduct of the ***Jingit Enterprise***, with the resulting injury to their businesses and property in the sums of no less than One Billion Three Hundred Thousand ($1,300,000,000.00) Dollars.

385.   By reason of, and but for the foregoing, the Defendants' actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to exemplary damages in an mount as high as the law will.

### Count XIII.
### Negligence-Negligence Per Se
### (Against All Defendants)

386.   Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "385" above of this Complaint as though fully set forth here and again.

- 79 -

Complaint

387.    That at all times material hereto, **Jingit Holdings Jingit Financial, Jingit LLC., and Music.Me, Rooke, Rogness, Hazel, Ashkar, Oliver and US Bank Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, and Davis** owed a duty to Plaintiff not to use, or cause other to use, infringe or otherwise misappropriate Plaintiffs' **IP.**

388.    That at all time material hereto Defendants **Jingit Holdings Jingit Financial, Jingit LLC., and Music.Me, Rooke, Rogness, Hazel, Ashkar, Oliver and US Bank Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, and Davis** had a duty to advise users of the Jingit Website that they were using the IP belonging to Plaintiffs and failed to do so.

389.    That at all time material hereto Defendants **Jingit Holdings Jingit Financial, Jingit LLC., and Music.Me, Rooke, Rogness, Hazel, Ashkar, Oliver and US Bank Abena, Fleming, Frawley, Moorehouse, Ohlsen, James, and Davis** have caused consumers DOE and ROE 1-10, merchants Wal-Mart, General Electric and Target and others to use, infringe or otherwise misappropriate Plaintiffs' **IP.**

390.    By reason of, and but for the foregoing illegal activities there exists a direct and proximate result in damages to Plaintiffs, including the loss of their **IP**, investors, loss of corporate opportunities for profit and the usurpation of those opportunities which has been caused by the attendant profits to the all Defendants causing losses to Plaintiffs' in the conduct of and with the resulting injury to their businesses and property in the sums of no less than $20,000,000.00 Million Dollars in actual loss and One Billion Three Hundred Thousand ($1,300,000,000.00) Dollars in loss of economic advantage.

391.    By reason of, and but for the foregoing, the Defendants' actions have been illegal willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs, and as such Plaintiffs are entitled to exemplary damages.

## Count XIV.
### Statutory Unfair Competition False Advertising
### California Business and Professions Code §17200 *et seq.*
### *(Against all RICO Defendants, Jingit LLC and Music. Me)*

392.    Plaintiffs repeat, incorporate and otherwise allege by reference the allegations of paragraphs numbered "1" through "391." above of this Complaint as though fully set forth here and again.

- 80 –

Complaint

393. *RICO Defendants'* actions described above and the use of the *Jingit Enterprise Entities* specifically, without limitation, **Jingit Holding, Jingit LLC.,** and **Jingit Financial** and in the unauthorized use of the trade-dress of **Indiezone**, together with the unauthorized use of the **Music.Me** trademark, and other confusingly similar variations thereof, in commerce to advertise, market, and sell **Jingit Financial** licenses to merchants in the use of the **AdEngine;** the **Jingit.com** consumer memberships for participation in merchant-consumer engagement via the unauthorized use of the **AdEngine** throughout the United States and California; their use of misleading or otherwise their misrepresentations regarding the ownership of Plaintiffs' **IP** and *RICO Defendants* knowledge, participation, and inducement of *Defendants* **Wal-Mart-General Electric Target DOE(s) and ROE(s) 1-10,** Constitute trademark infringement, false advertising, and unfair competition in violation of the laws of the State of California.

394. By these actions, the *RICO Defendants* have engaged in false advertising and unfair competition in violation of the statutory law of the state of California, Cal. Bus. & Prof. Code and 17200, *et seq.,* and, as a result, Plaintiffs have suffered and will continue to suffer damage to its business, reputation, and goodwill and other **Property.**

395. By these actions a direct and proximate result of *Defendants'* willful and intentional actions, Plaintiffs have suffered damages in an amount to be determined at trial and, unless the all named *RICO Defendants* are restrained, Plaintiffs will continue to suffer irreparable damage.

**Contributory Trademark Infringement**

396. *RICO Defendants'* actions described above and the use of the *Jingit Enterprise Entities* specifically, without limitation, **Jingit Holding, Jingit LLC.,** and **Jingit Financial** and **US Bank** in the unauthorized use of the trade-dress of **Indiezone**, together with the unauthorized use of the **Music.Me** trademark, and other confusingly similar variations thereof, in commerce to advertise, market, and sell **Jingit.com** memberships for participation in merchant-consumer engagement via the unauthorized use of the **AdEngine** throughout the United States and California; constitutes

- 81 -