James W. Morando, CA Bar No. 87896
Deepak Gupta, CA Bar No. 226991
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: 415.954.4457
Facsimile: 415.954.4480
Email: jmorando@fbm.com
Email: dgupta@fbm.com

Keiko L. Sugisaka, MN Bar No. 266152 (*Pro hac vice*)
Joseph P. Ceronsky, MN Bar No. 391059 (*Pro hac vice*)
MASLON EDELMAN BORMAN & BRAND, LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140
Telephone: 612-672-8200
Facsimile: 612-672-8397
Email: keiko.sugisaka@maslon.com
Email: joseph.ceronsky@maslon.com

**ATTORNEYS FOR DEFENDANTS JINGIT LLC, JINGIT HOLDINGS, LLC, JINGIT FINANCIAL SERVICES, LLC, MUSIC.ME, LLC, TODD ROOKE, JOE ROGNESS, SAM ASHKAR, PHIL HAZEL, HOLLY OLIVER, SHANNON DAVIS, JUSTIN JAMES, CHRIS OHLSEN, DAN FRAWLEY, DAVE MOOREHOUSE, II, TONY ABENA, CHRIS KARLS AND JOHN E. FLEMING**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Indiezone, Inc., a Delaware corporation, and EoBuy, Limited an Irish private limited company, | Case No: CV 13-04280 (VC) |
| Plaintiffs, | Hearing Date: June 5, 2014<br>Hearing Time: 1:30 p.m.<br>Place: San Francisco Courthouse<br>Courtroom: 4, 17th Floor |
| vs. | |
| Todd Rooke, Joe Rogness, Phil Hazel, Sam Ashkar, Holly Oliver and U.S. Bank, collectively the ***RICO Defendants***; | **NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWERS** |
| Jingit LLC, Jingit Holdings, LLC, Jingit Financial Services LLC., Music.Me, LLC., Tony Abena, John E. Fleming, Dan Frawley, Dave Moorehouse II, Chris | |

MOTION FOR SANCTIONS - Case No: CV 13-04280 (VC)

Ohlsen, Justin James, Shannon Davis, Chris Karls in their capacities as officers, agents and/or employees of Jingit LLC, ***Defendants in Negligence, and Aiding/Abetting***;

Wal-Mart, General Electric, Target, DOE(s) and ROE(s) 1 through 10, ***Defendants in Negligence Secondary-Vicarious Infringement***,

      Defendants.

MOTION FOR SANCTIONS - Case No: CV 13-04280 (VC)

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ................................................................ 1

INTRODUCTION ............................................................................................................ 2

STATEMENT OF FACTS .............................................................................................. 2

I. Defendants Discover That Plaintiff EoBuy, Limited is a Dissolved Corporation. ............ 3

II. Plaintiffs Bring Multiple Motions to Attempt to Substitute in Another eoBuy Entity as ............................................................................................................................. 4

    A. Plaintiffs Move to Add "eoBuy Ventures Limited" ............................................. 4

    B. Plaintiffs Move to Add "eoBuy Licensing Limited" ............................................ 4

    C. "eoBuy Licensing Limited" Did Not Exist Until March 2014 After Mr. Fennelly Changed the Name of a Wholly Unrelated Taxi Company, Which Plaintiffs Then Claimed Had Been Doing Business as "eoBuy" Since 2008. ..................... 5

ARGUMENT .................................................................................................................... 7

I. Legal Standard to Impose Sanctions Under The Court's Inherent Powers. ................... 7

II. Plaintiffs' Fabrication of Proposed Plaintiff eoBuy Licensing Limited and Related Misrepresentations Warrant Sanctions Under This Court's Inherent Powers. ............................................................................................................................. 8

III. Plaintiffs' Continued Efforts to Add an eoBuy Entity as a Plaintiff Warrant Sanctions Under 28 U.S.C. § 1927. ............................................................................. 11

IV. Defendants Should Be Awarded Their Fees and Costs Incurred to Investigate and Address Plaintiffs' Sanctionable Conduct. ............................................................ 13

CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Asset Acceptance, LLC,*
   No. C 09-2970 MEJ, 2010 U.S. Dist. LEXIS 50975 (N.D. Cal. Apr. 29, 2010) .......................... 13

*B.K.B. v. Maui Police Dep't,*
   276 F.3d 1091 (9th Cir. 2002) ................................................................................................ 8, 13

*Barnd v. City of Tacoma,*
   664 F.2d 1339 (9th Cir. 1982) ...................................................................................................... 16

*Chambers v. Nasco, Inc.,*
   501 U.S. 32 (1991) ............................................................................................................ 7, 8, 16

*Emma C. v. Eastin,*
   No. C-96-4179 TEH, 2001 U.S. Dist. LEXIS 16119 (N.D. Cal. Oct. 4, 2001) .......................... 10

*Fink v. Gomez,*
   239 F.3d 989 (9th Cir. 2001) ....................................................................................... 7, 8, 9, 14

*Hubbard v. Plaza Bonita, L.P.,*
   No. 09-1581-JLS(WVG), 2011 U.S. Dist. LEXIS 64015 (S.D. Cal. June 13, 2011) ......... 9, 10, 16

*Knupfer v. Lindblade, (In re Dyer),*
   322 F.3d 1178 (9th Cir. 2003) ....................................................................................................... 7

*Leon v. IDX Sys. Corp.,*
   464 F.3d 951 (9th Cir. 2006) ......................................................................................................... 8

*Mark Industries, Ltd. v. Sea Captain's Choice, Inc.,*
   50 F.3d 730 (9th Cir. 1995) ........................................................................................................... 9

*Mercury Serv. v. Allied Bank,*
   117 F.R.D. 147 (C.D. Cal. 1987) ........................................................................................... 11, 12

*Nanak Found. Trust v. GMAC Mortg. LLC,*
   No. C-12-5647 EMC, 2012 U.S. Dist. LEXIS 163676 (N.D. Cal. Nov. 15, 2012) ................. 8, 10

*Roadway Express v. Piper,*
   447 U.S. 752 (1980) ................................................................................................................. 9, 13

*Roberts v. Heim,*
   184 B.R. 814 (N.D. Cal. 1995) ................................................................................................. 9, 10

*Thomas v. Girardi*,
   611 F.3d 1027 (9th Cir. 2010) .................................................................................................. 14, 15

**STATUTES**

28 U.S.C. § 1927 ............................................................................................................................. passim

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 5, 2014, at 1:30 p.m., or as soon thereafter as counsel may be heard, at the San Francisco Courthouse, Courtroom 4, 17th Floor, before the Honorable Vince Chhabria, Judge of the United States District Court for the District of Northern California, Defendants Todd Rooke, Joe Rogness, Jingit, LLC, Jingit Holdings, LLC, Jingit Financial Services, LLC, Sam Ashkar, Phil Hazel, Holly Oliver, Shannon Davis, Justin James, Chris Ohlsen, Dan Frawley, Dave Moorehouse II, Tony Abena, Chris Karls, John E. Fleming, and Music.Me, LLC will move for an order under 28 U.S.C. § 1927 and/or the Court's inherent powers awarding sanctions against Plaintiffs and Plaintiffs' counsel for their litigation misconduct in this matter, including the fabrication of a proposed plaintiff to replace Plaintiff eoBuy, Limited. Defendants seek as a sanction the payment of their fees and costs incurred to respond to Plaintiffs' attempts to add the various "eoBuy" entities in this case, including without limitation, fees and costs incurred to investigate Plaintiffs' factual assertions made with respect to the various eoBuy entities by Defendants' foreign counsel.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the papers on file in this action, and on such other matters as may be presented at or before the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED

1. Is it sanctionable conduct under this Court's inherent powers and/or 28 U.S.C. § 1927, for Plaintiffs to repeatedly seek leave to amend the Complaint and their Response to Defendants' Motion to Dismiss to add nonexistent and nonviable "eoBuy" plaintiffs, including a proposed plaintiff fabricated earlier this year by Plaintiffs' CEO and principal after Defendants demonstrated that the original eoBuy, Limited plaintiff had dissolved in 2008 and lacked capacity to sue?

## INTRODUCTION

Plaintiffs and their CEO and principal, Conor Fennelly, have submitted declarations to this Court containing demonstrably false and misleading factual statements and representations. It is clear that Plaintiffs' conduct in submitting these sworn declarations was made in bad faith in order to achieve a litigation objective of preserving Plaintiffs' claims in this lawsuit. Plaintiffs' conduct, however, is an affront to both the Court and the integrity of the judicial process. Moreover, Plaintiffs' counsel's conduct in endorsing and relying on these false and misleading factual statements and representations for their motions, without any apparent verification and despite readily available evidence to the contrary, was reckless and served only to improperly prolong and multiply these proceedings via Plaintiffs' continual but meritless motion practice. Indeed, Defendants have been forced to conduct extensive investigations into foreign corporate records with the assistance of foreign counsel at substantial expense in order to debunk Plaintiffs' misrepresentations. Defendants were also required to respond to Plaintiffs' multiple motions—which rely on these misrepresentations—with substantial briefing and supporting evidence and have been subjected to substantial delay in resolving whether the originally-named Plaintiff, eoBuy, Limited should be dismissed for lack of capacity to sue and whether Plaintiff Indiezone, Inc. should be compelled to arbitrate its claims with Defendants Rooke and Rogness. The conduct by Plaintiffs and their counsel, Douglas Dollinger, is sanctionable under both this Court's inherent powers and 28 U.S.C. § 1927 and should not be tolerated.

## STATEMENT OF FACTS

Plaintiffs Indiezone, Inc. and eoBuy, Limited filed the Complaint in the current litigation on September 16, 2013. (Compl., ECF 1.) The Complaint includes a litany of twenty-seven causes of action, (*id.* ¶¶ 266-492), each of which rests on the central allegation that Defendants Todd Rooke and Joe Rogness stole Plaintiffs' alleged intellectual property while they worked for Indiezone, and

later misappropriated it in their operation of their own company Jingit, LLC ("Jingit") (*see, e.g., id.* ¶¶ 1-5). Despite the alleged wrongdoing stemming from two individuals, the Complaint is brought against a total of twenty-one different Defendants under a variety of theories. (*Id.* ¶¶ 36-51, 200, 247 and 259-60.)

I.  **Defendants Discover That Plaintiff EoBuy, Limited is a Dissolved Corporation.**

The Complaint alleges that Plaintiff eoBuy, Limited is a privately held Irish corporation whose core business model is that of "licensing and deployment" of a "proprietary payment processing and content monetization platform" that allows "real-time settlement of fractional transactions in amounts less than .99 cents via the Internet for sales of digital content." (*Id.* ¶¶ 7, 26.) Defendants, however, determined that it was formally dissolved from the Irish Registrar of Companies as of April 4, 2008, over six years ago. (Declaration of Brian Walker ("Walker Decl."), ECF 30, ¶¶ 5-7, Ex. A.) The fact of eoBuy's dissolution was reflected in the public records of the Irish Registrar, which could be verified by entering the name "eoBuy" into the Registrar's public website, available at www.cro.ie/search. (*Id.* ¶ 6 & Ex. A.) Defendants also engaged the services of an Irish Barrister-at-Law, Brian Walker, to independently confirm the dissolved status of Plaintiff eoBuy, Limited as reflected on the Registrar's website. (*Id.* ¶ 7.)

Based on this information, on January 10, 2014, the Defendants filed a motion to, *inter alia*, dismiss Plaintiff eoBuy, Limited because, as a dissolved Irish corporation, it lacked capacity to bring suit under governing Irish law. (Mot. of Defs. to Compel Arbitration, ECF 29, Sec. II; Walker Decl., ECF 30, ¶¶ 5-9, Exs. A & B.) In response, Plaintiffs *admitted* that eoBuy, Limited had dissolved in 2008 and therefore lacked capacity to sue. (Pls.' Mem. in Opp'n, ECF 54, p. 9; *see also* Declaration of Conor Fennelly ("Fennelly Decl."), ECF 54-1, ¶ 1.)

## II. Plaintiffs Bring Multiple Motions to Attempt to Substitute in Another eoBuy Entity as a Plaintiff in This Lawsuit.

### A. Plaintiffs Move to Add "eoBuy Ventures Limited"

Plaintiffs attempted to cure this defect by filing a motion seeking leave to amend their Complaint to add a different Irish company—"eoBuy Ventures Limited"—as a plaintiff. (ECF 57.) In support of that motion, Plaintiffs' CEO and principal Conor Fennelly submitted a declaration to the Court stating that, before dissolving, eoBuy, Limited's intellectual property and licenses were assigned to "EoBuy's holding corporation Amdex, Pte." and "[s]everal months later … transferred back into the newly formed company eoBuy Ventures Limited…." (Fennelly Decl., ECF 54-1, ¶ 3.) Mr. Fennelly further represented that "eoBuy Ventures Limited "has been doing business as eoBuy since August 2008…." (*Id.* ¶ 4.) Plaintiffs' counsel made substantively identical statements and further explained that "CEO Fennelly did not understand the implications of simply using the name eoBuy and when he provided the name of the entities as Plaintiff did not advise this office of the actual name of the entity as the intended Plaintiff, eoBuy Ventures Limited." (Decl. of Douglas R. Dollinger in Sup. of First Mot. to Amend , ECF 57-1, p. 3.) However, as Defendants demonstrated in their response (ECF 66), a simple search on the Irish Companies Registration Office public website revealed that the purported entity "eoBuy Ventures Limited" did not even exist. (*See* Supplemental Declaration of Brian Walker, "Supp. Walker Decl.," ECF 61, ¶¶ 3-4, Ex. A.)

### B. Plaintiffs Move to Add "eoBuy Licensing Limited"

In the face of this evidence, Plaintiffs did not file a reply brief nor did they withdraw that motion. Instead, Plaintiffs filed a separate, second motion requesting leave to amend their Complaint in which they *admitted* that the purported entity eoBuy Ventures Limited did not exist. (*See* Supplemental Declaration of Conor Fennelly ("Supp. Fennelly Decl."), ECF 84-3 & 90-2, ¶ 4 (filed in support of Pls.' Sec. Mot. to Amend Compl., ECF 84 & 90).) In support of this second motion, Plaintiffs submitted the supplemental declaration of Mr. Fennelly, which claimed that the

MOTION FOR SANCTIONS - Case No: CV 13-04280 (VC)   4

correct entity was actually a third Irish company, named "eoBuy Licensing Limited." (*Id.* ¶¶ 1-5.) Mr. Fennelly informed the Court that he "was previously under the belief that the name of the Company was eoBuy Ventures Limited and simply forgot that the Corporate Office of Registry of Ireland had not approved the name." (*Id.* ¶ 4.) Mr. Fennelly then told the Court that he resolved the issue of the incorrect plaintiff name by simply checking his records: "In response to the inquiry from Plaintiffs' Counsel Mr. Dollinger I reviewed the Corporate filings. The Company is officially named eoBuy Licensing Limited and was registered under its former name in [sic] July 15, 2008." (*Id.*) That is, Plaintiffs claimed that, sometime in 2008, eoBuy, Limited transferred its intellectual property and licenses to the "newly formed company eoBuy Licensing Limited," which, according to Plaintiffs, "has been doing business as eoBuy since August 2008...." (*Id.* ¶¶ 3 & 5.) Mr. Fennelly then provided the Court with a single printout from the Irish Companies Registration Office which suggested that "eoBuy Licensing Limited" had existed since July 15, 2008, and that Mr. Fennelly had been a director of this company since that date. (*See* Supp. Fennelly Decl., ECF 84-3 & 90-2, ¶ 4, Ex. A.) As with eoBuy Ventures Limited, Plaintiffs sought leave to add eoBuy Licensing Limited in place of the original plaintiff eoBuy, Limited, and submitted a proposed amended complaint now wholesale attributing all background facts and substantive allegations previously attributed to eoBuy, Limited to eoBuy Licensing Limited (*see* ECF 84-5, p. 8 of 26, ¶ 26).

### C. "eoBuy Licensing Limited" Did Not Exist Until March 2014 After Mr. Fennelly Changed the Name of a Wholly Unrelated Taxi Company, Which Plaintiffs Then Claimed Had Been Doing Business as "eoBuy" Since 2008.

After receiving Plaintiffs' motion for leave to add eoBuy Licensing Limited as a plaintiff, Defendants conducted an investigation into eoBuy Licensing Limited, which revealed a very different set of facts than those described in Mr. Fennelly's Supplemental Declaration.

Mr. Fennelly made an oblique statement in his Supplemental Declaration that eoBuy Licensing Limited "was registered under its *former* name in [sic] July 15, 2008." (Supp. Fennelly

MOTION FOR SANCTIONS - Case No: CV 13-04280 (VC)   5

Decl., ECF 84-3 & 90-2, ¶ 4) (emphasis added). Indeed, public filings showed that the company incorporated on July 15, 2008 was "Laraghcon Chauffeur Drive Limited." (Second Supplemental Declaration of Brian Walker ("Sec. Supp. Walker Decl."), ECF 95, ¶ 10, Ex. E.) This company's business, however, was not remotely related to software development; it was established in 2008 "[t]o carry on the business of *taxi hire, limo hire and internet bookings....*" (*Id.* ¶ 11, Ex. F) (emphasis added). Each of this taxi company's annual returns from 2009 to 2013 were filed under the name "Laraghcon Chauffeur Drive Limited" and signed by its director Michael Byrne and secretary Teresa Byrne. (*Id.* ¶ 12, Ex. G.) The company's 2011 and 2012 Directors' Reports and Financial Statements also confirmed that its two directors, Michael and Ciaran Byrne, were the only employees of the company. (*Id.* Ex. I.) Additionally, the filed and audited Directors' Reports and Financial Statements stated that the company did not conduct any business whatsoever from its incorporation in 2008 through 2012. (*Id.* ¶ 13, Ex. I.)

The first appearance of "eoBuy Licensing Limited" in the Irish Companies Registrar was from a string of filings made by Mr. Fennelly on February 6, 2014. On that date, Mr. Fennelly made three filings with the Irish Companies Registration Office that:

- changed the name of Laraghcon Chauffeur Drive Limited to "eoBuy Licensing Limited." (*Id.* ¶ 9, Ex. B.)
- amended the Memorandum and Articles of Association of Laraghcon Chauffeur Drive Limited to change the company's objective from "[t]o carry on the business of taxi hire, limo hire and internet bookings" to "carry on the business of software development...." (*Id.* ¶ 14, Ex. J; *cf.* Ex. F.)
- terminated directors Ciaran Byrne and Michael Byrne and secretary Teresa Byrne and named himself director and secretary of the company. (*Id.* ¶ 12, Ex. H.)

Despite filing these changes on February 6, 2014, Mr. Fennelly backdated each of these documents to July 15, 2008—the date Laraghcon Chauffeur Drive was incorporated (*see id.* ¶ 9, Exs. B & C)— even though these backdated filings were contrary to every public filing made by Laraghcon Chauffeur Drive Limited from July 2008 to January 2013. Rather, it appeared from Defendants' investigation that Mr. Fennelly purchased Laraghcon Chauffeur Drive Limited *in 2014* from

MOTION FOR SANCTIONS - Case No: CV 13-04280 (VC)     6

"Company Setup," an Irish business that sells "shelf companies" to persons in need of previously-incorporated companies. (*Id.* ¶¶ 22-23.) Finally, the Irish Registar approved Mr. Fennelly's request to change the name of the company to "eoBuy Licensing Limited" on March 13, 2014, thus "eoBuy Licensing Limited" did not exist under the laws of Ireland until that date. (*id.* ¶ 9, Ex. D.)

## ARGUMENT

Plaintiffs' fabrication of an eoBuy plaintiff for purposes of this lawsuit and repeated misrepresentations to this Court are evident and inexcusable, yet Plaintiffs continued to seek leave to amend to add an eoBuy plaintiff. This conduct impinges on the integrity of the legal process, prejudices Defendants, and calls for sanctions under this Court's inherent powers and Section 1927.

### I. Legal Standard to Impose Sanctions Under The Court's Inherent Powers.

This Court is invested with the inherent power to sanction both parties and attorneys for improper conduct in litigation. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43-46 (1991); *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). The Court's inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43 (citation omitted).

This Court may sanction a "broad range of improper litigation tactics" under its inherent power. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1197 (9th Cir. 2003). Sanctions may be imposed pursuant to inherent powers even if the conduct in question is also sanctionable under other rules, such as Rule 11 or 28 U.S.C. § 1927. *Nanak Found. Trust v. GMAC Mortg. LLC*, No. C-12-5647 EMC, 2012 U.S. Dist. LEXIS 163676, at *9 (N.D. Cal. Nov. 15, 2012) (discussing availability of Rule 11, § 1927 and inherent powers to sanction and recognizing that "[t]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct.") (quoting *Chambers*, 501 U.S. at 49).

Sanctions issued against a party or counsel pursuant to the Court's inherent power "are

available if the court specifically finds bad faith or conduct tantamount to bad faith." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107-08 (9th Cir. 2002) (quoting *Fink*, 239 F.3d at 994) (attorney's knowing and reckless introduction of inadmissible evidence was tantamount to bad faith and warranted sanctions under § 1927 and the court's inherent power). Bad faith "includes a broad range of willful improper conduct," *Fink*, 239 F.3d at 992, and may be demonstrated by "delaying or disrupting the litigation or hampering enforcement of a court order." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006)(internal quotation marks and citation omitted). Conduct "tantamount to bad faith" includes "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994. At bottom, "[t]he focus of the bad faith inquiry is the sanctioned party's abuse of the judicial process." *Hubbard v. Plaza Bonita, L.P.*, No. 09-1581-JLS(WVG), 2011 U.S. Dist. LEXIS 64015, at *31-32 (S.D. Cal. June 13, 2011) (citing *Roadway Express v. Piper*, 447 U.S. 752, 765-66 (1980)). The record in the instant case clearly and amply demonstrates Plaintiffs' bad faith conduct justifying sanctions under the Court's inherent power.

**II.     Plaintiffs' Fabrication of Proposed Plaintiff eoBuy Licensing Limited and Related Misrepresentations Warrant Sanctions Under This Court's Inherent Powers.**

"It is clear that a district court may, pursuant to its inherent powers, impose sanctions on a party or its counsel for making bad faith misrepresentations to the court." *Roberts v. Heim*, 184 B.R. 814, 818 (N.D. Cal. 1995) (citing *Mark Industries, Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732-33 (9th Cir. 1995) ("upholding district court's imposition of sanctions on attorney for bad faith conduct including misrepresentation of facts to the court and emphasizing that the court was within its discretion to view attorney's actions as 'willful abuse of the judicial process or bad faith conduct'")). Bad faith misrepresentations to the court justifying imposition of sanctions under the court's inherent power can take many forms. *See, e.g.*, *Roberts*, 184 B.R. at 818 (inherent powers sanction justified when party's "representations regarding its intent to reach a settlement agreement

were not genuine" and were instead "a bad faith effort to stall" anticipated adverse ruling).

Unsurprisingly, submitting false documents to the court or parties constitutes sufficient misconduct to trigger exercise of the court's inherent power to sanction. *See, e.g., Hubbard*, 2011 U.S. Dist. LEXIS 64015, at *30-33 (imposing sanctions under §1927 and court's inherent authority when plaintiff's counsel submitted to defendants a proposed settlement agreement purportedly containing the plaintiff party's genuine signature when the signature was not, in fact, the plaintiff party's signature); *Emma C. v. Eastin*, No. C-96-4179 TEH, 2001 U.S. Dist. LEXIS 16119, at *5-8 (N.D. Cal. Oct. 4, 2001)(noting that "[f]abricating documentary evidence is a litigation abuse" and ordering further proceedings to determine sanctions under court's inherent powers or Rule 11 based on "doctored" petitions submitted to the court and later withdrawn once falsification raised). The court considers filing of a fraudulent document "a serious matter because its very nature threatens the integrity of the judicial process." *Id.* at *6 (citation and internal quotation marks omitted).

False and misleading documents justifying inherent power sanctions may also be in the form of sworn declarations or affidavits. *See, e.g., Nanak Found. Trust*, 2012 U.S. Dist. LEXIS 163676, at *9-11 (ordering plaintiff to show cause why sanctions should not issue under Rule 11, § 1927 or the Court's inherent powers when plaintiffs submitted misleading information by "omitting the second page of an exhibit to the verified complaint that serves to exonerate Defendants from the wrongdoing alleged in the complaint and in Plaintiff's TRO application" and inferring bad faith when omitted page was available to plaintiff). Sanctioning a party or its counsel for "the filing of false or seriously misleading affidavits is appropriate under [the court's] inherent powers, whether the Court makes a specific contempt finding or not, to maintain the authority and dignity of the Court." *Mercury Serv. v. Allied Bank*, 117 F.R.D. 147, 158 (C.D. Cal. 1987). In the *Mercury Service* case, the defendant submitted a declaration in support of a motion to dismiss for lack of personal jurisdiction, which "at least partially lacked factual foundation" because the declarant failed

to have personal knowledge of all of the statements therein. *Id.* at 158. As a result, the declaration "misled the plaintiffs" into believing that the declarant was the appropriate person employed by the defendant to depose regarding the matters stated within the declaration about the defendant's contacts with the forum state, and plaintiffs "had to expend effort to disprove this." *Id.* Not only was the declaration misleading with regard to the declarant's knowledge, however, the court found that "the Declaration contain[ed] other misleading if not outrightly false statements." *Id.* The declarant represented that the defendant bank's business practice was to do business with local persons and that it did not accept deposits or make loans in California and owned no real property in California. *Id.* The court noted that "[t]hese statements in their context imply that the bank has no contacts with California whatsoever. This is misleading." *Id.* Instead, the court found that the defendant bank conducted substantial loans with California businesses, had security interests in California real and personal property, would obtain title to California real property securing certain loans in the event of default, and sent bank officers to California to service and encourage expansion of existing business relationships with California residents. *Id.* Under these circumstances, "[p]ursuant to Rule 11 and its inherent powers, the Court finds that sanctions are appropriate both because the statement that [the declarant] had personal knowledge is false and because the representations about the bank's California contacts are misleading" which "led to otherwise unnecessary inquiries and arguments by the plaintiffs" and warranted "punishment to deter similar conduct that demonstrates disrespect for the dignity and authority of the courts." *Id.* at 159.

In the instant case, a publicly-available paper trail unequivocally shows that Mr. Fennelly's *post hoc* solution to Defendants' motion to dismiss eoBuy, Limited was to take the existing taxi company Laraghcon Chauffeur Drive Limited, rename it "eoBuy Licensing Limited," change its objective to "software development," and make himself director and secretary. The documents also establish that Mr. Fennelly's sworn statement that, in *2008*, eoBuy, Limited's intellectual property

and licenses were purportedly transferred to "the *newly formed* company eoBuy Licensing Limited" was simply untrue. (*Compare* Supp. Fennelly Decl., ECF 84-3 & 90-2, ¶ 3, *with* Sec. Supp. Walker Decl., ECF 95, ¶ 9.) Likewise, Mr. Fennelly's sworn representation that "eoBuy Licensing Limited has been doing business as eoBuy since August 2008" was also patently false. (*Compare* Supp. Fennelly Decl., ECF 84-3 & 90-2, ¶ 5, *with* Sec. Supp. Walker Decl., ECF 95, ¶ 9.) Plaintiffs' fabrication of proposed plaintiff eoBuy Licensing Limited and related false and misleading representations to this Court made in an effort to add this entity to the case, constitutes at least as egregious conduct as that sanctioned under the court's inherent powers in the cases cited *supra*.[1] Indeed, Plaintiffs' misrepresentations to this Court involve no small matter; Plaintiffs have attempted to manufacture a plaintiff party who would have the right to pursue the 27 causes of action raised in the Complaint against numerous defendants. Such misconduct strikes at the core of this lawsuit and the integrity of the judicial process. This Court should sanction Plaintiffs under its inherent powers.

### III. Plaintiffs' Continued Efforts to Add an eoBuy Entity as a Plaintiff Warrant Sanctions Under 28 U.S.C. § 1927.

28 U.S.C. § 1927 authorizes the imposition of sanctions upon any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously...." 28 U.S.C. § 1927. "Section 1927 does not distinguish between winners and losers or plaintiffs and defendants, but is only concerned with limiting the abuse of court processes." *Anderson v. Asset Acceptance, LLC*, No. C 09-2970 MEJ, 2010 U.S. Dist. LEXIS 50975, at *10 (N.D. Cal. Apr. 29, 2010) (citing *Roadway Express, Inc.*, 447 U.S. at 762). For an award of sanctions under Section 1927, a showing of recklessness, rather than bad faith, suffices. *B.K.B.*, 276 F.3d at 1107 (citing *Fink*, 239 F.3d at 993).

---

[1] In addition, Mr. Fennelly's apparent false statements on his February 2014 filings to the Irish Registrar, such as the July 2008 effective dates of the company's name and director changes, constituted a violation of Section 242 of the Companies Act 1990 under Irish law, which prohibits the submission of false and misleading information to the Registrar of Companies. (Sec. Supp. Walker Decl., ECF 95, ¶ 24, Ex. L.)

Plaintiffs' counsel's continual efforts to add an eoBuy plaintiff to this litigation were at least reckless because the motions to amend the Complaint were frivolous and clearly made without any meaningful inquiry by counsel. For purposes of Section 1927 sanctions, a "'frivolous' filing is one 'that is *both* baseless and made without a reasonable and competent inquiry.'" *Thomas v. Girardi*, 611 F.3d 1027, 1062 (9th Cir. 2010)(citation omitted)(emphasis in original). "That is, in the context[] of § 1927, frivolousness should be understood as referring to legal or factual contentions so weak as to constitute objective evidence of improper purpose." *Id.* (citation omitted).

Here, counsel's misconduct began with Plaintiffs' first motion seeking leave to amend the Complaint to add in "eoBuy Ventures Limited" to replace original plaintiff eoBuy, Limited. After learning through Defendants' motion to dismiss that eoBuy, Limited had dissolved in 2008 and thus lacked capacity to sue, reasonable and competent counsel might be more careful in vetting the entity that might take eoBuy, Limited's place in the litigation—especially when, according to counsel, his client "did not understand the implications of simply using the name eoBuy…and did not advise this office of the actual name of the entity as the intended Plaintiff…." (Decl. of Douglas R. Dollinger in Sup. of First Mot. to Amend, ECF 57-1, p. 3.) Nonetheless, Plaintiffs' counsel conducted no inquiry, since the second eoBuy entity proffered, "eoBuy Ventures Limited," did not actually exist as claimed by Plaintiffs in their motion and supporting declarations. Indeed, had counsel conducted a simple search on the Irish Registrar's website, this fact would be easily revealed.

Counsel's reckless behavior continued, however, when Plaintiffs filed a second, separate motion seeking leave to amend the Complaint, this time attempting to add a third eoBuy entity, "eoBuy Licensing Limited." Counsel's basis for this motion was that Mr. Fennelly made yet another mistake but, after allegedly reviewing his corporate records, could confirm that the correct entity to add was "eoBuy Licensing Limited." (Decl. of Douglas R. Dollinger in Sup. of Sec. Mot. to Amend, ECF 89, p. 2.) In fact, Mr. Dollinger himself stated in his second Declaration that "The fact remains

that [in 2008] eoBuy's IP and licenses were ... transferred back into the newly formed company eoBuy Licensing Limited, a company formed under the law of Ireland." (*Id.*) Plaintiffs then filed a motion "requesting an enlargement of time to submit a corrected response and/or renew their response to the Defendants' motions to compel arbitration, dismiss or stay the proceedings [sic]" which sought to add the falsified entity eoBuy Licensing Limited to the case. (ECF 91.)

Counsel presumably and simply took Mr. Fennelly's representations at face value, repeating them in counsel's sworn declarations even though Defendants' previous filings showed that "eoBuy Licensing Limited" had not appeared in the search results for any "eoBuy" entities from the Irish Registrar conducted just weeks earlier. (Supp. Walker Decl., ECF 61, ¶ 5, Ex. B.) Counsel's failure to conduct any investigation provides objective evidence of an improper purpose warranting Section 1927 sanctions. *Thomas*, 611 F.3d at 1063.

Ultimately, Defendants have been forced to respond to each of these motions, expending significant time, money and resources—including the retention of foreign counsel because of the foreign status of the proposed eoBuy plaintiffs—in order to expose the falsity of Plaintiffs' claims. It is clear that Plaintiffs' counsel has pushed advocacy far past its breaking point, repeatedly raising frivolous arguments to this Court in three separate motions seeking leave to amend the Complaint and renew Plaintiffs' response to Defendants' motion, resulting in the unreasonable and vexatious multiplication of these proceedings. This Court should sanction Plaintiffs' counsel pursuant to Section 1927.

### IV. Defendants Should Be Awarded Their Fees and Costs Incurred to Investigate and Address Plaintiffs' Sanctionable Conduct.

Upon a finding of bad faith, the court may enter a variety of sanctions against a party or attorney under its inherent power, ranging from attorneys' fees to outright dismissal of claims. *Chambers*, 501 U.S. at 44-45; *Barnd v. City of Tacoma*, 664 F.2d 1339, 1342 (9th Cir. 1982) ("A trial court's inherent powers unquestionably include the power to assess attorney's fees against any

MOTION FOR SANCTIONS - Case No: CV 13-04280 (VC)     13

counsel who willfully abuses judicial process or otherwise conducts litigation in bad faith.").

Similarly, sanctions under Section 1927 that may be imposed personally on an attorney may include "the excess costs, expenses, and attorneys' fees reasonably incurred because of such [sanctionable] conduct." 28 U.S.C. § 1927. Such sanctions may include the costs arising from the sanctions proceedings themselves to further the "goal of deterring future similar sanctionable conduct" and remedying the harm caused in terms of time, effort and money a party must expend to pursue sanctions. *Hubbard*, 2011 U.S. Dist. LEXIS 64015, at *29-30 (citation omitted).

As a result, Defendants request as a sanction their reasonable fees and costs incurred in responding to Plaintiffs' various motions related to seeking leave to add eoBuy entities to this suit (ECF 57, 84, 90 and 91), including the fees and costs to investigate the eoBuy entities incurred by Defendants' Irish counsel, and the fees and costs incurred in bringing this motion for sanctions. Excluding preparation of this motion for sanctions, to date Defendants have incurred at least $32,251.62 in estimated fees and costs to respond to Plaintiffs' motions at issue. (Declaration of Keiko L. Sugisaka in Support of Defendants' Motions for Sanctions, ¶ 9.)

## CONCLUSION

For the foregoing reasons, moving Defendants respectfully ask this Court to impose sanctions on Plaintiffs and their counsel pursuant to the Court's inherent powers and § 1927.

Dated: May 1, 2014

**MASLON EDELMAN BORMAN & BRAND, LLP**

By: _/s/ Keiko L. Sugisaka_
Keiko L. Sugisaka, MN Bar No. 266152 (*Pro hac vice*)

**ATTORNEYS FOR DEFENDANTS JINGIT LLC, JINGIT HOLDINGS, LLC, JINGIT FINANCIAL SERVICES, LLC, MUSIC.ME, LLC, TODD ROOKE, JOE ROGNESS, SAM ASHKAR, PHIL HAZEL, HOLLY OLIVER, SHANNON DAVIS, JUSTIN JAMES, CHRIS OHLSEN, DAN FRAWLEY, DAVE MOOREHOUSE II, TONY ABENA, CHRIS KARLS AND JOHN E. FLEMING**