James W. Morando, CA Bar No. 87896
Deepak Gupta, CA Bar No. 226991
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: 415.954.4457
Facsimile: 415.954.4480
Email:  jmorando@fbm.com
Email:  dgupta@fbm.com

Keiko L. Sugisaka, MN Bar No. 266152 (*Pro hac vice*)
Joseph P. Ceronsky, MN Bar No. 391059 (*Pro hac vice*)
MASLON EDELMAN BORMAN & BRAND, LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-4140
Telephone: 612-672-8200
Facsimile: 612-672-8397
Email:  keiko.sugisaka@maslon.com
Email:  joseph.ceronsky@maslon.com

**ATTORNEYS FOR DEFENDANTS JINGIT LLC, JINGIT HOLDINGS, LLC, JINGIT FINANCIAL SERVICES, LLC, MUSIC.ME, LLC, TODD ROOKE, JOE ROGNESS, SAM ASHKAR, PHIL HAZEL, HOLLY OLIVER, SHANNON DAVIS, JUSTIN JAMES, CHRIS OHLSEN, DAN FRAWLEY, DAVE MOOREHOUSE, II, TONY ABENA, CHRIS KARLS AND JOHN E. FLEMING**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Indiezone, Inc., a Delaware corporation, and EoBuy, Limited an Irish private limited company, | Case No:  13-04280 (VC) |
| Plaintiffs, | **JINGIT DEFENDANTS' SUPPLEMENTAL BRIEF FOR SANCTIONS** |
| vs. | |
| Todd Rooke, Joe Rogness, Phil Hazel, Sam Ashkar, Holly Oliver and U.S. Bank, collectively the ***RICO Defendants***; | |
| Jingit LLC, Jingit Holdings, LLC, Jingit Financial Services LLC., Music.Me, LLC., Tony Abena, John E. Fleming, Dan Frawley, Dave Moorehouse II, Chris | |

1  Ohlsen, Justin James, Shannon Davis, Chris Karls in
2  their capacities as officers, agents and/or employees of
   Jingit LLC, ***Defendants in Negligence, and***
3  ***Aiding/Abetting***;

4  Wal-Mart, General Electric, Target, DOE(s) and
   ROE(s) 1 through 10***, Defendants in Negligence***
5  ***Secondary-Vicarious Infringement***,

6                              Defendants.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2  STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

3  INTRODUCTION ................................................................................................................ 1

4  ARGUMENT ........................................................................................................................ 2

5  I.  THE EVIDENCE ESTABLISHED THAT PLAINTIFFS INTENTIONALLY
6     SUBMITTED FALSE TESTIMONY AND DOCUMENTS TO THIS COURT. .................... 2

7     A.  Fennelly Falsely Claimed That The EoBuy Limited Board Voted to Allow the
8         Company to Administratively Dissolve on April 1, 2008. ........................................... 2

9     B.  No Evidence Exists That EoBuy Limited Held IP Assets and Licenses
         And/Or Transferred Such Assets. .................................................................................. 3

10
11    C.  There Is No Evidence of an EoBuy Limited Holding Company "Amdex Pte." ........... 4

12    D.  Fennelly Fabricated "eoBuy Licensing Limited" in February 2014 From a
         Wholly Unrelated Dormant Taxi Company, Which Plaintiffs Then Claimed
13        Had Been Doing Business as "eoBuy" Since 2008. ..................................................... 4

14    E.  Fennelly Lied When He Represented to This Court That He Made a Name
15        Change Request to the CRO for "EoBuy Ventures Limited." ...................................... 8

16 II.  THE COURT SHOULD AWARD MONETARY SANCTIONS FOR FEES AND
      COSTS INCURRED TO OPPOSE PLAINTIFFS' MOTIONS TO AMEND, TO
17    BRING THE MOTION FOR SANCTIONS, PREPARE FOR AND ATTEND THE
      SANCTIONS EVIDENTIARY HEARING AND SUBMIT THE INSTANT BRIEF. ........... 9

18
19 III.  FENNELLY, INDIEZONE, "EOBUY" AND PLAINTIFFS' COUNSEL MAY BE
       HELD JOINTLY AND SEVERALLY LIABLE FOR ANY MONETARY
20     SANCTIONS AWARD. .................................................................................................... 10

21 IV.  THIS CASE SHOULD BE DISMISSED WITH PREJUDICE PURSUANT TO THE
       COURT'S INHERENT POWER. ..................................................................................... 13

22    A.  Dismissal With Prejudice is an Appropriate Sanction for Egregious
23        Circumstances Such as Those Present Here. ............................................................... 13

24    B.  Dismissal Should Apply to All Defendants; Alternatively, if This Suit is Not
25        Dismissed as to Defendants Rooke and Rogness, Then Plaintiffs Should Be
         Required to Satisfy Any Monetary Sanctions Award Prior to Commencing an
26        Arbitration. ................................................................................................................. 17

27 CONCLUSION ................................................................................................................... 20

28

1

## **TABLE OF AUTHORITIES**

2

3
**CASES**

4
*Adriana Int'l Corp. v. Lewis & Co.,*
   913 F.2d 1406 (9th Cir. 1990) ............................................................................. 17
5

6
*Anheuser-Busch, Inc. v. Natural Beverage Distribs.,*
   69 F.3d 337 (9th Cir. 1995) ............................................................................... 13

7
*Arnold v. County of El Dorado.,* 2:10-cv-3119 KJM GGH PS,
8
   2012 U.S. Dist. LEXIS 112398 (E.D. Cal. Aug. 8, 2012)....................................14, 16

9
*Avirgan v. Hull,*
   125 F.R.D. 189 (S.D. Fla. 1989), *aff'd* 932 F. 2d 1572 (11th Cir. 1991)....................... 11
10

11
*Back Shop Tiefkuhl GMBH v. GN Trade, Inc.,* 2:12-cv-0540 WBS KJN
   2013 U.S. Dist. LEXIS 93123 (E.D. Cal. July 1, 2013) ......................................... 17
12

13
*B.K.B. v. Maui Police Dep't,*
   276 F.3d 1091 ................................................................................................ 10

14
*Chambers v. NASCO, Inc.,*
15
   501 U.S. 32 (U.S. 1991)................................................................................. 18, 19

16
*Chism v. National Heritage Life Ins. Co.,*
   637 F.2d 1328 (9th Cir. 1981) ........................................................................... 13
17

18
*Combs v. Rockwell Int'l Corp.,*
   927 F.2d 486 (9th Cir. 1991) ............................................................................. 14
19

20
*Doyle v. Ill. Cent. R.R.,* 08-0971 LJO SMS,
   2009 U.S. Dist. LEXIS 8917 (E.D. Cal. Jan. 29, 2009)........................................ 18

21
*Englebrick v. Worthington Indus.,*
22
   944 F. Supp. 2d 899 (C.D. Cal. 2013) ................................................................ 15

23
*Ferdik v. Bonzelet,*
   963 F.2d 1258 (9th Cir. 1992) ........................................................................... 16
24

25
*Futurewei Techs. Inc. v. E. Oliver Capital Group, LLC,* 4:09CV455,
   2011 U.S. Dist. LEXIS 39080 (E.D. Tex. Apr. 9, 2011)........................................ 19
26

27
*Halaco Eng'g Co. v. Costle,*
   843 F.2d 376 (9th Cir. 1988) ............................................................................. 15

28

*Hutto v. Finney,*
        437 U.S. 678 (1978) ........................................................................................ 14

*Hyde & Drath v. Baker,*
        24 F.3d 1162 (9th Cir. 1994) .......................................................................... 11

*In re Napster, Inc. Copyright Litig.,*
        462 F. Supp. 2d 1060 (N.D. Cal. 2006) ...................................................... 13, 15

*Leon v. IDX Sys. Corp.,*
        464 F.3d 951 (9th Cir. 2006) ...................................................................... 14, 16

*Malone v. United States Postal Service,*
        833 F.2d 128 (9th Cir. 1987) .......................................................................... 16

*Mark Indus. v. Sea Captain's Choice,*
        50 F.3d 730 (9th Cir. 1995) ............................................................................ 18

*Montgomery v. Etreppid Techs., LLC,* 3:06-CV-00056-PMP-VPC,
        2010 U.S. Dist. LEXIS 43304 (D. Nev. Apr. 5, 2010) .................................... 11

*Morris v. Morgan Stanley & Co.,*
        942 F.2d 648 (9th Cir. 1991) .......................................................................... 19

*Nursing Home Pension Fund v. Oracle Corp.,*
        254 F.R.D. 559 (N.D. Cal. 2008) .................................................................... 15

*Primus Auto. Fin. Servs., Inc. v. Batarse,*
        115 F.3d 644 (9th Cir. 1997) .......................................................................... 14

*Roadway Express, Inc. v. Piper,*
        447 U.S. 752 (1980) ........................................................................................ 10

*Stanford v. Ocwen Fed. Bank, FSB,* CIV-S-10-1763-JAM GGH,
        2012 U.S. Dist. LEXIS 18940 (E.D. Cal. Feb. 15, 2012) ................................ 17

*Sunrider Corp. v. Bountiful Biotech Corp.,* SACV 08-1339 DOC (AJWx),
2010 U.S. Dist. LEXIS 117346 (C.D. Cal. Nov. 3, 2010) ....................................14

*Thompson v. Zavin,*
        607 F. Supp. 780 (C.D. Cal. 1984) ................................................................ 19

*Wyle v. R.J. Reynolds Indus., Inc.,*
        709 F.2d 585 (9th Cir. 1983) .......................................................................... 13

## MEMORANDUM OF POINTS AND AUTHORITIES
## STATEMENT OF ISSUES TO BE DECIDED

1.      What is the proper scope of incurred fees and costs related to Plaintiffs' sanctionable conduct that should be awarded as a monetary sanction to the Jingit Defendants?

2.      Are Indiezone, "eoBuy", Plaintiffs' CEO Conor Fennelly and Plaintiffs' counsel Doug Dollinger jointly and severally liable for any monetary sanctions award?

3.      Under the Court's inherent power, should this lawsuit be dismissed with prejudice as to less than all defendants for the fraud committed on this Court by Plaintiffs?

## INTRODUCTION

The Jingit Defendants[1] submit that these sanctions proceedings conclusively demonstrated that Plaintiffs and their CEO and principal, Conor Fennelly, have committed fraud on this Court, aided by their counsel, Doug Dollinger, justifying the imposition of severe sanctions under the Court's inherent power.  Multiple representations made by Fennelly in his declarations about the proper "eoBuy" entity for this lawsuit in support of Plaintiffs' motions to amend their Complaint were either demonstrably false or unsupported by any evidence.  Plaintiffs' counsel aided and exacerbated this fraud by supporting and adopting Fennelly's misrepresentations and continuing to file Plaintiffs' motions even after being put on notice that Fennelly's representations were suspect. As a result, the Jingit Defendants were required to undertake extensive investigation and briefing at substantial expense to uncover and rebut Plaintiffs' and Fennelly's deception.  Plaintiffs' fraudulent conduct culminated at the August 6 evidentiary hearing when Fennelly failed to appear as ordered by this Court.  Fennelly's contempt of this Court's Order was apparently fostered by Plaintiffs' counsel, who falsely claimed to be unaware of the Court's Order and further argued that the Court lacked personal jurisdiction over Fennelly.  This flagrant misconduct by Plaintiffs, their CEO Fennelly and their attorney easily demonstrates bad faith and intentional fraud on this Court, as well as willful

---

[1]      The "Jingit Defendants" consist of Jingit LLC; Jingit Holdings, LLC; Jingit Financial Services, LLC; Todd Rooke; Joe Rogness; Phil Hazel; Sam Ashkar, Holly Oliver; Shannon Davis; Justin James; Chris Ohlsen; Dan Frawley; Dave Moorehouse, II; Tony Abena; Chris Karls; John E. Fleming; and Music.Me, LLC.

disregard of the Court's Orders, warranting the imposition of joint and several liability for any award of monetary sanctions, and compelling dismissal of this entire lawsuit against all defendants.

<u>ARGUMENT</u>

**I.     THE EVIDENCE ESTABLISHED THAT PLAINTIFFS INTENTIONALLY SUBMITTED FALSE TESTIMONY AND DOCUMENTS TO THIS COURT.**

Plaintiffs' deception began once the Defendants moved to dismiss Plaintiff EoBuy Limited from the case because it had been dissolved since 2008 and thus lacked capacity to sue. EoBuy Limited was essential to Plaintiffs' claims—not only because Plaintiffs argued in opposition to Defendants' motions to compel arbitration and stay that EoBuy Limited, unlike co-Plaintiff Indiezone, Inc., was not a party to the arbitration agreement at issue—but more fundamentally because Indiezone's rights to the intellectual property allegedly misappropriated by Defendants wholly depended on a license from EoBuy Limited.[2] Accordingly, Plaintiffs concocted a story that explained EoBuy Limited's dissolution and preserved its purported assets in a new plaintiff. In doing so, Plaintiffs perpetuated fraud on this Court and exposed the falsity of the underlying claims.

**A.     Fennelly Falsely Claimed That The EoBuy Limited Board Voted to Allow the Company to Administratively Dissolve on April 1, 2008.**

Plaintiffs first admitted that Plaintiff EoBuy Limited had been dissolved since 2008, but then went on to claim that this dissolution was intentional by representing:

> [O]n or about November 15th 2007, the Board of Directors of eoBuy Ltd., for reasons of revising the shareholder structure and settlement of claims, a vote was taken allowing the company to administratively dissolve on April 1, 2008.

(Def. Ex. 2, ¶ 2; Def. Ex. 5, ¶ 2. *See also* Def. Ex. 3 at 3.) Plaintiffs presented no evidence supporting this claim. Instead, the undisputed record shows that EoBuy Limited was involuntarily struck off the Irish Register of companies on March 30, 2008, and administratively dissolved by the

---

[2]     Indeed, Plaintiffs claimed that Indiezone "never had control of the IP maintained by eoBuy except as to the IP licensed to it by eoBuy." (Def. Ex. 2, ¶ 17; Def. Ex. 5, ¶19.)

Irish Companies Registration Office ("CRO") on April 4, 2008, for failing to make returns for about three consecutive years.  (Def. Ex. 1, ¶¶ 5-7, Ex. A; Def. Ex. 7, Ex. A; *see also* Tr. at 26-27.)[3]  Such strike off and resulting dissolution occurred pursuant to Irish law followed by the CRO, as opposed to any action by the EoBuy Limited board.  (*Id.*)  Moreover, the EoBuy Limited board could not have chosen the specific date of administrative dissolution by the CRO, as that date is determined solely by the Registrar.  (Tr. at 27.)  This was only the beginning of Plaintiffs' and Fennelly's lies to the Court and Defendants.

### B.    No Evidence Exists That EoBuy Limited Held IP Assets and Licenses  And/Or Transferred Such Assets.

All of Plaintiffs' claims rely on whether EoBuy Limited ever held any intellectual property ("IP") that was purportedly licensed to Plaintiff Indiezone and misappropriated by Defendants Rooke and Rogness.  As such, Plaintiffs were faced with a problem if the facts were that the alleged IP assets remained with the dissolved EoBuy Limited, as this would adversely impact Plaintiff Indiezone's ability to proceed with this case.  Thus, to "explain" why a different eoBuy entity supposedly had standing in this lawsuit, instead of original Plaintiff EoBuy Limited, Plaintiffs represented that EoBuy Limited's assets were transferred before its dissolution:

> Prior to the foregoing [dissolution of EoBuy Limited], assets eobuy's IP and licenses [sic] were assigned to EoBuy's holding corporation Amdex, Pte.  Several months later the IP and licenses were transferred back into the newly formed company eoBuy Ventures Limited [eoBuy Licensing Limited] a company formed under the laws of Ireland.

(Def. Ex. 2, ¶ 3; Def. Ex. 5, ¶ 3. *See also* Def. Ex. 3 at 3; Def. Ex. 6 at 2.)

Despite ample opportunity to do so, Plaintiffs failed to present a single iota of evidence corroborating such a transfer of assets (assuming that such assets existed) occurring before EoBuy Limited's dissolution in April of 2008 or occurring at all.  Moreover, the record did not even reflect

---

[3]    All references to "Tr." within are to the August 6, 2014 evidentiary hearing transcript attached as Exhibit A to the Declaration of Keiko L. Sugisaka filed in support of this supplemental briefing.

the existence of these alleged assets.  As part of its most recent annual return filed on May 15, 2006, with the CRO, EoBuy Limited's audited financial statements for year ending February 28, 2005 did not show anything as its "Current Assets" that appeared to constitute intellectual property assets—licenses or otherwise.  (Def. Ex. 8 at submission no. 4679407; *see also* Tr. at 32.)  These financial statements were verified by independent auditors who confirmed their accuracy based on their own examination of the company's records.  *See* Def. Ex. 8 at submission no. 4679407 Account Details at "Auditors' Report to the Directors of Eobuy Limited."  Intellectual property assets allegedly worth over a billion dollars were conspicuously absent from EoBuy Limited's audited financial statements.

**C.      There Is No Evidence of an EoBuy Limited Holding Company "Amdex Pte."**

Next, there was no evidence in the record supporting Plaintiffs' representations that a company called Amdex Pte. was EoBuy Limited's holding company—the claimed recipient of the alleged IP asset transfer.  To the contrary, Irish Barrister and witness Brian Walker explained that if EoBuy Limited had a holding company, then this holding company should be reflected in EoBuy Limited's filings with the CRO.  (Tr. at 34.)  Mr. Walker testified that he did not see anything in EoBuy Limited's filings with the CRO indicating the existence of the alleged holding company Amdex Pte.  (*Id*. at 34-35.)[4]  There is simply no proof that any alleged assets of EoBuy Limited were transferred into or out of a holding company called Amdex Pte.

**D.      Fennelly Fabricated "eoBuy Licensing Limited" in February 2014 From a Wholly Unrelated Dormant Taxi Company, Which Plaintiffs Then Claimed Had Been Doing Business as "eoBuy" Since 2008.**

Perhaps the most egregious of Plaintiffs' many misrepresentations is the creation of a new plaintiff during this lawsuit after realizing that EoBuy Limited was long-dissolved and could not be

---

[4]      The parties found one reference to "Amdex Pte." in EoBuy Limited's CRO filings, where it is simply identified as a mailing address for an individual named "Norbert Brull," who was being issued shares of EoBuy Limited in 2006.  (Def. Ex. 8 at submission no. 5113915.  *See also* Tr. at 96, 109.)

readily reinstated.   Thus, Plaintiffs claimed that in 2008, EoBuy Limited's purported "IP and licenses were transferred back into the newly formed company eoBuy Licensing Limited a company formed under the laws of Ireland." (Def. Ex. 5, ¶ 3. *See also* Def. Ex. 6 at 2.)  Fennelly obliquely noted in his declaration that eoBuy Licensing Limited "was registered under its former name in July 15, 2008." (Def. Ex. 5, ¶ 4.)  Nonetheless, Plaintiffs represented that "eoBuy Licensing Limited has been doing business as eoBuy since August 2008 and has remained the eoBuy IP repository since that date." (*Id.*, ¶ 5.)

The corporate filings for EoBuy Licensing and its predecessor company overwhelmingly established that these representations about EoBuy Licensing's existence before 2014 were false. Plaintiffs fabricated EoBuy Licensing in February and March 2014 only after discovering that EoBuy Limited was dissolved and lacked capacity to sue.  Prior to the CRO approving the name change to "eoBuy Licencing Limited" for the company on March 13, 2014, EoBuy Licensing was a dormant taxi company called "Laraghcon Chauffeur Limited" (hereafter "Laraghcon").  Laraghcon was incorporated on July 15, 2008 "[t]o carry on the business of *taxi hire, limo hire and internet bookings*…." and its directors were Michael and Ciaran Byrne and its secretary was Teresa Byrne. (Def. Ex. 7, ¶ 11, Ex. F; *see also id.,* ¶ 10, Ex. E) (emphasis added). Each of this taxi company's annual returns from 2009 to 2013 were filed under the name "Laraghcon Chauffeur Drive Limited" and signed by its director Ciaran Byrne and secretary Teresa Byrne. (*Id.* ¶ 12, Ex. G.)  Ciaran and Michael Byrne were the only directors, and Teresa Byrne was the only secretary, identified on the company's annual returns filed through February 2013, and Ciaran Bryne was also identified as the only shareholder during this time.  (*Id.*) The company's 2011 and 2012 Directors' Reports and Financial Statements further confirmed that its two directors, Michael and Ciaran Byrne, were the only employees of the company. (*Id.,* Ex. I) Additionally, the filed and independently audited Directors' Reports and Financial Statements verified that the company did not conduct any business

whatsoever from its incorporation in 2008 through its last reported financial year in 2012. (*Id.* ¶ 13, Ex. I.)  Unsurprisingly, the company's financial statements filed with the CRO showed literally no assets.  (*Id.*)

The first appearance of EoBuy Licensing in the CRO and Fennelly's connection to this taxi company was from a string of filings made to the CRO by Fennelly on February 6, 2014. On that date, Fennelly made filings with the CRO that, *inter alia*:

- changed the name of Laraghcon to "eoBuy Licencing Limited." (*Id.* ¶ 9, Ex. B.)

- amended the Memorandum and Articles of Association of Laraghcon to change the company's objective from "[t]o carry on the business of taxi hire, limo hire and internet bookings" to "carry on the business of software development…." (*Id.* ¶ 14, Ex. J; *cf.* Ex. F.)

- terminated directors Ciaran and Michael Byrne and secretary Teresa Byrne and named Fennelly a director and secretary of the company (*Id.* ¶ 12, Ex. H.)

- submitted an annual return and account details/Directors' Report and Financial Statements for EoBuy Licensing for financial year end July 31, 2014, now showing Fennelly as the sole shareholder (*Id.* ¶ 13, Ex. I.)[5]

Despite filing these changes on February 6, 2014, *see id.* ¶ 9, Ex. C, Fennelly backdated and/or made the "effective date" of all of these documents (except the 2013 annual return and account details) to July 15, 2008—the very same date Laraghcon was incorporated.  As demonstrated by these sanctions proceedings, each of Fennelly's filings was false and was designed to create a fabricated plaintiff for this litigation.

The July 15, 2008 "effective date" for these documents changing Laraghcon's name, its directors, secretary and memorandum and articles of association is untrue as these documents are

---

[5]        Contrary to Plaintiffs' contentions that the current eoBuy is a "major corporation" (Tr. at 130), let alone that it held IP assets worth billions, EoBuy Licensing's account details and financial statements for year ending July 31, 2013 submitted to the CRO state that "[t]here were no employees during the year apart from the directors" and show total net assets of 100 euros.  (Def. Ex. 7, Ex. I.)  Likewise, although Plaintiffs' counsel also characterized Plaintiff Indiezone as a "major corporation," Indiezone's corporate status was forfeited on June 11, 2009—about 2 years after it was incorporated on March 2, 2007—and its status remained forfeited until January 24, 2014, after Defendants filed their initial motions in this lawsuit.  *See* ECF 62-1, 62-2 and 29.

1    contrary to every public filing made by Laraghcon from July 2008 to January 2013, including

2    Laraghcon's information reviewed and verified by independent auditors. *See* Def. Ex. 7, Exs. G and

3    I. In addition, Plaintiffs cannot claim that Fennelly actually signed and executed any of these

4    documents on July 15, 2008 and simply failed to file them with the CRO until 2014. As an initial

5    matter, the incorporators of Laraghcon would not have known that the CRO had issued its certificate

6    of incorporation on July 15, 2008, as such a document would not have been actually provided to and

7    received by the incorporators until a later date. (Tr. at 52-53.) More compellingly, however, is that

8    the documents themselves demonstrate that they did not exist in 2008 because:

9

10   - the signature page makes reference to the "Companies Acts, 1963 to 2013," a legal reference
        and law that did not exist in 2008. (Def. Ex. 7, Exs. B, H and J; Tr. at 51.)

11

12   - the "Submission Number" generated at the top of the signature page of the CRO filing form
        (over 9,000,000) is consistent with submission numbers for recently generated and filed
13       forms as such submission numbers are generated sequentially on the CRO's forms (*See* Def.
        Ex. 7, Ex. C and Def. Ex. 8 submissions listings showing how the submission number is
14       higher the more recent the submission; Tr. at 50-51.)

15

16   - the bar code technology appearing at the top of the signature page of the CRO filing form
        had not been instituted in 2008 (Tr. at 50-51.)

17   The evidence indisputably shows that Fennelly actually generated and executed the February 6, 2014

18   filings changing Laraghcon to EoBuy Licensing in 2014, rather than the 2008 date entered by

19   Fennelly on the forms.

20

21          Undeterred, Plaintiffs and their attorney pointed to "evidence" that EoBuy Licensing existed

22   in 2008 by arguing that "Exhibit A" to Mr. Fennelly's April 1, 2014 Declaration–pages from the

23   "Combined Company Register of Eobuy Licencing Limited" dated July 15, 2008–was created by the

24   CRO. (Def. Ex. 9 at 47-50; *see also* ECF 124 at 5 identifying Plaintiffs' proposed exhibit at ECF

25   124-1 as "Corporate Book issued by Irish Registry Corporate Registry [sic]".) The Combined

26   Companies Register, however, is not a document issued or prepared by the CRO; rather, this

27   document can be purchased at a stationery store (either as a hard copy or software program) and is

28

filled out and maintained by the company.  (Tr. at 54-55.)  Plaintiffs' attempt at deceiving the Court and Defendants with this false evidence also fails.

### E.    Fennelly Lied When He Represented to This Court That He Made a Name Change Request to the CRO for "EoBuy Ventures Limited."

Finally, before Plaintiffs sought to join EoBuy Licensing as a plaintiff, Plaintiffs first moved to join "eoBuy Ventures Limited" as the new plaintiff and entity that purportedly held EoBuy Limited's assets.  (*See* ECF 57 filed on February 21, 2014.)  Defendants, however, confirmed that no Irish company called "eoBuy Ventures Limited" existed.  *See* Def. Ex. 4.  In his April 1 declaration, Fennelly attempted to explain this discrepancy as an innocent mistake based on a faulty memory that was easily cured by simply reviewing corporate records:

> I was previously of the belief that the name of the Company was eoBuy Ventures Limited and simply forgot that the Corporate Office of Registry of Ireland had not approved the name.  In response to the inquiry from Plaintiffs' Counsel Mr. Dollinger I reviewed the Corporate filings.  The company is officially named eoBuy Licensing Limited and was registered under its former name in July 15, 2008. [See- Exhibit "A".]

(Def. Ex. 5, ¶ 4.)  This explanation was nothing short of a deliberate lie.  No filing appears on Laraghcon's list of submissions to the CRO for a name change to "eoBuy Ventures Limited" in 2008 or otherwise.  *See* Def. Ex. 7, Ex. C.  Indeed, such a filing, even if rejected by the CRO, would still appear in a company's list of submissions.  (Tr. at 37-38.)

Notwithstanding the absence of documentary evidence supporting Fennelly's representation, the *timing* of Fennelly's filings for EoBuy Licensing and his declarations undeniably shows that Fennelly was intentionally lying to the Court about the company's name.  The record shows that on February 6, Fennelly submitted his numerous filings to the CRO for Laraghcon, including the request to change the company's name to "eoBuy Licencing Limited."  *See* Def. Ex. 7, Ex. C. Twelve days later, on February 18, Fennelly submitted his declaration in this lawsuit that the proper plaintiff should be named "EoBuy Ventures Limited."  (Def. Ex. 2, ¶¶ 3-4.)  Thus, Fennelly's April 1 declaration explaining that he simply "forgot" that the company's name should be EoBuy

Licensing instead of EoBuy Ventures, based on his purported "review" of the company's records, is utterly untrue. Instead, Fennelly could not identify an entity called EoBuy Licensing for this lawsuit on February 18 because the CRO had not yet approved Fennelly's request on February 6 to change Laraghcon's name to EoBuy Licensing.

Ultimately, Plaintiffs' story that EoBuy Limited, before dissolving, transferred over a billion dollars' worth of IP assets to its holding company and then into a newly incorporated, but dormant, Irish taxi company, which Fennelly took over and then completely changed (by business purpose, directors, secretary, memorandum and articles and ownership) on the very same day the taxi company was incorporated, completely defies logic and the record. Plaintiffs' blatant falsehoods to this Court and Defendants justify the imposition of monetary sanctions subject to joint and several liability and dismissal of this entire lawsuit.

## II. THE COURT SHOULD AWARD MONETARY SANCTIONS FOR FEES AND COSTS INCURRED TO OPPOSE PLAINTIFFS' MOTIONS TO AMEND, TO BRING THE MOTION FOR SANCTIONS, PREPARE FOR AND ATTEND THE SANCTIONS EVIDENTIARY HEARING AND SUBMIT THE INSTANT BRIEF.

As set forth in the initial Motion for Sanctions, the Jingit Defendants have been forced to respond to each of Plaintiffs' motions seeking to add in a false plaintiff, expending significant time, money and resources—including the retention of foreign counsel because of the foreign status of the proposed eoBuy plaintiffs—in order to expose the falsity of Plaintiffs' claims and Fennelly's representations. The Jingit Defendants thus seek recovery of their reasonable fees and costs related to Plaintiffs' sanctionable conduct, which includes reasonable fees and costs arising from the sanctions proceedings themselves.

The Jingit Defendants' initial Motion for Sanctions requested reasonable fees and costs incurred to respond to Plaintiffs' various motions related to seeking leave to add eoBuy entities to

this suit (ECF 57, 84/90[6] and 91), including the fees and costs to investigate the eoBuy entities incurred by Brian Walker, and the fees and costs incurred in bringing the motion for sanctions (ECF 104, 111).  The reasonable fees and costs related to responding to those motions, as described in supporting declarations, was a total of $46,719.15.  *See* ECF 104-1 and 111-1.  The Jingit Defendants renew their request for that amount and further request an award of their additional reasonable fees and costs, including those incurred by Mr. Walker, to prepare for and attend the sanctions evidentiary hearing on August 6 and to prepare this supplemental briefing.  The fees and costs for Jingit Defendants' main counsel and Mr. Walker to prepare for and attend the hearing was $29,353.97.  *See* Declaration of Keiko L. Sugisaka in Support of the Jingit Defendants' Supplemental Brief for Sanctions ("Sugisaka Decl."), ¶¶ 4, 8 and 10.  Fees and costs incurred by the Jingit Defendants to prepare this supplemental briefing is $20,542.80.  *Id., ¶¶* 4 and 9.  Accordingly, the total amount of reasonable fees and costs for the Jingit Defendants to respond to Plaintiffs' motions at issue, bring the sanctions motion, prepare for and participate in the sanctions evidentiary hearing and prepare this supplemental briefing is $96,615.92.  *Id.*, ¶ 11.  The Jingit Defendants respectfully request that the Court award monetary sanctions to them in this amount.

## III.   FENNELLY, INDIEZONE, "EOBUY" AND PLAINTIFFS' COUNSEL MAY BE HELD JOINTLY AND SEVERALLY LIABLE FOR ANY MONETARY SANCTIONS AWARD.

It is well established that a court exercising its inherent authority may sanction attorneys, parties, or both.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980) ("If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes.") (citation omitted), *superseded by statute on other grounds* 28 U.S.C. § 1927 *as recognized in Hagerty v. Succession of Clement*, 749 F.2d 217, 222 n.4 (5th Cir. 1984); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107–08 (9th Cir. 2002).

---

[6]    Defendants filed one brief in response to ECF 84 and 90.  *See* ECF 94.

In assessing such sanctions, "[a] court may hold sanctioned parties jointly and severally liable." *Montgomery v. Etreppid Techs., LLC*, 3:06-CV-00056-PMP-VPC, 2010 U.S. Dist. LEXIS 43304, at *54-55 (D. Nev. Apr. 5, 2010) (citing *Hyde & Drath v. Baker*, 24 F.3d 1162, 1172 (9th Cir. 1994)).   Imposing joint and several liability is appropriate where the sanctioned parties each contribute to the sanctionable conduct.  *See, e.g.*, *Avirgan v. Hull*, 125 F.R.D. 189, 190–91 (S.D. Fla. 1989)(finding plaintiffs, plaintiffs' individual counsel and plaintiffs' law firm all subject to joint and several liability for sanctions because each party had a role in the sanctionable conduct by at least carrying out the sanctionable litigation strategy), *aff'd*, 932 F.2d 1572 (11th Cir. 1991); *see also Montgomery*, 2010 U.S. Dist. LEXIS 43304, at *55 ("Pursuant to general tort law, joint and several liability is appropriate when the independent tortious conduct of each of two or more persons is a legal cause of a single and indivisible harm to the injured party.") (citing Restatement (Third) of Torts § A18 (2000)).   In *Montgomery*, the District of Nevada affirmed a magistrate judge's decision to sanction a party and his attorneys based on improper litigation conduct, which consisted of relying on the client's perjured declaration in order to file ancillary lawsuits aimed at circumventing a court order. *Montgomery*, 2010 U.S. Dist. LEXIS 43304 at *55–56. Although the magistrate judge apportioned the award based on the "relative fault" between the party and his attorneys, the magistrate also ordered that the sanctioned parties were jointly and severally liable for the sanction. *Id.* at *56.   Affirming this decision, the district court found that joint and several liability was appropriate because the party and attorneys jointly participated in the deceitful conduct and the harm to the party moving for sanctions was "indivisible" as between the party and attorneys' sanctionable conduct.  *Id.*

In the instant case, the Plaintiffs, Fennelly and their counsel all participated in and share responsibility for the sanctionable conduct–there are no innocent or insular parties.  Fennelly, the self-identified CEO of Indiezone, EoBuy Limited and EoBuy Licensing (Def. Ex. 2 at 1 and ¶ 14;

Def. Ex. 5 at 1 and ¶ 16), submitted the false declarations at issue.  It is undisputed that those false declarations were then submitted on behalf of both Plaintiffs in support of the Plaintiffs' multiple motions to amend their Complaint.  Fennelly, through his declarations, and Plaintiffs, by adopting those declarations as the basis of Plaintiffs' motions, have engaged in the same sanctionable conduct.  Any monetary sanctions award should appropriately apply jointly and severally to these parties.

Plaintiffs' counsel, Doug Dollinger, also does not escape culpability.  Not only did Mr. Dollinger apparently fail to conduct any due diligence into Fennelly's representations, counsel then permitted Fennelly and the Plaintiffs to submit demonstrably false declarations and documents to the Court, which counsel then adopted in briefing and advocated as true despite evidence to the contrary.  Mr. Dollinger thus engaged in his own, separate bad faith conduct during the sanctions proceedings.  Indeed, Mr. Dollinger implored the Court to allow Fennelly to appear and explain his declarations and allow Plaintiffs time to gather and present exculpatory evidence.  (Def. Ex. 9 at 48, 54-55.)  On June 6, 2014, the Court granted Plaintiffs' request by ordering the August 6 evidentiary hearing, requiring Fennelly to personally appear for examination and allowing the parties to submit exhibits and additional witnesses.  (ECF 113.)  Rather than comply with the June 6 Order, Plaintiffs then moved twice, on July 17 and July 30, for an extension of time to submit the witness and exhibit lists required by the June 6 Order and to reschedule the date of the evidentiary hearing.  *See* ECF 128 and 132.  Despite filing motions to modify the June 6 Order, actually appearing at the evidentiary hearing set by the June 6 Order, and indisputably being an ECF recipient in this case, Plaintiffs' counsel still claimed at the evidentiary hearing that he was not aware of any Court order requiring Fennelly to appear at the evidentiary hearing despite purporting to have read the Court's orders "in great detail." (Tr. at 5-6.)  Moreover, Plaintiffs' counsel disputed that the Court had authority to exercise personal jurisdiction over Fennelly (Tr. at 10-11) despite the fact that Fennelly was an

officer – indeed, the CEO – of the Plaintiffs and had submitted personal declarations to the Court.[7]

Mr. Dollinger's arguments and representations were highly disturbing in that they bore no

resemblance to ethical zealous advocacy or even reality, yet continued to be maintained by counsel.

There is no excuse for Mr. Dollinger's conduct in these proceedings and it is appropriate to also

impose upon him joint and several liability of any monetary sanctions award.

## IV.    THIS CASE SHOULD BE DISMISSED WITH PREJUDICE PURSUANT TO THE COURT'S INHERENT POWER.

### A.    Dismissal With Prejudice is an Appropriate Sanction for Egregious Circumstances Such as Those Present Here.

"Indulgent toleration for the misconduct of lawyers and litigants is a luxury the overcrowded

federal courts cannot afford." *Chism v. National Heritage Life Ins. Co.*, 637 F.2d 1328, 1332 (9th

Cir. 1981), *overruled on other grounds in Bryant v. Ford Motor Co.,*844 F.2d 602, 605 (9th Cir.

1987).  A court may dismiss a complaint if the sanctioned conduct is due to willfulness, fault, or bad

faith.  *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1072 (N.D. Cal. 2006) (citing

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). "It is well

settled that dismissal is warranted where, as here, a party has engaged deliberately in deceptive

practices that undermine the integrity of judicial proceedings: 'courts have inherent power to dismiss

an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent

with the orderly administration of justice.'" *Anheuser-Busch*, 69 F.3d at 348 (quoting *Wyle v. R.J.*

*Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)).

Courts in this Circuit consider five factors when determining whether to dismiss a case under

the court's inherent authority: "(1) the public's interest in expeditious resolution of litigation; (2) the

---

[7]    Plaintiffs' counsel argued that a "commission" in Ireland was required to make Fennelly appear even though the week before, on July 31, 2014, Fennelly submitted a declaration in support of Plaintiffs' motion to "show cause" stating that "I am and at all relevant times have been a resident of the state of California."  (ECF 132-4 at ¶ 1.)

court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citation omitted). *Accord Sunrider Corp. v. Bountiful Biotech Corp.*, SACV 08-1339 DOC (AJWx), 2010 U.S. Dist. LEXIS 117346, at *17 (C.D. Cal. Nov. 3, 2010). A court need not make explicit findings regarding each of these factors, but the court must find willfulness, fault, or bad faith. *Leon*, 494 F.3d at 958 (affirming dismissal based on court's inherent authority). A court may find bad faith where an attorney "knowingly or recklessly raises a frivolous argument." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (internal quotation marks and citation omitted). "A party also demonstrates bad faith by 'delaying or disrupting the litigation or hampering enforcement of a court order.'" *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n. 14 (1978)). Falsifying evidence is also grounds for the imposition of dismissal sanctions. *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488-89 (9th Cir. 1991)(affirming dismissal sanction imposed for plaintiff's acquiescence in his attorney's substantive changes to plaintiff's deposition testimony on material matters).

   As an initial matter, Fennelly's perjury in his declarations can warrant dismissal without examining the five dismissal factors. *See Arnold v. County of El Dorado*, 2:10-cv-3119 KJM GGH PS, 2012 U.S. Dist. LEXIS 112398, at *43 (E.D. Cal. Aug. 8, 2012)(dismissing complaint based on plaintiff's perjury and stating that, given the plaintiff's perjury, the five factors to consider for a dismissal sanction need not necessarily be addressed "as the perjury stands on its own as a reason for dismissal"). Indeed, "perjury on any material fact strikes at the core of the judicial function and warrants a dismissal of one's right to participate at all in the truth seeking process." *Id.* at *14. Moreover, "[t]here need be no look at the merits of a lawsuit if material, substantial perjury is found." *Id.* at *13 (citing *Combs*, 927 F.2d at 489). This Court may dismiss this lawsuit solely based on Fennelly's persistent and substantial perjury.

Nonetheless, application of the five factors in the instant case still mandates dismissal of this suit.  With respect to the public interest in expeditiously resolving litigation and the Court's need to manage its docket, this case, which has been pending in this Court since September 2013, has undoubtedly already consumed a "tremendous amount" of the Court's time. (Tr. at 130.)  These lengthy proceedings are in no small part due to Plaintiffs' sanctionable conduct as well as their continual and meritless requests for continuances and second chances.  With respect to the factor of prejudice, it "is an 'optional' consideration when determining whether default sanctions are appropriate." *In re Napster,* 462 F. Supp. 2d at 1075 & n.4 (citing *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 382 (9th Cir. 1988)); *Englebrick v. Worthington Indus.*, 944 F. Supp. 2d 899, 912, (C.D. Cal. 2013) (citing *Halaco*, 843 F.2d at 380). "When acting under its inherent authority . . . a district court need not consider prejudice to the party moving for sanctions . . . ." *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 565 (N.D. Cal. 2008) (citation omitted).  Given the clear fraud committed by Plaintiffs on this Court, requiring the defendants to show prejudice is unnecessary despite the time, expense and effort expended by essentially a start-up company to continually combat Plaintiffs' false submissions in this litigation.  With respect to the availability of less drastic sanctions, this factor also weighs in favor of dismissal.  The Court provided Plaintiffs a full opportunity to defend against the sanctions case brought against them—an opportunity that Plaintiffs ignored.  The Court also provided explicit notice to Plaintiffs in its August 1, 2014 Order that dismissal would be forthcoming for Plaintiffs' non-compliance, ordering that:

> If the plaintiffs do not participate fully in the evidentiary hearing on Wednesday, August 6, 2014 (for which they had 2 months' notice), the motion for sanctions will be granted, the sanctions award will include all reasonable costs and fees incurred by the defendants in preparation for the hearing, and the case will be dismissed.

(ECF 133.)  Obviously Plaintiffs failed to "participate fully" in the evidentiary hearing given that Fennelly—the only witness specifically ordered to attend and participate—did not appear.  This Court's notice in its August 1 Order satisfies the consideration of less drastic alternatives to

sanctions.  *See Malone v. United States Postal Service*, 833 F.2d 128, 132-33 (9th Cir. 1987) (recognizing that "warning a plaintiff that failure to obey a court order will result in dismissal can suffice to meet the 'consideration of alternatives' requirement")(citations omitted).  Moreover, the fact that the Court attempted to have an evidentiary hearing at Plaintiffs' request, which may have obviated a dismissal sanction, is also sufficient to satisfy this factor.  *Id.* at 132 (finding that "explicit discussion of alternatives is unnecessary if the district court actually tries alternatives before employing the ultimate sanction of dismissal")(citations omitted).

The public policy preference to dispose cases on their merits also does not foreclose dismissal as a sanction in light of the other factors weighing in favor of dismissal, as well as Fennelly's perjury.  The public policy "favoring disposition of cases on their merits" standing alone "is not sufficient to outweigh the other four factors."  *Leon*, 494 F.3d at 960-61 (citation omitted).  Indeed, this factor may be irrelevant when perjury exists.  *See Arnold*, 2012 U.S. Dist. LEXIS 112398, at *13.  In any event, this public policy would not be undermined by dismissal of this case.  As indicated by these sanctions proceedings, the underlying allegations in this suit are largely a work of fiction by Fennelly, the alter ego of Indiezone and EoBuy.  Central to the underlying merits of this lawsuit is whether EoBuy Limited ever held any IP that was purportedly licensed to Plaintiff Indiezone and misappropriated by Defendants Rooke and Rogness.  No evidence has been presented in these proceedings supporting these allegations.  Instead, all indications point to the fact that Plaintiffs have filed a baseless and vexatious lawsuit against numerous individuals and entities in hopes of acquiring a piece of the Jingit Defendants' business.

Finally, Fennelly's contempt of the Court's June 6, 2014 Order to personally appear at the sanctions evidentiary hearing, endorsed by his attorney, may constitute yet another basis for dismissal sanctions.  Bad faith and willful conduct warranting dismissal sanctions includes contempt of a court order.  *See, e.g., Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (upholding

dismissal of action for failure to comply with Court Order requiring timely filing of amended complaint); *Back Shop Tiefkuhl GMBH v. GN Trade, Inc.*, 2:12-cv-0540 WBS KJN, 2013 U.S. Dist. LEXIS 93123, at *18 (E.D. Cal. July 1, 2013) (striking defendants' answers and entering default judgment under Rule 37 and the court's inherent authority for failing to comply with court orders, including not appearing at hearing as ordered); *Stanford v. Ocwen Fed. Bank, FSB*, CIV-S-10-1763-JAM GGH, 2012 U.S. Dist. LEXIS 18940, at *12-14 (E.D. Cal. Feb. 15, 2012) (dismissing plaintiffs complaint under Fed. R. Civ. P. 37 for cancelling depositions at the last minute and failing to appear at hearings, including hearing on defendants' motion for terminating sanctions).[8]   Given that Plaintiffs were given notice that their case would be dismissed if they did not fully comply with the Court-ordered hearing, dismissal based on contempt of the Court's Order is particularly appropriate.

>    **B.**     **Dismissal Should Apply to All Defendants; Alternatively, if This Suit is Not Dismissed as to Defendants Rooke and Rogness, Then Plaintiffs Should Be Required to Satisfy Any Monetary Sanctions Award Prior to Commencing an Arbitration.**

This lawsuit warrants dismissal with prejudice under the Court's inherent power, and at the evidentiary hearing, the Court posed three potential dismissal scenarios:  (1) dismissal as to all defendants, including the two defendants—Todd Rooke and Joe Rogness—who were previously ordered to arbitration; (2) dismissal as to all defendants except Defendants Rooke and Rogness; or (3) dismissal as to the defendants who brought the sanctions motion, except Defendants Rooke and Rogness.  (Tr. at 127.)  The Jingit Defendants respectfully submit that dismissal as to all defendants, including the Defendants Rooke and Rogness, is appropriate in this case.

As an initial matter, dismissal with prejudice should apply to the defendants who did not join in the sanctions motion.  Like the Jingit Defendants, Defendants U.S. Bank, General Electric, Wal-

---

[8]    The Ninth Circuit views dismissal sanctions issued under the Court's inherent authority and under Fed. R. Civ. P. 37 as similar, applies the same standards to both types of dismissals, and allows district courts to rely on both types of decisions interchangeably. *Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 n.4 (9th Cir. 1990) (affirming default sanctions).

mart and Target (collectively, the "Corporate Defendants") have been unwittingly ensnared into a frivolous and vexatious lawsuit which they should not have been forced to defend.  Accordingly, the Jingit Defendants took on the laboring oar in this suit in bringing the motions to dismiss, compel arbitration and stay.  The Corporate Defendants then filed parallel motions to dismiss the various EoBuy entities asserted and to stay Indiezone's claims against them, joining the Jingit Defendants' arguments in order to preserve Court and party resources.  As a result, when the sanctions motion was brought by the Jingit Defendants seeking recovery of fees and costs to respond to the Plaintiffs' motions to amend, the Corporate Defendants appropriately did not seek sanctions to recover the fees and costs that they had expended in these efforts.

As a result of the Jingit Defendants' sanctions motion, the full extent of Plaintiffs' fraud on the Court and all of the defendants came to light, and the Court, pursuant to its inherent authority, ordered Plaintiffs to show why this action should not be dismissed.  Indeed, Plaintiffs' sanctionable conduct was not simply fraud or a wrong perpetuated only as to particular parties.  Plaintiffs' fraud was to this Court and the judicial process, and resulting sanctions may therefore properly apply to this case as a whole.  A sanction under a court's inherent authority is not limited to redressing an aggrieved party, but is rather meant to vindicate the Court's authority over a recalcitrant litigant. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 53 (U.S. 1991); *Mark Indus. v. Sea Captain's Choice*, 50 F.3d 730, 733 (9th Cir. 1995); *Doyle v. Ill. Cent. R.R.*, 08-0971 LJO SMS, 2009 U.S. Dist. LEXIS 8917, at *20 (E.D. Cal. Jan. 29, 2009).  Here, Plaintiffs have committed intentional and unmitigated fraud on the Court on a material issue that strikes at the core of this lawsuit.  That fraud was, in part, in response to the motions of all of the defendants, including the Corporate Defendants and the two individual defendants ultimately subject to arbitration, to dismiss the first two "EoBuy" entities Plaintiffs asserted and stay the action against nearly all of the defendants.  There is no question that Plaintiffs' conduct here was egregious, consisting of perjury, submission of false documents and

contempt of a Court Order, all aided by counsel, and the Jingit Defendants submit that dismissal of Plaintiffs' Complaint as to all parties is an appropriately severe remedy.

Dismissal should also apply to Defendants Rooke and Rogness and Plaintiffs' arbitrable claims. This Court has retained jurisdiction over claims referred to arbitration. *See Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 653–654 (9th Cir. 1991) (affirming district court decision to vacate stay pending arbitration and dismiss claims under Fed. R. Civ. P. 41(b)). Indeed, the Federal Arbitration Act specifically contemplates continued jurisdiction by a federal court after it compels arbitration at the request of a party. *See id.* (citing 9 U.S.C. § 3). While a federal court should not interfere with the conduct of an arbitration, *Thompson v. Zavin*, 607 F. Supp. 780, 783 (C.D. Cal. 1984), it may vacate a stay of litigation as to the claims subject to arbitration in order to sanction a party or dismiss a case. *See Futurewei Techs. Inc. v. E. Oliver Capital Group, LLC*, 4:09CV455, 2011 U.S. Dist. LEXIS 39080, at *4 (E.D. Tex. Apr. 9, 2011) (citations omitted) (vacating stay pending arbitration and sanctioning defendants for failing to participate in arbitration and disobeying court orders, including an order to appear at a hearing on defendants' attorney's motion to withdraw); *Morris*, 942 F.2d at 653. In light of the substantial fraud perpetrated on the Court, the Court would be well within its authority to vacate its June 17, 2014 Order compelling arbitration (ECF 117) in order to sanction Plaintiffs by dismissing their claims against Defendants Rooke and Rogness.

Finally, if the Court declines to dismiss this suit only as to Defendants Rooke and Rogness, then the Jingit Defendants respectfully request that the Court amend its June 17, 2014 Order to require satisfaction of the payment of monetary sanctions as a condition precedent to the commencement of the arbitration. Under its inherent powers, this Court may exercise its discretion to fashion an appropriate sanction remedy. *See Chambers*, 501 U.S. at 44-45 (recognizing that the court's inherent power discretion includes "the ability to fashion an appropriate sanction for conduct

which abuses the judicial process"). In addition, to date, Plaintiff Indiezone has not filed the arbitration demand. (Sugisaka Decl., ¶ 13.) Given Plaintiffs' pattern of dishonesty and Plaintiffs' counsel's complicity, satisfying the monetary sanction before any arbitration will hopefully deter future, similar conduct in the proceedings between the parties.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Jingit Defendants respectfully request that their motion for sanctions be granted, that the Court award their requested reasonable fees and costs, and dismiss this case with prejudice as to all Defendants.

Dated: August 13, 2014

**MASLON EDELMAN BORMAN & BRAND, LLP**

By:     /s/ Keiko L. Sugisaka
          Keiko L. Sugisaka, MN Bar No. 266152 (*Pro hac vice*)

**ATTORNEYS FOR DEFENDANTS JINGIT LLC, JINGIT HOLDINGS, LLC, JINGIT FINANCIAL SERVICES, LLC, MUSIC.ME, LLC, TODD ROOKE, JOE ROGNESS, SAM ASHKAR, PHIL HAZEL, HOLLY OLIVER, SHANNON DAVIS, JUSTIN JAMES, CHRIS OHLSEN, DAN FRAWLEY, DAVE MOOREHOUSE II, TONY ABENA, CHRIS KARLS AND JOHN E. FLEMING**