UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIEZONE, INC., et al.,<br>　　　　　　Plaintiffs,<br>　　v.<br>TODD ROOKE, et al.,<br>　　　　　　Defendants. | Case No.  13-cv-04280-VC<br><br>**ORDER GRANTING MOTION FOR SANCTIONS**<br><br>Re: Docket No. 104 |

Before the Court is a motion for sanctions against the plaintiffs, their CEO, Conor Fennelly, and their counsel, Douglas Dollinger, for submission of fraudulent documents and false declarations to the Court, and for vexatiously multiplying the proceedings. Having now reviewed the numerous filings by the parties related to the motion for sanctions, as well as the motions to dismiss, compel arbitration, stay the case, and amend the complaint to add various plaintiffs, and having held two hearings, including an evidentiary hearing, the Court grants the motion for sanctions.[1]

The original complaint was filed by the plaintiffs Indiezone and eoBuy Limited on September 16, 2013. However, as the defendants discovered and detailed in the initial declaration of Brian Walker (Doc. No. 30), their qualified expert on Irish corporate law and corporate registration procedure, and as the plaintiffs later conceded, eoBuy Limited was an Irish company

---

[1] The Court held a hearing on June 5, 2014, at which the motion for sanctions was argued. At the plaintiffs' request, an evidentiary hearing on the motion for sanctions was held on August 6, 2014. Dollinger appeared on behalf of the plaintiffs, but contrary to court order, Conor Fennelly did not appear. *See* Doc. No. 113. The plaintiffs and Dollinger did not offer any witnesses or exhibits. The defendants offered Brian Walker as a witness, and Dollinger cross and re-cross examined him.

that is now defunct, having been removed from the Irish Register of Companies on April 4, 2008. The plaintiffs then sought to amend the complaint to add eoBuy Ventures Limited as a plaintiff. Once again, the defendants discovered the purported company, eoBuy Ventures Limited, does not exist, and the plaintiffs conceded that. Conor Fennelly (the alleged CEO of Indiezone and the eoBuy entities) stated in a declaration filed by Dollinger that he "simply forgot" that the Irish Companies Registration Office had not approved the name eoBuy Ventures Limited. *See* Walker Supp. Dec. (Doc. No. 61); Fennelly Supp. Dec. ¶ 4 (Doc. No. 84-3).

        The plaintiffs then sought to amend the complaint a third time to add eoBuy Licensing Limited as a plaintiff. They contended, in their motion papers and in declarations by Fennelly and Dollinger, that prior to dissolution, the former eoBuy Limited transferred its intellectual property rights to a holding company, Amdex pte, which in turn transferred the rights to eoBuy Licensing Limited. The Fennelly declaration represented that this occurred in 2008, and that since that time, eoBuy Licensing Limited has been doing business as eoBuy and holding the intellectual property that is the subject of this dispute. However, as Brian Walker's second supplemental declaration shows (Doc. No. 95), and as Walker testified at the evidentiary hearing, eoBuy Licensing Limited was not established until early 2014, when Fennelly caused the name of an existing-but-inactive taxi company to be changed to eoBuy Licensing Limited. From 2008 through 2013, the taxi company operated under the name Laraghcon Chauffeur Drive Limited and had two directors, Ciaran Byrne and Michael Byrne, and one secretary, Teresa Byrne. Each year, the company submitted annual returns under the name Laraghcon Chauffeur Drive Limited, signed by Ciaran Byrne and Teresa Byrne, but otherwise conducted no business. The returns show only one shareholder -- Ciaran Byrne.

        At the hearings on June 5 and August 6, 2014, Dollinger represented that the taxi company and eoBuy Licensing Limited were the same company, and Fennelly simply forgot to change the corporate name. Counsel pointed to a document purporting to change the corporate name from Laraghcon Chauffeur Drive Limited to eoBuy Licensing Limited, dated July 15, 2008, but submitted to the Irish Companies Registration Office in March 2014, as proof that the companies

1 were one and the same.  Counsel represented that the company filed the paperwork to correct its
2 oversight.  There are several problems with this explanation, however.

3 First and foremost, this document is fraudulent.  Regardless whether the document was
4 filed to correct a mistake or to perpetrate fraud, the document was clearly created recently and
5 back-dated to July 2008.  As Walker testified, the document could not have been created in 2008
6 for three reasons: (1) the barcode number is too close to another barcode number from 2014 (and
7 the barcodes are sequential and automatically generated); (2) this particular barcode technology
8 was not used in Ireland in 2008; and (3) the document's footer references the "Companies Act of
9 1963 - 2013," whereas a 2008 document would have cited an earlier version of the Act.
10 Moreover, this document purports to change the name of the corporation; it does not attempt to
11 correct a mistake.  As Walker testified, a different procedure is followed to correct errors in
12 corporate filings.

13 Furthermore, Fennelly's supporting declaration is false and misleading.  Fennelly does not
14 explain that there was an oversight in changing the corporate name, but instead misleadingly states
15 that the company is "officially named eoBuy Licensing Limited and was registered under its
16 former name in July 15, 2008."  He further declares that the company "has been doing business as
17 eoBuy since August 2008," a statement that runs counter to the numerous corporate filings
18 showing Laraghcon conducted no business.  Fennelly Supp. Dec. ¶¶ 4-5 (Doc. No. 84-3).

19 At the evidentiary hearing on sanctions, Dollinger also suggested that perhaps Fennelly
20 was a silent shareholder of Laraghcon Chauffeur but the company simply failed to submit a
21 statutory report listing him as a shareholder.  This explanation is implausible and unsupported.  As
22 Walker testified, it is highly unlikely that the company would have submitted information on one
23 shareholder, Ciaran Byrne, but not for Fennelly.  This theory also fails to justify the backdated
24 corporate document or reconcile the remainder of the evidence.

25 The only remotely plausible explanation of the evidence is that Fennelly was attempting to
26 create a sham plaintiff for the purpose of evading an arbitration provision by which the other
27 plaintiff, Indiezone, is bound.  After all, Fennelly created eoBuy Licensing Limited only upon the
28 revelation that the other companies he was trying to use as a plaintiff, eoBuy Limited and eoBuy

1   Ventures Limited, did not exist.  In creating this sham plaintiff, Fennelly submitted false

2   declarations and fraudulent documents to the Court, on behalf of the plaintiffs, and these

3   misrepresentations were then adopted by counsel in counsel's own declarations, motions, and oral

4   argument.

5         Furthermore, the explanation that eoBuy Limited transferred its intellectual property to a

6   holding company, Amdex pte, and then to eoBuy Licensing Limited (officially named Laraghcon)

7   is implausible based on the record.  There is no evidence to suggest that Amdex pte is a holding

8   company (there is no certificate of incorporation or corporate registration number) or that it has

9   ever held the IP assets of eoBuy.  None of the balance sheets submitted show eoBuy held IP as an

10  asset at any time from 2008 to the present, and there is no record of any transfer of IP to another

11  company.  As Walker testified, it is standard practice to include IP assets in a company's financial

12  statements, and it would be highly unusual not to, particularly where the IP is worth more than a

13  billion dollars, as the plaintiffs represent here.  At the hearing on sanctions, Dollinger pointed to a

14  one-page document listing Amdex pte as the "care of" address for "Norbert Brull," an eoBuy

15  shareholder in 2006.  Defendants' Ex. 8, no. 5113915.  But this document does not list any IP

16  assets or show that Amdex pte is a holding company, much less a holding company for eoBuy

17  Limited.  This is insufficient in the face of the evidence to the contrary.  The only believable

18  explanation is that Fennelly made up the story about the transfer of IP (assuming eoBuy Limited

19  ever owned any IP, as there is no evidence that the IP assets existed), to bridge the gap between

20  the date eoBuy Limited was struck from the Irish register on April 4, 2008, and the date which

21  eoBuy Licensing Limited was purportedly created, July 15, 2008.

22        A few other examples of false statements are worth mentioning.  Fennelly represented that

23  eoBuy Limited was dissolved voluntarily through a vote by the Board of Directors allowing the

24  company to administratively dissolve.  Fennelly Supp. Dec. ¶ 4 (Doc. No. 84-3).  But the record

25  shows that eoBuy was involuntarily struck from the Irish Companies Register for failing to submit

26  its annual returns, and the plaintiffs have submitted no evidence to the contrary.  Additionally,

27  Fennelly stated in his supplemental declaration, which was submitted in support of the motion to

28  add eoBuy Licensing Limited as a plaintiff, that he "simply forgot" that the Companies

Registration Office had not approved the name eoBuy Ventures Limited.  Fennelly Supp. Dec. ¶ 4 (Doc. No. 84-3).  This statement must be false.  Unlike the name change request for eoBuy Licensing Limited, and all other corporate filings, there is no name change request for eoBuy Ventures Limited on the CRO list of submissions.  Moreover, Fennelly's initial declaration regarding eoBuy Ventures is dated February 18, which was after he submitted the eoBuy Licensing Limited filings to the CRO on February 6, 2014.  *See* Fennelly Dec. (Doc. No. 54-1); Walker Second Supp. Dec., Ex. C (Doc. No. 95-3).  He therefore knew prior to making his sworn declaration that the company was not named eoBuy Ventures Limited.  Dollinger adopts this lie in his own declaration on April 9, 2014, stating, "Mr. Fennely [sic] believed that the name chosen, eoBuy Ventures Ltd., was recorded by the Corporation Registry Office of Ireland when submitted.  However, as it turned out the name was rejected and the alternative name was issued eoBuy Licensing Ltd."  Dollinger Dec. (Doc. No. 91-1).

Despite ample opportunity to present evidence and witnesses to rebut allegations of fraud on the Court, the plaintiffs have failed to offer any credible, alternative explanation.  The Court finds that the plaintiffs submitted multiple misleading and false declarations and fraudulent documents purporting to establish the existence of eoBuy, in various forms.  Bad faith of this degree easily supports an award of sanctions under the Court's inherent powers.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) (federal courts may assess sanctions against a party or counsel for bad faith conduct) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)); *Fink v. Gomez*, 239 F.3d 989, 991-92 (9th Cir. 2001) (same).  Sanctions are awarded in the amount of the defendants' reasonable attorneys' fees and costs, including that of their foreign expert Brian Walker -- a total of $93,365.92.[2]  The defendants' fees and costs are reasonable in light of the prevailing rates and given the time spent defending this case.  *See* Keiko Decs. (Doc. Nos. 104-1, 111-1, and 140).  The defendants have been forced to expend a tremendous amount of time and money responding to each of the plaintiffs' motions to add a plaintiff and litigating this

---

[2] The defendants did not submit any documentation to support the travel costs of the Maslon attorneys or their Irish expert, Brian Walker.  They are therefore awarded only half of their approximate travel costs, an amount of $3250, which is no doubt reasonable.

1  motion for sanctions, including hiring foreign counsel due to the foreign status of the professed
2  plaintiffs.
3  Indiezone, Inc., the eoBuy entities (eoBuy Limited, eoBuy Ventures Limited, and eoBuy
4  Licensing Limited), Conor Fennelly, and Douglas Dollinger are held jointly and severally liable
5  for this award because each contributed to the fraudulent conduct. *See Hyde & Drath v. Baker*, 24
6  F.3d 1162, 1170-72 (9th Cir. 1994) (holding the plaintiff corporations and their counsel were
7  subject to joint and several liability because each participated in the improper conduct and the
8  corporations either did not exist or were "mere paper shells," with some of them overlapping in
9  their financing and management); *Avirgan v. Hull*, 125 F.R.D. 189, 190-91 (S.D. Fla. 1989)
10 (holding plaintiffs, plaintiffs' counsel and plaintiffs' law firm all jointly and severally liable
11 because each was involved in the sanctionable conduct).  The plaintiff companies submitted the
12 documents and motions as their own and participated in the strategy to defraud the Court.  By
13 submitting the false declarations to the Court as the professed CEO of Indiezone and the eoBuy
14 entities, Fennelly acted on his own behalf and as an agent for the companies and is therefore liable
15 for the bad faith conduct. *See F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d
16 1128, 1144 (9th Cir. 2001) (holding a litigant personally liable for a sanctions award where he
17 "acted on his own behalf and also as an agent of his corporation . . . in attempting to corruptly
18 secure a benefit for both himself and his corporation").
19 Counsel for the plaintiffs also participated in this bad faith conduct.  Despite having been
20 put on notice that eoBuy did not exist and Fennelly's representations were suspect, Dollinger
21 continued to file the plaintiffs' bad faith motions and to support and adopt Fennelly's
22 misrepresentations in his own declarations and through motion and oral argument.  Dollinger's
23 misrepresentations to the Court far exceed the ethical bounds of advocacy and constitute bad faith.
24 At a minimum, Dollinger has been reckless regarding the truth of his representations to the Court.
25 Dollinger's actions throughout this litigation also demonstrate his intent to unreasonably and
26 vexatiously multiply and manipulate the proceedings, including filing numerous motions to
27 amend, filing numerous requests for extension of time, and failing to abide by court order on
28

1    multiple occasions. Sanctions are therefore appropriate against Dollinger under the Court's
2    inherent authority, as well as 28 U.S.C. § 1927.

3    This case is also dismissed with prejudice, pursuant to the Court's inherent power, because
4    the plaintiffs have "engaged deliberately in deceptive practices that undermine the integrity of
5    judicial proceedings" and "willfully deceived the court and engaged in conduct utterly inconsistent
6    with the orderly administration of justice." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir.
7    2006) (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 347, 348 (9th Cir.
8    1995)). Dismissal is warranted in a case such as this one where a party has knowingly submitted
9    false and misleading documents. *See Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488-89 (9th
10   Cir. 1991). Moreover, consideration of the five factors discussed in *Leon* warrants dismissal. *See*
11   *Leon*, 464 at 958. The public's interest in expeditious resolution of litigation and the Court's need
12   to manage its docket both support dismissal, because the sanctionable conduct has unnecessarily
13   prolonged this case and wasted a tremendous amount of the Court's time. Given the Court's
14   finding of bad faith and issuance of sanctions under its inherent authority, a showing of prejudice
15   to the defendants is not needed (although the defendants have certainly labored under the
16   misconduct of the sanctioned parties). *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D.
17   559, 564-65 (N.D. Cal. 2008) (explaining that "a district court need not consider prejudice to the
18   party moving for sanctions" when acting pursuant to its inherent authority).

19   The Court also has considered less severe sanctions but finds dismissal against all
20   defendants appropriate due to the egregious and fundamental nature of the fraud. The fraud strikes
21   to the heart of the case, namely the parties involved and the owner of the IP, which is the subject
22   of the dispute. There is also serious concern that anything less than dismissal with prejudice will
23   permit the plaintiffs and Dollinger to bring this vexatious and fraudulent suit again, in this district
24   or elsewhere, as Dollinger has mentioned the possibility of a foreign suit in open court on several
25   occasions. Additionally, the plaintiffs, Fennelly, and Dollinger were given multiple opportunities
26   to defend against the sanctions motion, including a full evidentiary hearing and several rounds of
27   briefing. The Court explicitly ordered Fennelly to appear at the evidentiary hearing and warned
28   the plaintiffs that their case would be dismissed if they refused to participate fully. *See* Doc. Nos.

1   113, 133.  Despite this notice, Fennelly did not appear and the plaintiffs did not introduce any

2   witnesses or exhibits.  And Dollinger's cross-examination of Brian Walker only revealed more

3   clearly the falsity of the documents and arguments presented to the Court.  Accordingly, the case

4   is dismissed with prejudice against all defendants.  The Court withdraws its order to compel

5   arbitration and dismisses with prejudice the claims against Todd Rooke and Joe Rogness.

6   **IT IS SO ORDERED.**

7   Dated: September 2, 2014



_____
VINCE CHHABRIA
United States District Judge