1  Douglas R. Dollinger, Esq., NY Bar No. 2354926
   Appearing *Pro Hac Vice*
2  50 Main Street-Suite 1000
3  White Plains, New York 10606
   Tel:    845.915.6800
4  Fax:    845.915.6801
   E-mail: ddollingeresq@gmail.com
5  Attorney for Plaintiffs

6  Seth D. Heyman, Esq., CA Bar No. 194120
7  2600 Michelson Drive, Suite 900
   Irvine, CA 92612
8  Tel: 855-439-6628
   Fax: 855-207-3967
9  E-mail: sdh@heymanlegal.com
10 Attorney for Plaintiffs

                   UNITED STATES DISTRICT COURT
11                 NORTHERN DISTRICT OF CALIFORNIA
                      SAN FRANCISCO DIVISION
12

13 | Indiezone, Inc.,  a  Delaware  corporation,  and )
   EoBuy, Limited an Irish private limited company, )
14                                                  )    **Case No. CV13-04280 VC**
                                                    )
15                  *Plaintiffs,*                   )
                     vs.                             )
16                                                  )
   Todd Rooke,  Joe Rogness,  Phil Hazel, Sam Ashkar, )
17 Holly Oliver and U.S. Bank, collectively the *RICO Defendants*; )
   Jingit LLC., Jingit Holdings LLC., Jingit Financial, Services LLC., )
18 Music. Me, LLC., Tony Abena,  John E. Fleming, Dan Frawley, )
   Dave  Moorehouse  II,  Chris Ohlsen,  Justin James, )
19 Shannon Davis, Chris Karls in their capacities  as officers, )
   agents and/or  employees of  the Jingit  LLC., )
20 *Defendants in Negligence, and Aiding/Abetting;* )
                                                    )
21                                                  )
   Wal-Mart, General Electric, Target, DOE(s) and ROE(s) 1 )
22 through 10, *Defendants in  Negligence  Secondary* )
   *-Vicarious Infringement,* )
23                  *Defendants.* )
                                                    )
24 —————————————————————————————————————————
25
26
27            **MOVANTS' REPLY MEMORANDUM OF LAW IN**
              **SUPPORT OF THEIR MOTION FOR RECONSIDERATION**
28

# TABLE OF CONTENTS

Page(s)

**TABLE OF AUTHORITIES**........................................... ii

**PRELIMINARY STATEMENT**............................................ 1-2

**ARGUMENTS**............................................................... 2-17

**Point I**.................................................................... 2-3

**Movants Have Met the Standard for Amending the Judgment on Reconsideration of Both the Facts and Law**

**Point II**.................................................................. 3-7

**The Conceded Errors in Testimony of Barrister Brian Walker Cannot be Overcome by Being Ignore as they Were Prejudicial to Plaintiff**

**Point III**................................................................. 7-12

**The Court Inadvertently Overlooked the Facts and Law; eoBuy Licensing Ltd. has Standing Under Fed R. Civ. P. 20(a)**

**Point IV**.................................................................. 12-14

**Movants Were Diligent in Their Attempts to Obtain the CRO Statements and the IP Transfer Agreements**

**Point V**................................................................... 14-17

**The September 18, 2014 E-mail Was Not Received by Counsel's Office**

**CONCLUSION**............................................................... 17

i

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011)…………………………. 2,3, 13

*Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)…………………………….. 2

*Indep. Trust Corp. v. Stewart* Info. Servs. Corp., No. 10-cv-4430,
2011 WL 1831586, at \*3-4 (N.D.  Ill. May 11, 2011)……………………………………. 3

*Turkmani v. Republic of Bolivia*, 273 F. Supp. 2d 45, 50 (D.D.C. 2002)…………………. 3

*Universal Trading & Inv. Co v Dugsbery Inc.*, No. Co 8-03632CRD 2011……………… 14

## Federal Statutes

Fed. R. Civ. P 15(a)..………………………………………………………………….... 7,8,9

Fed. R. Civ. P 20(a)..…………………………………………………………………….... 7,8,9

Fed. R. Civ. P 59(e)..………………………………………………………………….... 2,3,10

ii

1

### Preliminary Statement

2      In Reply to the Defendants arguments the record supports the facts as movants claim them to be

3  in 2008, not what Defendants' Counsel has worked them into by reason of their withholding e-mails,

4  use of fabricated testimony or their lack of any statements containing personal knowledge of the facts

5  which would contradict CEO Fennelly's claims and the facts appearing on the face of the filings.

6      Indiezone, eoBuy and their Counsel are requesting reconsideration of both the facts and

7  law with an amendment to the judgment restoring the action, adding eoBuy Licensing Ltd. as a

8  party, directing the parties to arbitration and denying the award of sanctions.   **[DE 145.]**

9      Reconsideration and granting an amendment to the judgment are particularly appropriate in

10  this case because Counsel's strategies and the Court's decision was based on defense counsel's

11  actual use of admitted perjured testimony presented through Barrister Brian Walker. **[DE 150-2.]**

12      The decision and judgment have had a far reaching impact on the loss of income to

13  Indiezone's and eoBuy Licensing's shareholders not on the merits of their claims but summarily on

14  misapprehended facts and the law.[1]  Likewise is the effect to counsel's law practice. Forcing the

15  matter to appeal based on admittedly false testimony is an injustice uncalled for and represents

16  manifest errors of law and fact and will result manifest injustice to movants.

17      The testimony was not just a simple misinterpretation of the facts its effect was core to the

18  reliance in the strategy and avenue of cross-examination employed by Counsel and the clear errors

19  in fact and law produced in the findings made by the Court.

20      The Court's decision was necessarily based on this false testimony for the reason that is

21  findings was interwoven into the global theme of claimed wrongdoing by CEO Fennelly and

22  Counsel. Moreover, the reasoning cannot be separated out from the overall analysis set forth in the

23  Court's order without severely prejudicing the movants. **[DE 145.]**

24      The findings rely on testimony which was not only speculative but grudgingly conceded to

25  be false.  Not too surprisingly Defendants now seek to distance themselves from their wrongdoing

26  pointing to what they argue was the Court's findings which they claim survive despite the admitted

27  false testimony of Barrister Walker. **[DE 150.]**

28

---

[1] The loss is estimated to be in the billions of dollars for the infringed **IP** as illegally taken by the Defendants.

Memorandum in Support of Reconsideration

1    In Response to the motion Defendants claim that the movants have not met their burden for

2    reconsideration as the proof of ownership of the Intellectual Property ("**IP**") and its transfer assignments

3    from eoBuy Limited to Amdex Pte. (Amdex") in 2007 and then into eoBuy Licensing Ltd. f/k/a

4    Laraghcon Chauffeur Drive Limited ("Laraghcon") in 2008 does not constitute new evidence, nor would

5    it have changed the outcome of the case.  Similarly rejected are the statements of Mr. Conar Kennedy

6    information officer of the Irish Corporation Registry Office ("CRO") as superseded by Mr. Harry Lester

7    Assistant Registrar for the CRO and their non-effect as well. **[DE 149-4** and **150.]**

8         By tactical avoidance of the admitted perjury committed by Barrister Brian Walker and by

9    recasting questions present to the CRO by movants post the hearing defendants address the matters

10   as having no impact on the outcome of the issues before the Court.

11        The Court should reject the defendant arguments as being unpersuasive and find Barrister

12   Walker's testimony has resulted in manifest injustice to movants for the reasons to follow.

### Point I.
### Movants  Have  Met the Standard for Amending  the
### Judgment on Reconsideration of Both the Facts and Law

16        Notwithstanding defendants' claims, the facts and law of the stated grounds for amendment

17   exist in this case and this Court has the power to amend the judgment upon reconsideration. **[DE 150.]**

18        A motion to reconsider under Rule 59(e) should be granted to correct a clear error, whether

19   of law or of fact.[2] Indeed, Rule 59(e) exists for the very reason; to prevent manifest injustice

20   especially in cases like this where evidence offered was untrue and when evidence favorable to an

21   effected party is not available to them at the time necessary to address the matter.

22        The Ninth Circuit has noted:

23        In general, there are four basic grounds upon which a Rule 59(e) motion
          may be granted: (1) if such motion is necessary to correct manifest errors of
24        law or fact upon which the judgment rests; (2) if such motion is necessary to
          present newly discovered or previously unavailable evidence; (3) if such
25        motion is necessary to prevent manifest injustice; or (4) if the amendment is
          justified by an intervening change in controlling law.[3]
26

27   _____
     [2] *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).
28   [3] *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011), and see Point III below.

1    At least three of the four grounds for reconsideration provided for under Rule 59(e) are present

2    in this case and Defendants have failed to address them in the Response or rely on the tender of false

3    reasoning associated with the untrue testimony of Barrister Walker.

4         Movants claim that upholding the judgment on the admitted-recanted testimony of Barrister

5    Walker promotes manifest injustice for the reason that testimony was intended to create the false factual

6    impression that the CRO operated in a manner that provided certain notices to the public which should

7    have been present had CEO Fennelly acted as he claimed; that the CRO has enforcement powers under

8    Irish law which it does not have a fact admitted to by Mr. Lester ; that evidence which was not available

9    to them previously[4]  is now available and;  that granting reconsideration after consideration of that

10   evidence will correct clear error of fact[5] and law where this Court should correct these errors in order to

11   "preserve the integrity of the final judgment."[6]

12        And, even if as defendants argue there is no new evidence before the Court regardless, of the

13   claimed errors, as the Ninth Circuit explained in Herron, a court "considering a Rule 59(e) motion is not

14   limited merely to [the four "basic grounds" upon which a Rule 59(e) motion may be granted]," but may

15   consider whether an amendment "may be appropriate" under other circumstances.[7]

16                                          **Point II.**

17   **The Conceded Errors in Testimony of Barrister Brian Walker Cannot**
     **be Overcome by Being Ignore as they Were Prejudicial to Plaintiff**
18

19        Admittedly, part of the errors claimed before the Court were the result of poorly drafted

20   declarations.   However, these errors must be placed second behind the pretense and charade

21   presented to the Court in the *concededly inaccurate testimony* of Barrister Walker concerning the

22   operations and authority of the CRO against the information provided to Counsel by Mr. Kennedy

23

24   [4] Defendants' response only supports how difficult it has been to accurately present the true facts in this case. The withholding of over 20,000 e-mails has had the desired effect.

25   [5] eoBuy Licensing Ltd. and Attorney Dollinger argue that the Court misconstrued the declaration of Conor Fennelly for the reason that they were poorly drawn.  This constitutes "error of fact" within the meaning of
26   Rule 59(e).  District courts may treat such claims of misinterpretation as error of fact. See, e.g., *Indep. Trust Corp. v. Stewart Info. Servs. Corp.,* No. 10-cv-4430, 2011 WL 1831586, at *3-4 (N.D. Ill. May 11, 2011).

27   [6] *Turkmani v. Republic of Bolivia*, 273 F. Supp. 2d 45, 50 (D.D.C. 2002).

28   [7] Herron, 634 F.3d at 1111.

1    on September 16, 2014, realigned through the responses of September 18, 2014, solicited of Mr.

2    Lester by defendants. **[DE 150-1.]**

3          The Court never granted Barrister Walker expert witness status describing his testimony as

4    percipient testimony. **[DE 140-1 p 21 at 11-17.]** Had the Court done so, the witnesses would have been

5    tested in the capacity of an expert by Counsel.   Moreover, during Barrister Walker's testimony he

6    asserted his claimed knowledge in the form of opinion as an attorney familiar with the filing protocols

7    of the CRO.   Under the circumstances which have now come to light the testimony of Barrister Walker

8    as orchestrated by Attorney Sugisaka must be rejected as knowingly unfounded opinions riddled with

9    wild speculation and even perjured testimony. **[DE 150.]**

10         For instance, beyond the admission of his error to CRO public notices used to establish the intent

11   to CEO Fennelly to deceive the Court is his opinion on listed assets and designation of Amdex as a parent

12   holding company.  The questions and answers are all telling.   It was not the law, only his opinion as to

13   what assets would or should be disclosed to the CRO. **[DE 140-1 p 32 at 23-25 and 33 at 1-4.]**

14         Where did this all come from?  Where is this stated in any document presented by movants that

15   Amdex was a formal "parent" holding company" of eoBuy Limited in 2006?   It was never presented in

16   such a manner, at least not in the filing presented by movants.

17         What was stated and as presented in the **IP** transfer agreements was that the **IP** was transferred into

18   its holding company, Amdex in November 2007.   Most importantly the declaration of CEO Fennelly never

19   advances a theory of a "parent holding company" or any claim related to defendants in 2006. **[DE 54-1 and**

20   **84-3.]** There is a distinct difference between a parent company wholly owning a holding company

21   established as a subsidiary directly holding company assets and using a shell company to hold assets.

22         The theme presented throughout the defendants handling of this matter has been consistent.

23   Defendants take speculative leaps advancing facts not in the record but only found upon their own

24   mischievous interpretation and rearrangement of the facts and law in this case.

25         To show just how far reaching Defendants' efforts are to distort the truth of the matters before

26   the Court beyond the foregoing, the Court simply need examine the theme of just a couple of the

27   arguments presented through the Defendants' hearing testimony  and advanced in their Memorandum of

28   Law. **[DE 150.]**

1    First, are the statements made in their Memorandum of Law.**[ De 150 p 10 at 8-18.]** These

2    statements are a complete fabrication. Exhibits "A" and "B" correctly identify in each instance that

3    eoBuy Limited as transferor was a company formed under the laws of Ireland; that Amdex Pte as

4    transferor and transferee was a company formed under the laws of Singapore and that eoBuy

5    Ventures Ltd. as the name was believed to be at the time, as transferee was a company formed

6    under the laws of Ireland. *Was this intentional on the part of defense counsel intending to place*

7    *movants in a false light or was it perhaps a simple mistake one in which a professional would avoid*

8    *any attempt to capitalized and improperly mislead the Court.*

9    And, even more persuasive is the unsupported claim of Attorney Sugisaka that the **IP**

10   referenced in the Complaint is not the same as the **IP** referenced in the Transfer Agreements.

11   **HOW DOES SHE AND HOW CAN SHE KNOW** what the **IP** codes consists of.

12   Far worse of the truth is the fact that the documents used by Barrister Walker and as

13   testified to during the hearing to exclude or create doubt as to the asset transfer and the

14   nonexistence of the **IP** theft are his use of filed returns **from 2005-2007** representing the year **2004-**

15   **2006** a period at least two (2) years prior to the development of the **IP** and theft as claimed against

16   Rooke, Rogness and the other Jingit defendants.

17   This Court should keep in mind that defense Counsel Sugisaka, through her firm has

18   represented Rooke, Rogness and most of the other Jingit Defendants at critical times after the

19   claimed **IP** theft. **[DE 140-1** and **DE 150.]**

20   And, it is a fact that the Jingit defense firm assisted in many of the filings which are claimed

21   to support the theft of Plaintiffs' **IP**. The lack of supporting declarations from any party defendant

22   only enhances the truth of CEO Fennelly's claims.

23   The outright misrepresentations as to the formation asset information of each corporation

24   and attempted capitalization of the obvious error and the utter claim of facts which are outside

25   Counsel's own knowledge, or perhaps they are not, only promotes the lengths defendants will stoop

26   to so as to hide the illegalities presented in the Complaint and avoid this case being heard on its

27   merits.    Simply put, Barrister Walker's testimony was not only overreaching but clearly opinion

28   testimony in error of both fact and law.

1    Mr. Walker attempted to use the CRO as an official body of government with enforcement

2  powers as opposed to an administrative content registry which is all that the CRO is.   Mr. Lester's e-

3  mail admits this fact and establishes this fact at the highest order confirming Counsel's point of

4  argument and admitted testimony of  Barrister Walker at the hearing that if a claim exists against the

5  filings as made by eoBuy Licensing Ltd. the claim must be made before the Court of Ireland osa to

6  determine the lawful status of eoBuy licensing.

7    This of course begs the question as to the Court's conclusion that the name change was

8  fraudulent as filed with the CRO.   Clearly, the Court was of the mistaken belief as supported by

9  Barrister Walker's opinion testimony that under Irish law the filing was a fraud established-proven by

10  the absence of filings or the backdating of the July 8, 2008, corporate resolution. [8]  However, as

11  intended the filings were nothing more than authorized corrections, without attended fraud as the filings

12  themselves clearly establish.    What is lacking is any action on the part of defendant to seek resolution

13  of the claims in an Irish Court. This was not done for the simple reason as admitted by Barrister Walker

14  eoBuy Licensing Ltd is validly formed and in existence under Irish Law. **[DE 140-1.]**

15    The false testimony by Barrister Walker that public notice of the name rejection would have

16  been provided to CEO Fennelly was intentionally presented as a statement of fact in a direct question

17

---

18  [8] The Court is in error in its findings that the March 11, 2014 filing of the name eoBuy Licensing Ltd. and the
Corporate resolution dated July 15, 2008- *the date of adoption*-as fraudulent is in opposition with the filing of

19  documents using G1, G2 and G1Q as public notice on March 13, 2014.  The importance of the sequence of
those filings and the dates on the documents themselves are all telling  Despite the claimed corrections by Mr.

20  Lester of Mr. Kennedy on this matter Mr. Lester's answers actually support that what Company Setup did was
file a corporate resolution effective to the Company Laraghcon-eoBuy Licensing Ltd. from July 2008 forward.

21  All the Court need do is recognize that even Mr. Lester admits the "effective date" for the CRO would be
controlled by the flings of G1, G2 and G1Q with the filing made on March 11, 2014. The fact that the name

22  change-resolution is dated July 15, 2008 as an act of fraud is entirely the result of misinformation testified to by
Barrister Walker and the inference as to what the lack of filings mean with the CRO. On this very point Mr.

23  Lester was unable to adopt defendants position as to whether CEO Fennelly "did anything wrong". This was
the central factor in the theme presented by defendants claiming the CRO filings and the lack thereof were an

24  intended fraud.  What is even more important is that the implausibility of Barrister Walker's testimony as used
in any support of a fraud becomes apparent.  If as Barrister Walker opined the name change rejection would

25  have been public whether in 2008 or 2014, and it was not among the public filings then for the reason of its
absence CEO Fennelly must have been lying when he said that he had forgotten the name change was rejected

26  means that CEO Fennelly could not have formed the intent to deceive anyone.  He simply forgot something
which had occurred six (6) years before.  The e-mail from Mr. Lester and his reference to "prima facie evidence

27  that certain filings [ made in this matter] . . . . could have been queried related to the appointment of officer and
member information; this point and the facts behind it and its implications are discussed in detail below. **[See**

28  **Point IV below.]**

Page6

1    offered by Defense Counsel and could only have been known to be untrue when made. **[DE 140-1 p 39**

2    **at 7-10 .]** In fact, the assertion of simple error on the part of Barrister Walkers is so implausible that it

3    could not have occurred by inadvertence or happenstance.

4        This testimony resulted in the Court's misunderstanding of the filing sequence and allowed

5    defendants to improperly capitalize using the perjured testimony of Barrister Walker rejecting and

6    transforming the correction into a fraud by reason of the falsely imposed knowledge of CEO Fennelly.[9]

7        Defense Counsel deliberately mixes a host of unrelated factors in her press to hinder the Court in

8    its analysis as to why Barrister Walker testified falsely when she encouraged him to do so by asking the

9    questions which improperly have this Court believing that the filings with the CRO had the force of law

10    when in fact they did not. **[DE 140-1.]**

11        The result is an injustice which can only be undone by affording the relief requested for

12    reconsideration.    There was no intent to create a shame plaintiff and once the claimed public notice of

13    the name rejections is eliminated the claimed fraudulent intent of CEO Fennelly equally disappears.

14        With this said hopefully it will become clear there was no intent to deceive the Court or

15    defendants and the resulting errors of fact and law as drawn by the multiple errant factors produced by

16    Defendants testimony and their documented mischief should be reconsidered in light of the factual right

17    of standing belonging to eoBuy Licensing Ltd. and more importantly its ***lawful*** right of standing.

18                          **Point III.**

19           **The Court Inadvertently Overlooked the  Facts and  Law;**

20          **eoBuy Licensing Ltd. has Standing Under Fed R. Civ. P. 20(a)**

21        By no means was it a simple error, however, the errors contained in CEO Fennelly's

22    declaration were produced upon a compounded misunderstanding of the law concerning the 2013,

23    viability of eoBuy Limited as a plaintiff and the creation of the agreements to transfer eoBuy

24    Limited's intellectual property from eoBuy Limited to Amdex in 2007 and then into eoBuy

25

26    [9] Counsel is somewhat at a disadvantage trying to understand why the Court consistently believes that the questions posed by him at the hearing as suggestions of facts are adopted as attempted claims establishing a fact at the hearing

27    as an act undertaken by CEO Fennelly. Counsel's job is to test the evidence on accuracy through inquiry which as was shown established the false statements and inferences offered by Barrister Walker by means of cross-

28    examination.  Unless arising from movants direct case Counsel was at all times testing the plausibility of the testimony not interposing facts which of course could not be accomplished through him .

1   Ventures Ltd. believed to be the substituted name for Laraghcon Chauffeur Drive Limited

2   ("Laraghcon") in 2008 (collectively the "Transfer Agreements"). **[DE 57-1 Page3 ¶2, DE 145.]**

3   The February 2014 name substitution adopted by CEO Fennelly, eoBuy Licensing Ltd.,

4   after being told by Company Setup the company dealing with the CRO in February 2014 the name

5   eoBuy Ventures Ltd. was rejected by the CRO was done without first consulting with Counsel.[10]

6   The filings reflect what CEO Fennelly was told to do by Company Setup in correcting the

7   filing errors caused by the failure of Private Research Company, a defunct company who originally

8   incorporated the entity in 2008.

9   Likewise, they reflect why the Rule 20(a) application was for a name correction to eoBuy

10  Ventures Ltd. and not initially eoBuy Licensing Ltd.  In fact, this is further proof that there was not

11  intent to defraud anyone.

12  In the end there was no reason to do anything improper, and no one did.  Defendant's

13  claims are implausible and not tolerated in the law. They must now be rejected outright based on

14  overwhelming proof of Barrister Walkers perjury and the supporting proof to the claim that nothing

15  more than historical errors were being corrected, especially the joinder rights existing under Fed R.

16  Civ. P. 20(a). [11]

17

18  _____

19  [10] Perhaps the most critical mistake in this case was CEO Fennelly's executing the name correction in March 2014 to eoBuy Licensing Ltd.  At the time CEO Fennelly simply did not understand the effects of allowing

20  Company Setup to make a substitution of eoBuy Licensing Ltd. as opposed to eoBuy Ventures Ltd. nor did he confer with Counsel prior to allowing them to file the name eoBuy Licensing Ltd. as opposed to eoBuy

21  Ventures Ltd. Clearly, this fact is supported by the application to amend the complaint Fed Rule Civ. P. (15(a) **[DE 57-1 Page2 ¶3]** and add eoBuy Ventures Ltd. as a plaintiff under Rule 20(a). Had Counsel known of the switched name in advance of the submission he would have clarified it in the application to

22  amend.  This was not reckless, unreasonable, in bad faith or vexatious for the reason that the fact was unknown by Counsel until after Barrister Walker's Second Supplemental Declaration of April 11, 2014. **[DE

23  95.]**

24  [11] Typically, plaintiffs possess the right under Rule 20 to join defendants or institute separate actions. The Court has inadvertently exceeded its powers where it cast the need to impose sanctions in the theory that Plaintiffs would

25  institute the action in another forum naming an additional entity. Clearly, and only for the reason of the deceptive claims of the defendants was the Court prodded into overlooking the fact that the **IP** exists and is owned by the

26  shareholders of the former entity eoBuy Limited.  The **IP** did not just simply disappear and as admitted by Barrister Walker under Irish Law the shareholders of eoBuy Limited have 20 years to restore the company and may continue

27  this action as a matter of law either in Ireland or in the US. Moreover the 2008 Transfer Agreements are unopposed. Counsel can find no case law in opposition to this application of Rule 20 and every appellate case reviewed supports

28  movants right of standing.

1   The fraudulent joinder claims made by defendants are in opposition with the law and facts.

2   Any credibility which was given to Barrister Walker's testimony, must give way to the

3   incontrovertible facts; CEO Fennelly's filing through Company Setup were lawful and on notice of

4   the effective date of March 14, 2014.[12] The claimed intent to deceive was lacking by reason of the

5   facts which could have been known or were recalled by CEO Fennelly at the time.

6   What is controlling on the matter is that under the circumstance all CEO Fennelly would

7   have had to do, as he did, was move to join a party pursuant to Fed R. Civ. P. 20(a).  He could have

8   named Amdex or Laraghcon as the plaintiff, changed the name after the fact as he wished or even

9   added himself individually.  If he had done any of these acts there would be no issue before the

10  Court.[13] Hence, there was no need to create a shame plaintiff.

11  Instead what he did was attempt to correct a trailing error related to historical record keeping

12  and a failed named change caused by a defunct company.[14] There can be no genuine contest the

13  transfers occurred as provided under the agreements ending in the name EoBuy Ventures Ltd as the

14

15

[12] What becomes apparent is that if defendants had a claim against the viability of eoBuy Licensing Ltd's.

16  right of standing it was required to challenge the matter in a Court in Ireland which has not been instituted, nor can it be.  This explains the collateral attack in the US and the attempt to broaden the administrative

17  powers of the CRO beyond its right to strike corporations off the CRO's rolls for noncompliance which in this case they have not done.

18
[13] The Fed R. Civ. P. 15(a) and 20(a) motions requested the correction or addition of eoBuy Ventures Ltd. as it was

19  unknown-not recalled that the name had been rejected in 2008.  Reflected in this filing is the truth associated with Exhibits "A" and "B" the transfer agreements.  And more importantly is the implausibility as to Barrister Walker's

20  testimony.  We know now that Barrister Walkers testimony was not true.  There was no way for CEO Fennelly to know of the name rejection by public notice whether it was in 2008 or 2014. This of course means two things. First,

21  that when CEO Fennelly went to correct the name change to eoBuy Ventures Ltd. he was not being untruthful as explained he simply forgot it had been rejected and never followed up on the matter.  Without knowing who did

22  what, as to the requested name change in 2008, there can only be speculation as to what occurred.  Second, when Company Setup filed the request for the name change to eoBuy Licensing Ltd., with an effective date of July 2008

23  on documents reflecting 2014-dates, they were obviously doing as they had been instructed by the CRO in March of 2014. **In fact, CEO Fennelly never had anything to do with the direct filings they were done by Company**

24  **Setup.** Each and every document was submitted by them as the filings indicates.

25  [14] This was an error in judgment on the part of CEO Fennelly and miscommunications with the company dealing with the Irish Corporation Registry Office.  Most importantly it could not support the claim for

26  fraud.  And, the opposite is true for the simple reason that all of the documents as filed were open to public inspection.  To associate a fraudulent intent to the obvious scrutiny of Barrister Walker is frankly an insult to

27  the intelligence of any reviewer of the facts, a corruption of the truth and under the circumstances meaning the now recanted testimony of Barrister Walker and the corrections of Mr. Lester misrepresentation of their

28  interpretations of the filings and even Irish law. **See Point IV below.**

1   lawful owner of the **IP**.[15] And, even Defendants do not argue otherwise except to complain of their

2   being a lack of notary in 2008, ***a fact which if it did exist would itself be suspicious*** and, that the

3   document was in English a matter dependent on the fact that CEO Fennelly does not speak any

4   Asian languages.[16]

5       These documents represent one of the very factors contemplated by Rule 59(e), that the

6   proof necessary to overcome the claims at the hearing was unavailable to movants at the time so as

7   to timely present rebuttal evidence or direct evidence on the matter.    To correct these types of

8   inequities Rule 59(e) provides the vehicle for review where the evidence was not available to the

9   offended party.

10       The circumstances of the truth are that the documents provide proof at a point in time prior

11   to August 15, 2008, proof which is definitive in nature as to the faithful belief of CEO Fennelly and

12   Mr. Bruell the CEO of Amdex that the company they were transferring the **IP** into existed in 2008

13   under the name eoBuy Ventures Ltd.  They were each unaware of the name being rejected.  This is

14   true for the reason that the defunct company Private Research Limited was in control of this

15   information.  Under the circumstances movants cannot give an explanation as to why the CRO

16   rejected the name and the circumstances of that rejection.

17       The skeletal explanation of both Mr. Kennedy and Mr. Lester do nothing to reduce the

18   speculation concerning the internal workings of the CRO as to any name rejection and who would

19   have been notified.    It was certainly not CEO Fennelly.   It could only have been the set up

20   company, Private Research Company.  This is true for the reason that each and every filing was

21   presented to the CRO by them.[17]

---

[15] The arguments concerning what the **IP** was and was not is a factual issues and uncontested by a defendant party with knowledge.  In any event the agreements content add even more credence to fact that they were created in 2008.

[16] Although defendants point to the lack of notary from 2008, and the fact that documents are in English, they fail to appreciate the attestations of their being executed in 2008 by Mr. Bruell.  If CEO Fennelly had been attempting a fraud why not use EoBuy Licensing Ltd.  The reason is simple he believed the company to be named eoBuy Ventures in 2008 when the documents were created.  Why not simply change the documents after the fact; again, because there was no need to.  If the Court continues to accept defendants' theory it must believe that everyone was conspiring with CEO Fennelly including Mr. Bruell- Company Setup and even Mr. Kennedy for his candid responses, response provided to the public prior to September 18, 2014.

[17] See Defendants Exhibit's and CEO Fennelly's declaration.

1    The filings only explain and support the actions taken by CEO Fennelly to update and

2    correct the information in February 2014 to the name eoBuy Ventures Ltd. and not eoBuy

3    Licensing Ltd. Not until he was notified of Barrister Walker's claims did he recall the name being

4    rejected. Mr. Fennelly's declaration also explains why he forgot about the name change being

5    rejected and why it was submitted to the CRO again in February 2014.[18]

6    This is an important point and establishes a portion of the implausibility of Barrister

7    Walker's testimony and his credibility. If the CRO never published the name being rejected which

8    we now know to be true how CEO Fennelly would have known the name eoBuy Ventures Ltd was

9    rejected unless they notified him or the Private Research Limited. The point is he did not recall and

10   his actions are in accord with precisely what he did having Company Setup submit the documents

11   in the name eoBuy Venture Ltd.

12   To the best of his present recollection he was advised by an employee Private Research

13   Limited, that the name eoBuy Ventures Ltd. was rejected by the CRO. Initially, he was waiting for

14   someone from Private Research Limited to get back to him with the alternative names.

15   Instead, filings were continued to be made under the name for Laraghcon by Company

16   Setup.[19]    This continued until it was ultimately discovered that Private Research Limited never

17   properly changed anything and simply continued to make filings under the name Laraghcon. [20]

18

19

20   [18] What is consistent is the why would CEO Fennelly transfer the **IP** into a company named eoBuy Ventures
Ltd. in 2008 if he did not believe the name to be valid and knew the name was rejected at the time. The
21   simple answer is the miscommunication between him and Private Research Limited. He was unaware until
months later and did not correct the matter until 2014.    Six (6) years later he simply forgot and for the
22   reason that Company Setup was unaware of the matter the name eoBuy Licensing Ltd. was submitted in
March 2014.

23   [19] Additional proof of the overreaching claims of defendant through Barrister Walker may be found in his
testimony that Private Research Ltd of Colliemore House "now trades under the name Company Setup".
24   The is virtually no proof that "Setup is directly related to Private Research Ltd. and in fact the filing for
Setup indicates it was a new company established in 2011.    **[Exhibit "C"]** What's more, during cross
25   examination Barrister Walker testifies that Laraghcon was no longer available. Of course it was not it could
not have been it was never available to Company Setup for the reason that prior to 2011, it had already been
26   set up and sold to CEO Fennelly.

27   [20] On this point it is conceded that the filings were not accurate.    Presumably they were related to the
miscommunication between the old and new companies. Although the filings were not accurate under either
28   Irish law or California law the company has standing as a matter of law.

1    Which is more plausible, Barrister Walker's offered opinion that the company established

2 in 2008 was never bought or sold although established in July of 2008 and that after Private

3 Research Ltd. went out of business and Company Setup came into being in 2011 there was a sale

4 six years later. Clearly, the sale had to have taken place at the very least prior to 2011.

5    Again, the facts of mistaken filing are consistent with the actions taken in 2014 and the

6 name change to reflect the activities of August 2008. Indeed, they are even consistent with Barrister

7 Walkers testimony.   CEO Fennelly did not recall the name change and clearly both Private

8 Research Ltd. and Company Setup completely dropped the ball.  CEO Fennelly simply proceeded

9 to do as he was instructed, update the filings to make the company compliant.

10    On this point he started with eoBuy Ventures Ltd. which is the name he believe the company to

11 be using.   Once advised of the name rejection he substituted the name eoBuy Licensing Ltd.  The can

12 be no real challenge to these facts assuming the information officers provided the information as

13 reflected in Mr. Kennedy's response as was the practice until September 18, 2014.

14    Penalizing movants on the practices of a failed business-Private Research Limited-taken over by

15 a new company, Company Setup, a company that compounded the filing errors where CEO Fennelly

16 was simply trying to be compliant in following the instructions as he was advised is manifestly unjust.

17 Had he understood the significance and notified Counsel in advance there would be no issue today.

18    The filings merely represent administrative compliance, nothing more.  Any claim involving

19 the existence of eoBuy Licensing Ltd. and its right of standing should have been first brought

20 before a Court in Ireland and not imposed on this Court to determine Irish law in relation to the

21 filings with the CRO.  When properly aligned the claims of fraud lack a basic reason for them to

22 have occurred in the first place. And more importantly, the facts when eliminating the perjured

23 testimony of Barrister Walker prove there was no intent to defraud either the Court or defendants.

24                                  **Point IV.**

25               **Movants Were Diligent in Their Attempts to Obtain**
               **the CRO Statements and the IP Transfer Agreements**
26

27    Defense Counsel's argument that movants waited until September 10, 2014 to make inquiry

28 to the CRO and that the CRO responses are neither new evidence nor do they change the outcome

1    of the Court's findings is specious in the context of any advanced notice that movants would have

2    been aware of in defendants use of a witness who would offer false testimony to the very question

3    posed by defense counsel, a question going directly to the claimed fraud asserted against CEO

4    Fennelly and Counsel.

5         Counsel's September 10, 2014 through September 16, 2014 CRO inquiry post the hearing

6    was in response to reasoning put together in the Court's findings while rendering its decision

7    supported by Barrister Walker's testimony. **[DE 140-1.]**  Prior to the Court issuing its decision the

8    matters of questions posed to Mr. Kennedy were unknown for inquiry.

9         Any inquiry was not possible until after reviewing the order of September 2, 2014, and

10   portions of Barrister Walker's testimony in conflict with the actions taken by Company Setup on

11   behalf of CEO Fennelly. This fact alone, and ultimately finding that Barrister falsely testified[21]

12   supports the additional basis recognized by the Ninth Circuit for appropriate reasons the Court is

13   not limited merely to the "four "basic grounds" upon which a Rule 59(e) motion may be granted.[22]

14        Turning to the next argument related to the eoBuy Transfer Agreements as newly obtained

15   evidence previously out of the reach of movants.  Defendants argue that movants were aware of the

16   documents and did not show that the assignments were not available or that there was insufficient

17   time to obtain the documents prior to the hearing.

18        The documents are consistent with CEO Fennelly's claims and proof in opposition to the

19   themed arguments offered by defendants.  Despite due diligence movants could not have produced

20   this evidence at a time sooner than which it was obtained. **[DE149-2, 3.]** Plaintiff placed the Court

21   on notice of the need to enlarge the time to produce the documents held by witnesses who were

22   unavailable for religious and scheduling reasons requesting video appearances which would have

23   established facts which are consistent and in opposition of the errors imposed by defendants'

24   misconduct.  Most importantly, however, is the fact that the proof now available dispels any claims

25   of recklessness, fraud or any intent to deceive the Court.

26

27   [21] Had Counsel been aware of the falsehoods in the testimony of Barrister Walker at the time of his testimony inquiry would have been made.

28   [22] Herron, 634 F.3d at 1111.

1        The case law cited by defense counsel on the issue of availability of this evidence *Universal*

2   [23]is unpersuasive as the facts are entirely distinguishable.   In that case the Court denied

3   reconsideration for matters within the control of the attorneys in their preparation and use of an

4   expert witness for a case with a lengthy litigation history.   The request for reconsideration was to

5   present evidence through the witnesses who were previously available during the prior hearings but

6   not sought out prior to the hearing.

7        Here the opposite is true.   Again, prior to the hearing movants timely notified the Court of

8   the unavailability of producing witnesses and documents, the content of the documents and that due

9   to scheduling and religious reasons the witnesses were not available except by video and otherwise

10  requested a continuance.   **[DE .]**

11  
### Point V.
### The September 18, 2014 E-mail Was
### Not  Received by Counsel's Office
12  

13       First and foremost, after an exhaustive and extensive search of seven (7) office and home

14  office computers, and two laptops a search conducted by the firm's office manager Georgette

15  Franzone with the assistance of Donna Chillari a Computer specialist there is no evidence that the

16  e-mail of September 18, 2014 allegedly issued by Mr. Harry Lester an Assistant Registrar with the

17  Irish Companies Registration Office was ever received by Counsel's office, opened or read.

18  **[Defendants' Exhibit "A".]**

19       Without espousing a motive of suspicion for the lack of delivery-receipt of the September

20  18, 2014-email authored by Mr. Lester, other than of course the tactical advantage to have the Court

21  believe Counsel ignored the corrections, if they are corrections, made by Mr. Lester as the claim is

22  in his e-mail, that the responses in the-mail were directed to Counsel to notify the Court as early as

23  September 18, 2014; and likewise as to any lack of motive which would exist to limit inquiry of the

24  matters related to and correcting the alleged errors prior to defendants Response submissions and

25  related to Mr. Kennedy,  the information officer who answers telephone inquiries on a daily basis

26  on behalf of the CRO and provided the very information given to Counsel concerning CRO

27  

28  [23] *Universal Trading & Inv. Co v Dugsbery Inc.*, No. Co 8-03632CRD 2011

1   protocols and who can no longer speak with directly with counsel, other than these matters the

2   strayed e-mail is not at all suspect, nor is the content of the missing e-mail inquiry made by

3   Attorney Sugisaka or Barrister Walker of the CRO's Registrar  Ms. Helen Dixon.

4        Of interest to the Court should be that missing from the e-mail dated September 18, 2014, is

5   the banner heading which is attached in the first portion of the e-mail directed to Attorney Sugisaka

6   but not the claimed dispatched e-mail to movants' Counsel.

7        The matter is noteworthy for the reason that the banner is substantially different in the

8   portion of the e-mail allegedly dispatched to the e-mail address "DRDLinxs@aol.com," for the

9   reason that it lacks several entries which would be anticipated to appear in a formal response

10  including the address source in addition to the name change variation as a direct response to any e-

11  mail sent by this office to the CRO. [24]

12       Why it was not sent as a direct response to the sender with the CRO reference numbers as

13  all other responses were? **[DE 149-4-.]**

14       Turning to the e-mail's contents, the statements are at best backpedalling and parenthetically

15  on a on an Olympic scale. The responses obviously panders to Barrister Walker's and Attorney

16  Sugisaka's inquires. [25] It is amazing that despite Counsel's request for an official response to the

17  questions posed to the CRO by him, to not one but two separate employees of the CRO, Counsel

18  was given the exact information by both employees which was then presented by Mr. Kennedy and

19  then formally corrected, by Mr. Lester.  What does it mean?

20       Without wasting this Court's time turning to the core issue of the e-mail responses,

21  responses which were not simply an unsolicited dispatched tendered to correct Mr. Kennedy's

22  response in questioned recast to different questions posed by Attorney Dollinger, the responses

23

---

24  [24] It may be that the addition of the "**,**" at the end of the e-mail address caused AOL, Attorney Dollinger's
Internet service provider, to reject the delivery or stall it in the CRO's system.  However, in either event it
25  should have appeared as not delivered according to AOL.  Upon inquiry to AOL, AOL was unable to
provide information concerning the delivery without a proper banner heading from the sending source.

26  [25] There is no indication whatsoever to believe that attorney Sugisaka knew the e-mail was not sent or received by
27  Counsel.  The reference to her is only to the e-mail dispatched inquiry by her on September 17, 2014, although, it is
curious as to what claims-demands were made of Ms. Dixon or requests for clarity.  Apparently, for some
28  reason neither the Court nor Counsel is privy to that e-mail and its content.

1  point to one indisputable conclusion, even if Mr. Lester's e-mail provides corrections in Mr.

2  Kennedy's response when inquires to the CRO were made, that is prior to September 18, 2014, all

3  who inquired would have been relying on the very information that was offered by the CRO

4  information officers manning the telephones providing information as understood prior to that date.

5  **[DE 149-4.]**

6       The objective effect of what the public was told can be seen in the precise details of what was

7  done by Company Setup for eoBuy Licensing Ltd.  Clearly, the CRO does ascribe fault to the filings.

8  Mr. Lester never once suggest that a fraud was being perpetrated by the filing of the name change

9  because he cannot.  All one need to do is look at the sequence of the filings offered by Mr. Kennedy.

10      In each instance the documents provided by Mr. Kennedy are tied to a date at least to the

11  year 2013. And, he makes no attempt to raise the filing to the occasion of any fraud.

12      The Court's statement that Barrister Walker had eliminated the fact the forms were available

13  in 2008 as a challenge by Counsel or an attempt to show through the cross examination of Barrister

14  Walker that they were actually executed in 2008 is in error.

15      Just the opposite is true Barrister Walker testified that they were unavailable in 2008;

16  movants agree.   The fact is thation each instance of the 2014 filings the documents as dated appear

17  with at least the years 2013 on their face.  This is definitive proof that the flings were not intended to

18  be fraudulent.    If CEO Fennelly were attempting a fraud why not obtain an old document one from

19  the CRO's Website whiteout the information and use it.  Now that would be a fraud.  Just the

20  opposite is true.

21      CEO Fennelly used documents which obviously reflect at least the year 2013.  The filings

22  show the Resolution for name change form and amended articles of Inc. made to have an effective

23  date of March 14, 2014.

24      The very sequence was open to the public and could not possibly support the claimed fraud.

25  But for the false state of mind imposed by Barrister Walker that CEO Fennelly must have been lying

26  when he said he forgot the CRO had rejected the name change as it would have appeared in the

27  public filings and the implausible suggestion of fraud in the filing of this Court could not have found

28  an act of fraud in either fact or the law.

1    Finally, the fact ha the filing are out of sequence related to the officers and member was the
2    direct result between failure of Private Research Ltd. and Company Setup. The filings made were
3    for corrections related to their errors. The Transfer Agreements help establish that this all occured

4    **Conclusion**

5    What defendants suggest is that the Court not judge movants claims on the merits applying
6    the law as required under Fed Rules. Civ. 1927, as well as Rule 20(a) and disregard the indisputable
7    perjury of Barrister Walker as well as never addressing the fact that movants had already notified
8    the Court of their inability to control the delivery of the documents due to travel and religious
9    observations by third-parties. **[DE 132.]**

10    The Court's findings that the Plaintiff's CEO Conor Fennelly and  Attorney Douglas R.
11    Dollinger submitted fraudulent documents and false declarations which actions amount to bad faith
12    in vexatiously-recklessly multiplying the proceedings before the Court is in error of the law and facts
13    of this case, and upon reconsideration this court should reverse itself to avoid manifest injustice and
14    prevent unjustified and irreparable injury to Plaintiff Indiezone, Conor Fennelly and their Counsel.
15    **[DE 145.]**

16

**LAW OFFICES OF DOUGLAS R. DOLLINGER**

17    Dated: October 14, 2014

18    Douglas R. Dollinger, Esq., NY Bar No. 2354926
      Appearing *Pro Hac Vice*
19    50 Main Street-Suite 1000
      White Plains, New York 10606
20    Tel:    845.915.6800
      Fax:   845.915.6801
21    E-mail: ddollingeresq@gmail.com
      Attorney for Plaintiff
22

23

24

25

26

27

28

Memorandum in Support of Reconsideration

## CERTIFICATE OF SERVICE

I hereby certify that, in accordance with the Rules of Federal Procedure, on the this date October 14, 2014, a true and correct copy of the foregoing document was delivered to Defendants, by and through the ECF System to their record counsel.

__ /S/ *Douglas R. Dollinger*___
Douglas R. Dollinger,Esq (5922)
NY Bar No. 2354926
50 Main Street, Suite 1000
White Plains, New York 10606
Tele:   845.915.6800
Facs:   845.915.6801
E-mail ddollingeresq@gmail.com
*Attorneys for Plaintiff*